UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| **MCKEE FOODS CORPORATION** ) | |
| ) | |
| PLAINTIFF, ) | **Case No. 1:21-CV-00279-CEA-SKL** |
| ) | **Judge Atchley** |
| v. ) | **Magistrate Judge Lee** |
| ) | |
| **STATE OF TENNESSEE** ) | |
| ) | |
| INTERVENOR, ) | |
| ) | |
| v. ) | |
| ) | |
| **BFP INC. D/B/A THRIFTY MED** ) | |
| **PLUS PHARMACY,** ) | |
| ) | |
| DEFENDANT. ) | |

### MEMORANDUM IN SUPPORT OF THE STATE'S MOTION TO DISMISS

The State of Tennessee (the "State"), by and through the Office of the Tennessee Attorney General, has moved this Court to dismiss the Complaint of McKee Foods Corporation ("McKee") under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the State's Motion should be granted and McKee's Complaint should be dismissed.

### INTRODUCTION

Plaintiff McKee Foods Corporation ("McKee") argues that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts the application of Tenn. Code Ann. § 56-7-3120 and Tenn. Code Ann. § 56-7-2359 to the McKee prescription drug plan, and thus prevents Defendant BFP Inc., doing business as Thrifty Med Plus Pharmacy ("Thrifty Med"), a pharmacy

that used to be in the McKee network, from suing for reinstatement into the McKee network under these state laws.

McKee purports to bring this action directly under ERISA; however, plan administrators like McKee cannot sue under ERISA unless they are bringing an action to enforce ERISA or ERISA plan terms. The Sixth Circuit has held that administrators who sue to prevent a private party's threatened state action are not enforcing ERISA or ERISA plan terms; thus, such actions are subject to dismissal for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Plan administrators facing private-party actions in state court must assert ERISA preemption as an affirmative defense or seek to remove the matter to federal court if complete preemption exists (which in any event is not the case here). Intervenor, the State of Tennessee, contends that McKee cannot sue under ERISA to prevent Thrifty Med from suing in state court for reinstatement to the McKee network. Even if McKee could sue under ERISA, the Court should exercise its discretion to dismiss this suit. For all of these reasons, Tennessee respectfully requests the Court dismiss this action.

## FACTUAL BACKGROUND

Plaintiff McKee is a commercial bakery headquartered in Tennessee. (Compl. at 1.) It provides health benefits to its employees and their beneficiaries through the McKee Foods Corporation Employees Health and Supplemental Benefits Plan ("Health Plan"). (*Id.* ¶ 1.) McKee established and maintains its Health Plan pursuant to the terms and conditions of ERISA. (*Id.* ¶¶ 5–7.) Thus, the Health Plan is a self-insured, ERISA-governed, employee-welfare benefit plan. (*Id.* ¶ 8.)

The McKee Health Plan includes a Prescription Drug Program ("Drug Program"). (Compl. ¶ 12.) Health Plan participants and their beneficiaries receive prescription drug benefits through the Drug Program. (*Id.* ¶¶ 13–14.) MedImpact is a pharmacy benefits manager ("PBM") that operates a network of pharmacies that contract with McKee. (Comp. ¶ 15; Answer ¶ 27.) McKee Health Plan participants receive greater Drug Program benefits when they fill prescriptions at these so-called "in-network" pharmacies. (*Id.* ¶¶ 14–16; *see also* Ex. A to Complaint (Health Plan explanation of benefits).) McKee and MedImpact jointly determine which pharmacies are allowed to participate in the network. (*Id.* ¶ 16.)

Defendant Thrifty Med is a pharmacy located in Tennessee and used to be one of McKee's "in-network" pharmacies. (*Id.* ¶¶ 4, 17.) In July 2018, MedImpact fielded complaints from a McKee Health Plan participant who alleged Thrifty Med improperly billed the participant for prescriptions in violation of the terms of the Health Plan's Drug Program. (*Id.* ¶ 18.) MedImpact audited Thrifty Med and reported its findings to McKee. (Comp. ¶¶ 19–20.) Thereafter, MedImpact advised Thrifty Med that effective May 2019, Thrifty Med would no longer be one of the Health Plan's "in-network" providers. (*Id.* ¶¶ 21–22.) Thrifty Med objected but apparently took no legal action to obtain reinstatement to the McKee network. (*Id.* ¶ 23.)

In July 2021, the Tennessee General Assembly enacted Public Chapter 569 ("PC 569"), which amended the state's PBM laws found at Title 56, Chapter 7, Part 31, by adding Tenn. Code Ann. § 56-7-3120, which provides as follows:

> (a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

> (b) A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives.

The referenced provision—Tenn. Code Ann. § 56-7-2359—sets standards for health-insurance issuers and managed-health-insurance issuers relative to pharmacy participation in plan networks, and governs dealings between pharmacies, plans, and plan participants. It is often referred to as Tennessee's "Any Willing Pharmacy" ("AWP") law because subdivision (a)(1) of Section 2359 provides that no health insurance issuer or managed health insurance issuer shall deny a pharmacy the right to participate as a participating provider in a network on "the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan." *Id.*

McKee contends that after PC 569's enactment, Thrifty Med contacted McKee's current PBM, and argued that PC 569, by reference to Tennessee's Any Willing Pharmacy law (Tenn. Code Ann. § 56-7-2359(a)(1)) required McKee reinstate Thrifty Med to McKee's "in-network" providers for its Drug Program. (Compl. ¶ 27.) However, no such correspondence is attached to the complaint, and there is no allegation that Thrifty Med took any legal action seeking reinstatement.

McKee does allege that in September-October 2021 various Tennessee consumers filed complaints with the Tennessee Department of Commerce and Insurance (the "Department"), arguing that Thrifty Med's removal from the McKee Drug Plan violates state law. (Compl. ¶ 28.) McKee admits it is not party to these complaints. (*Id.*) Thrifty Med admits in its Answer that it participated in the complaints. (Answer ¶ 28.)

McKee filed this action shortly after the Department received the consumer complaints. McKee seeks a declaration that ERISA preempts Thrifty Med from using state law to force reinstatement into the McKee network, and an order "enjoining Thrifty Med from pursuing any

4

Case 1:21-cv-00279-CEA-MJD   Document 28   Filed 03/22/22   Page 4 of 16   PageID #: 111

legal or administrative action to enforce state laws or otherwise to force McKee Foods to include Thrifty Med as a network pharmacy in the Health Plan Prescription Drug Program." (Compl. ¶ 40.) In its answer, Thrifty Med admits it requested reinstatement after the laws were passed, but it has not counterclaimed for reinstatement or sought damages for the time it has been excluded from the McKee network. (Answer ¶ 27.)

On March 8, 2022, the Court granted the State intervention in this matter to defend the constitutionality of the state laws cited by McKee in its Complaint. (Order re: Intervention, ECF No. 26.)

## ARGUMENT

McKee's Complaint should be dismissed because the Court lacks subject matter jurisdiction or, in the alternative, McKee fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6).

### I. The Matter Should be Dismissed for Lack of Subject Matter Jurisdiction, or in the Alternative, for Failure to State a Claim Upon Which Relief Can be Granted.

Due to the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction and ensure that it has the authority to proceed. *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint must be dismissed if the court lacks subject matter jurisdiction over a claim. A plaintiff's causes of action must arise under federal law in order to establish federal-question-based subject matter jurisdiction. "A suit arises under the law that creates the cause of action." *Tomei v. Parkwest Medical Center*, 24 F. 4th 508, 511 (6th Cir. 2022) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260).

Here, McKee seeks declaratory and injunctive relief under ERISA and the federal Declaratory Judgment Act. But because ERISA does not allow McKee to sue to prevent Thrifty

Med from filing a state court action seeking reinstatement under state law, the court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, McKee failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990). To protect participants in an employee benefit plan, ERISA "establish[es] standards of conduct, responsibility, and obligation[s] for fiduciaries of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987).

Certain parties can sue directly under ERISA. Pursuant to 29 U.S.C. § 1132(a)(1)(B), a plan participant or beneficiary can bring suit to recover benefits due to him, enforce his rights, or clarify his rights to future benefits. Relatedly, Section 1132(a)(3) allows a participant, beneficiary, or fiduciary to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A)–(B).

All of McKee's purported causes of action are alleged as if they arise under ERISA. But in reality none of McKee's causes of action arises under ERISA and thus do not come within this Court's subject matter jurisdiction. In Count I, McKee seeks a declaration that ERISA preempts Tenn. Code Ann. §56-7-2359 and PC 569 from being applied to the McKee Plan such that McKee must reinstate Thrifty Med to the McKee provider network, either under ERISA's preemption clause or its fiduciary clause. (Compl. ¶¶ 33-35.) McKee alleges Count II arises under 29 U.S.C. §1132(a)(3), as McKee seeks an injunction barring Thrifty Med from filing suit seeking reinstatement into the McKee network, on grounds that ERISA preempts state law. (Compl. ¶¶

36-42.)  Finally, McKee seeks an advisory opinion from the Court in Count III regarding "the scope of its duties with respect to determining which pharmacies are to be included in the Health Plan Prescription Drug Program pharmacy network and whether the Health Plan is subject to regulation under Tennessee Code Annotated § 56-7-2359, as amended by Public Chapter No. 569." (*Id.* ¶ 48.)

The Sixth Circuit's decision in *NGS American, Inc. v. Jefferson* supports the State's position that McKee's causes of action do not "arise under" ERISA, thus warranting dismissal of the action.  *See Jefferson*, 218 F.3d 519 (6th Cir. 2000).  There, NGS served as the third-party administrator for Flint Ink Corporation's ERISA-governed health plan. *Id.* at 521.  Ms. Jefferson, the defendant's wife and a Florida resident, was a plan beneficiary.  *Id.*  She died two weeks after giving birth to the defendant's son.  *Id.*  Mr. Jefferson argued that the condition that caused his wife's death was readily detectable and treatable.  *Id.*  He served a pre-lawsuit Notice of Intent to Initiate Litigation, required under Florida law, upon NGS and the responsible health providers.  *Id.*  One month later, NGS sued the Jefferson family in federal court in Michigan, seeking a declaration that any state-court claims were preempted under ERISA.  *Id.*

Mr. Jefferson, representing the family, moved to dismiss, arguing that the Michigan court lacked personal jurisdiction over him.  *Jefferson*, 218 F.3d at 521.  ERISA contains a nationwide service-of-process provision that can be invoked to establish personal jurisdiction but only if the court has subject matter jurisdiction under 29 U.S.C. § 1132(a)(3).  *Id.* at 521, 524.  This means that for personal jurisdiction to exist, the court must have subject matter jurisdiction[1] under ERISA.

---

[1] As discussed above, a cause of action must meet the "arising under" standard to present a federal question.  *See* 28 U.S.C. § 1331.

*Id.* The district court found that it lacked personal jurisdiction over the action. *Id.*

The Sixth Circuit affirmed the dismissal, observing that "federal courts frown upon declaratory judgment actions brought for procedural fencing purposes." *Jefferson*, 218 F.3d at 522. Collecting cases from other courts on the subject, the *Jefferson* court noted that federal courts disfavor the filing of declaratory judgments "before the other party is able to commence its nonremovable coercive action in state court." *Id.* (citing *First Fed. Sav. & Loan Assoc. of Bowling Green, Ky. v. McReynolds*, 297 F. Supp. 1159, 1161 (W.D. Ky. 1969)).

Although the *Jefferson* court conceded that fiduciaries should be able to sue plan beneficiaries "to recoup losses for plan violations . . . these cases hardly indicate that ERISA authorizes fiduciaries to sue beneficiaries for violating provisions of ERISA." *Jefferson*, 218 F.3d at 525. Moreover, the *Jefferson* court found that nothing prevented the plan administrator from raising ERISA preemption as an affirmative defense against the beneficiary's state court claims. *Id.* at 530. To the extent the plan administrator sought equitable relief "to prevent suit in Florida state court, that is not a kind of equitable relief made available under ERISA." *Id.* at 526.

The Sixth Circuit also held that the *Jefferson* plaintiff's (NGS) federal court action for relief under ERISA did not "enforce" ERISA or plan terms, as required by 29 U.S.C. § 1132(a)(3). The court rejected NGS's reliance on an earlier Sixth Circuit decision in *Thiokol Corp. v. Department of Treasury, State of Michigan*, 987 F.2d 376 (6th Cir 1993). *Thiokol* involved a Michigan law that required taxation of contributions to employee benefit plans. *Thiokol*, 987 F.2d at 377–78. Thiokol sought a declaration that ERISA preempted the state tax law and asked the court to enjoin the collection of taxes and prohibit tax authorities from refusing to refund the taxed contributions. *Id.* at 378. The *Thiokol* court focused on (1) whether the plan administrator could sue under ERISA without running afoul of the federal Tax Injunction Act and (2) whether Congress intended to

abrogate state immunity guaranteed under the Eleventh Amendment of the U.S. Constitution and subject the state defendants to being sued under ERISA in federal court. *Id.* at 378–83.

*Thiokol*, the *Jefferson* court held, "was brought to determine the effect of ERISA preemption on existing state regulations." *Jefferson*, 218 F.3d at 529. The plan in *Thiokol* risked violating state law if it waited to be sued by the state and then asserted ERISA preemption as a defense. *Id.* The court reasoned that NGS "does not face a similar dilemma in the present case, because it is questioning the permissibility of a private cause of action brought under state law rather than the enforceability of an existing state regulation." *Id.* For these reasons, the only impact on NGS, the plan administrator, from being denied a right to sue under ERISA directly was having "to raise its preemption claims in state court, or to seek removal to a federal district court in Florida." *Id.* Relying on precedent, the *Jefferson* court held that ERISA's preemption clause "does not create a federal cause of action itself," and that the threat of a private lawsuit does not violate, by itself, ERISA's preemption clause. *Id.* (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995)).

The Fourth Circuit expanded upon *Jefferson*'s reasoning and the principles underlying *Thiokol* in *Denny's v. Cake*, 364 F.3d 521 (4th Cir. 2004). That case dealt with an ERISA-governed benefits plan sponsored by the restaurant Denny's. *Denny's*, 364 F.3d at 523. Denny's received a letter from counsel for the California Department of Industrial Relations concluding that the Denny's plan is not an ERISA plan and thus was subject to and violated the California Labor Code. *Id.* The attorney threatened litigation if an amicable solution could not be reached. *Id.* Denny's initiated its federal action a few months after it received the letter. *Id.* Shortly thereafter, the California Department sued Denny's in California state court for damages and

injunctive relief.  *Id.* at 524.  The district court granted the California Department's motion to dismiss for lack of jurisdiction, relying on *Jefferson*.  *Id.* at 526.

The Fourth Circuit reversed.  It held that the district court improperly relied upon *Jefferson* to dismiss Denny's lawsuit by ignoring the *Jefferson* court's distinction between ERISA lawsuits that seek to prevent private state court lawsuits and ERISA actions that challenge the enforceability of state regulation.  *Denny's*, 364 F.3d at 527.  The Fourth Circuit in *Denny's* agreed with the Sixth Circuit view that the two actions are materially different: one is permitted under ERISA while the other is not.  The *Denny's* court noted that an ERISA plan administrator facing state law enforcement risked violating state law or violating ERISA.  *Id.*  Specifically, the Denny's administrator would be required to either enforce the ERISA term prohibiting vacation accrual or cash-out unless an employee works six months or one year, or violating plan terms and complying with state law mandating accrual and cash rights commence immediately.  *Id.*  On the other hand, and relevant to this proceeding, the court held that "[a] party's private suit, based on an arguably preempted state law, brought against an ERISA plan, poses no threat to violate [ERISA's preemption clause] or any other provision of the plan."  *Id.*

The distinction between the two contemplated actions is clearer when analyzing how each scenario affects administration of the plan.  In *Thiokol* and *Denny's* for example, the plan administrators had to choose to continue either (1) to administer the ERISA plans according to their terms and violate state law or (2) to enforce the plans according to state law and violate the plan terms (and, thus, ERISA itself).  Here, McKee faces no such conundrum.  It can continue to administer its Health Plan and subordinate Drug Program according to its terms regardless of whether a former "in-network" provider like Thrifty Med sues for reinstatement.  McKee does not

10

face the same choice as the administrators in *Thiokol* and *Denny's*. It merely faces the potential of being sued in state court and then raising ERISA preemption as an affirmative defense.

Indeed, raising ERISA preemption as an affirmative defense is the customary procedural course of action, and the merits of that affirmative defense ordinarily would be decided by the state court. The plaintiff in *Jefferson* sought a declaration that "any state-court claims would be preempted under 29 U.S.C. 1144," ERISA's preemption provision. *Jefferson*, 218 F.3d at 521. The *Jefferson* court noted that "[r]emoval is the standard method to seek the hearing of a federal claim in a federal rather than state court. NGS purports to enforce ERISA preemption via its action for injunctive and declaratory relief, but such relief could only ever be appropriate when removal is mandatory (if then)." *Id.* at 522. Here, McKee likely could not remove the matter if sued by Thrifty Med in state court under state law, because the doctrine of complete preemption, a requirement for removal, does not apply here. *See K.B. v. Methodist Healthcare*, 929 F.3d 795 (6th Cir. 2019) (holding no removal based on complete preemption where claims arise under independent legal duties created under state law). For this additional reason—because McKee could not remove even if it were sued in state court—McKee should not be allowed to fence Thrifty Med into federal court through this action.

McKee's lawsuit is even less connected to the terms of its plan and ERISA itself than the matter at issue in *Jefferson*, and on that additional basis should be dismissed. Unlike NGS in *Jefferson*, McKee is not suing a plan member or beneficiary, but a pharmacy that no longer participates in the McKee network. Defendant Thrifty Med is therefore not subject to ERISA. Providers may sue a plan administrator under ERISA only by an express assignment of rights from a participant or beneficiary. *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 913 (M.D. Tenn. 2013). By extension, plan administrators should not be allowed to avail themselves

11

of ERISA's causes of action to reach entities that cannot directly sue under ERISA. A more appropriate approach—though perhaps no more likely to succeed on the merits—would have been for McKee to sue Thrifty Med in state court, seeking a declaration that state law does not permit Thrifty Med's reinstatement, or to wait for Thrifty Med to sue and assert a preemption defense.

Additionally, and unlike the plan administrators in *Thiokol* and *Denny's*, McKee does not face imminent enforcement by the State of Tennessee of the PBM laws against its plan or to require it to reinstate Thrifty Med. If there is a violation, the statutes grant the Commissioner of the Tennessee Department of Commerce and Insurance the authority to impose penalties under Tenn. Code Ann. § 56-2-305, but only after providing the violating party with administrative due process under the state's Uniform Administrative Procedures Act. Tenn. Code Ann. §§ 56-7-3110, -2-305(a). These penalties can include a cease-and-desist order, monetary penalties per violation, and license suspension. *Id.* § 56-2-305(a)(1)–(3). There is no allegation or argument that McKee or its PBM faces administrative process or administrative discipline from the Commissioner, making this action premature and barred.

Critical here is that no discipline could be imposed unless after a factual inquiry the Commissioner of the Tennessee Department of Commerce and Insurance determined that McKee's actions violated any rights Thrifty Med may possess under state law. This is distinguishable from *Thiokol*, where the plan-administrator plaintiff undisputedly was subject to the challenged tax provision—and *Denny's*, where the employer undisputedly was subject to California's wage and hour laws. The *Denny's* court, though it distinguished *Jefferson*, agreed with its interpretation of 29 U.S.C. § 1132(a)(3), in holding that *Jefferson* "involved a fiduciary suing for a declaration that ERISA preempted the threat of a private suit by a beneficiary, while the case at hand involves a very different situation: a fiduciary suing for a declaration that ERISA

12

preempts state authorities from enforcing state law against an ERISA plan." *Denny's*, 364 F.3d at 527. For all of these reasons, Intervenor contends the matter should be dismissed for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.

## II. The Court Should Decline to Exercise Jurisdiction Under the Declaratory Judgment Act.

Even if the Court has jurisdiction to hear the matter, it should decline to exercise its jurisdiction pursuant to the Declaratory Judgment Act (DJA). The DJA states that in a case of actual controversy within its jurisdiction, a court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a). The Act allows federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Scepter, Inc. v. Metal Bulletin Ltd.*, 165 F.Supp.3d 680, 686 (M.D. Tenn. 2016). Under the DJA, a court has discretion not to hear a declaratory judgment action, even where jurisdiction exists. *Catholic Health Partners v. Carelogistics*, LLC, 973 F.Supp.2d 787, 792 (N.D. Ohio 2013).

The Sixth Circuit has adopted a five-factor test to assess the propriety of the federal court's exercise of discretion in a Declaratory Judgment Act case: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of the declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004).

The factors here would strongly support the Court's decision to decline to exercise jurisdiction over McKee's claims. As to the first factor, this lawsuit will not settle the controversy

between McKee and Thrifty Med. McKee asks that the Court determine whether ERISA preempts state law, nothing more. If Thrifty Med is correct that state law applies in the manner it alleges and is further correct that ERISA does not preempt state law from being applied to the McKee network in this manner, Thrifty Med will then need to prove that it has the right to be reinstated into the McKee network. To prevail, Thrifty Med would likely need to demonstrate that it is willing and able to meet the terms of the McKee network contract, and thus qualifies to participate pursuant to Tennessee's Any Willing Pharmacy law. The State predicts this dispute will turn in part on whether McKee removed Thrifty Med for cause, or without cause. But these issues are not before the Court. McKee has not raised these claims, and Thrifty Med has not counterclaimed for the right to be reinstated or for damages arising from its ouster. *But see AmSouth*, 386 F.3d at 786 (taking no position on whether counterclaim availability is relevant to first prong of inquiry).

The remaining factors also weigh in favor of dismissal. On the second factor, a judgment would arguably not serve a useful purpose. McKee seeks to prevent Thrifty Med from obtaining reinstatement, but there is no indication Thrifty Med truly wishes to do so. Other than participating in consumer complaints and an alleged letter sent to McKee, it appears Thrifty Med has done nothing to pursue reinstatement. The third factor weighs heavily in favor of dismissal, as McKee is engaging in classic procedural fencing by rushing to this Court barely a month after the administrative complaints were filed, and before any further action was taken. On the fourth factor, this matter presents a novel question over the interpretation of Tennessee's recently enacted PBM laws. On the fifth and final factor, there is a potentially more effective (or at least more practical) method for the parties to resolve any issues of reinstatement under state law and potential preemption arguments, and that is an action in state court. For all of these reasons, even if the

Court finds it has subject matter jurisdiction, the State respectfully requests that the Court decline to exercise it in this matter.

## CONCLUSION

For all the foregoing reasons, the State of Tennessee respectfully requests the Court dismiss this action in its entirety for lack of subject matter jurisdiction or, in the alternative, failure to state a claim upon which relief can be granted.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


s/ James P. Urban
JAMES P. URBAN (#033599)
Deputy Attorney General
James.Urban@ag.tn.gov
KEVIN M. KREUTZ (*Pro Hac Vice*)
*Practicing pending admission*
Acting Assistant Attorney General
Kevin.Kreutz@ag.tn.gov
Office of the Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-3739 *Urban phone*
(615) 253-0694 *Kreutz phone*
(615) 741-8151 *fax*

# CERTIFICATE OF SERVICE

I certify that on this the 22nd day of March 2022, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt:

Catherine S. Dorvil (BPR No. 034060)
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
Telephone: (423) 756-3000
Facsimile: (423) 508-1240
*Counsel for Plaintiff*

Russell W. Gray (BPR No. 016120)
Ryan A. Freeman (BPR No. 033299)
633 Chestnut Street
Suite 1900
Chattanooga, Tennessee 37450
Tel: (423) 756-2010
*Counsel for Defendant*

s/ James P. Urban
JAMES P. URBAN