UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MCKEE FOODS CORPORATION, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 1:21-cv-279 |
| STATE OF TENNESSEE, | ) Judge Atchley |
| *Intervenor*, | ) Magistrate Judge Lee |
| BFP INC., *d/b/a* THRIFTY MED PLUS PHARMACY, | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Intervenor-Plaintiff State of Tennessee's Motion to Dismiss for Lack of Jurisdiction [Doc. 27], Plaintiff McKee Foods Corporation's Motion for Summary Judgment [Doc. 35], Defendant BFP Inc.'s Motion to Dismiss for Lack of Jurisdiction [Doc. 37], and Defendant BFP Inc.'s Motion to Stay Discovery Pending Resolution of Pending Dispositive Motions [Doc. 52]. These motions have been fully briefed and the Court recently heard oral argument. The motions are now ripe for review.

For the reasons below, Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. 37] is **GRANTED** and the remaining motions are **DENIED** as moot.

### I.  FACTUAL BACKGROUND

McKee Foods is a commercial bakery headquartered in Tennessee. McKee Foods maintains a health benefits plan for its eligible employees and their eligible dependents ("Health Plan"). The Health Plan is governed by the Employee Retirement Income Security Act of 1974

("ERISA"). Benefits under the Health Plan are not insured but are funded by a combination of contributions from McKee Foods and plan participants. Among other benefits, the Health Plan includes a Prescription Drug Program. As part of its administration of the Prescription Drug Program, McKee Foods determines which pharmacies are part of the Program's network of pharmacies. The Prescription Drug Program offers more favorable benefits to participants when prescription drugs are purchased from network pharmacies than when they are purchased from non-network pharmacies.

Defendant Thrifty Med was previously part of the Prescription Drug Program's network of pharmacies. However, in response to concerns raised by a Health Plan participant, an audit of Thrifty Med was conducted which determined that certain practices were inconsistent with the terms of the Health Plan. Because of this, McKee Foods removed Thrifty Med from the Prescription Drug Program network. Following the 2021 passage of Tennessee legislation addressing prescription drug programs, Thrifty Med sought reinstatement in the McKee Foods Prescription Drug Program network, alleging state law obligated McKee Foods to include Thrifty Med as a network pharmacy[1].

McKee Foods contends that the Tennessee legislation on which Thrifty Med relies is preempted by ERISA, the terms of the Tennessee laws exempt non-insured ERISA plans from their coverage, and, even if the Tennessee laws apply to the McKee Foods Health Plan and Prescription Drug Program, as plan sponsor and/or as a fiduciary of an ERISA-governed plan, McKee Foods is entitled to remove a pharmacy from the plan network, including when McKee

---

[1] Thrifty Med has abandoned attempts to be reinstated at this time. As explained below, three administrative complaints they helped file with Tennessee Department of Commerce & Insurance ("TDCI") were closed with no relief granted.

determines that the pharmacy has committed acts that violate the plan and/or that cause potential harm to plan participants and beneficiaries.

Accordingly, McKee Foods brought this initial complaint seeking a declaration that (1) the state laws are preempted by ERISA, and (2) the state laws do not require McKee Foods to include Thrifty Med in the approved network of pharmacies; as well as an order enjoining Thrifty Med from pursuing any legal or administrative action in attempt to require McKee Foods to include it in the Health Plan's Prescription Drug Program pharmacy network. Alternatively, as a fiduciary of the ERISA-governed Health Plan, McKee Foods seeks instruction from the Court regarding its rights and duties considering the state laws.

In April and May 2022, the Tennessee General Assembly passed, and Governor Bill Lee signed into law, legislation ("HB2661/SB2458" or "PC 1070") that amends Tennessee's Any Willing Pharmacy and Anti-Steering statutes (Tenn. Code §§ 56-7-3102, -3120, and -2359). These amendments specifically expand the Any Willing Pharmacy statute to include self-insured and ERISA-governed plans along with creating a new structural scheme for preferred and non-preferred pharmacy networks.

Oral argument was held on November 30, 2022, allowing the parties to further state their positions on the pending dispositive motions. The Court is now prepared to rule.

## II.     STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74

U.S. (7 Wall.) 506, 514 (1868)).

Article III of the Constitution limits the jurisdiction of federal courts to adjudication of "cases" and "controversies." U.S. Const., Art. III, § 2. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). A case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (quoting *Knox v. Service Emps.*, 567 U.S. 298, 307 (2012)). The burden to establish mootness lies with the party asserting mootness – here, the Defendant. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021); *Adarand Constuctors, Inc. v. Slater*, 528 U.S. 216, 222 (2000).

While not controlling, Eighth Circuit precedent is instructive on this issue: "When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot." *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013) (quoting *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc)). The Sixth Circuit sharpens this point, making clear that any change in law must be material and substantially alter the rights and obligations of the parties in order to moot a case. *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006) (stating generally that a mere change in the applicable law is not enough to moot a case, and that if a new statute is substantially similar to the old statute and operates in 'the same fundamental way,' the case is not moot). Ultimately, "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)).

Here the Defendant is challenging, not the sufficiency of the pleadings, but the factual predicate for subject matter jurisdiction. Therefore, to determine whether it has subject matter jurisdiction, no presumption of truthfulness applies to the allegations in the complaint, and the Court must weigh the evidence to decide whether subject matter jurisdiction does or does not exist. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The parties have presented evidence in the form of briefings, exhibits, and a hearing on the dispositive motions held by this Court on November 30, 2022.

### III. ANALYSIS

Throughout the briefing, motion practice, and oral argument, Plaintiff McKee has maintained that this Court holds subject matter jurisdiction over the instant case. [Docs. 1, 35, 36, 45, 47]. Defendant Thrifty Med and the State of Tennessee have offered various theories and motions on a range of alternatives from mootness to constitutional avoidance to persuade this Court that subject matter jurisdiction does not exist. [Docs. 27, 37, 38, 39, 43, 44, 46]. And this Court is obligated to ensure an actual controversy exists throughout the entirety of the case. *Kingdomware Techs., Inc.*, 136 S. Ct. at 1975.

Here, Defendant Thrifty Med asserts that the instant case is moot. They argue that the passage and ratification of PC 1070[2], combined with their stipulations in briefing and at oral argument, effectively nullify the actual controversy that supported the origination of this case. In their initial support memorandum, [Doc. 38] Defendant Thrifty Med argued that PC 1070 substantially expands the scope of Tennessee's "Any Willing Pharmacy" laws to the point where a declaratory judgment on the original questions brought in this suit would be rendered moot[3]. The

---
[2] PC 1070 became effective January 1, 2023.
[3] Underlying this assertion is the notion that the post-PC 1070 law would be substantially different from the pre-PC 1070 law to the point that an answer to the original questions brought before this Court in 2021 are irrelevant to the parties post the enactment of PC 1070.

<mark>5</mark>

State of Tennessee agreed, noting at oral argument that PC 1070 creates new preferred and non-preferred tiers of networks as well as removing limiting language from the old law – both substantial changes from the pre-PC 1070 law. Thrifty Med also asserts that their stipulation to cease attempts at reinstatement under the pre-PC 1070 laws further removes a "live" controversy from this action. [*Id.* at 8].

In response, Plaintiff McKee argues that this case is not rendered moot because of the passage of PC 1070 or Thrifty Med's stipulations. Regarding PC 1070, Plaintiff McKee argues from *Cam I* that a case is not rendered moot due to enactment of an amendment that does not entirely remove the alleged harm to plaintiffs.[4] Plaintiff contends the effects of PC 1070 are analogous. [Doc. 45 at 12-14]. In their view, several of the PC 1070 provisions simply have no bearing on the current controversy, while those provisions that do amend relevant Tennessee state law actually make the ERISA preemption issue more relevant. Plaintiff McKee also contends that Thrifty Med's pre-hearing stipulation does not moot the case under the voluntary cessation doctrine.[5] In their view, the Supreme Court has ruled that a voluntary change in litigation positioning will only moot a case if there is no reasonable expectation that the party will pursue a similar course of conduct in the future. *See*, *e.g., Los Angeles Cty. V. Davis*, 440 U.S. 625, 631 (1979); *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012).

After hearing the parties further at oral argument on the matter of mootness, the Court agrees with Defendant Thrifty Med. There is no longer a live case or controversy over which this Court may exercise jurisdiction. The alleged harm suffered by Plaintiff McKee has been removed.

---

[4] Plaintiff McKee also argues that the repeal and subsequent reenactment of provisions similar does not moot a continuing challenge. [Doc. 45 at 11]. The Court notes that PC 1070 does not involve a repeal and reinstatement of Tennessee state laws underlying this matter. Accordingly, this line of argument does not appear to be relevant.
[5] At the time of the filing of the original Motion to Dismiss from Thrifty Med [Doc. 37], Thrifty Med filed a stipulation that they would no longer seek reinstatement under the as-of-then current Tennessee law. At that time, they stated it remained to be determined if Thrifty Med would seek reinstatement after PC 1070 became effective.

At oral argument, this Court questioned the parties about what harm Plaintiff McKee was trying to stop or prevent at this point in time. Plaintiff McKee asserted that the "allegation" by Defendant Thrifty Med that the Defendant has been impermissibly removed and barred from providing services to members of McKee's health plan still exists. To support this assertion, Plaintiff McKee points to the administrative complaints filed on behalf of Defendant with TDCI in 2021. Plaintiff McKee alleges this "harm" is continuing, meaning the case is not mooted. The Court is not convinced.

During oral argument, the State of Tennessee noted that there are currently no pending enforcement actions against Plaintiff McKee related to the instant question. Additionally, the Court notes that the 2021 administrative complaints pursued by Defendant Thrifty Med that provided the initial standing to file this case were dismissed without relief granted by TDCI. Further, to this Court's knowledge, Defendant Thrifty Med has not pursued any further administrative or judicial remedy. Regardless of Defendant's public lobbying or marketing efforts[6], they have not engaged in legally salient activities that can be construed to constitute a continuing harm to Plaintiff McKee.

In their briefs, Plaintiff McKee acknowledges Defendant Thrifty Med's lack of offensive litigation, but claims this position implicates the voluntary cessation doctrine, placing a heavy burden on Defendant to show there is no reasonable likelihood of future action. Plaintiff McKee maintains their prior claim that Defendant's stipulation to forego seeking reinstatement under the pre-PC 1070 Tennessee law did not satisfy this burden. Specifically, they argue that the Thrifty Med's stipulation was not comprehensive enough, pointing to the fact that Thrifty Med's original stipulation stated it "remains to be seen" if Thrifty Med will pursue reinstatement after PC 1070 becomes law.

---

[6] The Court notes Plaintiff McKee's assertions that Defendant has publicly supported the passage of PC 1070 and maintains community billboards in support of their pharmacy services.

In response, Defendant Thrifty Med further stipulated at oral argument that there is no current intent or plan to pursue reinstatement under post-PC 1070 law. To paraphrase Defendant's representations at the hearing, the entire experience has been rather unpleasant for Thrifty Med, and there are certainly reasons at this stage that they may not wish to continue business relations with McKee. The Court is inclined to take Defendant Thrifty Med at their word in the absence of reason or evidence otherwise. Regardless of what any party believes to be the impact of PC 1070 on their prior positions, there is no enforcement action facing Plaintiff McKee and no reasonable expectation that Defendant Thrifty Med will pursue further legal or administrative action for reinstatement in the future. The alleged harm no longer exists, meaning this is no longer a live controversy.

The Sixth Circuit specifically declined to recognize speculation over a party's future legal plans to constitute an actual controversy. *TCI/TKR Cable v. Johnson*, 30 Fed. Appx. 581, 583-85 (6th Cir. 2002). The Court sees a similar situation in this case. Defendant Thrifty Med has not filed an administrative complaint since Plaintiff McKee's November 15, 2021, filing of the original Complaint. [Doc. 46 at 3]. The Court is unaware of any other legal actions taken by Defendant Thrifty Med to pursue reinstatement since that time. Defendant Thrifty Med has further stipulated that there are no current plans or intentions to pursue reinstatement under the post-PC 1070 legal regime. Against this backdrop, the Court sees no evidence that Plaintiff McKee's continuing "harm", that is, the "allegation" they say remains, is anything more than speculation over what Defendant Thrifty Med may do in the future.[7] Under the Court's reasoning in *TCI/TKR Cable v.*

---

[7] The Court notes Plaintiff McKee's many contentions in their brief opposing the Motion to Dismiss. [Doc. 45]. Specifically, the Court has heard arguments about Thrifty Med's Facebook posts supporting the passage of legislation favoring small pharmacies, billboards advertising the services of Thrifty Med in a community where Thrifty Med resides, and administrative attempts pre-dating this litigation by Thrifty Med to obtain what they believed was their legal right under prior Tennessee law. Contrasted with the oral and written stipulations by Thrifty Med, and the total lack of administrative maneuvering since the inception of this suit, the Court does not see these

*Johnson*, such speculation alone does not support a continuing controversy.

## IV. CONCLUSION

For the reasons above, Defendant Thrifty Med's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 37] is **GRANTED**. The case is **DISMISSED**. Accordingly, the remaining outstanding motions are **DENIED AS MOOT.**

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**

---

actions as providing a reasonable likelihood that Thrifty Med will seek reinstatement under the PC 1070 amendments.