UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MCKEE FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:21-CV-00279 |
| | ) | |
| BFP INC. d/b/a THRIFTY MED PLUS | ) | JUDGE ATCHLEY |
| PHARMACY, STATE OF TENNESSEE, | ) | |
| and CARTER LAWRENCE in his Official | ) | MAGISTRATE JUDGE LEE |
| Capacity as COMMISSIONER OF THE | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| COMMERCE AND INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF**

The Plaintiff, McKee Foods Corporation ("McKee"), by counsel, for its First Amended

Complaint against BFP Inc. d/b/a Thrifty Med Plus Pharmacy ("Thrifty Med"), the State of

Tennessee (the "State"), and Carter Lawrence (the "Commissioner"), in his official capacity as

Commissioner of the Tennessee Department of Commerce and Insurance (the "Department"),

states as follows:

**Introduction**

1.      McKee is the family-owned manufacturer of Little Debbie® snacks, Sunbelt

Bakery® snacks, Drake's® Cakes, and other food products.  McKee is headquartered in

Tennessee and has facilities in multiple states and employees working throughout the continental

United States.

2.      McKee provides generous benefits to its employees and, among other things, has

established and maintains a health benefit plan that provides medical and drug benefits to

McKee's several thousand employees and their dependents.  The Health Plan is self-funded and

governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"). Consistent with ERISA, McKee has established the design, structure, terms and conditions of the plan, including such things as the benefits available, the providers of those benefits, and the amounts contributed by McKee and plan participants, including deductibles, copays and coinsurance.

3.      As set forth in this Amended Complaint, all Defendants have taken action to interfere with McKee's rights under ERISA as the sponsor, administrator and fiduciary of the Health Plan.

4.      Among other things, after acknowledging for years that it lacked the authority to regulate ERISA plans, the State has, at the urging of special interests, enacted legislation specifically targeting and purporting to regulate the design, structure, terms and conditions of ERISA plans, including such things as the pharmacies ERISA plans must include in their provider networks and the copays and other contributions for which plan participants are responsible. The Commissioner and the Department have publicly announced their intent to enforce these and other regulations against ERISA plans, over the specific protests and objections of McKee and other stakeholders. The legislation, including the provisions of Tennessee Public Chapter 569 (2021) and Tennessee Public Chapter 1070 (2022), is codified in Tennessee Code Annotated, Title 56, Chapter 7, Parts 31 and 32 (hereinafter referred to as "Parts 31 and 32").

5.      Thrifty Med and its owners have sought to use the Tennessee legislation to compel McKee to include Thrifty Med in the Health Plan's pharmacy network and, among other things, have taken the position in this litigation that the Tennessee legislation requires McKee to do so.

6.      As set forth herein, McKee says that provisions of the Tennessee legislation are preempted by federal law, are invalid and cannot be enforced by the State, the Commissioner or Thrifty Med.

7.      The Supremacy Clause of the United States Constitution establishes that federal law takes precedence over state laws.  U.S. Const. art. VI, cl. 2.  State laws may not interfere with federal law, including the United States Constitution and federal statutes.  A state law that interferes with federal law is preempted.  Preemption can be either express or implied.  Express preemption occurs when Congress explicitly states its intent to preempt state laws that regulate a given topic.

8.      ERISA is a comprehensive federal statute that regulates employee benefit plans. Congress enacted ERISA to provide "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 248 (2004).  In order to facilitate the efficient administration of benefits nationwide and to ensure that ERISA plans did not face competing or conflicting regimes in each of the 50 states, Congress included a broad express preemption clause in ERISA.  ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plans." 29 U.S.C. §1144(a).

9.      Under controlling precedent of the United States Supreme Court and the Sixth Circuit Court of Appeals, a state law "relates to" a covered benefit plan if it either has a connection with such a plan or makes reference to such a plan.  *See, e.g,, Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983).  By specifically targeting ERISA plans in its legislation and regulations, the State, the Commissioner and Department have disregarded controlling precedent and long-established principles of ERISA preemption.

10. McKee therefore seeks a declaration pursuant to 28 U.S.C. § 2201 that the provisions discussed below of Tennessee Public Chapter 569 (2021) and Tennessee Public Chapter 1070 (2022) codified in Parts 31 and 32, are preempted by ERISA and cannot be enforced against self-insured ERISA plans and their pharmacy benefits managers.

11. McKee further seeks injunctive relief barring the State, Commissioner and Department from enforcing the foregoing provisions against self-insured ERISA plans and their pharmacy benefits managers. McKee likewise requests that Thrifty Med and its owners, officers, successors and assigns be permanently enjoined, for the reasons discussed herein, from seeking reinstatement to the McKee Health Plan's pharmacy network.

## Parties

12. McKee is a Tennessee corporation with its headquarters and principal place of business in Collegedale, Hamilton County, Tennessee. McKee owns and operates manufacturing plants in Tennessee, Arkansas and Virginia and a distribution facility in Arizona. McKee also employs field sales personnel throughout the continental United States. Currently, McKee has about 6,956 employees, approximately 3,445 of whom work in Tennessee and approximately 3,511 of whom work in other states.

13. McKee is the sponsor, administrator, and fiduciary of the McKee Foods Corporation Employees Health and Supplemental Benefits Program ("McKee Health Plan"). The McKee Health Plan provides medical and drug benefits to McKee's eligible employees and their eligible dependents.

14. Defendant Thrifty Med operates one or more pharmacies that dispense prescription medication in Tennessee. Thrifty Med is owned and controlled by Greg and Julie Bohannon (collectively "the Bohannons").

15.     The State is already a party to this action, having intervened to defend Tenn. Code Ann. §§ 56-7-3120 and 56-7-2359 against McKee's challenge of ERISA preemption.  [Docs. 21, 26.]  In this Amended Complaint, McKee seeks declaratory and injunctive relief directly against the State as a named defendant.

16.     Defendant Commissioner is the head of the Department.  The Commissioner is being sued solely in his official capacity.

17.     Tenn. Code Ann. § 56-7-3101(b) purportedly authorizes the Commissioner to promulgate rules to effectuate the purposes of Parts 31 and 32 while also requiring that the rules be promulgated in accordance with the Tennessee Uniform Administrative Procedures Act.  At the direction of the Commissioner and pursuant to Tenn. Code Ann. §§ 56-7-3110 and 56-7-3210, violations of Parts 31 and 32 may subject pharmacy benefits managers and "covered entities," both defined in Tenn. Code Ann. § 56-7-3102 to include self-insured entities and plans governed by ERISA, to the sanctions described in Tenn. Code Ann. § 56-2-305.

18.     The Commissioner and the Department have, in fact, issued rules pursuant to Tenn. Code Ann. § 56-7-3101(b) and, in comments on those rules and otherwise, have taken the position that Tennessee law gives them the authority to regulate matters governed by ERISA.

## Jurisdiction and Venue

19.     This Court has jurisdiction over this matter pursuant to ERISA, 29 U.S.C. §1132(e)(1) and general federal question jurisdiction under 28 U.S.C. § 1331, because the McKee Health Plan is an ERISA-governed employee welfare benefit plan and McKee, as the administrator and a fiduciary of the Health Plan, seeks a declaration regarding federal law pursuant to 28 U.S.C. §§ 2201-2202 as well as injunctive and other appropriate equitable relief to remedy violations of the Health Plan and of ERISA and to enforce the terms of the Health Plan

5

and of ERISA, pursuant to ERISA, 29 U.S.C. § 1132(a)(3). To the extent any of the claims herein are not governed by ERISA, this Court has supplemental jurisdiction under 28 U.S.C. §1367(a) because such other claims are so related to claims that are under this Court's original jurisdiction that they form a part of the same case or controversy.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) and/or 29 U.S.C. § 1132(e)(2) because the Defendants are deemed to reside and/or are located in this District and because the McKee Health Plan is administered in this District.

**The McKee Health Plan is an ERISA Benefit Plan**

21.     ERISA governs employee welfare benefit plans that are established or maintained by an employer, through the purchase of insurance or otherwise, for the purpose of providing medical, surgical, or hospital care or benefits, or benefits in the event of sickness or accident to eligible employees and their eligible dependents.

22.     McKee is an employer within the meaning of ERISA.

23.     McKee established and continues to maintain the McKee Health Plan for the purpose of providing specified types of welfare benefits as defined by ERISA to eligible McKee employees and their eligible dependents. Benefits under the Health Plan are not insured but are funded by contributions from McKee and participants.

24.     The McKee Health Plan is therefore an employee welfare benefit plan governed by ERISA.

25.     Excerpts from the McKee Health Plan wrap document with the Prescription Drug Program attachment are attached to this Amended Complaint as **Exhibit A**. The plan document specifically states that the Health Plan is governed by ERISA.

## Factual Background

26.     Employers contract with pharmacy benefits managers ("PBMs") to oversee their health plans' prescription-drug benefits.   As intermediaries, PBMs contract with manufacturers to negotiate pricing and rebates on drugs, contract with health plans to manage the plans' prescription-drug benefits, and contract with pharmacies in designing pharmacy networks.  As a practical matter, employers with self-insured ERISA plans must contract with PBMs to manage their prescription-drug benefits.

27.     Among other things, PBMs work with health plans in designing plan networks and offering options for the networks.  Some of the more common network designs and features include two-tiered networks (standard and preferred), mail-order pharmacies, and specialty pharmacies.  Preferred pharmacies agree to accept lower reimbursements from plans in exchange for higher customer volume.  Mail-order pharmacies deliver prescriptions by mail, which is cheaper for plans and may help patients take their medications as prescribed.  Specialty pharmacies specialize in dispensing specialty drugs, which treat complex, chronic, and rare diseases.  Specialty drugs represent just 1 to 3 percent of prescriptions but account for 50 percent of prescription costs.

28.     Because of the role and importance of PBMs in administering pharmacy benefits for health plans, including plans governed by ERISA, state laws and regulations that purport to regulate PBMs in their administration of pharmacy benefits for health plans effectively regulate the plans themselves, interfere with the plan sponsor's and administrator's rights to determine the design, structure, terms and conditions of the plans, and further interfere with nationally uniform plan administration.

29.     Among other benefits, the McKee Health Plan offers prescription drug benefits to several thousand eligible employees and their eligible dependents located in multiple jurisdictions throughout the United States.  The Health Plan's prescription drug program includes a pharmacy network.

30.     A PBM provides prescription drug administrative services to McKee and participants in the McKee Health Plan.  McKee and the PBM jointly determine which pharmacies are included in the McKee Health Plan's pharmacy network and likewise determine if pharmacies should be removed.

31.     At one time, Thrifty Med was in the McKee Health Plan's pharmacy network.  In 2018, however, after McKee received a complaint from a plan participant who had prescriptions filled at Thrifty Med, an audit was conducted of Thrifty Med's prescription and billing practices. The results of the audit led McKee and the PBM to conclude that Thrifty Med had engaged in improprieties in processing prescriptions, had overcharged the Health Plan and its participants, and had violated the terms of the Health Plan.  By letter dated June 3, 2019, the PBM notified Thrifty Med that it was being removed from the McKee Health Plan's pharmacy network, effective July 1, 2019.

32.     Thrifty Med protested its removal from the McKee Health Plan's pharmacy network and over the next three years – both before and after McKee initiated its original action for declaratory and injunctive relief – asserted its position that it should be reinstated to the network.  Thrifty Med's reinstatement efforts included but were not limited to:

(a)     requests for reinstatement during meetings with McKee's management and attorneys,

(b)     attempts to influence and obtain the support for reinstatement from McKee's employees,

(c)     correspondence from Thrifty Med's counsel threatening legal action,

(d)     numerous communications with Tennessee legislators to gain support for Thrifty Med's cause and to secure the passage of legislation that could require McKee to reinstate Thrifty Med to the Health Plan's pharmacy network,

(e)     lobbying against the exclusion of ERISA plans from the legislation,

(f)     filing administrative complaints against McKee with the Department,

(g)     asserting in this litigation Thrifty Med's entitlement to reinstatement and its position that McKee is in violation of the Tennessee laws at issue, and

(h)     asserting in this litigation that the Tennessee laws at issue are valid and enforceable and are not preempted by ERISA.

33.     Following the passage of legislative amendments Thrifty Med considered more favorable to its prospects for reinstatement, Thrifty Med stipulated that it would no longer pursue reinstatement under the then current version of Tennessee's "Any Willing Pharmacy" statutes, while reserving its right to seek reinstatement pursuant to amendments to the law. Thrifty Med never amended its stipulation. Thrifty Med moved to dismiss McKee's original complaint on ground that it was moot and that there was no case or controversy between the parties. In its Opinion dated March 21, 2024, the Sixth Court of Appeals ruled otherwise and held that McKee's complaint was not moot and remanded the case to this Court for further proceedings on the merits.

**Tennessee Pharmacy Legislation and Regulations**

34.     For years, the State and the Department recognized the well-established principles of ERISA preemption discussed above, particularly as they applied to legislation favoring retail pharmacies. In 1998, the State adopted its original "Any Willing Pharmacy" statute ("AWP Statute"), codified at Tenn. Code Ann. § 56-7-2359, which restricted the ability of "health insurance issuers" to deny participation by licensed pharmacies in any policy, contract or plan. The legislative history of the AWP Statute was discussed in Tenn. Atty. Gen. Op. No. 04-001 (Jan. 6, 2004), which noted that the statute "contains no mention of self-insured plans, and

sponsors acknowledged that it did not attempt to regulate employee plans because, under ERISA, state regulation would be preempted." A 2001 amendment to the AWP Statute specifically exempted self-funded ERISA plans from the amendment's coverage. 2001 Tenn. Laws Pub. Ch. 236 (S.B. 528), Section 9.

35. Some twelve years later, the Attorney General again confirmed ERISA's preemption of state law in Tenn. Atty. Gen. Op. No. 16-42 (Dec. 7, 2016). In that opinion, citing U.S. Supreme Court precedent, the Attorney General concluded that Tennessee's "All Payor Claims Database" statute, Tenn. Code Ann. § 56-2-125, which imposed claims data reporting requirements on ERISA-governed plans, was unconstitutional and could not be enforced by the Department.

36. Subsequently, Tennessee's Legislature adopted legislation purporting to regulate the design and structure of welfare benefit plans, as discussed in the paragraphs of this Amended Complaint which follow.

37. At the urging of the pharmacy lobby and individual pharmacists (including the Bohannons), the Legislature passed Public Chapter 569, most of which became effective July 1, 2021. 2021 Tenn. Laws Pub. Ch. 569 (H.B. 1398). The law amended Tennessee Code Annotated Title 56, Chapter 7, Parts 31 and 32. Among other things, Section 2 of Public Chapter 569 added Tenn. Code Ann. § 56-7-3120 which in subsection (b) prohibited a PBM or covered entity from interfering with a patient's right to choose a contracted pharmacy in a manner that violated Tenn. Code Ann. § 56-7-2359 (the AWP Statute) or by other means, including inducement, steering, or offering financial or other incentives.

38. A few days after Public Chapter 569 became effective, the Department announced its intent to enforce the law against ERISA plans. In its Bulletin 21-01, the Department stated

that the "covered entities" to which the law would apply, "includes 'self-insured entities' which would include ERISA plans" and that "[n]o exclusions in the PBM laws are carved out to exclude plans currently regulated by ERISA." The bulletin went on to state that "[t]he Department will enforce Pub. Ch. 569 accordingly." Tenn. Dept. of Commerce and Insurance Bulletin 21-01 (July 8, 2021).

39. Initially, the Tennessee Pharmacists Association and the Bohannons praised Public Chapter 569 as a comprehensive PBM reform bill. Thrifty Med almost immediately sought to rely upon the law in Thrifty Med's efforts to gain reinstatement to the McKee Health Plan's pharmacy network, filing three complaints with the Department asserting that the AWP statute and Public Chapter 569 required that Thrifty Med be included in the network. After Thrifty Med's efforts stalled, however, the Bohannons complained to legislators that the Department was not doing its job or adequately enforcing the law. Complaining that Public Chapter 569 had not achieved the results desired and that the Department was not enforcing the legislation as intended, the Tennessee pharmacy lobby, with active support from the Bohannons, pushed for amendments in the law.

40. The result was the passage of Public Chapter 1070, the substantive provisions of which became effective January 1, 2023. *See* 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661).

41. Public Chapter 1070 included various provisions regulating PBMs but did not materially alter Tenn. Code Ann. § 56-7-3120(b), upon which Thrifty Med had relied in its efforts to gain reinstatement to the McKee pharmacy network. Public Chapter 1070 did not amend Tenn. Code Ann. §56-7-2359 (the original AWP Statute) and added one subparagraph to Tenn. Code Ann. §56-7-3120.

42.     As amended, Tenn. Code Ann. § 56-7-3120(b)(1) retained the statute's prohibition against a PBM's or a covered entity's "interference" with a patient's right to choose a contracted pharmacy in a manner that violates Tenn. Code Ann. § 56-7-2359.  Amended Section 56-7-3120(b)(2) made the statute's "anti-steering" component more specific by prohibiting PBMs and covered entities from offering financial or other incentives to persuade a patient to use pharmacy owned by or financially beneficial to the PBM or covered entity.

43.     As amended, Tenn. Code Ann. §56-7-3120 reads:

> (a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

> (b) A pharmacy benefits manager or a covered entity shall not:

> (1) Interfere with the right of a patient, participant, or beneficiary to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359; or

> (2) Offer financial or other incentives to a patient, participant, or beneficiary to persuade the patient, participant, or beneficiary to utilize a pharmacy owned by or financially beneficial to the pharmacy benefits manager or covered entity.

44.     Public Chapter 1070 further amended Part 31 to make the substantive regulations, requirements and restrictions contained therein specifically applicable to welfare benefit plans governed by ERISA.  As amended, Tenn. Code Ann. § 56-7-3102(1)(A) now includes plans governed by ERISA in the definition of a "covered entity" subject to provisions of Part 31, including the any willing pharmacy and anti-steering provisions of Tenn. Code Ann. § 56-7-3120.

45.     Leaving no doubt about its intent to do away with ERISA preemption of Tennessee pharmacy legislation, the State, through its Legislature, provided in Public Chapter

Case 1:21-cv-00279-CEA-MJD     Document 83     Filed 06/14/24     Page 12 of 21
PageID #: 1077

1070 that Parts 31 and 32, *in their entireties*, apply to plans governed by ERISA. See 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661), Sections 7, 8; Tenn. Code Ann. §§ 56-7-3122, 56-7-3209. The Legislature even took the extraordinary step of including plans governed by ERISA in the definition of a PBM, while maintaining the overarching requirement that a PBM be engaged in the performance of pharmacy benefits management for a covered entity. *See* Tenn. Code Ann. § 56-7-3102(5).

46.     In enacting these provisions specifically referencing and targeting ERISA plans, the State, through its Legislature, assured that Part 31 would be preempted.

47.     Tenn. Code Ann. §56-7-3120, as amended and as applied to ERISA plans and/or their PBMs, is preempted by ERISA. The statute interferes with McKee's right to design and structure its ERISA Health Plan, governs central matters of plan administration, and interferes with nationally uniform plan administration. Among other things, the statute limits copays and other contributions the plan may require of participants, purports to restrict the ability of the plan to offer lower copays and other incentives beneficial to participants, and regulates services provided under the plan and the providers of those services. All these provisions relate to ERISA plans because they have connections with such plans and because the State purposely made reference to and targeted ERISA plans in the enabling legislation.

48.     Tenn. Code Ann. § 56-7-3121 is likewise preempted by ERISA. Though purportedly applicable to PBMs, the statute effectively regulates the design and structure of self-funded ERISA plan pharmacy networks and the benefits the plans provide. The statute's requirements that any willing pharmacy be included in networks established by the PBM (both preferred networks and non-preferred networks), interfere with the ERISA plan's right to determine benefits provided under the plan and the providers of those benefits. The statute's

restrictions on copayments, other fees and financial inducements likewise interfere with plan structure, administration and uniformity by restricting contributions and charges which plans may legitimately require from their own participants. All these provisions relate to ERISA plans because they have connections with such plans and because the State purposely made reference to and targeted ERISA plans in the enabling legislation.

49.     The Sixth Circuit Court of Appeals has held that "Any Willing Pharmacy" requirements such as those contained in Tenn. Code Ann. §§ 56-7-3120, 56-7-3121 and 56-7-2359 are preempted by ERISA. *Kentucky Ass'n of Health Plans v. Nichols*, 227 F.3d 352 (6th Cir. 2000) *aff'd sub nom. Miller,* 538 U.S. 329 (2003). Specifically addressing the "connection with" requirement for ERISA preemption, the Sixth Circuit concluded that any willing provider laws effectively mandate employee benefit plan structures. "[The laws] not only affect the benefits available by increasing the potential providers, they directly affect the administration of the plans." *Id*., 277 F. 3d at 363. Citing *Nichols*, the Tenth Circuit Court of Appeals reached the same conclusion in *Pharmaceutical Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023).

50.     The Department has issued rules, purportedly applicable to PBMs, contained in Chapter No. 0780-01-95 of the Tennessee Rules and Regulations. The most recent rules filed by the Department on March 28, 2024, become effective June 26, 2024. The Rules, among other things, purport to impose broadly worded recordkeeping, audit and reporting requirements on PBMs.

51.     In its published comments on the recently issued Rules, the Department has expressly confirmed its intent to regulate areas governed by ERISA and to enforce the State's PBM laws and regulations against ERISA plans, stating as follows:

29.     The Department received multiple comments asserting the Department has
no authority to promulgate the proposed rules because the rules attempt to
regulate areas governed by the Employee Retirement Income Security Act of
1974 ("ERISA") and are therefore preempted by ERISA and subsequent case law
interpreting ERISA.

Department response:  The Department disagrees with this
comment.  The definition of both covered entity and pharmacy
benefits manager, found in Tenn. Code Ann. §56-7-3102(1) and
(5), respectively, clearly and unambiguously apply to self-insured
entities and plans governed by ERISA.  Further, Tenn. Code Ann.
§§ 56-7-3122 and -3209 make self-insured ERISA plans subject to
Tenn. Code Ann. Title 56, Chapter 7, Parts 31 and 32, respectively.

Rulemaking Hearing Rule(s) Filing Form, Tenn. Dept. Commerce and Insurance, Public Hearing

Comment # 29.  The Department's position is thus that its rules and the enabling statutes are not

preempted because the statutes make specific reference to self-insured ERISA plans and say they

apply to such plans.

## Count 1 – Declaratory Judgment

52.     McKee incorporates by reference the allegations of paragraphs 1- 51 above as if

fully set forth.

53.     The Federal Declaratory Judgments Act provides that "[i]n a case of actual

controversy within its jurisdiction . . . any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.

§2201(a).  The Act further provides that "[f]urther necessary or proper relief based on a

declaratory judgment or decree may be granted, after reasonable notice and hearing, against any

adverse party whose rights have been determined by such judgment."  28 U.S.C. §2202.

54.     An actual controversy exists between McKee and Thrifty Med, which is ripe for

adjudication, regarding whether Tennessee state law is preempted by ERISA and/or is otherwise

inapplicable. In its Answer, Motion for Summary Judgment, and other filings in this case, Thrifty Med asserts that Tennessee state law is not preempted by ERISA and that Thrifty Med's exclusion from the McKee Health Plan contravenes Tennessee law, particularly Tenn. Code Ann. § 56-7-3120.

55. An actual controversy exists between McKee on the one hand and the State and the Commissioner on the other hand, which controversy is ripe for adjudication, regarding whether Tennessee statutes and the regulations issued by the Department are preempted by ERISA and/or are otherwise inapplicable to McKee and its self-insured Health Plan.

56. McKee requests a declaration that Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-2359, all as amended by Public Chapters 569 and 1070, are preempted by ERISA as follows:

(a) The Tennessee statutes are invalid and cannot be applied to self-funded ERISA-governed benefit plans like the McKee Health Plan or to PBMs that engage in pharmacy benefits management for self-funded ERISA-governed benefit plans, because the statutes interfere with the rights of ERISA plan sponsors and administrators to design and structure their plans, govern central matters of plan administration, and interfere with nationally uniform plan administration.

(b) The Tennessee statutes' purported regulation of PBMs effectively regulate ERISA plans as well, have a "connection with" ERISA plans, and thus are preempted.

(c) The Tennessee statutes have impermissible "references to" ERISA plans and are therefore preempted by ERISA.

(d) The Tennessee statutes, if interpreted as urged by Defendants, require fiduciaries to include and do business with pharmacies that the fiduciaries believe to have engaged in

conduct that violates the terms of a plan and/or otherwise harms the plan and plan participants and beneficiaries. Plan fiduciaries have a right and duty under ERISA to exclude such pharmacies from the plan network.

### Count 2 – Injunctive and Other Appropriate Equitable Relief

57. McKee Foods incorporates by reference the allegations in paragraphs 1- 56 above as if fully set forth.

58. ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of action for an ERISA plan fiduciary to obtain injunctive or other appropriate equitable relief to remedy violations of ERISA or the terms of an ERISA-governed plan or to enforce ERISA or the terms of an ERISA-governed plan.

59. Application of Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-2359, all as amended by Public Chapters 569 and 1070, to the McKee Health Plan will cause irreparable harm to McKee, the McKee Health Plan, and to participants and beneficiaries of the Health Plan. Among other things, such application would force McKee to choose between violating state law, on the one hand, and on the other hand, violating its fiduciary duties under ERISA. For example, when an administrator of a health plan receives information that a network provider has committed wrongful, and possibly illegal, conduct that harms the plan and its participants and beneficiaries, the administrator has a fiduciary right and responsibility to investigate the conduct and act to prevent further similar conduct. The Tennessee state laws and regulations effectively attempt to prevent and/or restrict the administrator from carrying out its rights and responsibilities guaranteed and required by federal law.

60. McKee is likely to succeed on the merits of its claims because the McKee Health Plan is a non-insured employee welfare benefit plan governed by ERISA, jurisdiction relating to

disputes concerning the administration of ERISA-governed plans is reserved to the United States courts, and the statutes and Rules the Defendants seek to enforce are preempted by ERISA.

61.     McKee requests an order enjoining the Defendants from pursuing any legal or administrative action to enforce Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-2359, all as amended by Public Chapters 569 and 1070, against McKee, the McKee Health Plan or McKee's PBM or otherwise to force McKee or its PBM to include Thrifty Med or any other pharmacy as a network pharmacy in the McKee Health Plan's Prescription Drug Program. McKee further requests that Thrifty Med and its owners, officers, successors and assigns be permanently enjoined from seeking reinstatement to the McKee Health Plan's pharmacy network.

62.     McKee otherwise requests appropriate equitable relief to remedy violations of ERISA and the terms of the McKee Health Plan by affirming McKee's authority and discretion as a Health Plan sponsor and fiduciary to determine which pharmacies are included in the Health Plan Prescription Drug Program pharmacy network.

63.     McKee otherwise requests appropriate equitable relief to enforce the terms of the McKee Health Plan and to enforce ERISA's requirement that sponsors and fiduciaries of non-insured health plans be given the authority and discretion to determine which pharmacies are included in the Health Plan's Prescription Drug Program pharmacy network.

WHEREFORE, Plaintiff McKee Foods Corporation prays for relief as follows:

(a) A declaration that Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-2359, all as amended by Public Chapters 569 and 1070, are preempted by ERISA and unenforceable;

(b) A declaration that Tennessee Code Annotated §56-7-2359, by its own terms, exempts self-funded ERISA plans like the McKee Health Plan from its provisions and that neither Public Chapter 569 nor Public Chapter 1070 revised or revoked the exemption;

(c) An order enjoining the Defendants from pursuing any legal or administrative action to enforce Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-2359, all as amended by Public Chapters 569 and 1070, against McKee, the McKee Health Plan, or McKee's PBM or otherwise to force McKee, the McKee Health Plan, or McKee's PBM to include Thrifty Med or any other pharmacy as a network pharmacy in the McKee Health Plan's Prescription Drug Program;

(d) Appropriate equitable relief to remedy violations of ERISA and the terms of the McKee Health Plan by affirming McKee's authority and discretion as a health plan fiduciary to determine which pharmacies are included in the Health Plan Prescription Drug Program pharmacy network;

(e) Appropriate equitable relief to enforce the terms of the McKee Health Plan and to enforce ERISA's requirement that fiduciaries of non-insured health plans be given the authority and discretion to determine which pharmacies are included in the Health Plan's Prescription Drug Program pharmacy network;

(f) An order requiring the Defendants to reimburse Plaintiff for its reasonable attorneys' fees and costs; and

(g) All other just and proper relief.

This the 14th day of June, 2024.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: _/s/William H. Pickering_
    William H. Pickering (BPR #006883)
    Catherine S. Dorvil (BPR #034060)
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN  37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
      cdorvil@chamblisslaw.com

*Attorneys for Plaintiff*


OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke, *Admitted Pro Hac Vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 14th day of June, 2024.

<u>      */s/ William H. Pickering*     </u>