UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| **MCKEE FOODS CORPORATION,**<br><br>      **Plaintiff**,<br>**v.**<br><br>**BFP, INC. d/b/a THRIFTY MED PLUS PHARMACY, STATE OF TENNESSEE, and CARTER LAWRENCE in his official capacity as COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE**<br><br>      **Defendants**. | CASE NO. 1:21-CV-00279<br><br>DISTRICT JUDGE CHARLES E. ATCHLEY, JR.<br><br>MAGISTRATE JUDGE SUSAN K. LEE |

### MEMORANDUM OF DEFENDANTS STATE OF TENNESSEE AND CARTER LAWRENCE IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants State of Tennessee and Carter Lawrence, in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance, ("State Defendants") have moved, under Fed. R. Civ. P. 12(b)(1), to dismiss the claims brought against them in Plaintiff McKee Food Corporation's First Amended Complaint. State Defendants submit this memorandum of law in support of their motion.

### INTRODUCTION

McKee initiated this action against Defendant Thrifty Med Plus Pharmacy in November 2021. McKee sought to prevent Defendant Thrifty Med Plus Pharmacy from seeking reinstatement to McKee's health-plan network under Tennessee's "any willing pharmacy" statutes by claiming that those statutes were preempted under ERISA. In February 2023, this Court dismissed the case for lack of subject-matter jurisdiction, finding that the case was moot because Thrifty Med was no longer seeking reinstatement. The Sixth Circuit, however, reversed and remanded; the panel concluded that the dispute remained live because Thrifty Med had not

1

demonstrated that McKee would not have to defend against a renewed pursuit of reinstatement from Thrifty Med.

On remand, however, McKee sought and obtained leave to file an amended complaint, which not only modified McKee's preemption claim to challenge the recently amended versions of Tennessee's "any willing pharmacy" statutes—namely, Tenn. Code Ann. §§ 56-7-3120, -3121, and -2359—but also added as party defendants both the State of Tennessee and the Commissioner of the Tennessee Department of Commerce and Insurance.[1] But no justiciable controversy exists between McKee and the State Defendants. This case began as a dispute between McKee and Thrifty Med, and as the Sixth Circuit concluded, it remains a dispute between McKee and Thrifty Med. While the State of Tennessee maintains an interest in defending the constitutionality of its statutes, neither the State nor the Commissioner is a proper party defendant in this case. The State is clearly entitled to sovereign immunity from suit, and McKee has not alleged any action by the Commissioner or his Department that gives McKee standing to sue him.

## BACKGROUND

McKee is the parent company for Little Debbie's snacks and related brands, and it operates a self-insured benefits plan for its employees. The plan is "an employee welfare benefit plan governed by ERISA"—the Employment Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. (Doc. 83, Am. Compl., ¶¶1, 12-13, 24.) Through the plan, McKee offers its members prescription drug benefits. (*Id.* at ¶29.) McKee does not administer the pharmacy program; like many employers, McKee contracts with a pharmacy benefits manager, here MedImpact. (*Id.* at

---

[1] The State had previously intervened in this case under Fed. R. Civ. P. 5.1 for the sole purpose of defending the constitutionality of Tenn. Code Ann. §56-7-3120 and -2359.

2

¶30; *see id.*, Ex. A, 16.) McKee and MedImpact jointly determine which pharmacies are in the plan's pharmacy network. (Am. Compl., ¶30.)

### A. MedImpact audits and removes Thrifty Med from McKee network in 2019 for plan non-compliance.

Defendant Thrifty Med operates pharmacies in Tennessee and used to be one of McKee's "in-network" pharmacies. (*Id.* at ¶31.) In July 2018, MedImpact fielded complaints from a McKee Health Plan participant who alleged Thrifty Med improperly billed the participant for prescriptions in violation of the terms of the McKee Plan. (*Id.*) Thereafter, MedImpact advised Thrifty Med that effective July 1, 2019, Thrifty Med would no longer be one of the Health Plan's "in-network" providers. (*Id.* at ¶31.) Thrifty Med protested, "threaten[ed] legal action," "lobb[ied]" for legislation, and "fil[ed] administrative complaints" with the Tennessee Department of Commerce and Insurance. (*Id.* at ¶32.)[2]

### B. Tennessee General Assembly amends the AWP law in 2021.

In July 2021, the Tennessee General Assembly enacted Public Chapter 569 ("PC 569"), which amended the state's Pharmacy Benefit Manager (PBM) laws found at Title 56, Chapter 7, Parts 31 and 32. Specifically, until again amended in 2023, Tenn. Code Ann. § 56-7-3120, read:

> (a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.
>
> (b) A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that

---

[2] Thrifty Med's administrative complaints "were short-lived." They were filed on September 13, October 12, and October 18, 2021, and "the [Department] dismissed them in letters dated October 27, November 2, and November 30, 2021, respectively." *McKee Foods Corp. v. BFP, Inc.*, No. 23-5170, 2024 WL 1213808, at *2 (6th Cir. Mar. 21, 2024).

3

violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives.

The statute referenced in Subsection (b)—Tenn. Code Ann. § 56-7-2359—sets standards for health-insurance issuers and managed-health-insurance issuers relative to pharmacy participation in plan networks, and governs dealings between pharmacies, plans, and plan participants. It is often referred to as Tennessee's "Any Willing Pharmacy" ("AWP") law because Subdivision (a)(1) of § 56-7-2359 provides that no health-insurance issuer or managed-health-insurance issuer shall deny a pharmacy the right to participate as a provider in a network on "the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan."

### C. McKee sues Thrifty Med, claiming that ERISA preempts the Tennessee law under which Thrifty Med sought reinstatement.

McKee sued Thrifty Med in November 2021 to prevent it from seeking reinstatement under the AWP amendments. The State of Tennessee intervened for the purpose of defending the statutes against McKee's ERISA preemption challenge. Both McKee and Thrifty Med moved for summary judgment, and this Court granted Thrifty Med's motion in February 2023; the Court ruled that the case was moot because Thrifty Med had stipulated that it would no longer seek reinstatement under the current law. (Doc. 67.)

McKee appealed, and the Sixth reversed, holding that the case was not moot. *See McKee Foods Corp. v. BFP, Inc.*, No. 23-5170, 2024 WL 1213808 (6th Cir. Mar. 21, 2024). The panel concluded, in part, that Thrifty Med's "stipulations suggest a suspension of conduct, not the termination of conduct," and that it had not met its burden of demonstrating "that it is unlikely to resume its pursuit of reinstatement in the McKee PDP network under Tennessee's any-willing-pharmacy law." *Id.* at *5. The case was therefore remanded for further proceedings. *Id.* at *8.

**D. Tennessee further amends the AWP and PBM laws.**

Meanwhile, the Tennessee General Assembly had again amended the State's AWP and PBM laws. *See* 2022 Tenn. Pub. Acts, ch. 1070 (PC 1070), §§ 5-6 (amending Tenn. Code Ann. § 56-7-3120 and adding § 56-7-3121). These amended laws apply to over 25 types of entities, ERISA plans being just one. Tenn. Code Ann. §§ 56-7-3102(1), (5). Taken together, the three laws' provisions fall into three categories:

1. **Any-Willing-Provider (AWP) Provisions.** Regulated entities must allow patients to reasonably "utilize" any Tennessee-licensed pharmacy and allow any of those pharmacies to join the entities' network, "as long as the pharmacy is willing to accept the same terms and conditions" established for one of the entities' networks. Likewise, every pharmacist must have a chance "to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services." Tenn. Code Ann. §§ 56-7-3121(a)-(b); 56-7-2359(a)-(b).[3]

2. **Incentive Provisions.** Regulated entities must not "interfere with the right of a patient" to choose a "contracted pharmacy" in a manner that violates § 56-7-2359 or financially incentivize patients towards an entity-owned pharmacy. *Id.* at § 56-7-3120(b).

3. **Cost Provisions.** Regulated entities must not charge more for "prescription drugs" or for "using [patient-preferred] pharmac[ies] within a given network," and must apply the same patient-cost (coinsurance, etc.) "within the same employee group," if the

---

[3] McKee continues to challenge § 56-7-2359, (*see, e.g.*, Am. Compl., ¶56), despite it only applying to a "health insurance issuer" or "managed health insurance issuer," which McKee has not alleged it qualifies as.

"pharmacy provider[] compl[ies] with the [set] terms and conditions." *Id.* at §§ 56-7-3120(a); 56-7-3121(c); 56-7-2359(e).[4]

**E. McKee files First Amended Complaint challenging the amended AWP and PBM laws and naming the State of Tennessee and Commissioner Lawrence as party defendants.**

On remand, McKee sought leave to file an amended complaint, which this Court granted over the State's opposition. (Doc. 82.) McKee's First Amended Complaint challenges, on preemption grounds, the constitutionality of the latest versions of Tenn. Code Ann. §§ 56-7-3120, -3121, and -2359. (Am. Compl., ¶63.) It also adds as party defendants the State of Tennessee and Commissioner Lawrence. (*See generally*, *id.*) The State and Commissioner Lawrence now move to dismiss the Amended Complaint pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure.

## MOTION TO DISMISS STANDARD

Rule 12(b)(1) allows "for the dismissal of an action for lack of subject matter jurisdiction," *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014), which includes "Article III standing . . . question[s]," *Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017).

A 12(b)(1) motion "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759. This is a facial challenge.[5] "When reviewing a facial attack," courts "take the allegations in the

---

[4] The only provisions not encompassed by these buckets are Tenn. Code Ann. § 56-7-2359(c)-(d), which McKee does not substantively challenge, and which merely detail a grievance process (Subsection (c)) and a definition of "managed health insurance issuer" (Subsection (d)).

[5] Given that the State Defendants mount only a facial attack against McKee's First Amended Complaint, they assume the facts alleged in McKee's first amended complaint are true solely for purposes this Motion to Dismiss.

complaint as true" subject to the same plausibility standards governing "12(b)(6) motions to dismiss." *Genteck Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

**ARGUMENT**

The State Defendants move to dismiss on two grounds. First, the Court lacks subject-matter jurisdiction insofar as McKee presents its claims against the State of Tennessee because the State has sovereign immunity. Second, the Court lacks subject matter-jurisdiction insofar as McKee presents its claims against Commissioner Lawrence because McKee has not alleged it faces a certain threat of prosecution to give it standing.

**A.     The State is immune from suit.**

Sovereign immunity shields the State from suit in federal court as a party defendant. *Skatemore, Inc. v. Whitmore*, 40 F.4th 727, 732 (6th Cir. 2022). Courts have carved out three exceptions to the States' sovereign immunity: "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Id.* (quoting *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017)). None of these exceptions apply here.

First, until this Court granted McKee leave to file its First Amended Complaint, the State participated in this case only as an intervenor in a limited capacity—i.e., to defend its statutes' constitutionality under Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403(b). And as "a party only by virtue of 28 U.S.C. § 2403(b)," the State "is not subject to liability." *Tennessee v. Garner*, 471 U.S. 1, 22 (1985). In other words, the State does not waive its sovereign immunity by intervening under Rule 5.1. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp.

7

2d 995, 1000 (W.D. Wis. 2004) (observing that entities with sovereign immunity "may intervene for a limited purpose . . . without waiving their sovereign immunity").

Second, no federal statute has expressly abrogated the State's sovereign immunity for ERISA claims—the sole basis of McKee's claims. Indeed, no ERISA "provision expressly include[s] states or waive[s] their traditionally held immunity from suits in federal court." *Thiokol v. Dep't of Treas.*, 987 F.2d 376, 382 (6th Cir. 1993).

Third, the *Ex Parte Young* exception to sovereign immunity does not allow McKee's claims against the State to proceed. That exception allows plaintiffs to file suit against "state officials in their official capacities" to stop continuing violations of federal law. *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). But this exception applies "only against state officers—not the state itself—who violate federal law." *Lawson v. Shelby Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)).

**B.    McKee does not have standing to sue Commissioner Lawrence.**

McKee has failed to sufficiently allege an injury with respect to Commissioner Lawrence or his Department and therefore lacks standing to sue Commissioner Lawrence. To plead Article III standing, McKee must allege "an injury in fact . . . fairly traceable to the challenged conduct of [the Commissioner] . . . that is likely to be redressed by the requested relief." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022). And while that injury can precede enforcement, McKee must "inten[d] to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" some provision of the statutes. *Crawford* v. *U.S. Dep't of Treas.*, 868 F.3d 438, 454 (6th Cir. 2017) (quotations omitted). Even then, there must be a "*certain* threat of prosecution if the plaintiff does indeed engage in that conduct." *Id.* at 455 (emphasis in original). Here, assuming that McKee's refusal to reinstate Thrifty Med to its plan network amounts to "conduct arguably

affected with a constitutional interest but proscribed by" the AWP and PMB laws, McKee has generally alleged only that the Commissioner and the Department "have publicly announced their intent to enforce these and other regulations against ERISA plans." (Am. Compl., ¶4.) But McKee has *not* alleged that the Commissioner has taken or plans to take any specific enforcement action against McKee with respect to Thrifty Med or any other pharmacy. Because of that, McKee has not alleged a "*certain* threat of prosecution." *Crawford*, 868 F.3d at 455 (emphasis in original).

Beyond the complaint's conclusory allegations, McKee posits an injury based on the following dilemma: (1) if it does not reinstate Thrifty to its network, the Commissioner will "pursu[e] a[] legal or administrative action to enforce [the statutes] against McKee," (Am. Compl. ¶63), and (2) if it does comply, it will violate its fiduciary duty in welcoming a term-violating pharmacy (*id.* at ¶59). But by McKee's own allegations, it faces no such dilemma.

To start, there is no presumption that the government will prosecute every violation. *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). Instead, courts assess the threat of enforcement by using a holistic, four-part framework—the "*McKay*" factors. *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (citing *id.*). And those factors require "some combination" of: "(1) 'a history of past enforcement against the plaintiffs or others'; (2) 'enforcement warning letters sent to the plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'" *Id.* (quoting *McKay*, 823 F.3d at 869). On balance, these factors weigh against finding that McKee has shown it faces any injury-in-fact resulting from any conduct of the Commissioner.

First, "[a] threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). But McKee's amended complaint points to *no* prior enforcement action or threats of enforcement action against McKee—or anyone else. Second, while McKee might have standing if "enforcement letters" had been "sent to" it "regarding [its] specific conduct," *Online Merchs.*, 995 F.3d at 550 (quotations omitted), McKee makes no such allegations. Third, the AWP Provisions empower no "member of the public to initiate an enforcement action." *Id.* The "universe of potential" enforcers here include only the Commissioner—a "state official[] who [is] constrained by . . . ethical obligations." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). McKee's amended complaint acknowledges as much. (Am. Compl. ¶¶17, 38, 51) (admitting the enforcement power of the Tennessee Department of Commerce and Insurance).

Fourth and finally, while this Court has previously noted that "the State has not disclaimed any intention to enforce the amended statutes" (Doc. 82, Order Grant'g Mot. to Am., 13), there has been no "*refusal* to disavow enforcement of the challenged statute against *a particular plaintiff*." *Online Merchs.*, 995 F.3d at 550 (quotations omitted and emphasis added). To the contrary, while the amended AWP and PBM laws have been in effect since January 2023, McKee does not allege that the Commissioner or the Department have taken or threatened to take any enforcement action against McKee. Absent such allegations, a statement that "in the *abstract*" that the Commissioner "might . . . enforc[e] the rule" does not "suggest that he would enforce the rule against anything like" McKee's refusal to reinstate network access to Thrifty Med. *Davis v. Colerain Twp.,* 51 F.4th 164, 174 (6th Cir. 2022).

Without more, McKee's allegations fall short of sufficiently alleging an impending injury.

## CONCLUSION

For the reasons stated, the Court should dismiss McKee's claims as against Defendants State of Tennessee and Carter Lawrence.

*/s/ Trent Meriwether*
Trent Meriwether (BPR# 38577)
Matthew Dykstra (BPR# 38237)
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-3211
Trenton.Meriwether@ag.tn.gov
Matthew.Dykstra@ag.tn.gov

*Counsel for Defendants Tennessee and Commissioner Lawrence*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via this Court's electronic filing system on this 12th day of July 2024 upon the following:

William H. Pickering (BPR #006883)
Catherine S. Dorvil (BPR #034060)
CHAMBLISS, BAHNER & STOPHEL, P.C.
Liberty Tower - Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
(423) 756-3000
wpickering@chamblisslaw.com
cdorvil@chamblisslaw.com
*Counsel for Plaintiff*

Mark E. Schmidtke, *Admitted Pro Hae Vice*
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
(219) 242-8668
mark.schmidtke@ogletree.com
*Counsel for Plaintiff*

Russell W. Gray (BPR # 016120)
Derek W. Mullins (BPR #036135)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
(423)752-2010
rgray@bakerdonelson.com
dmullins@bakerdonelson.com
*Counsel for Defendant BFP, Inc.*
*d/b/a Thrifty Med Plus Pharmacy*

By: */s/ Trent Meriwether*
Trent Meriwether (BPR #38577)