UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MCKEE FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CASE NO. 1:21-CV-00279 |
| BFP INC. d/b/a THRIFTY MED PLUS | ) | |
| PHARMACY, STATE OF TENNESSEE, | ) | JUDGE ATCHLEY |
| and CARTER LAWRENCE in his Official | ) | MAGISTRATE JUDGE LEE |
| Capacity as COMMISSIONER OF THE | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| COMMERCE AND INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BRIEF IN SUPPORT OF PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY

## I.     INTRODUCTION

In this action for declaratory, injunctive and other relief, Plaintiff McKee Foods Corporation ("McKee") seeks a determination that Tennessee statutes that purport to regulate employer-funded welfare benefit plans are preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The statutes in question specifically target employers such as McKee and their self-funded plans for substantive state regulation, in violation of well-established principles of ERISA preemption. The State of Tennessee (the "State") and the Commissioner of the Tennessee Department of Commerce and Insurance (the "Commissioner") have filed a Motion to Dismiss this action, arguing that the State is immune from any challenge to the statutes its Legislature enacted and that McKee lacks standing to sue the Commissioner because, supposedly, the Commissioner might or might not enforce the statutes the Legislature has directed him to enforce.

McKee served the State and the Commissioner (collectively the "State Defendants") with requests for the production of documents relevant to the issues raised in their Motion to Dismiss. The documents requested included administrative complaints against McKee and its PBM referenced in the Commissioner's Initial Disclosures, the decisions on those complaints, administrative complaints against other employers and ERISA plans, other documents relevant to the State Defendants' intent to enforce or not enforce the statutes at issue, and documents relevant to the issue of ERISA preemption.

The Commissioner and the Tennessee Department of Commerce and Insurance ("Department") served objections and responses to McKee's requests for production, refusing outright to produce key responsive documents while delaying the production of other documents indefinitely. The Commissioner's and the Department's objections are without merit, and their failure to produce the documents requested is unjustified. Having moved for dismissal of McKee's Amended Complaint, the State Defendants cannot now "hide the ball" by denying McKee access to documents relevant to their Motion to Dismiss. Accordingly, McKee has moved the Court for an order compelling production of the documents requested.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

McKee is the sponsor, administrator, and fiduciary of the McKee Foods Corporation Employees Health and Supplemental Benefits Program ("McKee Health Plan").[1] The McKee Health Plan provides medical and prescription drug benefits to McKee's employees and their

---

[1] Plaintiff's First Amended Complaint for Declaratory, Injunctive and Other Relief (Doc. 83) ("Amended Complaint"), ¶ 13.

2

families.[2]  It is undisputed that the McKee Health Plan is an employee welfare benefit plan governed by ERISA.[3]

      A.      <u>The State and the Commissioner Target ERISA Plans for Regulation</u>.

In 2021 and 2022, the Tennessee Legislature passed bills that amended existing law and purported to regulate the design, structure, terms and conditions of employer-funded benefit plans.[4]  Among other things, the 2021 legislation (Public Chapter 569) added a new section to Title 56, Chapter 7, Part 31 of the Tennessee Code, effectively requiring pharmacy benefits managers ("PBMs") and "covered entities" (including employers and self-insured benefit plans) to include "any willing pharmacy" in their plan networks.[5]  As noted by the Sixth Circuit in its opinion in this case, Public Chapter 569 also created a new remedy that would subject any covered entity violating the law to a range of penalties imposed at the discretion of the Commissioner.[6]

The 2022 legislation (Public Chapter 1070) went even further and made the substantive regulations, requirements and restrictions contained in Tennessee Code Annotated Title 56, Chapter 7, Parts 31 and 32 ("Parts 31 and 32"), specifically applicable to welfare benefit plans governed by ERISA.[7]  As amended, Tenn. Code Ann. § 56-7-3102(1)(A) now includes plans governed by ERISA in the definition of a "covered entity" subject to provisions of Part 31,

_____

[2] *Id.*.
[3] *Id.* ¶¶ 21-24.
[4] 2021 Tenn. Laws Pub. Ch. 569 (H.B. 1398) ("Public Chapter 569"); 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661) ("Public Chapter 1070").  *See* Amended Complaint ¶¶ 4, 36-48, 56, 59.
[5] Public Chapter 569 § 2; Tenn. Code Ann. § 56-7-3120.
[6] *McKee Foods Corporation v. BFP Inc. d/b/a Thrifty Med Plus Pharmacy and State of Tennessee*, No. 23-5170, 2024 WL 1213808 at *2 (6th Cir. Mar. 21, 2024).  *See* Tenn. Code Ann. §§ 56-2-305(a), 56-7-3110.
[7] Amended Complaint ¶¶ 44-45.

including the any willing pharmacy and anti-steering provisions of Tenn. Code Ann. § 56-7-3120.

Public Chapter 1070 thus *specifically targeted ERISA plans* for substantive state regulation. The operative provisions of Public Chapter 1070 became effective January 1, 2023.

B.    <u>The Department Says It Will Enforce the Laws against ERISA Plans</u>.

The Tennessee Legislature mandated that covered entities and PBMs comply with the statutes as amended, and the Commissioner was directed to enforce the statutes and to promulgate rules to effectuate the purposes of Parts 31 and 32.[8] Violations of the statutes subject covered entities and PBMs to sanctions imposed by the Commissioner under Tenn. Code Ann. § 56-2-305.[9]

The Department, which is headed by the Commissioner, has made clear that it *will* enforce the statutes as written and, in particular, will enforce the laws against ERISA-governed plans such as the McKee Health Plan. The Department's public comments and statements on this subject are detailed in McKee's Amended Complaint and prior briefing.[10] Among other things, in published comments on its Rules, the Department expressly confirmed its intent to regulate areas governed by ERISA and to enforce the State's laws and regulations against ERISA plans:

> 29.    The Department received multiple comments asserting the Department has no authority to promulgate the proposed rules because the rules attempt to regulate areas governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and are therefore preempted by ERISA and subsequent case law interpreting ERISA.

---

[8] *See* Tenn. Code Ann. § 56-7-3101.
[9] *See* Tenn. Code Ann. §§ 56-7-3110 and 56-7-3210 (Sanctions for violation of Parts 31 and 32).
[10] *See, e.g.*, Amended Complaint, ¶¶ 51-52; Reply Brief in Support of Plaintiff's Motion for Leave to Amend Complaint (Doc. 81) at 4-6, 17-19; Brief in Opposition to State Defendants' Motion to Dismiss (Doc. 101) at 8-10, 20-22.

4

Department response:  The Department disagrees with this comment.  The definition of both covered entity and pharmacy benefits manager, found in Tenn. Code Ann. §56-7-3102(1) and (5), respectively, clearly and unambiguously apply to self-insured entities and plans governed by ERISA.  Further, Tenn. Code Ann. §§ 56-7-3122 and -3209 make self-insured ERISA plans subject to Tenn. Code Ann. Title 56, Chapter 7, Parts 31 and 32, respectively.

Rulemaking Hearing Rule(s) Filing Form (Doc. 81-4), Tenn. Dept. Commerce and Insurance,

Public Hearing Comment # 29.

C.    The State Defendants Have Made Enforcement of the Statutes and Sovereign Immunity Issues in this Case.

Following the Sixth Circuit's 2024 decision returning the case to this Court for adjudication on the merits, McKee moved to amend its original complaint to specifically include the State and the Commissioner as named Defendants[11] and to seek relief under the statutes as amended.  The State opposed McKee's Motion for Leave to Amend and claimed that the amendment would be "futile," arguing that the State was protected from suit by sovereign immunity and that McKee lacked Article III standing to sue the Commissioner because enforcement action by the Commissioner was not "imminent" or "certainly impending."[12]  This Court rejected these and other arguments advanced by the State.[13]  The Court noted, among other things, that the State had not disclaimed any intent to enforce the amended statutes against ERISA plans, including McKee's.  To the contrary, as this Court observed, "the State has explicitly indicated it considers ERISA plans to be 'covered entities' and that it intends to enforce the provisions of the amended statutes against ERISA plans."[14]

---

[11] The State was already a party to this action as an intervenor.
[12] Intervenor State of Tennessee's Response in Opposition to Plaintiff's Motion for Leave to Amend Complaint (Doc. 80) at 5-6.
[13] Order granting McKee's Motion for Leave to Amend (Doc. 82).
[14] *Id.* at 13.

5

Nevertheless, after McKee filed its Amended Complaint, the State and the Commissioner moved for dismissal on the same grounds which this Court rejected in its ruling that McKee's Amended Complaint should go forward.[15]  In particular, the State Defendants claimed that McKee lacked Article III standing to sue because McKee had not pled facts showing that the Commissioner's enforcement of the statutes at issue was "certain."[16]  The State Defendants further argued that there was no presumption that the government would enforce its laws.[17]  In making these claims, however, the State Defendants ignored the Department's own pronouncements that the amended statutes *will* be enforced against ERISA plans.

Regardless, by arguing for dismissal of McKee's action on the basis of the alleged "uncertainty" of the enforcement of the statutes, the State Defendants have placed the question of enforcement and the Commissioner's and Department's intent squarely at issue.  These matters are relevant to – and indeed are principal bases for – the State Defendants' Motion to Dismiss.  McKee is entitled to discovery on the defenses the State Defendants have chosen to assert.[18]

D.    The Commissioner's Initial Disclosures Identified Relevant Documents and other Subjects of Discoverable Information.

The Commissioner served his Initial Disclosures under Rule 26(a)(1) on August 8, 2024.  Those disclosures are attached as **Exhibit A**.[19]

In those disclosures, the Commissioner revealed that administrative complaints had been received against McKee and its PBMs, and the disclosures indicated that the Commissioner

---

[15] Defendants Tennessee and Commissioner Lawrence's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 95) ("Motion to Dismiss").

[16] Memorandum of State Defendants in Support of Motion to Dismiss (Doc. 95-1) at 8-9.

[17] *Id.* at 9.

[18] *See* Fed. R. Civ. P. 26(b)(1).

[19] As discussed below, the Commissioner later amended his Initial Disclosures, for strategic reasons, in an effort to avoid the production of relevant documents that were identified.

would rely on those complaints in support of his defenses in this action.[20] The same disclosures identified three Department Representatives – Jud Jones, Vickie Trice and Scott McAnally – who had discoverable information regarding the regulation of PBMs and covered entities (such as McKee) and the receipt and handling of administrative complaints.

Email exchanges between counsel, attached to this Brief as **Exhibit B**, document events that followed. After receiving the Commissioner's Initial Disclosures, McKee's counsel asked counsel for the State Defendants to provide the Department's files on the administrative complaints referenced in the disclosures.[21] Counsel for the State Defendants responded:

> No problem getting you the administrative complaints. I've asked for them and you'll get them as soon as I do.[22]

Counsel for the parties participated in a conference call on August 19, 2024. Three representatives of the Attorney General's office – Matthew Dykstra, Trenton Meriwether and J.P. Urban – participated in the call. Mr. Dykstra confirmed that he had obtained the files on the administrative complaints referenced in the Commissioner's Initial Disclosures.[23] Counsel for McKee noted that McKee's response to the State Defendants' pending Motion to Dismiss was due on Friday, August 23. Based on statements made by counsel for the State Defendants during the call, McKee's counsel understood that the administrative complaint files would be produced by August 23, if not sooner.[24]

---

[20] The Department never provided McKee with notice of any of these administrative complaints. McKee's PBM informed McKee of the filing of one complaint, and McKee responded in February of 2023. The Department has never advised McKee of the disposition of that complaint *or* of the filing of the other complaints.

[21] *See* email from William H. Pickering to Matthew P. Dykstra dated August 12, 2024, included in email exchanges attached to this Brief as Exhibit B.

[22] *See* August 14 email from Mr. Dykstra included in Exhibit B.

[23] *See* email from Pickering to Dykstra dated August 19, 2024, included in Exhibit B.

[24] *See id.*

As subsequent emails in the chain reveal, counsel for the State Defendants later took the position that the administrative complaints referenced in the Commissioner's Initial Disclosures were privileged under Tenn. Code Ann. § 56-8-107(d)(1) and refused to produce the complaints, including complaints filed against McKee and its PBM. The Commissioner then amended his Initial Disclosures to delete the references to the administrative complaints.[25]

Counsel for McKee responded the next day, expressed disappointment that the administrative complaints would not be produced as had been agreed, and pointed out that the statute being relied upon by the State Defendants – the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009 ("Unfair Trade Practices Act") – had nothing to do with the investigation of PBMs or covered entities under Parts 31 and 32, that the statute only applied in investigations of unfair trade practices as defined and listed in Tenn. Code Ann. § 56-8-104, and that there was no basis for any claim that Tenn. Code Ann. § 56-8-107(d) applied to complaints under the statutes at issue in this case.[26]

Counsel for the State Defendants maintained his position that the documents were privileged and stated that the "best course of action" would be for McKee to serve a request for production to which the Commissioner would respond, and "[w]e can then go from there."[27] Depositions of the three witnesses identified in the Commissioner's Disclosures (Jud Jones, Vickie Trice and Scott McAnally) had likewise been discussed, and counsel agreed that the depositions would take place at the Commissioner's offices in Nashville on October 2-3, 2024.[28]

---

[25] *See* email from Dykstra to Pickering dated August 20, 2024, included in Exhibit B.

[26] *See* email from Pickering to Dykstra dated August 21, 2024, included in Exhibit B.

[27] *See* email from Dykstra to Pickering dated August 22, 2024, included in Exhibit B.

[28] *Id.*

E.    McKee Serves Its First and Second Requests for Production.

McKee served its First Request for Production of Documents to State Defendants ("First Request") on August 23, 2024.  The documents requested are set forth in the Department's and Commissioner's Objections and Responses attached as Exhibit A to McKee's Motion to Compel Discovery filed herewith.[29]

McKee's First Request focused specifically on the Administrative Complaints discussed above.  The term "Administrative Complaints" was specifically defined as the "Administrative complaints received against McKee or its PBM(s) referred to in Section II of Defendant Commissioner Lawrence's Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) served by counsel for the State and the Commissioner on August 8, 2024."[30]  McKee's First Request sought production of the Administrative Complaints as specifically defined and related documents easily accessible in the Commissioner's files on the complaints, such as documents relating to the Administrative Complaints sent by or to McKee, its PBM (MedImpact Healthcare Systems, Inc.) or any third party, the decisions or determinations on the Administrative Complaints, and documents relating to the State Defendants' consideration and investigation of the Administrative Complaints.  Focusing on the remainder of the Commissioner's Initial Disclosures, McKee's First Request asked for documents regarding the subjects of discoverable information known to Mr. Jones, Mr. McAnally, and Ms. Trice.

McKee served its Second Request for Production of Documents ("Second Request") on August 28, 2024.  The documents requested in the Second Request are included in the

---

[29] The documents requested are likewise listed in **Exhibit C** attached, McKee's Summary of its Requests for Production and the Department's and Commissioner's Objections and Responses.
[30] *See* McKee's First Request attached as Exhibit A to McKee's Motion to Compel Discovery, Request for Production No. 1.

Department's and Commissioner's Objections and Responses to the Second Request attached as Exhibit B to McKee's Motion to Compel Discovery filed herewith and are likewise listed in Exhibit C attached. The first four requests included in McKee's Second Request included complaints against any PBM or covered entity under the specific statutes McKee says are preempted and related communications regarding those complaints. The Second Request also asked for documents pertaining to the State Defendants' decisions or intentions to enforce or not enforce Parts 31 and 32 and the Department's rules against PBMs or other covered entities (specifically including ERISA plans). Additional requests asked for communications with Thrifty Med and its owners and with pharmacy associations, transcripts and recordings of the Department's rulemaking proceedings, communications with other states regarding the regulation of PBMs and covered entities, and communications with PBMs and covered entities (including ERISA plans) regarding any alleged violation of the statutes at issue. McKee's Second Request concluded with requests for documents supporting the State Defendants' contentions that McKee's action is barred by sovereign immunity, that McKee lacks Article III standing to sue the Commissioner, and that the statutes at issue are not preempted.

      F.    <u>The Department and the Commissioner Serve Improper Objections and Responses</u>.

      The Department and the Commissioner served Objections and Responses to McKee's First and Second Requests on, respectively, September 23 and September 27, 2024.[31] The State did not respond to McKee's First Request or Second Request and *objected to participating in any discovery*, purportedly on grounds of sovereign immunity.[32] The Commissioner objected to

---

[31] As previously noted, the Department and Commissioner's Objections and Responses are attached as Exhibits A and B to McKee's Motion to Compel Discovery filed herewith. They are also summarized in Exhibit C to this Brief.

[32] *See* Department's and Commissioner's Objections and Responses (Exhibits A and B to McKee's Motion to Compel Discovery), p. 4, ¶ 2.

essentially all of McKee's requests for production and have since produced only a few documents already provided by McKee and Thrifty Med as well as two transcripts and one recording of the Department's rulemaking proceedings.

The Department's and the Commissioner's Objections and responses to McKee's First Request and Second Request are set forth in the summary attached to this Brief as **Exhibit C**. As can be seen from Exhibit C, the Objections and Responses fall into several categories. (For sake of brevity, the Department's and Commissioner's Objections and Responses to McKee's Requests for Production will hereafter be referred to as those of the Commissioner, although the documents were served on behalf of the Department as well.)

        a.      Objections Based on Inapplicable Privilege

The Commissioner objected outright to producing key responsive documents based on the State Defendants' claims of privilege under Tenn. Code Ann. § 56-8-107(d) which, as noted, is part of an unrelated Act in an entirely separate chapter of the Tennessee Code. Documents which the Commissioner categorically refused to produce included those described in Request Nos. 1 and 6 of McKee's First Request and Request Nos. 1-4 of McKee's Second Request. Those documents include administrative complaints against McKee, its PBM and other covered entities (including ERISA plans) and the Department's *decisions* on those complaints.

Objections and Responses to Requests 4-5 and 7-9 of McKee's First Request and Requests 5-6 and 10-11 of McKee's Second Request invoked the same privilege but did not make clear whether or when responsive documents might still be produced. The documents requested included documents relating to the Administrative Complaints (as narrowly defined) sent to or received from McKee, its PBM or any third party, documents relating to the State Defendants' consideration and investigation of the Administrative Complaints, documents

relating to the State Defendants' decisions or intentions to enforce or not enforce Parts 31 and 32 and the Department's Rules, communications with Thrifty Med and its owners, communications with PBMs and covered entities (including ERISA plans) regarding any alleged violations of the statutes at issue, and documents relating to the complaint filed against Thrifty Med with the State of Tennessee's Board of Pharmacy.

        b.      <u>Noncommittal Responses and Failure to Comply with Rule 34(b)(2)(B)</u>

As can also be seen from Exhibit C, many of the Commissioner's responses stated that potentially responsive electronic records and documents were being reviewed and that McKee would be informed at some unspecified point in the future what documents the Department and the Commissioner was and was not willing to produce. Responses falling into this category included the responses to Requests Nos. 2-5, 7-9 and 11-13 of McKee's First Request and Nos. 5-7, and 9-11, and 13-14 of McKee's Second Request.

Typical wording in these responses was that the Commissioner was in the process of applying search terms to data that had been "harvested and ingested" and would thereafter review documents for potential responsiveness and privilege and decide what documents would be produced and what documents would be withheld. *See* Exhibit C attached. These responses provided no indication of what documents, if any, would be produced and gave no date or estimated date for any production that might eventually take place. *Id*. A number of the same responses also referenced the inapplicable privilege claimed under Tenn. Code Ann. § 50-8-107(d), making it impossible to determine whether *any* documents would ever be produced. *See, e.g.*, responses to Requests Nos. 4-5 and 7-9 of McKee's First Request and Nos. 5- 6 and 10-11 of McKee's Second Request.

c.     <u>Objections that McKee Can Obtain Requested Information on its Own</u>

Objections to other requests claimed that the Department and the Commissioner should not have to produce relevant documents from their files because McKee supposedly could obtain the documents from other sources. Objections falling into this category were included in the responses to Requests Nos. 1, 5 and 6 of McKee's First Request and Nos. 8 and 12 of McKee's Second Request. As discussed below, McKee considers these objections to be without merit under applicable law.

d.     <u>Objections Based on "No Date Limitation"</u>

The Commissioner objected to multiple requests as being "unduly burdensome" because the requests supposedly have "no date limitation, and no date limitation can be implied." This objection is contained in the responses to Requests Nos. 2, 3, 4, 5, 8, 9, 11, 12, and 13 of McKee's First Request. As discussed below, McKee considers these objections to be without merit because the documents requested could only have existed during limited time periods. "Date limitations" can easily be determined.

G.     <u>McKee Takes Issue with the Commissioner's Responses and Objections.</u>

McKee needed the documents requested in its First and Second Requests for the depositions of the Department representatives scheduled for October 2-3, 2024. Following the service of the Commissioner's Objections and Responses to McKee's First Request, McKee's counsel expressed his disappointment that no documents had been produced (other than a few already provided by McKee and Thrifty Med), that the Commissioner was objecting completely to the production of the Administrative Complaints referenced in the Commissioner's Initial Disclosures (as well as the decisions on those complaints), and that the responses did not say

13

when any documents *would* be produced.[33]  Additional email exchanges between counsel followed and are included in the attached **Exhibit D**.  After counsel for the State Defendants stated that the date for any expected document production was "unknown at this point,"[34] McKee's counsel stated that the depositions scheduled for October 2-3 would have to be postponed.[35]  Counsel for McKee agreed to the State Defendants' counsel's suggestion that the Commissioner's discovery responses be amended to include an expected date for the production of documents.[36]  The amendment has not been served, and to this date, the date for any meaningful production of documents by the State Defendants is still uncertain.

      H.    <u>The Parties Meet and Confer</u>.

The parties scheduled a Meet and Confer to discuss the Commissioner's discovery responses on Thursday, October 3, 2024, which was the first date counsel for the State Defendants could be available.  McKee's positions on the key issues (Commissioner's privilege objection and failure to indicate when production of documents would occur) had already been communicated.  A few hours in advance of the Meet and Confer, McKee's counsel provided counsel for the State Defendants with a letter setting forth McKee's positions on these and other issues.  *See* letter to Matthew P. Dykstra dated October 3, 2024, attached to this brief as **Exhibit E**.

During the Meet and Confer on October 3, counsel for the State Defendants maintained his clients' position regarding the applicability of the privilege contained in the Unfair Trade Practices Act.  Much of the discussion during the Meet and Confer was about the

---

[33] See email from Pickering to Dykstra dated September 25, 2024, included in **Exhibit D** attached.
[34] Email from Dykstra to Pickering dated September 26, 2024, included in Exhibit D attached.
[35] Email from Pickering to Dykstra dated September 26, 2024, included in Exhibit D attached.
[36] *Id.*

Commissioner's responses that numerous documents were being reviewed and that the Commissioner would let McKee know at some unspecified point in the future what documents the Commissioner was and was not willing to produce.[37]  Counsel for the State Defendants stated that he had submitted a request about a week earlier (apparently the same week the Commissioner's discovery responses were served) for authorization to retain an e-discovery vendor to assist with the review of the Department's documents and any potential production.  At the time of the Meet and Confer, the Attorney General's approval for the engagement of an e-discovery vendor had not been provided.  Counsel for the State Defendants explained that if approval was provided, the first step in the process would be for counsel to meet or talk with the vendor to orient the vendor on the case and the documents to be reviewed.  The vendor would then apply search terms to the documents, after which documents would need to be reviewed for responsiveness and privilege.  Any production would only occur after this process was completed.  Counsel for the State Defendants could not provide a timetable for any eventual document production but indicated, based on past experience, that he hoped a production could occur within a month after the e-discovery vendor was engaged.

McKee's counsel expressed concern that the Court's Third Amended Scheduling Order (Doc. 103) had set a discovery deadline of **December 3, 2024**,[38] that discovery objections by the Commissioner would have to be resolved after the Commissioner disclosed what documents were being withheld, and that there would be insufficient time to take depositions that had already been postponed and to complete any additional discovery.  McKee's counsel also pointed

---

[37] Counsel for the State Defendants did not agree with this particular characterization but acknowledged that no estimated production date had been provided and that the Commissioner had not indicated what documents would be produced and what documents would be withheld.
[38] Third Amended Scheduling Order (Doc. 103) ¶ 1(c).

out that there were discrete categories of documents that could be gathered and produced without delay, such as documents relating to the Administrative Complaints that had been requested in August, communications with Thrifty Med and its owners, etc. Counsel for the State Defendants responded that the Commissioner's document review did not include an analysis of "subcategories."

Counsel for the State Defendants offered to provide McKee's counsel with the search terms the Commissioner was using and suggested that, if the search terms could be narrowed, the document review might be completed sooner. Counsel for the State Defendants sent McKee's counsel a report with the search terms later in the day on October 3. That report is attached as **Exhibit F**. It appears that this initial search for potentially responsive documents did not take place until **September 24, 2024** (the date shown on the report), which was the day after the Commissioner served his Objections and Responses to McKee's First Request.[39]

Counsel for McKee and the State Defendants continued to communicate and confer regarding this discovery dispute. On October 10, 2024 (about a month and a half after McKee's Requests for Production were served), counsel for the State Defendants stated that he expected to meet with a recently retained e-discovery vendor after the vendor's scope of work was approved and that he hoped that the documents the State Defendants were willing to produce could be available about a month later. McKee's counsel again noted that objections to the production of documents requested by McKee would then need to be resolved, leaving little time for

---

[39] The Commissioner's Objections and Responses to McKee's First Request, served September 23, 2024, did not reference the volume of potentially responsive documents as set forth in the search report. In contrast, the Commissioner's Objections and Responses to McKee's Second Request, served September 27, 2024, contained repeated references to the volume of documents the Commissioner said would need to be searched, as shown in the search report attached as Exhibit F.

depositions and any additional discovery.  McKee's counsel informed counsel for the State Defendants that the delay in document production would need to be addressed in a motion to compel, along with the other issues referenced above.

Counsel for the parties exchanged additional emails on October 10, 14 and 16, 2024.  The emails are included in **Exhibit G** attached.  In an email on October 10, McKee's counsel provided counsel for the State Defendants with suggestions for search terms, noting that some could be narrowed but that others would need to be added or expanded.[40]  In the same email, McKee's counsel reiterated that the State of Tennessee had not responded to McKee's Requests for Production and that McKee considered any objections by the State to be waived.[41]

In an email just received on the date hereof (October 16, 2024), counsel for the State Defendants provided an update on his clients' document review.[42]  Counsel for the State Defendants reported that a statement of work for the document review had been finalized and that there would be a training session with the document review team on October 17, 2024.[43]  Following the training session, the document review will begin "in earnest" and is expected to be completed within 30 days (*i.e.*, by mid-November 2024).[44]  The bottom line is that the State Defendants' search for documents requested by McKee in August 2024 has yet to begin in earnest.

---

[40] *See* October 10 email from Pickering to Dykstra included in Exhibit G attached.
[41] *Id*.
[42] *See* October 16 email from Dykstra to Pickering included in Exhibit G attached.
[43] *Id.*
[44] *Id.* Counsel for the State Defendants also took issue with McKee's position that the State should provide relevant, responsive documents in the possession of the State's General Assembly.

# III.    ARGUMENT

A.  The Commissioner's Claim of Privilege under Tenn. Code Ann. § 56-8-107(d) Is Frivolous.

As noted above, the Commissioner has objected to multiple Requests for Production on the basis of a privilege contained in the Unfair Trade Practices Act, specifically Tenn. Code Ann. § 56-8-107(d).  In some instances, the Commissioner has categorically objected to the production of key documents, such as administrative complaints against McKee and other covered entities under the statutes at issue in the case as well as the Department's decisions on those complaints.

In other instances, the Commissioner has invoked the alleged privilege but has not made it clear whether or when responsive documents might still be produced.  McKee must wait on the Commissioner's long-awaited document review and supplemental responses before McKee will know what additional documents are being withheld on the basis of the Unfair Trade Practices Act privilege.

The Unfair Trade Practices Act is Part 1 of Title 56's Chapter 8, an entirely separate chapter from the chapter of Title 56 that contains the statutes at issue in this litigation.[45]

Tenn. Code Ann. § 56-8-107(d)(1) provides as follows:

> (d)(1) All testimony, documents and other information submitted to the commissioner pursuant to this section, and all records and documents maintained ***pursuant to this section*** shall be privileged and shall not be disclosed pursuant to § 10-7-503 or § 56-1-602, nor shall they be admissible as evidence in any civil proceeding not brought by the commissioner. The commissioner, within the commissioner's discretion, may share the documents and information with other state or federal agencies, or with any law enforcement authority.

Tenn. Code Ann. § 56-8-107(d)(1) (emphasis added).

---

[45] Parts 31 and 32, regulating pharmacy benefits, PBMs and other covered entities are contained in Chapter 7 of Title 56.

The privilege provided by Tenn. Code Ann. § 56-8-107(d), on its face, only applies to documents submitted to the Commissioner pursuant to the *same section* of the Tennessee Code, *i.e.,* Tenn. Code Ann. § 56-8-107. That section of the Code gives the Commissioner the power to conduct examinations and investigations to determine whether any person or insurer has been or is engaged in any *unfair trade practice*. *See* Tenn. Code Ann. § 56-8-107(a). "Unfair trade practices" are defined in Tenn. Code Ann. § 56-8-104 and include a list of 23 prohibited acts generally involving the marketing and sale of insurance policies.

Alleged violations of the statutes at issue in this case or of Parts 31 and 32 generally are not "unfair trade practices" as defined. The Unfair Trade Practice Act has nothing to do with the processing of complaints against PBMs or covered entities under Parts 31 and 32. If the Legislature had intended that complaints and related documents pertaining to alleged violations of the PBM statutes would be privileged, the Legislature could have easily so provided.

There is no basis for any claim that Tenn. Code Ann. § 56-8-107(d) applies to complaints for alleged violations of the statutes at issue in this case. The Commissioner's assertion of privilege under the Unfair Trade Practices Act is frivolous. The Commissioner should be ordered to *immediately* produce all documents for which a privilege under Tenn. Code Ann. § 56-8-107(d) was invoked, and sanctions should be imposed.

B. The Commissioner's Responses that He Will Let McKee Know Later what Documents Will and Will Not Be Produced Are Insufficient and Improper Under Federal Rule of Civil Procedure 34.

As noted above and as can been seen from Exhibit C attached, numerous responses to McKee's First and Second Requests state that the Department and the Commissioner will be applying search terms to electronically stored data, will hereafter review documents for potential responsiveness and privilege, and will decide what documents will be produced and what

documents will be withheld. The responses served on behalf of the Department and the Commissioner give no indication of what documents, if any, will eventually be produced, and the responses provide no date or estimated date for when any production might occur.

These responses are improper and insufficient under Rule 34 of the Federal Rules of Civil Procedure. Just as importantly, the responses and the Commissioner's failure to produce documents in a timely manner prevent McKee from adequately preparing for and completing discovery within the deadline established by the Court.

As pointed out in McKee's correspondence to counsel for the State Defendants, Federal Rule of Civil Procedure 34(b)(2)(B) requires that the production of documents "be completed no later than the time for inspection specified in the request *or another reasonable time specified in the response*."[46] Rule 34 does not contemplate or allow the types of vague, open-ended, "we'll let you know later" responses served by the Commissioner.

The Commissioner's responses do not specify a time, reasonable or otherwise, for the production of the documents McKee has requested. The most recent communications from counsel for the State Defendants show that arrangements for the review of electronically stored information were only recently made and that, at least as of this date, the document review has not yet begun in earnest. The date for any future document production remains uncertain but is estimated by counsel to occur in mid-November, just a couple of weeks before the discovery deadline. It is clear that the State Defendants will continue to object to the production of some documents, and those objections will need to be resolved once the initial document production occurs.

---

[46] Fed. R. Civ. P. 34(b)(2)(b) (emphasis added).

McKee is being severely prejudiced by the State Defendants' failure, in multiple respects, to comply with their discovery obligations.

C.    The Commissioner's Objections that McKee Can Obtain Requested Information on its Own Are without Merit.

The Commissioner's objections to several requests say the State Defendants should not have to produce relevant documents from their files because McKee supposedly can obtain the documents from other sources. Objections falling into this category are included in the Commissioner's responses to Requests Nos. 1, 5 and 6 of McKee's First Request and Nos. 8 and 12 of McKee's Second Request.[47]

The State is also saying that it does not have to produce documents from its own General Assembly regarding the preempted statutes the General Assembly chose to enact (targeting ERISA plans such as McKee's). Instead, according to counsel for the State, McKee needs to contact the State's General Assembly for the documents McKee requested some two months ago.[48]

Objections alleging that requested materials are "equally available" to the requesting party have been rejected by the courts. *See, e.g., Abrahamsen v. Trans–State Exp., Inc.,* 92 F.3d 425, 428 (6th Cir.1996) ("rules of discovery . . . do not permit parties to withhold material simply because the opponent could discover it on his or her own")*; Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (citing cases); *All. of*

---

[47] The Commissioner's response to Request No. 6 of McKee's First Request is a prime example. That request asked for copies of the **decisions or determinations** made on the administrative complaints filed against McKee and/or its PBM. Although the Commissioner's response alleged that McKee had obtained copies of "similar documents" from its PBM, McKee never received a decision or determination on the one administrative complaint of which it has knowledge and is unaware of the decisions or determinations, if any, on the remaining administrative complaints.

[48] *See* email from Dykstra to Pickering dated October 16, 2024, included in Exhibit G attached.

*Auto. Manufacturers, Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2014 WL 12848659, at *9 (N.D. Fla. Jan. 7, 2014); *Focuspoint Int'l, Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 3620810, at *2 (N.D. Ohio Feb. 22, 2023). Regardless, McKee is entitled to the documents *as maintained in the State Defendants' files*. This is particularly true in a case in which the State Defendants have moved for dismissal based on alleged uncertainty about whether they intend to enforce the statutes at issue. Production of documents from the Defendants' files also removes any question about the documents' authenticity and the Defendants' knowledge of their content.

Moreover, many of the documents that are subjects of the State Defendants' objections either are <u>not</u> available to McKee or are more readily available to and easily accessible by the Department. Examples include documents described in Requests Nos. 1, 5, and 6 of McKee's First Request and Nos. 8 and 12 of McKee's Second Request. McKee should not have to hunt for documents that the State Defendants can easily produce.

      D.    <u>The Commissioner's Objections Based on "No Date Limitation" Are without Merit</u>.

The Commissioner has objected to multiple Requests for Production as being "unduly burdensome" because the requests supposedly have "no date limitation, and no date limitation can be implied." This objection is contained in the Commissioner's responses to Requests Nos. 2, 3, 4, 5, 8, 9, 11, 12, and 13 of McKee's First Request. Requests Nos. 2-5 and 8-9 all pertain to the "Administrative Complaints" specifically defined in Request No. 1 as the administrative complaints against McKee or its PBMs referred to in Section II of the Commissioner's Initial Disclosures served on August 8, 2024. The "date limitation" can easily be determined by referring to the Administrative Complaints – which the Commissioner refuses to produce – contained in the Department's own files. The complaints were almost certainly filed after the

January 1, 2023 effective date of Public Chapter 1070, and all documents pertaining to the complaints were likely generated during 2023 or 2024.

Requests Nos. 11-13 of McKee's First Request are likewise based on the Commissioner's Initial Disclosures. In those disclosures, the Commissioner said that the individuals referenced (Jud Jones, Scott McAnally and Vickie Trice) had knowledge of the discoverable information referenced in McKee's Requests Nos. 11-13. The Commissioner knows better than McKee what the relevant documents are and the "date limitations" that apply.

The Commissioner's objections of "no date limitation" are not well founded and should be rejected.

     E.     <u>The State of Tennessee Should Be Required To Produce Relevant Documents</u>.

The discovery responses provided to McKee were made by "the Tennessee Department of Commerce and Insurance and Commissioner Carter Lawrence in his official capacity."[49] The State of Tennessee did not respond to McKee's Requests for Production and did not join in the Commissioner's Objections and Responses.

Counsel for the State Defendants has indicated that the only records being searched for potential production are those of the Tennessee Department of Commerce and Insurance. McKee's counsel responded that McKee is not requesting a search of the files of State departments and agencies unlikely to have responsive information but that the State *should* obtain and produce relevant documents from all custodians likely to have relevant information, not just the employees of one department. A good faith effort to identify those custodians should have been made when McKee's Requests for Production were served in August.

_____

[49] *See* first paragraph of Objections and Responses attached as Exhibits A and B to McKee's First Motion to Compel Discovery filed herewith.

As one example, documents responsive to McKee's Requests for Production should be obtained from members of the Tennessee Legislature which was responsible for the enactment of the statutes at issue in this litigation. Documents produced by Thrifty Med in this litigation include multiple communications with members of the General Assembly and provide evidence of legislative intent.[50] The State should be required to produce similar communications and documents between members of the Legislature and other interested parties, such as the pharmacy associations that urged that the statutes at issue be passed with no exceptions for ERISA plans.[51] By failing to respond to McKee's Requests for Production, the State has waived any objections to the requests.

## IV.    CONCLUSION

The Commissioner's objections to McKee's First and Second Requests are without merit and should be rejected. McKee's Requests seek documents directly relevant to the arguments made by the State Defendants in their Motion to Dismiss. The Commissioner's invocation of privilege under the Unfair Trade Practices Act was frivolous and alone justifies an assessment of McKee's costs and attorneys' fees.

As set forth above, the State Defendants' failure to comply with their discovery obligations has deprived McKee of documents urgently needed for depositions and discovery that under the current Scheduling Order must be completed by December 3, 2024. McKee therefore requests that the State Defendants be required to respond to this motion on or before **October 25, 2024**, and that McKee's First Motion to Compel Discovery be set for an expedited hearing as soon thereafter as possible.

---

[50] *See, e.g.,* Plaintiff's Supplemental Brief in Opposition to Thrifty Med's Defendant's Motion to Dismiss (Doc. 62) at 2-5 and Collective Exhibit 1.
[51] *See* Request No. 7 of McKee's Second Request asking for the production of such documents.

Respectfully submitted this 16th day of October, 2024.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: _/s/William H. Pickering_
    William H. Pickering (BPR #006883)
    Catherine S. Dorvil (BPR #034060)
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
    cdorvil@chamblisslaw.com

*Attorneys for Plaintiff*

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke, *Admitted Pro Hac Vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

    This 16th day of October, 2024.

_/s/ William H. Pickering_