# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| MCKEE FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **CASE NO. 1:21-CV-00279** |
| BFP INC. d/b/a THRIFTY MED PLUS | ) | |
| PHARMACY and CARTER | ) | **JUDGE ATCHLEY** |
| LAWRENCE in his Official Capacity as | ) | **MAGISTRATE JUDGE LEE** |
| COMMISSIONER OF THE | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| COMMERCE AND INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

William H. Pickering (BPR #006883)
Catherine S. Dorvil (BPR #034060)
CHAMBLISS, BAHNER & STOPHEL, P.C.
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
      cdorvil@chamblisslaw.com

*Attorneys for Plaintiff*

Mark E. Schmidtke, Admitted Pro Hac Vice
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTS AND PROCEDURAL HISTORY ........................................................... 2

        A.      McKee Foods and its ERISA Plan ........................................................... 2
        B.      Thrifty Med's Removal from the McKee Pharmacy Network ............................. 3
        C.      Original Any Willing Pharmacy Statute; Subsequent Acknowledgements
                of ERISA Preemption ............................................................................. 4
        D.      Enactment of Public Chapter 569; Issuance of Bulletin 21-01 .......................... 5
        E.      Administration of Public Chapter 569; Actions by Thrifty Med ......................... 8
        F.      Public Chapter 1070 ............................................................................ 10

                1.      Origins of the Law ................................................................... 10
                2.      Public Chapter 1070 – Relevant Provisions ..................................... 13

III.    ARGUMENT ................................................................................................... 15

        A.      Standard of Review ............................................................................. 15
        B.      ERISA Broadly Preempts State Laws that Relate to Employee Benefit Plans ..... 16

                1.      Nature and Purpose of ERISA Preemption ...................................... 16
                2.      Criteria for ERISA Preemption ................................................... 17
                3.      ERISA Preemption of State Any Willing Provider Laws ...................... 19

        C.      Tenn. Code Ann. §§ 56-7-3120, 56-7-3121 and 56-7-2359 Are Preempted by
                ERISA ................................................................................................ 22
        D.      The Statutes at Issue Are also Subject to Obstacle Preemption ......................... 24

IV.     CONCLUSION ................................................................................................ 25

STATUTORY ADDENDUM

# I.    INTRODUCTION

ERISA preempts any and all state laws that relate to employee benefit plans. 29 U.S.C. § 1144(a). Disregarding federal law, the State of Tennessee has passed special-interest pharmacy legislation that not only "relates to" employee benefit plans but specifically names ERISA plans as "covered entities" subject to the laws' substantive requirements.

Among other things, Tenn. Code Ann. §§ 56-7-3120, 56-7-3121 and 56-7-2359 purport to regulate the benefits provided under ERISA plans, as well as the providers of those benefits, by requiring that "any willing pharmacy" be included in the plans' provider networks and by regulating plan provisions regarding copays and other contributions from plan participants. The laws even restrict the ability of ERISA plans to offer lower copays and other incentives beneficial to employees and their families. Tennessee's misguided legislation, designed to benefit pharmacies at the expense of the state's employers and employees, regulates central matters of plan administration, interferes with the rights of employers such as McKee to design and structure the ERISA plans they fund, hinders plan fiduciaries in the fulfillment of their obligations under ERISA, and prevents nationally uniform plan administration.

The Tennessee Department of Commerce and Insurance (the "Department"), charged by the Legislature with enforcement of the laws, has made clear that it will enforce the legislation against the self-funded ERISA plans the laws have targeted. Accordingly, as the sponsor, administrator, and fiduciary of a self-funded ERISA plan, McKee seeks a declaratory judgment and corresponding injunctive relief confirming that the Tennessee statutes referenced above are preempted by ERISA and are unenforceable.

McKee has moved the Court for the entry of summary judgment on all claims and causes of action asserted in McKee's First Amended Complaint (Doc. 83). There is no genuine dispute as to any material fact, and McKee is entitled to judgment in its favor as a matter of law.

1

## II. FACTS AND PROCEDURAL HISTORY

### A. McKee Foods and its ERISA Plan

Plaintiff McKee Foods Corporation ("McKee") is the family-owned manufacturer of Little Debbie® snacks, Sunbelt Bakery® snacks, Drake's® Cakes, and other food products. McKee is headquartered in Collegedale, Hamilton County, Tennessee, and has facilities in multiple states and employees working throughout the continental United States.[1] Currently, McKee and its wholly owned subsidiaries have a total of about 6,800 employees, approximately 3,200 of whom work in Tennessee and approximately 3,600 of whom work in other states.[2]

McKee is the sponsor, administrator, and fiduciary of the McKee Foods Corporation Employees Health and Supplemental Benefits Program ("McKee Health Plan" or "Plan").[3] The McKee Health Plan provides medical and drug benefits to eligible employees and their eligible dependents located in multiple jurisdictions throughout the United States.[4] Benefits under the Plan are not insured but are self-funded by McKee and plan participants.[5] The McKee Health Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA").[6]

---

[1] Plaintiff's First Amended Complaint for Declaratory, Injunctive and Other Relief ("Complaint") (Doc. 83) ¶¶ 1, 12.

[2] *See id.* ¶ 12; Declaration of Justin Jolls ("Jolls Dec."), ¶ 7. Mr. Jolls' Declaration is attached to McKee's Motion for Summary Judgment as Exhibit 1 and includes the McKee Health Plan Document along with the Plan's Prescription Drug Program.

[3] Complaint ¶ 13; Jolls Dec. ¶ 5 and Ex. A (Plan Document), pp. 4, 33. Effective January 1, 2024, McKee delegated authority to its Benefits Subcommittee to act on McKee's behalf as the Plan Administrator. McKee has also designated the Benefits Subcommittee to act on its behalf as the named fiduciary for the Plan. Jolls Dec. ¶ 5 and Ex. A, pp. 8, 38.

[4] Complaint ¶¶ 13, 23, 29; Jolls Dec. ¶ 7 and Ex. A, Attachment B (Prescription Drug Program).

[5] Complaint ¶ 23; Jolls Dec. ¶ 6 and Ex. A, p. 38 (Type of Plan and Source of Funding).

[6] Complaint ¶¶ 22-24; Answer of Defendant Carter Lawrence (Doc. 117), ¶¶ 22-24; Jolls Dec. ¶ 6 and Ex. A, pp. 33-34, 37; Memorandum Opinion and Order (Doc. 115) at 1.

McKee has established the design and structure of its Health Plan, including the Plan's Prescription Drug Program.[7]  The Plan's Prescription Drug Program includes a network of pharmacies from which participants may obtain their medications.[8]  A pharmacy benefits manager ("PBM") provides certain administrative services to McKee and Plan participants.[9]  McKee and the PBM jointly determine which pharmacies are included in the Plan's pharmacy network and likewise determine if pharmacies should be removed.[10]

      B.    <u>Thrifty Med's Removal from the McKee Pharmacy Network</u>

Defendant BFP Inc. d/b/a Thrifty Med Plus Pharmacy ("Thrifty Med"), owned by Greg and Julie Bohannon, was at one time included in the McKee Health Plan's pharmacy network.[11]  In 2018, however, after McKee received a complaint from a Plan participant who had prescriptions filled at Thrifty Med, an audit was conducted of Thrifty Med's prescription and billing practices.[12]  The results of the audit led McKee and the PBM to conclude that Thrifty Med had engaged in improprieties in processing prescriptions, had overcharged the Health Plan and its participants, and had violated the terms of the Plan.[13]  By letter dated June 3, 2019, the

---

[7] Jolls Dec. ¶¶ 8-12 and Ex. A, p. 8 and Attachment B.  Among other things, McKee determines eligibility for participation in the Plan and the Prescription Drug Program, the benefits and coverage provided, the providers of those benefits, and the applicable premiums, copayments and coinsurance.  *Id.* ¶¶ 9-11, Ex. A pp. 7-8 and Attachment B.

[8] Complaint ¶ 29; Jolls Dec. ¶ 10 and Ex. A, Attachment B.

[9] Complaint ¶ 30; Jolls Dec. ¶ 6 and Ex. A, Attachment B.

[10] Complaint ¶ 30; Jolls Dec. ¶ 10.

[11] Complaint ¶ 31; Declaration of Angela Sharps ("Sharps Dec.") (Doc. 35-2), ¶ 8; Second Declaration of Angela Sharps ("Second Sharps Dec.") (Doc. 45-1), ¶ 5.

[12] Complaint ¶ 31; Sharps Dec. ¶¶ 8-9; Second Sharps Dec. ¶¶ 5-6.

[13] Complaint ¶ 31.  Details of Thrifty Med's actions are set forth in Ms. Sharps' declarations and included overbilling for prescriptions by submitting higher charges for three 30-day supplies of medication when 90-day supplies had been prescribed and filled, signing the participant's name to prescription logs without her knowledge or consent, and altering prescription copies and labels submitted as part of Thrifty Med's appeal of the audit findings.  *See* Sharps Dec. ¶¶ 8-9; Second Sharps Dec. ¶¶ 5-6.

PBM notified Thrifty Med that it was being removed from the McKee Health Plan's pharmacy network, effective July 1, 2019.[14]

Thrifty Med protested the decision and over the next three years – both before and after McKee initiated its original action for declaratory and injunctive relief – asserted its position that it should be reinstated to the network.[15] Thrifty Med's efforts to gain reinstatement to the McKee pharmacy network are well-documented in the record[16] and are summarized in the Sixth Circuit's Opinion filed March 21, 2024.[17] In particular, Thrifty Med and its owners sought to take advantage of Tennessee Public Chapter 569,[18] discussed below, shortly after its operative provisions became effective on July 1, 2021. Thrifty Med argued that the law compelled McKee to include Thrifty Med in the McKee pharmacy network.

     C.    <u>Original Any Willing Pharmacy Statute; Subsequent Acknowledgements of ERISA Preemption</u>

For many years, the Tennessee Legislature and Attorney General recognized that the State could not regulate self-funded ERISA plans such as the McKee Health Plan. In 1998, Tennessee adopted its original "Any Willing Pharmacy" statute ("AWP Statute"), Tenn. Code Ann. § 56-7-2359.[19] The AWP Statute restricts the ability of "health insurance issuers" and "managed health insurance issuers" to deny participation by licensed pharmacies in any policy, contract or plan.

---

[14] Complaint ¶ 31; Sharps Dec. ¶ 10 and Ex. B; Second Sharps Dec. ¶ 7.

[15] Complaint ¶ 32; *McKee Foods Corporation v. BFP, Inc. d/b/a Thrifty Med Plus Pharmacy, et al.*, Case No. 23-5170, 2024 WL 1213808 at *1-*3 (6th Cir. Mar. 21, 2024) (hereinafter "Sixth Circuit Decision").

[16] *See, e.g.,* Plaintiff's Brief in Opposition to Defendant Thrifty Med's Motion to Dismiss (Doc. 45) at 5-8 and supporting Exhibits 1-3 (Docs. 45-1, 45-2 and 45-3); Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Doc. 62) at 2-5 and documents cited and attached thereto as Collective Exhibit 1.

[17] Sixth Circuit Decision, 2024 WL 1213808 at *1-*2.

[18] 2021 Tenn. Laws Pub. Ch. 569 (H.B. 1398).

[19] 1998 Tenn. Laws Pub. Ch. 1033 (H.B. 2949), Section 9.

**The Tennessee Legislature, in enacting the AWP Statute, recognized that the statute could not and would not apply to self-funded ERISA plans.** The legislative history of the AWP Statute was discussed in a 2004 Opinion of the Tennessee Attorney General.[20] The Attorney General noted that the AWP Statute "did not attempt to regulate employee plans because, under ERISA, state regulation would be preempted."[21] Moreover, when the Legislature adopted an amendment to the AWP Statute in 2001, the enabling act specifically exempted self-funded ERISA plans from its coverage.[22] Nevertheless, Thrifty Med has relied on Tenn. Code Ann. § 56-7-2359 in its efforts to gain reinstatement to the McKee Health Plan's pharmacy network, and the original AWP statute has been incorporated into Tenn. Code Ann. § 56-7-3120 which McKee says is preempted.

    D.    <u>Enactment of Public Chapter 569; Issuance of Bulletin 21-01</u>

At the urging of the pharmacy lobby and individual pharmacists (including Thrifty Med's owners),[23] the Tennessee Legislature adopted Public Chapter 569, most of which became effective July 1, 2021. The law amended Tennessee Code Annotated Title 56, Chapter 7, Parts 31 and 32 (herein "Parts 31 and 32"), and imposed additional restrictions on the rights of PBMs and other "covered entities" (previously defined to include employers and self-insured entities).[24]

---

[20] Tenn. Atty. Gen. Op. No. 04-001 (Jan. 6, 2004) (copy attached as **Exhibit A**).

[21] *Id*. at p. 10.

[22] 2001 Tenn. Laws Pub. Ch. 236 (S.B. 528), Section 9. In another Opinion issued in 2016, the Tennessee Attorney General again confirmed ERISA's preemption of state law. Citing *Gobeille v. Liberty Mutual Insurance Company*, 577 U.S. 312 (2016), the Attorney General concluded that Tennessee's "All Payor Claims Database" statute, Tenn. Code Ann. § 56-2-125, which imposed claims data reporting requirements on ERISA-governed plans, was unconstitutional and could not be enforced by the Tennessee Department of Commerce and Insurance (the "Department"). Tenn. Atty. Gen. Op. No. 16-42 at p. 2 (Dec. 7, 2016) (copy attached as **Exhibit B**).

[23] *See* Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Doc. 62) at 2-5 and documents cited and attached thereto as Collective Exhibit 1.

[24] *See* Complaint ¶ 37.

5

Specifically, Section 2 of Public Chapter 569 added what became Tenn. Code Ann. § 56-7-3120.[25]

Tenn. Code Ann. § 56-7-3120(a) effectively regulates the terms of health benefit plans by prohibiting PBMs and covered entities from requiring plan participants "to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy." Copays and coinsurance amounts and percentages are terms of the McKee Health Plan and are determined by McKee.[26]

As originally enacted in Public Chapter 569, Tenn. Code Ann. § 56-7-3120(b) prohibited PBMs and covered entities from interfering with a patient's "right to choose a contracted pharmacy" in a manner that violated Tenn. Code Ann. § 56-7-2359 (Tennessee's original AWP statute) or by other means, including inducement, steering, or offering financial or other incentives. Public Chapter 569 also created a new remedy that would subject any PBM or covered entity that interfered with the rights provided under § 56-7-2359 to a range of penalties imposed at the discretion of the Commissioner of the Department.[27]

Public Chapter 569 made no changes to the definition of "covered entity" contained in Tenn. Code Ann. § 56-7-3102(1), which made no reference to ERISA or plans governed by ERISA. But just a few days after Public Chapter 569 became effective, Department

---

[25] For the Court's convenience, pertinent parts of the primary statutes at issue in this litigation, including Tenn. Code Ann. § 56-7-3120, are reproduced in the **Statutory Addendum** to this brief.

[26] Jolls Dec. ¶ 10, Ex. A, Attachment B (Prescription Drug Program).

[27] *See* Tenn. Code Ann. §§ 56-2-305(a), 56-7-3110; Sixth Circuit Decision, 2024 WL 1213808 at *2.

6

Commissioner Carter Lawrence issued a Bulletin to "All Pharmacy Benefits Managers" announcing the Department's intent to enforce the law against ERISA plans.[28]

Bulletin 21-01 mirrored the views of influential legislators that Public Chapter 569, including its AWP provisions, should be applied to ERISA plans. Though a member of the Executive Branch of Tennessee government not subject to control of the Legislature or its leadership,[29] Commissioner Lawrence participated in multiple meetings with House Speaker Cameron Sexton and Lieutenant Governor Randy McNally (Speaker of the Tennessee Senate), during which they discussed the bill that became Public Chapter 569 and the specific subject of ERISA preemption.[30] Mr. Lawrence noted that Messrs. Sexton and McNally were both "highly engaged in this legislation."[31] Speaker Sexton communicated his view that the U.S. Supreme Court's 2020 decision in *Rutledge*[32] provided an opening for state regulation and that AWP provisions such as those contained in Public Chapter 569 would not be preempted. Speaker Sexton was communicating these same, strongly held views publicly during hearings on Public Chapter 569, stating (incorrectly) that the Supreme Court had "ruled" that ERISA plans "should be treated like everybody else under state law."[33] The views of Lt. Governor McNally were similar.[34]

---

[28] Tennessee Department of Commerce and Insurance Bulletin 21-01 (July 8, 2021) ("Bulletin 21-01"), copy attached as **Exhibit C**.

[29] Deposition of Carter Lawrence ("Lawrence Depo.") at 15-16, 19-20. Excerpts and exhibits from Commissioner Lawrence's deposition are included in **Exhibit D** attached.

[30] Lawrence Depo. at 74-79.

[31] *Id*. at 74-75.

[32] *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80 (2020).

[33] Hearing on H.B. 1398, Tenn. House of Representatives Finance, Ways and Means Subcommittee, May 3, 2021, available at
https://tnga.granicus.com/player/clip/24829?view_id=610&redirect=true
The statement by Speaker Sexton quoted above is at 56 minutes, 50 seconds.

[34] Lawrence Depo. at 78.

Consistent with the positions taken by the House Speaker and Lieutenant Governor, Commissioner Lawrence's Bulletin 21-01 stated that it was "the legislative intent for ERISA plans to be included in the requirements set forth in Pub. Ch. 569" and that "[t]he Department will enforce Pub. Ch. 569 accordingly."[35]  Though acknowledging that the definition of "covered entity" at the time included no reference to ERISA plans, Commissioner Lawrence argued that since they were not *excluded* from the definition, they must be *included*.[36]

     E.     <u>Administration of Public Chapter 569; Actions by Thrifty Med</u>

The Department's Section of Consumer of Insurance Services, led by Director Vickie Trice, was responsible for administering Public Chapter 569.[37]  Ms. Trice testified that a number of responses to complaints for alleged violations of Public Chapter 569 asserted that the Department had no jurisdiction because of ERISA preemption.[38]  Most of these complaints and responses were transferred to "Legal" (*i.e.,* the Department's internal legal staff) for review, but the Section of Consumer Insurance Services issued decisions on others and concluded that the Department, in fact, lacked jurisdiction because ERISA preempted the state law.[39]  Ms. Trice confirmed that these decisions were based on her Section's belief that federal law – specifically ERISA – took precedence over and preempted the state law.[40]

---

[35] Bulletin 21-01, p. 2.

[36] Lawrence Depo. at 71-72.

[37] Deposition of Vickie Trice ("Trice Depo.") at 17, 20-21, 33-34.  Excerpts and exhibits from Ms. Trice's deposition are included in **Exhibit E** attached.

[38] Trice Depo. at 27.

[39] *Id*. at 27-28, Ex. 2 (letter to Thrifty Med advising Department has no jurisdiction pertaining to self-funded/self-insured benefit plans). *See also* Deposition of Jud Jones ("Jones Depo."), Ex. 3, p. 3.  Excerpts and exhibits from Mr. Jones' deposition are included in **Exhibit F** attached.

[40] Trice Depo. at 27-30.  Ms. Trice likewise confirmed, specifically, that she was the head of the division that was responsible for administering complaints filed under Public Chapter 569.  *Id.* at 33-34.

Thrifty Med sought to take advantage of Public Chapter 569 shortly after its enactment and submitted a request for reinstatement to McKee's PBM, MedImpact Healthcare Systems, Inc. ("MedImpact"). After MedImpact denied the request, Thrifty Med contacted Ms. Trice, took the position that Public Chapter 569 required McKee to include Thrifty Med in the McKee Health Plan's pharmacy network, and relied on Bulletin 21-01.[41] Ms. Trice consulted with Scott McAnally, Director of the Department's Section of Insurance, who agreed that MedImpact's position was correct and that the section of Public Chapter 569 allowing customers to select a pharmacy of their choice presented a **benefit design** issue (resulting in ERISA preemption).[42]

Commissioner Lawrence, a licensed attorney[43] and the State official responsible for the administration and enforcement of the statutes at issue in this litigation, agreed with Mr. McAnally's assessment[44] and similarly confirmed that state laws that impact plan design or that attempt to regulate the structure of ERISA plans are preempted under *Rutledge*.[45] Jud Jones, the Department's Director of PBM compliance hired in early 2023 to administer the statutes at issue in this case, admitted that the laws specifically targeted and purported to regulate the design,

---

[41] Trice Depo. at 37-40, Ex. 1 (last two pages).
[42] Trice Depo. at 45-47, Ex. 1. Ms. Trice similarly confirmed her belief that it was the prerogative of an ERISA plan to establish plan benefits and design and that if a state law regulates plan design, the law is preempted. Trice Depo. at 100, 102.
[43] Lawrence Depo. at 45-46.
[44] *Id.* at 94.
[45] *Id*. at 59-60. *See* Deposition of Scott McAnally (excerpts attached as **Exhibit G**) at 17-18. Despite his understanding of the law, the Commissioner testified that, in his view, it was "perfectly fine for the State of Tennessee to be telling employers and employee benefit plans how to design and structure their plans." *Id.* at 65-66. Mr. McAnally, the Department's Director of Insurance, was similarly unconcerned with the State's targeting of ERISA plans and even testified that the Legislature had the right to enact illegal statutes. McAnally Depo. at 46-47.

9

structure, terms and conditions of ERISA plans.[46]  Commissioner Lawrence acknowledged that the Sixth Circuit had concluded that Any Willing Provider laws are preempted by ERISA.[47]

Thrifty Med also filed three administrative complaints with the Department, alleging that McKee was in violation of the original AWP statute (Tenn. Code Ann. § 56-7-2359) as well as Public Chapter 569.[48]  MedImpact filed responses to the complaints stating, among other things, that the statutes Thrifty Med relied on did not apply to self-funded ERISA plans.[49]  Agreeing with MedImpact, the Department dismissed Complaint No. 71356, stating that it had "no jurisdiction pertaining to a self-funded/self-insured benefit plan" governed by ERISA.[50]  Addressing Thrifty Med's other two administrative complaints (Nos. 71028 and 71428), the Department stated that its mediation efforts had been exhausted and that the Department was therefore closing its files.[51]

     F.    Public Chapter 1070

     1.    Origins of the Law

A perceived lack of enforcement of Public Chapter 569 did not sit well with the House Speaker, other influential legislators, Thrifty Med, and the Tennessee Pharmacists Association ("TPA").[52]  Nor did McKee's filing of this action seeking a declaration that Public Chapter 569 was preempted.  The result was the enactment of Public Chapter 1070 in 2022, specifically

---

[46] Jones Depo. at 12, 141.  Mr. Jones also testified that the potential preemption of the laws by ERISA was not important because the laws said they applied to ERISA plans.  *Id*. at 33-34.
[47] Lawrence Depo. at 48.
[48] Declaration of Jennifer Johnson (Doc. 35-1), Exs. A-C.
[49] Plaintiff's Supplemental Brief, Ex. 1 (Doc. 62-1) (MedImpact Response to Complaint No. 71356).
[50] Declaration and Stipulation of Thrifty Med Plus Pharmacy (Doc. 38-2), Ex. A; Trice Depo. Ex. 2.
[51] Declaration and Stipulation of Thrifty Med Plus Pharmacy (Doc. 38-2), Ex. A.; Trice Depo. Ex. 3.
[52] Lawrence Depo. at 80-82.

targeting self-funded ERISA plans like McKee's. Commissioner Lawrence's deposition testimony and related email exchanges tell the story.

Anthony Pudlo, Executive Director of the TPA, emailed Ms. Trice on November 29, 2021, expressing concern about the lack of "enforcement action on any of the complaints against PBMs . . . in the face of PC 569 and TDCI's bulletin in July."[53] State Senator Shane Reeves was copied on the email.[54] After some additional exchanges, Senator Reeves, himself a pharmacist, decided to weigh in and stated, "I am not sure why we are passing laws in the first place if they are going to be ignored."[55] This got the attention of Alex Lewis, Assistant Commissioner and Senior Advisor to Commissioner Lawrence, who was not shown as copied on the previous emails.[56] Mr. Lewis assured Senator Reeves that the Department was "certainly staying engaged on implementation of and enforcement under PC569" and referenced recent communications between the Senator and Commissioner Lawrence "about getting together soon to discuss our direction."[57]

The email exchanges continued with Senator Reeves expressing specific concerns about **McKee Foods' lawsuit against Thrifty Med alleging ERISA preemption.**[58] Senator Reeves then stated:

> This [the McKee lawsuit] underscores why we must have language to enforce the PBM law. (Things are quickly getting out of hand and could be quite contentious in January without the Department leading us out of this situation)[59]

---

[53] Lawrence Depo., Ex. 3, Bates pages MCKEE_ESI-0000284-MCKEE_ESI-0000285. For simplification, during the remainder of this Brief, McKee will only use the last four digits of the Bates numbers of the various documents produced by the Department.
[54] *Id.*, Bates 0284.
[55] Lawrence Depo. at 116, Ex. 3 at Bates 0282.
[56] Lawrence Depo. at 116-17, Ex. 3 at Bates 0281-0282.
[57] *Id.* at 117, Ex. 3 at Bates 0282.
[58] *Id.* at 131, Ex. 3 at Bates 0280.
[59] *Id.* at 131-32, Ex. 3 at Bates 0280.

The meeting suggested in the email exchanges with Senator Reeves took place in mid-December 2021.[60] As it turned it out, there were actually multiple meetings between Commissioner Lawrence, Mr. Lewis and powerful members of the Tennessee General Assembly, including House Speaker Sexton, Lieutenant Governor McNally, Senator Reeves and others.[61] The legislators were not happy.[62] Describing the substance of the meetings, Commissioner Lawrence testified that the legislators and Department representatives discussed the need for additional legislation, "which ultimately would have been the basis for Public Chapter 1070."[63] Commissioner Lawrence acknowledged that the subject of ERISA preemption was likely discussed and that the intent of the planned legislation "was to specifically include self-insured ERISA plans within the coverage of the law."[64] As Commissioner Lawrence's testimony made clear, the end result was the eventual enactment of Public Chapter 1070.[65] McKee's lawsuit alleging ERISA preemption was specifically referenced as evidence of things "getting out of hand," underscoring the need for changes in the law.[66] According to TPA Director Pudlo, the TPA and its counsel actually *crafted Public Chapter 1070*.[67]

The Department and its officials have made clear that they intend to fully enforce the provisions of Parts 31 and 32 and the Department's regulations against ERISA-governed plans and other covered entities.[68] Commissioner Lawrence testified that in deciding to move forward

---

[60] Lawrence Depo. at 123-24.
[61] *Id*. at 120-131.
[62] *Id*. at 130-31.
[63] *Id.* at 124-25.
[64] *Id.* at 125-26.
[65] *Id.* at 133.
[66] *Id.* at 133, Ex. 3 at 0280.
[67] Jones Depo. Ex. 17.
[68] Rule 30(b)(6) Deposition of Tennessee Department of Commerce and Insurance at 33-34 (excerpts included in **Exhibit H** attached); Lawrence Depo. at 172 (Department will enforce the

with enforcement of the laws, the Department gave no consideration to the question of whether the laws were preempted by ERISA.[69]  The Department's view is that state law (Public Chapter 1070) preempts ERISA.[70]

        2.     Public Chapter 1070 – Relevant Provisions

The bill that became Public Chapter 1070 was passed by the Tennessee Legislature on April 27, 2022, and signed by the Governor the following month.  Its substantive provisions, including those at issue in the case, became effective January 1, 2023.[71]

Tenn. Code Ann. § 56-7-3120(a) was unchanged.  Public Chapter 1070 split Tenn. Code Ann. § 56-7-3120(b) into two subsections.  As amended, Tenn. Code Ann. § 56-7-3120(b)(1) retained the statute's prohibition against a PBM's or a covered entity's "interference" with a patient's right to choose a contracted pharmacy in a manner that violates Tenn. Code Ann. § 56-7-2359.  Amended Section 56-7-3120(b)(2) made the statute's "anti-steering" component more specific by prohibiting PBMs and covered entities from offering financial or other incentives to persuade a patient to use pharmacy owned by or financially beneficial to the PBM or covered entity.

Public Chapter 1070 further amended Parts 31 and 32[72] to make the substantive regulations, requirements and restrictions contained therein specifically applicable to welfare benefit plans governed by ERISA.  As amended, Tenn. Code Ann. § 56-7-3102(1)(A) now includes plans governed by ERISA in the definition of a "covered entity" subject to provisions of Part 31, including the any willing pharmacy and anti-steering provisions of Tenn. Code Ann. §

---

statutes until a court instructs otherwise); Jones Depo. at 34-35, 141-42; McAnally Depo. at 123-24.
[69] Lawrence Depo. at 186-87.
[70] *Id.* at 187.
[71] *See* 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661).
[72] Tennessee Code Annotated, Title 56, Chapter 7, Parts 31 and 32.

56-7-3120. Leaving no stone unturned, the Legislature provided in Public Chapter 1070 that Parts 31 and 32, *in their entireties*, would apply to ERISA plans.[73] The Legislature even took the extraordinary step of including ERISA plans *in the definition of a PBM*, while maintaining the overarching requirement that a PBM be engaged in the performance of pharmacy benefits management for a covered entity.[74]

Public Chapter 1070 also amended existing law by creating a new section now codified as Tenn. Code Ann. § 56-7-3121. The new section requires that any willing pharmacy be included in networks established by a PBM (both preferred networks and non-preferred networks) and contains restrictions on copayments, other fees and financial inducements that may be charged plan participants – all central matters of plan design and administration.

The month after Public Chapter 1070 because effective, a pharmacy in Cleveland, Tennessee, filed a complaint against McKee and its PBM arguing that they were in violation of the "anti-steering" provision in Tenn. Code Ann. § 56-7-3120. Specifically, Cleveland WoRx LLC d/b/a Preferred Cherokee Pharmacy ("Preferred Cherokee") claimed that the law prohibited McKee from offering lower copays to its own employees who chose to have prescriptions filled at the onsite pharmacy McKee established and funded for its employees' benefit.[75]

The relief requested by Preferred Cherokee was that McKee either deprive Plan participants of the lower copays available at the McKee pharmacy or be required to increase Plan benefits by providing lower copays to employees who use *other* pharmacies. In either case, Preferred Cherokee was demanding that McKee either violate or change the specific terms and

---

[73] *See* 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661), Sections 7, 8; Tenn. Code Ann. §§ 56-7-3122, 56-7-3209.
[74] *See* Tenn. Code Ann. § 56-7-3102(5).
[75] *See* Pharmacy Benefit Manager Complaint Form attached as **Exhibit I**. The McKee Foods Family Pharmacy is discussed in Paragraph 12 of the Declaration of Justin Jolls.

design of its ERISA plan, since copays at the onsite pharmacy and at community retail pharmacies are set forth in the Plan.[76]

McKee promptly responded to Preferred Cherokee's complaint in a letter emailed to Mr. McAnally. The complaint is still open, and almost two years later, the Department has not responded to McKee or made a decision on the complaint.[77]

## III.    ARGUMENT

### A.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist.[78] In considering a motion for summary judgment, the inquiry for the Court "is the threshold inquiry of determining whether there is a need for a trial."[79]

The issue in this case is whether ERISA preempts Tenn. Code Ann. §§ 56-7-3120, 56-7-3121 and 56-7-2359. McKee and Thrifty Med recognized from the outset that the issue of ERISA preemption was legal, not factual, and was appropriate for disposition on summary judgment.[80] McKee's amendment to its original complaint, adding the Commissioner as a

---

[76] *See* Jolls Dec. ¶ 12 and Ex. A, Attachment B (Prescription Drug Program). *See Griffin v. AT&T Servs., Inc.*, No. 1:22-CV-00701-SEG, 2023 WL 3213550, at *6 (N.D. Ga. Mar. 21, 2023), *aff'd*, No. 23-11408, 2023 WL 8852925 (11th Cir. Dec. 21, 2023) (under *Rutledge*, state laws cannot dictate ERISA-governed plan terms).

[77] Jones Depo. at 37-38; Rule 30(b)(6) Depo. at 10-14.

[78] *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

[79] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[80] *See* Federal Rule of Civil Procedure 26(f) Discovery Plan (Doc. 16), ¶ 2.

named defendant[81] and emphasizing Public Chapter 1070's specific targeting of ERISA plans, does not change the legal nature of the dispute. The Court's resolution of this case will be based on an analysis of the law of ERISA preemption as applied to the state statutes at issue and a determination of whether they "relate to" ERISA-governed benefit plans. The circumstances of the enactment of the laws and the Department's undisputed intent to enforce them against self-insured ERISA plans provide additional context and further support for McKee's position.

B.    ERISA Broadly Preempts State Laws that Relate to Employee Benefit Plans.

1.    Nature and Purpose of ERISA Preemption.

ERISA is a comprehensive federal statute that Congress enacted to provide "a uniform regulatory regime over employee benefit plans."[82] ERISA contains one of the broadest preemption provisions in federal law, stating that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). ERISA preemption was not established arbitrarily but has important purposes that further the public interest. Specifically, as noted by the Sixth Circuit in *Kentucky Ass'n of Health Plans, Inc. v. Nichols* ("*Nichols*"),[83] the intent of Congress in enacting a broad preemption provision was

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.[84]

---

[81] The State of Tennessee was, of course, already a party to this action, having intervened to defend the state laws against McKee's claim of ERISA preemption.

[82] *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004).

[83] 227 F.3d 352 (6th Cir. 2000), *aff'd sub nom. Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).

[84] *Nichols*, 227 F.3d at 358 (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656–57 (1995)). *See Gobeille,* 577 U.S. at 323 (preemption necessary to prevent multiple jurisdictions from imposing differing regulations on ERISA plans).

In short, preemption enables plan sponsors such as McKee to design and structure their self-funded plans without having to address peculiarities of state laws – including special interest legislation – such as those at issue in the instant case.[85]

### 2. Criteria for ERISA Preemption

State laws that "relate to" employee benefit plans are generally preempted by ERISA. ERISA does contain an exemption from preemption for certain state laws, including state laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A). This provision is known as the "saving clause." However, ERISA makes the insurance law exemption *inapplicable* to self-funded (*i.e., non-insured*) benefit plans in what is known as the "deemer clause." 29 U.S.C. § 1144(b)(2)(B).[86] It is undisputed that the McKee Health Plan is self-funded, so the saving clause for insured plans does not apply.[87]

Significantly, under both Supreme Court and Sixth Circuit precedent, a state law "relates to" an employee benefit plan if the law *either* has a *connection with* such a plan *or* a *reference to* such a plan. *See, e.g., Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983); *Nichols,* 227 F.3d at 358 (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A. Inc.*, 319 U.S. 316, 324 (1997)).[88] Satisfaction of *either* criterion is sufficient for ERISA preemption.

---

[85] *See* McAnally Depo. at 116-117; Lawrence Depo. at 193-94.

[86] *See* Tenn. Atty. Gen. Op. No. 16-42 at p. 6 (Dec. 7, 2016) (Exhibit B attached), noting that state law may not regulate self-funded plans which do not purchase insurance and which cannot be "deemed" to be insurers.

[87] *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 371 n.6 (2002) (because of the deemer clause, a state independent review statute "would not be 'saved' as an insurance law" if indirectly applied to self-funded ERISA plans); *FMC Corp. v. Holliday*, 498 U.S. 52, 64 (1990) (if plan is uninsured State may not regulate it); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (1985) (noting "distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not").

[88] The Supreme Court has applied the same "reference to or connection with" preemption analysis in multiple ERISA cases decided before and after *Nichols. See, e.g., Gobeille*, 577 U.S. at 319-20; *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (state law has impermissible "connection with" ERISA plans if it interferes with national uniformity of plan administration).

The Supreme Court in *Rutledge v. Pharmaceutical Care Management Association*,[89] provided further guidance on state laws that would and would not be preempted by ERISA. The state law at issue in *Rutledge* was narrowly focused and required PBMs "to reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler."[90] The Court characterized the law as "merely a form of cost regulation" and stated that ERISA did not preempt state rate regulations that merely increased costs for ERISA plans without forcing them to adopt any particular scheme of substantive coverage.[91]

The Court in *Rutledge* also explained the purpose and objectives of ERISA preemption and the types of laws which *would* be preempted. The Court noted that in enacting ERISA, Congress sought to ensure that plans and plan sponsors would be subject to a *uniform body of benefits law* and would not have to tailor substantive benefits to the particularities of multiple jurisdictions. *Id.* at 86. The *Rutledge* court continued:

> ERISA is therefore primarily concerned with pre-empting laws that require providers *to* **structure benefit plans in particular ways, such as by requiring payment of specific benefits**, . . . or by binding plan administrators to specific rules for determining beneficiary status. [Citations omitted] A state law may also be subject to pre-emption if "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." *Gobeille*, 577 U.S. at 320, 136 S.Ct. 936 (internal quotation marks omitted). As a shorthand for these considerations, this Court asks whether a state law **"governs a central matter of plan administration _or interferes with nationally uniform plan administration."** *Id*. (internal quotation marks and ellipsis omitted). If it does, it is pre-empted.[92]

Significantly, in explaining why the Arkansas statute was not preempted by ERISA, the *Rutledge* court effectively confirmed that state laws such as the Tennessee pharmacy legislation at issue in this matter *would* be preempted. For example, in concluding that the Arkansas law did

---

[89] 592 U.S. 80 (2020).
[90] *Id*. at 84.
[91] *Id*. at 88.
[92] *Id.* at 86-87 (emphasis added).

not have an impermissible "reference to" ERISA, the Court in *Rutledge* emphasized that the law in that case was not directed toward ERISA plans and that the law, in fact, "does not directly regulate health benefit plans *at all*, ERISA or otherwise."[93]  In explaining why the Arkansas law in *Rutledge* also lacked a "connection with" ERISA, the Court noted that the law did not require plan administrators to structure their benefit plans in any particular way.[94]

      3.    ERISA Preemption of State Any Willing Provider Laws

The Sixth Circuit has made clear that state any willing provider laws, such as the Tennessee statutes at issue in this case, "relate to" ERISA plans and are preempted as to self-funded ERISA plans.  The Court specifically addressed the preemption of such laws in *Nichols.*

In *Nichols*, seven health maintenance organizations (HMOs) and the Kentucky Association of Health Plans filed suit in federal court seeking a determination that the "any willing provider" provisions of the Kentucky Health Care Reform Act were preempted by ERISA.  The Kentucky any willing provider statutes prohibited health insurers from discriminating against any provider willing to meet the terms and conditions for participation in a health benefit plan.  Ky. Rev. Stat. Ann. § 304.17A-270.  The definition of "health benefit plan" included any "[s]elf-insured plan or a plan provided by a multiple employer welfare arrangement, to the extent permitted by ERISA."  Ky. Rev. Stat. Ann. § 304.17A-005(22).

The Court in *Nichols* held that the Kentucky any willing provider statutes satisfied *both* prongs of the Supreme Court's test for preemption.  First, the Court concluded that the any willing provider laws made "reference to" ERISA plans.  Specifically, the definition of a health benefit plan under the Kentucky laws included self-insured plans but only "to the extent

---

[93] *Id.* at 88-89 (emphasis added).
[94] *Id.* at 89.  *See Griffin,* 2023 WL 3213550, at *6 (emphasizing that the Arkansas law at issue in *Rutledge* merely affected costs but that state laws requiring plan administrators to structure their benefit plans in particular ways are preempted).

permitted by ERISA."[95]  The Sixth Circuit found that this provision demonstrated the Kentucky legislature's awareness "of its inability to regulate self-insured ERISA plans . . . by virtue of the deemer clause."[96]

Second, although the "reference to" ERISA plans was sufficient for preemption, the Court went on to hold that the Kentucky laws also had a "connection with" ERISA plans.  Citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 657-58 (1995), the Court commented that ERISA preemption was intended "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans" and that ERISA would "preempt state laws that mandated employee benefit structures or their administration."  *Nichols*, 227 F.3d at 361.  The Sixth Circuit agreed with the district court's conclusion that the Kentucky any willing provider laws did, in fact, mandate employee benefit plan structures.  "[The laws] not only affect the benefits available by increasing the potential providers, they directly affect the administration of the plans."  *Id*. at 363.

**In short, under binding Sixth Circuit precedent, state any willing provider laws "relate to" ERISA plans and are clearly preempted as to self-funded ERISA plans.**[97]

In a closely watched case decided by the Tenth Circuit Court of Appeals in 2023, the Court agreed with the Sixth Circuit's conclusion that ERISA preempts any willing provider statutes because they mandate benefit plan structure and design by increasing the providers of benefits under the plan.  *See Pharmaceutical Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198

---

[95] *Nichols*, 227 F.3d at 360.

[96] *Id*.

[97] *Nichols* was affirmed by the Supreme Court in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).  The Supreme Court in *Miller* focused solely on the applicability of the saving clause and did not disturb the Sixth Circuit's conclusion that the Kentucky any willing provider laws "related to" employee benefit plans under ERISA.

(10th Cir. 2023).[98]  The Oklahoma law at issue in *Mulready* included an AWP provision that required PBMs to admit into their preferred networks any pharmacy that was willing to accept the PBM's preferred-network terms.  Relying on *Nichols* and the Fifth Circuit's decision in *CIGNA Healthplan of Louisiana, Inc. v. Louisiana ex rel. Ieyoub*,[99] the Tenth Circuit concluded that the Oklahoma law was preempted because it mandated the structure and design of ERISA plans and the benefits provided thereunder:

> However sliced, the network restrictions "require providers to structure benefit plans in particular ways," *Rutledge*, 141 S. Ct. at 480, and "prohibit[ ] employers from structuring their employee benefit plans in a [certain] manner," *Shaw*, 463 U.S. at 97, 103 S.Ct. 2890. And either way, ERISA preempts these provisions because a pharmacy network's scope (which pharmacies are included) and differentiation (under what cost-sharing arrangements those pharmacies participate in the network), are **key benefit designs for an ERISA plan**.[100]

The network restrictions at issue in *Mulready* thus governed a central matter of plan administration and had an impermissible connection with ERISA plans.[101]

But the Tenth Circuit went further and also held that provisions of a state law prohibiting PBMs from using discounts or lower copays to impact an individual's choice of pharmacy – provisions similar to those adopted by the Tennessee legislature – were also part of benefit design and were therefore preempted by ERISA.[102]  Just as significantly, the *Mulready* court concluded that state laws which ostensibly apply to PBMs may have a "connection with" an ERISA plan and thus be preempted.[103]

---

[98] Petition for Writ of Certiorari Docketed May 15, 2024.
[99] 82 F.3d 642 (5th Cir. 1996).
[100] *Mulready*, 78 F.4th at 1198 (emphasis added).
[101] *Id*. (citing *Rutledge*, 592 U.S. at 87).
[102] *Id*.
[103] *Id*. at 1194-96.

C.    Tenn. Code Ann. §§ 56-7-3120, 56-7-3121 and 56-7-2359 Are Preempted by
       ERISA.

Benefit design, benefit structure, central matters of plan administration, and nationally

uniform plan administration are critical concepts under the cases discussed above.  State laws

that attempt to regulate or interfere with these matters are preempted.  Indeed, the Department

witnesses who were deposed acknowledged as much.

> Benefits provided under a plan are, of course, central to the design of a plan.

> The term "benefits" refers to the services and other medical care covered under any
> health insurance plan.  "Benefit designs" are the rules that structure insurance plans and
> dictate how consumers can gain access to covered services.  **They determine which
> services will be covered by the health plan, from which providers a consumer can
> receive a service, and the cost-sharing amounts, such as deductibles, co-payments, or
> co-insurance, for which the consumer is responsible.**[104]

The state laws McKee is challenging all purport to regulate the design and structure of

self-insured ERISA plans and interfere with central matters of plan administration and nationally

uniform plan administration.  The statutes' requirements that McKee include any willing

pharmacy in its Plan network interfere with McKee's right to determine benefits offered under

the Health Plan *and* the providers of those benefits.[105]  The statutes also interfere with McKee's

ability as a plan fiduciary to address situations – such as the Thrifty Med situation – in which

providers engage in actions that harm the plan, participants, and beneficiaries.  The statutes

contain no exceptions for providers that have engaged in wrongdoing and effectively dictate the

providers with which plan sponsors such as McKee have to do business.  The statutes would

---

[104] Payment Methods and Benefit Designs: How They Work and How They Work Together to
Improve Health Care, A Typology of Benefit Designs, p.1 (Urban Institute 2016) (emphasis
added), available at https://www.urban.org/sites/default/files/publication/80321/2000780-A-
Typology-of-Benefit-Designs.pdf
[105] Commissioner Lawrence acknowledged that the laws increase the providers providing
services under employee benefit plans and that this affects the administration of the plans.
Lawrence Depo. at 192.

force McKee and other plan administrators to choose between violating state law and violating their fiduciary duties under ERISA.

In addition, Tenn. Code Ann. § 56-7-3120 purports to limit copays and other contributions a plan may require of participants and purports to restrict the ability of the plan to offer lower copays and other incentives beneficial to participants. As noted above, McKee is currently defending a complaint by Preferred Cherokee Pharmacy alleging that McKee violated this provision. Tenn. Code Ann. § 56-7-3121's restrictions on copayments, other fees and financial inducements likewise interfere with plan structure, administration and uniformity by restricting contributions and charges that plans may legitimately require from their own participants.

All of the foregoing relate to the design, structure and administration of the plan. The statutes obviously interfere with nationally uniform plan administration by establishing requirements for plans in Tennessee that are different from or not applicable to plans (and participants and beneficiaries) in other states. As one example, McKee is able to have preferred pharmacy networks, where employees receive the benefit of lower copays, in other states where McKee does business *but not in Tennessee*.[106]

Based on all of the above, the statutes clearly have a "connection with" ERISA plans. The statutes, on their face, make "reference to" ERISA plans. Indeed, Public Chapter 1070 specifically targeted ERISA plans for state regulation and enforcement after leadership in the Tennessee Legislature and the Department, referencing McKee's challenge to the pharmacy laws, determined that things were "getting out of hand." Public Chapter 1070 specifically added

---

[106] Jolls Dec., Ex. A., Attachment B (various references to Preferred Pharmacy Network available to employees who live and work outside Tennessee).

ERISA plans to the definition of "covered entity" subject to the law.  Leaving no doubt about its intent to do away with ERISA preemption of Tennessee pharmacy legislation, the Legislature stated that Parts 31 and 32, in their entireties, would apply to plans governed by ERISA.[107]

D.    The Statutes at Issue Are also Subject to Obstacle Preemption.

Under the Supremacy Clause of the U.S. Constitution, federal preemption of state law may be either express or implied.[108]  Even if not expressly preempted by federal statute, state laws are preempted when they conflict with federal law, including instances in which the challenged law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[109]

The doctrine of conflict or obstacle preemption may apply in addition to the express statutory preemption of state law created by ERISA itself.[110]  Although McKee's claim of preemption is based primarily on the express provisions of Section 514(a) of ERISA (29 U.S.C. § 1144(a)), the doctrine of obstacle preemption also applies.  In cases addressing obstacle preemption, the Supreme Court has held that state law may not interfere with federal goals by frustrating Congress's intent to adopt a uniform system of federal regulation or by impeding the vindication of a federal right.[111]

The criteria for obstacle preemption apply to the Tennessee laws which, as can be seen from the discussion above, would operate to frustrate Congress's intent to adopt a uniform

---

[107] Tenn. Code Ann. §§ 56-7-3122, 56-7-3209.  *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.,* 681 F. Supp. 3d 842, 856-57 (W.D. Tenn. 2023) (contrasting *Rutledge* and holding that state law claims *directly affecting self-funded plans* are preempted).
[108] *Arizona v. United States*, 567 U.S. 387, 399 (2012).  *See Mulready*, 78 F. 4th at 1192-93.
[109] *Arizona,* 567 U.S. at 399 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).
[110] *See Freightliner Corp. v. Myrick*, 514 U. S. 280 (1995).
[111] *See Hines*, 312 U.S. at 67*; Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 873-74 (2000); *Felder v. Casey,* 487 U.S. 131, 153 (1988).

system of federal regulation of employee benefit plans and to impede the vindication of the rights of sponsors, administrators, and fiduciaries of ERISA-governed benefit plans.

## IV. CONCLUSION

As the sponsor of the Plan created for McKee employees and their families, McKee has the unfettered right under ERISA to design and structure the Plan in the manner it determines to be in the best interests of the company and Plan participants. This includes the right to establish the terms of the Plan and to determine which providers should and should not be included in the Plan's provider networks, as well as the conditions under which those providers are included. As the administrator and fiduciary of the Plan, McKee has the obligation to administer the Plan for the benefit of its participants and beneficiaries, including removal of providers who act to the detriment of the Plan, participants, and beneficiaries.

The State of Tennessee is prohibited by federal law from taking away those rights and interfering with those obligations. McKee requests that its Motion for Summary Judgment be granted and that the Court enter a declaratory judgment that the Tennessee statutes are preempted and issue an injunction prohibiting the Defendants from pursuing any legal or administrative action under those laws.

This the 31st day of December, 2024.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: ___*/s/William H. Pickering*___
    William H. Pickering (BPR #006883)
    Catherine S. Dorvil (BPR #034060)
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN  37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
    cdorvil@chamblisslaw.com

*Attorneys for Plaintiff*

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke, *Admitted Pro Hac Vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 31st day of December, 2024.

_____ */s/ William H. Pickering* _____

# STATUTORY ADDENDUM

# PERTINENT SECTIONS OF TENNESSEE CODE ANNOTATED

# TABLE OF CONTENTS

§ 56-7-2359        Pharmacy and pharmacy access..................................................2

§ 56-7-3102        Definitions.....................................................................................3

§ 56-7-3120        Actions interfering with covered persons' choice of contracted pharmacy or provider prohibited ...............................................5

§ 56-7-3121        Pharmacy networks ....................................................................6

§ 56-7-3122        Part application to ERISA plans ................................................8

§ 56-7-3209        Part application to ERISA plans ................................................9

T. C. A. § 56-7-2359

§ 56-7-2359. Pharmacy and pharmacy access

Effective: July 10, 2016

(a) No health insurance issuer and no managed health insurance issuer may:

(1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan; provided, that nothing in this subdivision (a)(1) shall prohibit a managed health insurance issuer or health insurance issuer from establishing rates or fees that may be higher in nonurban areas, or in specific instances where a managed health insurance issuer or health insurance issuer determines it necessary to contract with a particular provider in order to meet network adequacy standards or patient care needs; and

(2) Prevent any person who is a party to or beneficiary of any policy, contract or plan from selecting a licensed pharmacy of the person's choice to furnish the pharmaceutical services offered under any contract, policy or plan; provided, that the pharmacy is a participating provider under the same terms and conditions of the contract, policy or plan as those offered any other provider of pharmacy services.

\*          \*          \*          \*          \*          \*          \*

(d) As used in this section, "managed health insurance issuer" has the same meaning as defined in § 56-32-128(a).

\*          \*          \*          \*          \*          \*          \*

**Credits**
1998 Pub.Acts, c. 1033, § 9, eff. July 1, 1998; 2001 Pub.Acts, c. 236, §§ 2 to 8, eff. July 1, 2001.

T. C. A. § 56-7-3102

§ 56-7-3102. Definitions

Effective: January 1, 2023

As used in this part, unless the context otherwise requires:

(1) "Covered entity":

(A) Means an individual or entity that provides health coverage to covered individuals who are employed or reside in this state, and includes, but is not limited to:

(i) A health insurance issuer;

(ii) A managed health insurance issuer, as defined in § 56-32-128(a);

(iii) A nonprofit hospital;

(iv) A medication service organization;

(v) An insurer;

(vi) A health coverage plan;

(vii) A health maintenance organization licensed to practice pursuant to this title;

(viii) A health program administered by this state or its political subdivisions, including the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services;

(ix) A nonprofit insurance company;

(x) A prepaid plan;

(xi) A self-insured entity;

(xii) Plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.); and

(xiii) An employer, labor union, or other group of persons organized in this state; and

(B) Does not include:

(i) A health plan that provides coverage only for accidental injury, specified disease, hospital indemnity, medicare supplement, disability income, or other long-term care; or

(ii) A plan subject to regulation under medicare part D;

    \*        \*        \*        \*        \*        \*

(5) "Pharmacy benefits manager" means a person, business or other entity and any wholly or partially owned subsidiary of the entity, that administers the medication and/or device portion of pharmacy benefits coverage provided by a covered entity. "Pharmacy benefits manager" includes, but is not limited to, a health insurance issuer, managed health insurance issuer as defined in § 56-32-128(a), nonprofit hospital, medication service organization, insurer, health coverage plan, health maintenance organization licensed to practice pursuant to this title, a health program administered by the state or its political subdivisions, including the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services, nonprofit insurance companies, prepaid plans, self-insured entities, plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.), and all other corporations, entities or persons acting for a pharmacy benefits manager in a contractual or employment relationship in the performance of pharmacy benefits management for a covered entity and includes, but is not limited to, a mail order pharmacy; and

    \*        \*        \*        \*        \*        \*

**Credits**

2007 Pub.Acts, c. 224, § 1, eff. July 1, 2007; 2014 Pub.Acts, c. 857, § 1, eff. Jan. 1, 2015; 2016 Pub.Acts, c. 631, § 1, eff. March 23, 2016; 2022 Pub.Acts, c. 1070, §§ 3, 4, eff. Jan. 1, 2023.

T. C. A. § 56-7-3120

## § 56-7-3120. Actions interfering with covered persons' choice of contracted pharmacy or provider prohibited

### Effective: January 1, 2023

(a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

(b) A pharmacy benefits manager or a covered entity shall not:

(1) Interfere with the right of a patient, participant, or beneficiary to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359; or

(2) Offer financial or other incentives to a patient, participant, or beneficiary to persuade the patient, participant, or beneficiary to utilize a pharmacy owned by or financially beneficial to the pharmacy benefits manager or covered entity.

**Credits**
2021 Pub.Acts, c. 569, § 2, eff. July 1, 2021; 2022 Pub.Acts, c. 1070, § 5, eff. Jan. 1, 2023.

# T. C. A. § 56-7-3121

## § 56-7-3121. Pharmacy networks

### Effective: January 1, 2023

(a) A pharmacy benefits manager shall allow patients, participants, and beneficiaries of the pharmacy benefits plans and programs that the pharmacy benefits manager serves to utilize any pharmacy within this state that is licensed to dispense the prescription pharmaceutical product that the patient, participant, or beneficiary seeks to fill, as long as the pharmacy is willing to accept the same terms and conditions that the pharmacy benefits manager has established for at least one (1) of the networks of pharmacies that the pharmacy benefits manager has established to serve patients, participants, and beneficiaries within this state.

(b) A pharmacy benefits manager may establish a preferred network of pharmacies and a non-preferred network of pharmacies. The pharmacy benefits manager shall not prohibit a pharmacy from participating in either type of network within this state as long as the pharmacy is licensed by this state and the federal government and willing to accept the same terms and conditions that the pharmacy benefits manager has established for other pharmacies participating within the network that the pharmacy wishes to join.

(c) A pharmacy benefits manager shall not charge a patient, participant, or beneficiary of a pharmacy benefits plan or program that the pharmacy benefits manager serves a different copayment obligation or additional fee, or provide any inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager to serve patients, participants, and beneficiaries within this state.

**Credits**
2022 Pub.Acts, c. 1070, § 6, eff. Jan. 1, 2023.

T. C. A. § 56-7-3121, TN ST § 56-7-3121
Current with effective legislation from the 2024 Regular Session of the 113th Tennessee General Assembly. Some sections may be more current; see credits for details. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then,

6

may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

T. C. A. § 56-7-3122

§ 56-7-3122. Part application to ERISA plans

Effective: January 1, 2023

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

**Credits**
2022 Pub.Acts, c. 1070, § 7, eff. Jan. 1, 2023.

8

T. C. A. § 56-7-3209

## § 56-7-3209. Part application to ERISA plans

### Effective: January 1, 2023

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

**Credits**
2022 Pub.Acts, c. 1070, § 8, eff. Jan. 1, 2023.