# EXHIBIT A

# TENNESSEE ATTORNEY GENERAL OPINION NO. 04-001

**S T A T E  O F  T E N N E S S E E**
OFFICE OF THE
**ATTORNEY GENERAL**
PO BOX 20207
NASHVILLE, TENNESSEE 37202

January 6, 2004

Opinion No. 04-001

Pharmacy Benefits under State and Local Government Health Plans

## QUESTIONS

1. a. Does Tenn. Code Ann. § 56-7-2359, the "any willing pharmacy statute," apply to the state insurance committees administering the state health plan for state, local, and local education employees (the "State Plans")?

    b. Would the state insurance committees have violated Tenn. Code Ann. § 56-7-2359 if they created different non-economic terms and conditions (such as hours of service) for mail-order pharmacy benefits as opposed to retail pharmacies to provide benefits for these health plans?

2. Under the State Plans for 2004 as implemented, a participant who uses a retail pharmacy for maintenance medication must make a separate co-payment for each thirty-day supply. A participant who orders maintenance prescription drugs from a mail-order service, by contrast, makes only a single co-payment for a ninety-day supply. Does this different treatment violate Tenn. Code Ann. § 56-7-117?

3. Does an employee health plan by the City of Memphis or any other local government that requires participants to obtain maintenance medication from a mail-order pharmacy violate either Tenn. Code Ann. § 56-7-117 or Tenn. Code Ann. § 56-7-2359?

## OPINIONS

1. No, Tenn. Code Ann. § 56-7-2359 cannot reasonably be interpreted to apply to the state insurance committees when defining the benefits for the State Plans.

    Because of our answer to Question 1.a, Question 1.b is moot.

2. By its terms, Tenn. Code Ann. § 56-7-117 applies to listed entities that are regulated under different provisions of state law. Because the state insurance committees are not regulated under any of these statutory schemes, this statute does not apply to them when they are defining the benefits for the State Plans.

Page 2

3.  A definitive answer to this question would depend on the facts and circumstances, particularly the structure of the plan and the origin of the restriction. But for most of the same reasons discussed in Question 1, we do not think Tenn. Code Ann. § 56-7-2359 applies to a local governmental entity defining benefits to be offered under its self-funded employee health plan. Similarly, for the same reasons in Question 2, we do not think Tenn. Code Ann. § 56-7-117 applies to a local governmental entity defining benefits to be offered under its self-funded employee health plan.

## ANALYSIS

1.  State Health Plan: Compliance with the "Any Willing Provider" Statute

This opinion addresses the application of two different statutes to the various health plans administered by state committees under Tenn. Code Ann. §§ 8-27-101, *et seq*. The request apparently involves benefits offered under three plans: the state plan offered state employees; the plan offered to local government employees and administered by the Local Government Insurance Committee; and the plan offered to local education employees and administered by the Local Education Insurance Committee. The relevant statutes governing all these plans are similar. Since all these plans apparently will be offering the benefit in question, this opinion will refer to them together as the "State Plans."

The State Insurance Committee, created under Tenn. Code Ann. § 8-27-101, is authorized "to enter into contracts with insurance companies, claims administrators and other organizations for some or all of the insurance benefits or services, including actuarial and consulting advice, necessary to administer the plans authorized in parts 1, 2 and 7" of Title 8, Chapter 27. Tenn. Code Ann. § 8-27-102(a). The Commissioner of Commerce and Insurance, among other state officials, is a member of the committee.

  A.  The State Employee Plan

Under Tenn. Code Ann. § 8-27-201(a)(1), the State Insurance Committee is authorized to approve a group insurance plan for state employees including a plan providing medical expense insurance "*as it deems necessary and reasonable*." (Emphasis added). Tenn. Code Ann. § 8-27-201(a)(5) provides:

> (5) Notwithstanding the provisions of title 56 to the contrary, the state insurance committee is authorized to enter into self-insured contracts with health maintenance organizations established pursuant to title 56, chapter 32. The committee shall permit participation in such health maintenance organizations only in those locations for which the organization has been issued a certificate of authority by the department of commerce and insurance.

Page 3

(Emphasis added).

    B.  Health Insurance Plan for Employees of Local Governments and Quasi-Governmental Organizations

Tenn. Code Ann. § 8-27-207(a) creates a Local Government Insurance Committee, which includes many of the same officials who serve on the State Insurance Committee, including the Commissioner of Commerce and Insurance. This committee is authorized, either independently or with the assistance of the State Insurance Committee and/or the Local Education Insurance Committee, to establish a health insurance plan for employees of local governments and quasi-governmental organizations established for the primary purposes of providing services for or on behalf of state and local governments. Costs of the plan are to be voluntary. Tenn. Code Ann. § 8-27-207(f). Staff for the state group insurance program also acts as staff for the local government insurance plan. *Id.* Subsection (j) of the statute provides:

> (j) Notwithstanding the provisions of title 56 to the contrary, the local government insurance committee is authorized to enter into self-insured contracts with health maintenance organizations established pursuant to title 56, chapter 32. The committee shall permit participation in such health maintenance organizations only in those locations for which the organization has been issued a certificate of authority by the department of commerce and insurance.

    C.        Group Insurance for Local Education Employees

The Local Education Insurance Committee is established under Tenn. Code Ann. § 8-27-301 and includes many of the same officials who serve on the State Insurance Committee and the Local Government Insurance Committee, including the Commissioner of Commerce and Insurance. The committee is authorized to establish a health benefits plan for local education employees "*as it deems necessary and reasonable.*" Tenn. Code Ann. § 8-27-302(a)(1) (emphasis added). The committee acts separately from the State Insurance Committee, but the two committees are to coordinate their activities. Tenn. Code Ann. § 8-27-301(b). The staff for the state group insurance program acts as staff for the local education group insurance program. Tenn. Code Ann. § 8-27-301(e). The committee may develop the plan in such a way that the local education employees are covered by the same plan as the state employees. Tenn. Code Ann. § 8-27-302(a)(4). The statute provides in relevant part:

> (c) Notwithstanding the provisions of title 56 to the contrary, the local education insurance committee is authorized to enter into self-insured contracts with health maintenance organizations established pursuant to title 56, chapter 32. The committee shall permit participation in such health maintenance organizations only in those locations for

>which the organizations has been issued a certificate of authority by the department of commerce and insurance.

Each of the State Plans is self-funded. Funds for the plan for state employees are appropriated at Section 17, Item 1 of the Appropriations Act, 2003 Tenn. Pub. Acts Ch. 356. The second paragraph in this Item provides:

>The employer contribution amounts established by the State Insurance Committee for eligible participating employees shall not exceed, in the aggregate, the amounts appropriated in this Act. The State Insurance Committee shall determine a calendar year 2004 plan of benefits and monthly premiums for each of the healthcare options it authorizes pursuant to Section 8-27-201, Tennessee Code Annotated which result, with reasonable certainty, in the provision of sufficient revenues to pay plan expenses and to provide for the funding of reserves for estimated incurred but unreported claims. For purposes of this item, the State Insurance Committee shall assume a total increase in cost of twelve percent (12%) to be funded by a seven percent (7%) premium increase *and benefit adjustments expected to reduce plan costs by five percent (5%).* The monthly premiums and the employer contribution amounts shall be subject to the approval of the Commissioner of Finance and Administration pursuant to Section 4-3-1006, Tennessee Code Annotated.

(Emphasis added). With regard to the state employees' plan, therefore, the State Insurance Committee was explicitly instructed to adjust benefits in the program sufficient to achieve an expected five percent cost reduction. Similarly, Section 11, Item 2 of the Appropriations Act provides that "[t]he aggregate amount of funds obligated through the determination of the plans of benefits and the monthly premiums by the Local Education Insurance Committee shall not exceed the amount appropriated to the Department of Education, Basic Education Program's insurance component in this Act."

The relevant insurance committee determines the benefits that will be offered under the plan. The insurance committee then hires a plan administrator to administer claims and provide other services under the plan. At the present time, each administrator's contract covers the particular benefit option for all the State Plans. Blue Cross Blue Shield of Tennessee administers the Preferred Provider Organization statewide and the Point of Service Plans in West and Middle Tennessee. John Deere Health Care, Inc., administers the Point of Service Plan in East Tennessee. The State Plans also offer five Health Maintenance Organization ("HMO") plans in different parts of the State. These HMOs are administered by Aetna Life Insurance Company and John Deere Health Care, Inc. Under each agreement, the administrator is responsible for providing the services specified in the applicable Request for Proposals. The administrator is responsible for negotiating contracts with health service providers like hospitals, physicians, and pharmacies. Under the agreements with Blue

Page 5

Cross, the administrator pays claims for medical benefits from a state account designated for that purpose. Under two of the agreements, the administrator issues checks from its own account and is reimbursed through an Automatic Clearing House process. Under another agreement, the administrator issues checks from its own account and is reimbursed by the State by wire transfer payments. Thus, the administrator, effectively, does not pay the claims from its own funds. Under each agreement, the administrator is paid a flat monthly fee per plan member per month.

Each agreement also includes a "risk sharing" provision. This provision generally applies if actual per member per month claims under the plan are greater or smaller than the "target incurred" per member per month claims figure either established through the initial Request for Proposal process, or negotiated for contract extension periods. If actual claims are lower than the target, outside a "risk free corridor" established in the agreement, the State must pay the administrator a percentage of the difference, up to a maximum figure. If actual claims are higher than the target, outside the "risk free corridor," the administrator must pay the State a percentage of the excess, up to a maximum figure. The administrator, therefore, has a financial incentive to ensure that claims remain within the "risk free corridor" while providing benefits within the terms of the Plan Document. Under the recent contracts, the amount for which the administrator may be liable under the shared risk provision may represent a sizeable portion of administrative fees, but is relatively small compared to overall claims and administrative costs of the State Plans. The administrators, therefore, assume no risk for payment of claims, but do receive lower net compensation if claims exceed target figures agreed on between the parties.

The request addresses one benefit component of the State Plans. Effective in 2004, each benefit option under the State Plans contains a mail order benefit. Draft committee minutes indicate they adopted the benefit on the recommendation of staff members and after discussing it at their meeting July 31, 2003. The program will allow members to receive up to a ninety to 102-day supply of certain drugs for a single co-payment. We will refer to this option as the "Quantity Discount." But members will not be able to receive the Quantity Discount from a retail pharmacy unless the pharmacy has agreed to the same terms and conditions of the home delivery program. A member may still purchase maintenance drugs at retail pharmacies but must pay a co-payment for each thirty-day supply. Material describing the State Plans for 2004 indicates that no retail pharmacies agreed to supply maintenance drugs on the same terms and conditions as the home delivery pharmacies. Discussion with state officials indicates that it is not entirely clear whether retail pharmacies were, in fact, offered an opportunity to offer the Quantity Discount on the same terms and conditions as the mail-order pharmacies. At any rate, the Quantity Discount is currently available only if members purchase maintenance drugs from a mail-order pharmacy. As a result, members have a financial incentive to purchase maintenance drugs from the mail-order pharmacies rather than from retail pharmacies.

The first question concerns Tenn. Code Ann. § 56-7-2359, sometimes referred to as the "any willing pharmacy" statute. This statute provides in relevant part:

> (a) No *health insurance issuer and no managed health insurance issuer* may:
>
> (1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan *on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan;* provided, that nothing herein shall prohibit a managed health insurance issuer or health insurance issuer from establishing rates or fees that may be higher in non-urban areas, or in specific instances where a managed health insurance issuer or health insurance issuer determines it necessary to contract with a particular provider in order to meet network adequacy standards or patient care needs.
>
> (2) Prevent any person who is a party to or beneficiary of any policy, contract or plan from selecting a licensed pharmacy of such person's choice to furnish the pharmaceutical services offered under any contract, policy or plan; provided the pharmacy is a participating provider *under the same terms and conditions of the contract, policy or plan as those offered any other provider of pharmacy services;*
>
> \* \* \* \*
>
> (d) The term "managed health insurance issuer" has the same meaning as such term is defined in § 56-32-228(a).
>
> (e) *Each health insurance issuer or managed health insurance issuer* shall apply the same coinsurance, co-payment, deductible and quantity limit factors within the same employee group and other plan-sponsored group to all drug prescriptions filled by any licensed pharmacy provider, whether by a retail provider or a mail service provider; *provided, that all pharmacy providers comply with the same terms and conditions*. Nothing in this section shall be construed to prohibit the health insurance issuer or managed health insurance issuer from applying different co-insurance, co-payment, and deductible factors within the same employer group and other plan-sponsored group between generic and brand-name drugs nor prohibit an employer or other plan-sponsored group from offering multiple options or choices of health insurance benefit plans including, but not limited to, cafeteria benefit plans.

(Emphasis added). The any willing pharmacy statute was first enacted in 1998 as part of the "Consumer Health Care Advocacy Act," 1998 Tenn. Pub. Acts Ch. 1033. That act is now codified in several different parts of Title 56.

The first question is to which party — the insurance committees or the administrators — development of the Quantity Discount should be attributed. This issue is important because, as

Page 7

written, the statute prohibits certain actions by a "health insurance issuer" or a "managed health insurance issuer." As discussed below, we think the statute cannot reasonably be interpreted to apply to the state insurance committees, who, in this instance and under their statutory authority, set the benefits for a self-funded health benefit program for public employees. Further, based on the facts discussed above, the Quantity Discount was developed and adopted by the state insurance committees, and by its terms was limited to mail-order pharmacies. Any restriction on the pharmacies permitted to participate in the benefit, therefore, is attributable to the state insurance committees, and not the plan administrators. Since the "any willing pharmacy" statute does not apply to the committees, their development of the benefit did not violate the statute.

      i.      Health Insurance Issuer

First, Tenn. Code Ann. § 56-7-2359 applies to "health insurance issuers." The statute contains no definition of this term. The 1998 law contained no separate definition of the term. The section as enacted in 1998 used the term "health insurance issuer" and "managed health insurance issuer" interchangeably. 1998 Tenn. Pub. Acts Ch. 1033. 2001 amendments to the statute clarified that the act applies to both types of entities. At the same time, sponsors of the amendments noted that the Department of Commerce and Insurance used the two terms interchangeably. (Senate Commerce Committee, April 18, 2001, remarks of Sen. McNally). It is, therefore, not clear that the term was ever intended to have a meaning different from "managed health insurer."

The term "health insurance issuer" is explicitly defined in Tenn. Code Ann. §§ 56-7-2801, *et seq.*, the "Health Insurance Portability, Availability and Renewability Act," passed in 1997. 1997 Tenn. Pub. Acts Ch. 157. As used in that act, however, the term "health insurance issuer" was not meant to include an employee health benefit plan like the State Plans. The act contains the following definition:

> "Health insurance issuer" means an entity subject to the insurance laws of this state, or subject to the jurisdiction of the commissioner, *that contracts or offers to contract to provide health insurance coverage*, including but not limited to, an insurance company, a health maintenance organization and a nonprofit hospital and medical service corporation. *"Health insurance issuer" does not include a group plan.*

Tenn. Code Ann. § 56-7-2802(16) (emphasis added). "Health insurance coverage" means benefits consisting of medical care (provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care) under any policy, certificate, or agreement *offered by* a health insurance issuer. Tenn. Code Ann. § 56-7-2802(15). (Emphasis added). "Group health plan" means:

> . . . an employee welfare benefit plan (as defined in ERISA, § 3(1)) to the extent that the plan provides medical care and including items

Page 8

> and services paid for as medical care to employees or their dependents (as defined under the terms of the plan) directly or through insurance, reimbursement, or otherwise. A program under which creditable coverage is provided shall be treated as a group health plan for the purposes of applying this part;

Tenn. Code Ann. § 56-7-2802(14). This Office does not, typically, issue opinions on federal law, and the discussion that follows is not meant to be authoritative. Because the state health insurance laws frequently refer to ERISA for different purposes, however, it is necessary to address the scope of the federal laws to interpret applicable state laws.

The term "employee welfare benefit plan" is defined in 29 U.S.C. § 1002 broadly to include "any plan, fund, or program which was . . . established or maintained by an employer or an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . .." 29 U.S.C. § 1002(1). An employee welfare benefit plan subject to ERISA (the "Employee Retirement Income Security Act") generally includes both insured and self-funded employee benefit plans. Other parts of the state statute indicate that a self-funded governmental plan like the State Plans is a "group health plan" and, therefore, not a "health insurance issuer" as the statute defines the term. In Tenn. Code Ann. § 56-7-2807(a)(1)(A), for example, the statute provides that:

> [t]he requirements of this part shall apply with respect to *group health plan*s only:
> (A) Subject to subdivision (a)(2), in the case of a plan that is a *nonfederal governmental plan*[.]

(Emphasis added). The act defines "governmental plan" as follows:

> "Governmental plan" has the meaning given such term under ERISA, § 3(32), and any federal governmental plan[.]

Tenn. Code Ann. § 56-7-2802(12). ERISA defines "governmental plan" in part:

> The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.

29 U.S.C. § 1002(32). The state employees' plan falls within this definition. It appears, further, that federal courts have applied this definition broadly to include a plan established by a state legislature for employees of the state, its agencies, and its political subdivisions. *See, e.g., Cliburn v. Police Jury Association of Louisiana, Inc.,* 982 F.Supp. 386 (M.D.La. 1997) (the Louisiana Parochial

Employees Retirement System was a "governmental plan" under ERISA even though it covered some non-governmental employees, relying on *Hightower Texas Hosp. Ass'n.*, 65 F.3d 443 (5th Cir. 1995), *reh'g denied,* 73 F.3d 43 (5th Cir. 1996)). Since all the State Plans were established by the General Assembly for employees of the State or political subdivisions, we think a court would conclude that all of the State Plans are governmental plans within the meaning of 29 U.S.C. § 1002(32). We think it can reasonably be concluded, therefore, that the term "health insurance issuer," while not defined in the statute or the public act of which it was a part, does not include the state insurance committees.

      ii.      Managed Health Insurance Issuer

When the "any willing pharmacy" statute was amended in 2001, it expressly provided that the term "managed health insurance issuer" has the same meaning as the definition of the term in Tenn. Code Ann. § 56-32-228(a). This statute was part of 1998 Tenn. Pub. Acts Ch. 1033. Tenn. Code Ann. § 56-32-228(a) defines "managed health insurance issuer" as follows:

> (a) As used in this section "managed health insurance issuer" means an entity that:
> (1) Offers health insurance coverage or benefits under a contract that restricts reimbursement for covered services to a defined network of providers; ***and***
> (2) Is regulated under this title or *is an entity that accepts the financial risks associated with the provision of health care services by persons who do not own or control, or who are not employed by, such entity.*

(Emphasis added). Arguably, this definition could include the state committees offering enrollees in the State Plans self-funded health care benefits and contractually restricting reimbursement for covered services to network health care providers. But other parts of the statute clarify that the term "managed health insurance issuer" ("MHII") was intended to include entities in the business of providing insurance, not entities like the committees offering self-funded plans to state, local, and local education employees. For instance, in Tenn Code Ann. § 56-32-228(b)(2), the MHII clearly is identified as an entity *other than* an employer offering a self-funded plan, because it says, "the obligation of a managed health insurance issuer to make the offer described in this section may be satisfied by the *managed health insurance issuer providing to the employer or other plan sponsor* presentation materials for dissemination to employees or principal enrollees." (Emphasis added). Similarly, Tenn. Code Ann. § 56-32-228(b)(1) states in part that "[e]very managed health insurance issuer shall offer, *or contract with another carrier to offer,* an additional [point-of-service] benefit . . .." (Emphasis added). Here, an MHII is regarded as a type of "carrier," a colloquial term associated with a company in the business of offering insurance. The focus is on controlling entities that are in business to sell contracts and plans of insurance and the described managed care risk contracts in Tenn. Code Ann. § 56-32-228(a), not on self-funded plans offered by an employer or governmental entity, like the State Plans.

Page 10

Legislative history of the 1998 act supports this interpretation. The act contains no mention of self-insured plans, and sponsors acknowledged that it did not attempt to regulate employee plans because, under ERISA, state regulation would be preempted. At the same time, legislative history indicates that legislators did think the act would apply to the State Plans. During a House session April 28, 1998, the sponsor of the bill was asked how many consumers would benefit from the bill. Rep. McDaniel replied in part:

> *Self-insured programs are under ERISA*, and of course there's nothing we can do in the State of Tennessee to change that. We have no control over that, and it does narrow down the numbers, but we have no control over ERISA anyway.

House Session April 28, 1998, (remarks of Rep. McDaniel).

During a Senate Session, Sen. Graves made the following statement in response to the same question:

> I can't give you an exact number. I will tell you that the only people who are totally exempted from this legislation are those who are regulated by ERISA. ERISA plans are regulated by the federal government, and we cannot pass state law to impact ERISA. And the POS option, and I think that's probably where the major confusion has been, *all state plans are regulated under the POS option,* TennCare is exempted because it is against the grain and probably unconstitutional to say you have to be on public assistance but then you can also pay out of your own pocket to go where you want to go. Farm Bureau already offers a point of service option. We did allow small business because of an overwhelming concern for our small business folks that we not pass a regulation that puts a hardship on them. If they believe that the point of service option, only the point of service option is a hardship on them, they may submit in writing to opt out of that service option.

Senate Session April 29, 1998 (remarks of Sen. Graves) (emphasis added). The italicized language refers to a requirement in another part of the 1998 act that a managed health insurance issuer provide a point of service option in addition to an HMO. In fact, the State Plans do offer a point of service option, although at the present time it does not cover the whole State. We do not think Senator Graves' statement, however, is sufficient to include the state insurance committees within the definition of "managed health insurance issuer." The State Plans are administered by entities regulated under the insurance laws. In some instances, these entities may be "managed health insurance issuers" whose actions are subject to the provisions of the statutes. But we do not think, under a reasonable interpretation of the statute, that Tenn. Code Ann. § 56-7-2359 can be interpreted to apply to the insurance committees when defining the benefits for the State Plans.

Page 11

Other provisions of the insurance statutes governing health plans support this conclusion. Different provisions of Tenn. Code Ann. §§ 56-7-2301, *et seq.,* of which the "any willing pharmacy" statute is a part, apply to different categories of health plans and regulated entities. Only one or two of these statutes, however, contain language that would explicitly include the State Plans. For example, Tenn. Code Ann. § 56-7-2355 addresses coverage of emergency services for health benefit plans. The definition of "health benefit plan" explicitly includes "other plans administered by the state government[.]" Tenn. Code Ann. § 56-7-2355(3). Similarly, Tenn. Code Ann. § 56-7-2361 requires various entities to issue a pharmacy benefit identification card to individuals insured under the program. The statute expressly includes, "health maintenance organizations, third party administrators for self-insured plans and state administered plans[.]" Tenn. Code Ann. § 56-7-2363 requires various types of health plans or issuers to provide optional coverage for colorectal cancer examinations and laboratory tests beginning in 2004. The statute includes, "all self-insured group arrangements to the extent not preempted by federal law[.]" Since governmental plans are exempted from ERISA regulation, state regulation of these plans is not preempted by federal law. 29 U.S.C. § 1003(b)(1). The statute, therefore, includes the State Plans. By contrast, however, the "any willing pharmacy" statute nowhere mentions either state or local governmental entities. Statutes do not apply to the State or its political subdivisions absent an express or necessarily implied intent. *Keeble v. City of Alcoa*, 204 Tenn. 286, 319 S.W.2d 249 (1959) (city); *Mayhew v. Wilder*, 46 S.W.3d 760, 769 (Tenn.Ct.App. 2001), *p.t.a. denied* (2001) (State); *Harrison Construction Co. v. Gibson Co. Board of Education*, 642 S.W.2d 148 (Tenn.Ct.App. 1982) (county school board). For all these reasons, the "any willing pharmacy" statute cannot reasonably be interpreted to apply to the state committees when they are setting the benefits for the State Plans.

Because of our answer to Question 1.a, Question 1.b is moot.

2. State Health Plan: Compliance with Tenn. Code Ann. § 56-7-117

The next question is whether the state health plan, by providing the drug benefits described above, violates Tenn. Code Ann. § 56-7-117. That statute provides:

> (a) No group medical benefit contract *issued by an insurance company, a hospital service corporation, a hospital and medical service corporation, a medical service corporation, a health maintenance organization or a health care center,* which provides coverage for prescription drugs, may require any person covered under such contract to obtain prescription drugs from a mail-order pharmacy in order to obtain benefits for such drugs, or to pay an additional fee or be subjected to any other penalty for failing to utilize any mail-order pharmacy designated by the insurance company or other issuing organization.
>
> (b) The commissioner is authorized to promulgate regulations to implement and enforce the provisions of this section.

(Emphasis added). We have found no definition of the term "group medical benefit contract" in state statutes. By its terms, however, this statute explicitly applies to a list of entities that are defined and regulated under various provisions of the Tennessee statutes: insurance companies, Tenn. Code Ann. §§ 56-2-101, *et seq.*; hospital service corporations, Tenn. Code Ann. §§ 56-28-101, *et seq;* hospital and medical service corporations, Tenn. Code Ann. §§ 56-29-101, *et seq.*; medical service corporations,[1] Tenn. Code Ann. §§ 56-27-101, *et seq.;* health maintenance organizations, Tenn. Code Ann. §§ 56-32-101, *et seq.*; and health care centers, Tenn. Code Ann. §§ 68-1-701, *et seq.*[2] Since the state insurance committees do not fall within any of these statutes, they are not subject to Tenn. Code Ann. § 56-7-117 when defining benefits for the State Plans.

### 3. Local Governmental Plans

Finally, you ask whether an employee health plan established by the City of Memphis or any other local government that requires participants to obtain maintenance medication from a mail order pharmacy violates either Tenn. Code Ann. § 56-7-117 or Tenn. Code Ann. § 56-7-2359. A definitive answer to this question would depend on the facts and circumstances, especially the structure of the plan and the origin of the restriction. But, for the reasons discussed in Question 1, we do not think Tenn. Code Ann. § 56-7-2359 applies to a local governmental entity defining benefits to be offered under its self-funded employee health plan. Similarly, for the reasons discussed in Question 2, we do not think Tenn. Code Ann. § 56-7-117 applies to a local governmental entity defining benefits to be offered under its self-funded employee health plan.

PAUL G. SUMMERS
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

---

[1] This statute regulates "medical service plan corporations" other parts of the statute refer to as medical service corporations.

[2] This statute governs the establishment of "primary health care centers." The term "health care center" is not defined in Tennessee statutes.

                                                  ANN LOUISE VIX  
                                                  Senior Counsel

Requested by:

    Honorable James W. White  
    Executive Director, Fiscal Review Committee  
    G-19 War Memorial Building  
    Nashville, TN 37243-0057