# EXHIBIT E

# DEPOSITION OF VICKIE TRICE

# EXCERPTS AND EXHIBITS

# MCKEE FOODS CORPORATION

## vs.

## BFP INC., et al.

---

## VICKIE TRICE

## November 21, 2024

---

## Checuga Reporting, Inc.

## (615)499-9320

## scheduling@checugareporting.com

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF TENNESSEE
2                 AT CHATTANOOGA
   _____
3
   MCKEE FOODS CORPORATION,
4
                Plaintiff,
5
   vs.                        Case No. 1:21-CV-00279
6
   BFP INC. d/b/a THRIFTY MED PLUS
7  PHARMACY, STATE OF TENNESSEE,
   And CARTER LAWRENCE in his Official
8  Capacity as COMMISSIONER OF THE
   TENNESSEE DEPARTMENT OF
9  COMMERCE AND INSURANCE,
10                Defendants.
   _____
11
12
13
14
15          Video Deposition of:

16          VICKIE TRICE

17          Taken on behalf of the Plaintiff
            November 21, 2024
18
            Commencing at 9:04 a.m. CST
19
20
21
22
   _____
23
               Checuga Reporting, Inc.
24            Michelle Cessna, LCR, RPR
             michelle@checugareporting.com
25                  (615)499-9320

```
 1              A P P E A R A N C E S

 2

 3   For the Plaintiff:

 4        MR. WILLIAM H. PICKERING
          Attorney at Law
 5        Chambliss, Bahner & Stophel, P.C.
          605 Chestnut Street
 6        Chattanooga, TN 37450
          (423)756-3000
 7        wpickering@chamblisslaw.com

 8        MR. MARK E. SCHMIDTKE
          Attorney at Law
 9        Ogletree, Deakins, Nash,
            Smoak & Stewart, P.C.
10        56 South Washington Street, Suite 302
          Valparaiso, IN 46383
11        (219)242-8668
          mark.schmidtke@ogletree.com
12

13
     For the Defendants:
14
          MR. MICHAEL N. WENNERLUND
15        Assistant Attorney General
          State of Tennessee Financial Division
16        P.O. Box 20207
          Nashville, TN 37202-0207
17        (615)741-8950
          michael.wennerlund@ag.tn.gov
18
          MR. WILL KERBY
19        MR. ELLIOTT WEBB
          Attorneys at Law
20        Department of Commerce and Insurance
          500 James Robertson Parkway
21        Nashville, TN 37243
          (615)741-2241
22        will.kerby@tn.gov
          elliott.webb@tn.gov
23

24   Also present:

25        MS. JENNY CHECUGA - Videographer
```

```
 1                    *    *    *
 2              VICKIE TRICE,
 3   was called as a witness, and having first been
 4   duly sworn, testified as follows:
 5
 6                  EXAMINATION
 7   QUESTIONS BY MR. PICKERING:
 8   Q.    Please state your full name for the
 9   record.
10   A.    My name is Vickie Yvonne Trice.
11   Q.    Ms. Trice, my name is Bill Pickering, we
12   met briefly before the deposition.  Thank you
13   for coming here today.
14   A.    Sure.
15   Q.    I'll be asking a number of questions
16   about the case that we have going.  I represent
17   McKee Foods, the Plaintiff in the case.  The
18   Defendants are Thrifty MedPlus Pharmacy and
19   currently the Commissioner of the Department of
20   Commerce and Insurance.
21         Have you ever had your deposition taken
22   before?
23   A.    I have not.
24   Q.    So you're in for a treat.
25         I'll be asking you a number of questions
```

```
1    else was on the -- oh, Jud Jones was on one of
2    the e-mails, as well.
3    Q.    And I've seen the name of a Ms. Caro on
4    some of the e-mails?
5    A.    Marina is one of my employees.
6    Q.    Okay.
7    A.    She reports to my manager.
8    Q.    Okay.  It might be helpful at this time
9    just for you to tell me what your position is.
10   I assume you're employed with the Tennessee
11   Department of Commerce and Insurance?
12   A.    I am.
13   Q.    What is your current position?
14   A.    I'm director of the Consumer Insurance
15   Services area.
16   Q.    How long have you held that position?
17   A.    I will 18 years in January.
18   Q.    Wow, very good.
19         Who currently reports to you?
20   A.    I have a manager named Michael Barber
21   that reports to me.  And then I have an
22   administrative assistant that reports directly
23   to me.  The other employees report to the
24   manager, Michael Barber.
25   Q.    Okay.  And his title is --
```

```
 1    A.    I guess I'm -- can you clarify
 2    "materials"?
 3    Q.    Right.  Anything that you were sent
 4    electronically on a computer or any information
 5    handouts --
 6    A.    No.
 7    Q.    -- guidelines --
 8    A.    No.
 9    Q.    -- anything like that?
10    A.    No.
11    Q.    All right.  Anything else that you were
12    provided during that time period in connection
13    with this law?
14    A.    No.
15    Q.    So at some point were you informed that
16    your division would have some responsibility
17    for administering this law?
18    A.    Yes.
19    Q.    And tell me about that.
20    A.    I think we were in a director meeting and
21    the topic came up, and so we were -- I was made
22    aware that we would probably start receiving
23    complaints in relation to the new passage of
24    the law.
25    Q.    Okay.  Who else would have been present
```

```
 1   school.  I took some classes at Nashville State
 2   for a couple of years, but I did not stay to
 3   receive a degree.
 4   Q.    All right.  What kind of classes did you
 5   take?
 6   A.    I started out with some basic math and
 7   English classes there, I believe.
 8   Q.    And so we've talked about the Division of
 9   Consumer Services and your employment in that
10   division.
11         What does that division do?
12   A.    We mediate complaints for the entire
13   state of Tennessee and we provide education to
14   the residents of Tennessee.
15   Q.    What kinds of complaints do you currently
16   mediate?
17   A.    Any insurance-related complaint that
18   comes to us, we attempt to mediate that.
19   Q.    And would these all be what you call
20   consumer complaints, complaints from
21   individuals?
22   A.    Yes.  We -- we mediate complaints from
23   providers, consumers.  But the majority of our
24   complaints are consumer complaints.
25   Q.    And I believe you indicated after Public
```

| 1 | Chapter 569 became effective, you became |
| 2 | involved in the administration of complaints |
| 3 | filed under that statute? |
| 4 | A.    Yes. |
| 5 | Q.    And do you still do that? |
| 6 | A.    No. |
| 7 | Q.    When did that change? |
| 8 | A.    That changed when the PBM Department was |
| 9 | put into place here. |
| 10 | Q.    Okay.  When Mr. -- basically when |
| 11 | Mr. Jones was hired? |
| 12 | A.    Yes. |
| 13 | Q.    And I believe he was hired in early |
| 14 | February of 2023.  Does that sound correct to |
| 15 | you? |
| 16 | A.    I think so. |
| 17 | Q.    So if you don't mind, just think back and |
| 18 | tell me in as much detail as you can what you |
| 19 | recall about your division's role and your role |
| 20 | in the administration of complaints under |
| 21 | Public Chapter 569. |
| 22 | A.    So our complaint process is pretty basic. |
| 23 | We have a complaint form that the -- the |
| 24 | general public fills out, and the complaint |
| 25 | form comes in and gets assigned a tracking |

1    that the PBM or the covered entity had not

2    violated the law?

3    A.    None that I can recall.

4    Q.    In receiving responses to these

5    complaints from PBMs, did they often say that

6    your department has no jurisdiction because of

7    the Employed Retirement Income Security Act of

8    1974?

9    A.    Yes.

10   Q.    That being ERISA?

11   A.    Yes.

12   Q.    And did you receive a fair number of

13   those?

14   A.    Yes.

15   Q.    So what would happen when you received

16   that type of response?

17   A.    In most situations, I think those would

18   be transferred to Legal because -- but I can't

19   speak for every single complaint.

20   Q.    Right.

21   A.    Because I don't -- I don't handle them or

22   review them.  But I'm thinking that in most of

23   those types of situations they would probably

24   be transferred to Legal.

25   Q.    And were there any that you recall in

```
 1   which either you or the investigators who were

 2   responsible for handling these complaints

 3   determined that your office had no jurisdiction

 4   because of ERISA?

 5   A.    Yes.

 6   Q.    And tell me about that.  How would you

 7   make that determination or why would you make

 8   that determination?

 9   A.    Because from our -- my understanding and

10   our understanding of ERISA, the self-funded

11   plans are the employer plans.  And we -- my

12   area doesn't have any jurisdiction over the

13   ERISA plans.

14   Q.    Okay.  And would that be because federal

15   law takes precedence over the state law?

16         MR. WENNERLUND:  Objection, form.

17   BY MR. PICKERING:

18   Q.    You may answer.

19   A.    Yes.

20   Q.    Okay.  Do you recall roughly -- and,

21   again, an approximation is perfectly fine.

22         Do you recall roughly how many complaints

23   on which you made determinations that your

24   office lacked jurisdiction because of ERISA?

25   A.    I cannot recall that.
```

```
1   Q.    Was it several?

2   A.    Possibly.  Like I said, I -- I can't

3   recall.

4   Q.    After -- or right before Public Chapter

5   569 went into effect and then maybe in the --

6   the period shortly after that, were there any

7   additional meetings, discussions,

8   conversations, information provided to you

9   about what your division's role would be in the

10  administration of these complaints?

11  A.    No, not that I can recall.

12  Q.    The meeting that you referenced that the

13  directors attended before the Public Chapter

14  569 was coming down the pike, was there any

15  documentation related to that meeting either

16  before or after?

17  A.    No.

18  Q.    Were you or the folks working under you

19  in the investigation of complaints under Public

20  Chapter 569 provided any information or

21  guidance regarding the potential effect of

22  ERISA on these complaints?

23  A.    No.

24  Q.    So in the instances in which you or your

25  investigators made a determination that you
```

```
 1   didn't have jurisdiction because of ERISA, was
 2   that based upon your own understanding of the
 3   fact that ERISA preempted the state law?
 4   A.    Yes.
 5            MR. PICKERING:  So if we could hand
 6   the witness Exhibit 8 to Mr. Jones's
 7   deposition.
 8            MR. WENNERLUND:  This is Exhibit 8
 9   from yesterday, Bill?
10            MR. PICKERING:  Correct, Exhibit 8
11   from Mr. Jones's deposition yesterday.
12            MR. WENNERLUND:  Okay.
13            (WHEREUPON, a document was previously
14   marked as Jones Exhibit Number 8.)
15   BY MR. PICKERING:
16   Q.    And this is a Department of Commerce and
17   Insurance bulletin number 21-01 sent to all
18   pharmacy benefits managers dated July 8, 2021,
19   from Commissioner Lawrence.
20        Are you familiar with this particular
21   bulletin?
22   A.    I am.
23   Q.    Okay.  And was this provided to you at
24   about the same time that it was issued in July
25   of 2021?
```

```
 1   A.    (Witness nods head.)

 2   Q.    Okay.  And who advised you that that was

 3   an error?

 4   A.    I think that situation came in when -- I

 5   believe when Jud was here.  And we had done

 6   some of those and closed them as no

 7   jurisdiction.  And one of the pharm -- yeah,

 8   one of the pharmacists that reached out to Jud

 9   concerning that issue.

10   Q.    All right.  And was that pharmacist

11   Thrifty Med, the Bohannons?

12   A.    I don't recall.  Actually, I don't think

13   so.

14   Q.    Okay.  Do you recall who it would have

15   been?

16   A.    No.  I think that was one of the e-mails

17   that I just recently had.

18   Q.    Okay.  And we'll actually get to that a

19   little bit later, so that's fine.

20         But before Mr. Jones assumed his role and

21   you had some interaction with him in early

22   February of 2023, it was your belief that ERISA

23   did preempt the state law --

24   A.    Yes.

25   Q.    -- and that you lacked jurisdiction; is
```

```
1    that correct?

2    A.    Yes.

3    Q.    And you at the time were the head of the

4    division responsible for administering these

5    complaints under Public Chapter 569, correct?

6    A.    Yes.

7    Q.    Okay.  If you could hand that to the

8    court reporter, please.

9          In your division's role in administering

10   Public Chapter 569, focussing mostly on the

11   second half of 2021.

12   A.    Uh-huh.

13   Q.    Did you receive complaints from a

14   pharmacy in Chattanooga called Thrifty Med?

15   A.    Yes.

16   Q.    And tell me what you recall -- did you

17   have much interaction with Greg and Julie

18   Bohannon, who are the owners of Thrifty Med?

19   A.    I did have some interaction with Greg and

20   I actually think I may have had some e-mails

21   with Julie as well or she was included on some

22   of the correspondence.

23   Q.    Were your interactions all by e-mails or

24   did you have conversations with them as well?

25   A.    I don't recall.  I know there were
```

1   Q.    Is it your understanding that Thrifty Med

2   had been removed from the McKee plan?

3   A.    I don't recall.

4   Q.    Do you have any understanding as to why

5   Thrifty Med at this point in time was not in

6   the McKee plan?

7   A.    No.

8           MR. PICKERING:  This will be Exhibit

9   1 to Ms. Trice's deposition.

10          (WHEREUPON, a document was marked as

11  Exhibit Number 1.)

12  BY MR. PICKERING:

13  Q.    Ms. Trice, you've been handed what we've

14  marked as Exhibit 1 to your deposition.  There

15  are numbers at the bottom, and this is

16  something that we lawyers do, and I just need

17  to state the numbers for the record to help us

18  locate these documents later on.  All of these

19  documents will begin with McKee underscore ESI

20  hyphen then several zeros and then some

21  numerals at the end, and I'm just going to

22  reference the numerals with everyone's

23  permission.

24          And so this is -- we call it Bates number

25  332, that was just the last three numbers on

```
 1    the first -- at the bottom of the first page,
 2    as you'll see.  Don't worry about these, these
 3    are just for the record and for the lawyers
 4    here.
 5          But this appears to be some e-mail
 6    exchanges between you and Scott McAnally around
 7    the 1st of October of 2021; is that correct?
 8    A.    Yes.
 9    Q.    And do these e-mails pertain to a
10    complaint submitted to your office or to the
11    Department of Commerce and Insurance by Thrifty
12    Med Pharmacy in Chattanooga?
13    A.    Yes.
14    Q.    So let's just maybe work backwards here.
15    If you would go to the next to the last page --
16    I'm sorry, three pages from the back.  The last
17    page is inconsequential.  But three page from
18    the end at the bottom there's an e-mail from
19    Julie Bohannon to you dated September 28, 2021.
20    Do you see that?
21    A.    Uh-huh.
22    Q.    And please say "yes" or "no".
23    A.    Yes.
24    Q.    Okay.  And said, Ms. Trice, please see
25    response below that our pharmacy received from
```

```
 1   MedImpact.
 2        Did you understand MedImpact to be the
 3   PBM for McKee Foods?
 4   A.    Yes.
 5   Q.    And then the response below is on the
 6   next page, and I'm not going to read it in its
 7   entirety.  But the response below from
 8   Ms. Jeanine Robertson at MedImpact says in the
 9   second paragraph, As you know, self-funded
10   ERISA plans like -- like McKee have never have
11   been subject to Tennessee Code Section
12   56-7-2359.
13        Do you see that?
14   A.    Uh-huh.
15   Q.    Please say "yes" or "no"?
16   A.    Yes.
17   Q.    And 2359, that's the same statute we
18   referred to just a few minutes ago, correct?
19   A.    Yes.
20   Q.    And then in the next -- go back to the
21   e-mail from Ms. Bohannon to you on September
22   the 8th -- 28th, rather.  Second sentence she
23   says, "Additionally, I have included a copy of
24   the bulletin that was sent out back in July
25   addressing this issue."
```

1      Do you see that?

2   A.    Yes.

3   Q.    And is that the bulletin that we were

4   referring to just a few minutes ago that was --

5   A.    Yes.

6   Q.    -- the exhibit to Mr. Jones's deposition?

7      Okay.  So she sent that to you, correct?

8   A.    Yes.

9   Q.    And then she asked, Has anything changed?

10  If not, can you please provide guidance on how

11  we should proceed.

12     Correct, that's what she said?

13  A.    Yes.

14  Q.    And then you have some exchanges with

15  Mr. Huddleston and Mr. McAnally.  And I'm

16  referring here to your e-mail to Mr. Huddleston

17  and Mr. McAnally dated October 1, 2021, at

18  8:36 a.m., Good morning.  You say, I thought

19  ERISA plans had similar Any Willing Provider --

20  had a similar Any Willing Provider law in

21  place.  Does anyone know?

22     Now, what did -- what did you mean by

23  that?

24  A.    I was asking if the ERISA plans had a law

25  similar to the state law concerning the Any

```
 1   correct?

 2   A.    Yes.

 3   Q.    And at the time that bulletin had already

 4   been posted?

 5   A.    Yes.

 6   Q.    You already read that bulletin --

 7   A.    Yes.

 8   Q.    -- correct?

 9   A.    Yes.

10   Q.    And so just continuing on to the first

11   page of the exhibit, Mr. McAnally gets back to

12   you same day, October 1st at 1:55 p.m.  He says

13   maybe about a third of the way down of this

14   e-mail, "I have not seen Mr. Bohannon's

15   original complaint, only his brief e-mail

16   below, but if he's citing the passage --

17   passages of the Public Chapter 569 from this

18   year on allowing customers to choose contracted

19   pharmacies, I would read that as a benefit

20   design issue."

21         Correct?

22   A.    That's what his e-mail says.

23   Q.    And did you understand at the time that

24   if something was a benefit design issue that

25   it, in fact, was preempt?
```

```
1   A.    No.
2   Q.    And so when you read this reference to a
3   benefit design issue, what did you understand
4   that to be?
5   A.    The employer that designed the -- the
6   plan.  The benefit of the plan.
7   Q.    Okay.
8         And so did you understand the providers
9   that the employer would authorize in the plan,
10  did you understand that to be part of the
11  benefit design?
12  A.    No.
13  Q.    And do you have any understanding one way
14  or the other about that?
15  A.    Not really, no.
16  Q.    Okay.  And so, again, Mr. McAnally says,
17  I would read that -- the allowing customers to
18  choose contracted pharmacies -- he said, I
19  would read that as a benefit design issue so
20  you are correct, PC 569 cites the Any Willing
21  Pharmacy law, but I don't read it as creating a
22  new Any Willing Pharmacy law for ERISA plans.
23        Do you see that?
24  A.    Yes.
25  Q.    And that was Mr. McAnally's opinion at
```

```
 1   the time?

 2   A.    Yes.

 3   Q.    And do you consider him to be a

 4   knowledgeable person?

 5   A.    I do.

 6   Q.    And then very top e-mail on the page you

 7   thanked him.  We'll just leave it at that, you

 8   thanked him for his response, correct?

 9   A.    Yes.

10   Q.    At any time did you ever get back to

11   Mr. McAnally and tell him you believe that he

12   was incorrect in his response and comments in

13   these e-mails?

14   A.    No.

15   Q.    Did he ever communicate to you that he

16   felt he was incorrect in what he told you

17   essentially saying this was a benefit design

18   issue and that therefore ERISA would preempt

19   the law?

20   A.    Not that I can recall.

21         (WHEREUPON, a document was marked as

22   Exhibit Number 2.)

23   BY MR. PICKERING:

24   Q.    So Ms. Trice, you've been handed what

25   we've marked as Exhibit 2 to your deposition,
```

```
 1   Q.    Okay.  Now, this --

 2   A.    They were not exempt.

 3   Q.    This is dated October 27, 2021.  The

 4   e-mail exchange that we were just referring to

 5   between you and Mr. McAnally was October 1,

 6   2021, correct?

 7   A.    That is correct.

 8   Q.    And that's the same -- earlier in the

 9   same month, correct?

10   A.    Yes.

11   Q.    And at time this letter went out,

12   Mr. McAnally, who you consider to be a

13   knowledgeable person, had basically indicated

14   that the state law was preempted, correct?

15   A.    Yes.

16   Q.    And so this letter would be consistent

17   with what Mr. McAnally had advised you,

18   correct?

19   A.    Yes.

20   Q.    And you had reached out to Mr. McAnally

21   for advice, correct?

22   A.    Yes.

23   Q.    In the next sentence in the same

24   paragraph after saying the Department of

25   Commerce and Insurance has no jurisdiction
```

1  pertaining to a self-funded/self-insured ERISA

2  plan, Mr. Haralson goes on to say, The

3  authority for final determination involving the

4  payment or non-payment of claims rests with the

5  employer.

6       Now, that's a true statement, isn't it?

7            MR. WENNERLUND:  Objection, form.

8            THE WITNESS:  As far as I know that's

9  a true statement?

10  BY MR. PICKERING:

11  Q.    Yes.

12  A.    Yes.

13  Q.    Okay.  And so, what would determine

14  whether an investigator in your division would

15  make this type of determination of no

16  jurisdiction versus just saying mediation

17  efforts have been exhausted?

18  A.    I cannot answer that question.

19  Q.    Okay.

20  A.    Michael oversees the entire complaint

21  process and the coding of those complaints.

22  Q.    Okay.  Sorry, I should have taken better

23  notes.  Michael's last name again is?

24  A.    Barber.

25  Q.    Barber, okay.

```
 1   Department's enforcement efforts?

 2   A.     Yes.

 3   Q.     Tell me about that.

 4   A.     Just frustration that more was not being

 5   done, basically.

 6   Q.     What did they want to be done?

 7   A.     They wanted to be a network -- they

 8   wanted their -- they wanted to be a network

 9   with McKee Foods.

10   Q.     And did -- did they want -- "they" being

11   the Bohannons.  Did they want PBMs to be fined?

12   A.     Not -- not -- I don't think fines were

13   ever discussed.

14            MR. PICKERING:  Will you please hand

15   the witness Jones Exhibit 4.

16            (WHEREUPON, a document was previously

17   marked as Jones Exhibit Number 4.)

18   BY MR. PICKERING:

19   Q.     So Ms. Trice, you've been handed what was

20   marked as Exhibit 4 to Mr. Jones's deposition.

21   These are Bates numbers 3459 and 3460.  And

22   if -- this is a letter from Express Grips dated

23   February 20, 2023.  You'll see that it

24   references a file number 78036.  Is that the

25   same file number or tracking number that's in
```

1    Exhibit 3?

2    A.    Yes.

3    Q.    And does this appear to be the PBM's

4    response to this complaint submitted by Kayla

5    Copeland that was assigned file number 78036?

6    A.    Yes.

7    Q.    And so, in the second paragraph of the

8    response, this wording is a little bit

9    different from what we've seen in some of the

10   other exhibits, Express Grips says that they

11   administer prescription drug benefit plans on

12   behalf of plan sponsors.  And in this case, the

13   plan sponsor was Evonik Corporation, a

14   self-insured plan.  Do you see that?

15   A.    Yes.

16   Q.    And it goes on to say Express Grips

17   provides plan sponsors with, quote, core, end

18   quote, pharmacy services including third-party

19   claims processing, formulary administration,

20   benefit plan communications and other similar

21   activities.

22         Correct?

23   A.    Yes.

24   Q.    Is that your understanding of what a PBM

25   does?

```
 1    A.    I don't really have a full understanding
 2    of what PBMs do.
 3    Q.    Is that consistent with at least some of
 4    the things you understand that PBMs do?
 5    A.    Yes.
 6    Q.    Goes on to say in this capacity -- first
 7    of all, Express Grips, they're a PBM, right?
 8    A.    Yes.
 9    Q.    Goes on to say, "In this capacity,
10    Express Grips is not acting as a healthcare
11    provider or insurer but serves to administer
12    benefit plan designs and formularies in
13    accordance with rules provided by the plan."
14         Do you see that?
15    A.    Yes.
16    Q.    And so the plan establishes the benefits
17    and design and the PBM perform services for the
18    plan, correct?
19    A.    Yes.
20              MR. PICKERING:  So if you please hand
21    Ms. Trice Mr. Jones Exhibit Number 1.
22              (WHEREUPON, a document was previously
23    marked as Jones Exhibit Number 1.)
24    BY MR. PICKERING:
25    Q.    So Ms. Trice, you've been handed what was
```

1    marked yesterday as Exhibit Number 1 to

2    Mr. Jones's deposition, and this is Bates

3    number 3882 and 3883.  It's an e-mail on the

4    first page from Scott McAnally to Mark Faughn.

5         Do you know who Mr. Faughn is?

6    A.    Yes.

7    Q.    Who is he?

8    A.    He works for Jud Jones.

9    Q.    All right.  And so if you look at the

10   second page of this Exhibit Number 1, you will

11   see a letter from CVS Caremark fairly recent at

12   the time dated February 7, 2023.  Second

13   paragraph advises that the Commercial Vehicle

14   Group, Inc.

15        Did you understand that to be the

16   employer?

17   A.    I would assume so.  I'm just seeing this,

18   so...

19   Q.    Take your time if you need to look at it

20   further.  I'm not trying to rush you.

21   A.    (Reviews document.)

22        Okay.

23   Q.    Okay.  So he says that the Commercial

24   Vehicle Group, Inc. benefit plan is a

25   self-funded employee benefit plan that is

```
1    subject to the Employee Retirement Income
2    Security Act, ERISA.  Do you see that?
3    A.    Yes.
4    Q.    And he goes on to say, "Self-funded ERISA
5    plans are generally not subject to state law
6    particularly when the state law regulates the
7    plan design."
8         Now, you understand -- understood that to
9    be correct, didn't you?
10             MR. WENNERLUND:  Objection, form.
11             THE WITNESS:  I'm not sure how to
12   answer that.
13   BY MR. PICKERING:
14   Q.    Did you -- did you understand that if the
15   state law regulates plan design, it's
16   preemptive based on your reading of the cases?
17   A.    Yes.
18   Q.    Okay.  And so go to the first page of
19   this exhibit.  Do you see the transmittal from
20   CVS Caremark?  Those are the bottom part of
21   this first page.  Transmittal dated February 7
22   attaching the letter that is Bates number 3883,
23   basically providing Mr. McAnally with CV -- CVS
24   Caremark's response.  And it has the same file
25   number that's on the letter file number 0096.
```

```
1   A.    Not to my knowledge.

2   Q.    On the communications that went out from

3   the Department of Commerce and Insurance saying

4   that the Department had no jurisdiction over

5   ERISA plans, were any of those communications

6   ever changed or corrected, to your knowledge?

7   A.    No.

8   Q.    You've described how when these

9   ERISA-related issues would come up, often you

10  would refer those to, quote, Legal within the

11  Department of Commerce and Insurance, correct?

12  A.    Yes.

13  Q.    Did you ever communicate with anyone in

14  the Department of Commerce and Insurance about

15  the lack of response from Legal?

16  A.    With my manager.

17  Q.    All right.  Tell me --

18  A.    Michael and I.

19  Q.    Tell me about that.

20  A.    The fact that we -- we were frustrated

21  because like the one -- several of these that

22  have been shown, we weren't getting responses

23  back, so...

24  Q.    From Legal?

25  A.    Yes.
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3  STATE OF TENNESSEE

 4  COUNTY OF SUMNER

 5          I, MICHELLE CESSNA, Licensed Court Reporter,

 6  with offices in Nashville, Tennessee, hereby certify

 7  that I reported the foregoing video deposition of

 8  VICKIE TRICE by machine shorthand to the best of my

 9  skills and abilities, and thereafter the same was

10  reduced to typewritten form by me.

11          I further certify that I am not related to

12  any of the parties named herein, nor their counsel,

13  and have no interest, financial or otherwise, in the

14  outcome of the proceedings.

15          I further certify that in order for this
    document to be considered a true and correct copy, it
16  must bear my original signature and that any
    unauthorized reproduction in whole or in part and/or
17  transfer of this document is not authorized, will not
    be considered authentic, and will be in violation of
18  Tennessee Code Annotated 39-14-104, Theft of
    Services.
19

20

21

22

23          MICHELLE CESSNA, LCR, RPR
            Checuga Reporting, Inc.
24          Licensed Court Reporter (TN)

25
            LCR #864 - Expires:  6/30/2026
```

**From:** Vickie Trice <Vickie.Trice@tn.gov>
**To:** Scott McAnally <Scott.McAnally@tn.gov>, Bill Huddleston <Bill.Huddleston@tn.gov>
**Cc:** "Nikita G. Hampton" <Nikita.G.Hampton@tn.gov>
**Subject:** RE: [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)
**Date:** Fri, 01 Oct 2021 19:27:59 +0000
**Importance:** Normal
**Inline-Images:** image001.png; image002.png

Thank you Scott.
I think my brain is on overload 😊



**Vickie Trice** | Director
Consumer Insurance Services Division
Tennessee Department of Commerce and Insurance
Davy Crockett Tower
500 James Robertson Parkway, Nashville, TN 37243
P: (615) 532-5329 C: (615)-739-7015
Vickie.Trice@tn.gov
tn.gov/commerce | Facebook | Instagram | Twitter

Learn more about our other valuable resources: Verify a license | Renew a License | Speaker Request | Consumer Tools | File a Complaint

Confidentiality Notice: This email is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.

**From:** Scott McAnally <Scott.McAnally@tn.gov>
**Sent:** Friday, October 1, 2021 1:55 PM
**To:** Vickie Trice <Vickie.Trice@tn.gov>; Bill Huddleston <Bill.Huddleston@tn.gov>
**Cc:** Nikita G. Hampton <Nikita.G.Hampton@tn.gov>
**Subject:** RE: [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)

Good Afternoon Vickie,

I read MedImpact's response as stating that since McKee Foods uses an ERISA plan, they're not subject to 56-7-2359, the section that prohibits a health insurance issuer from preventing any pharmacy from joining a network if the pharmacy will accept the terms and conditions offered to other network pharmacies. I've not seen Mr. Bohannon's original complaint, only his brief email below, but if he's citing the passages of Public Chapter 569 from this year on "allowing customers to choose contracted pharmacies," I would read that as a benefit design issue. So you are correct, PC 569 cites the "any willing pharmacy" law but I don't read it as creating a new "any willing pharmacy" law for ERISA plans.

**EXHIBIT**
Trice
1/12/24 MC

Best,
Scott

**From:** Vickie Trice <Vickie.Trice@tn.gov>
**Sent:** Friday, October 1, 2021 1:46 PM
**To:** Scott McAnally <Scott.McAnally@tn.gov>; Bill Huddleston <Bill.Huddleston@tn.gov>
**Cc:** Nikita G. Hampton <Nikita.G.Hampton@tn.gov>
**Subject:** RE: [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)

Scott

So I am aware of the Rutledge case but the pharmacist is citing language from the recent legislation that speaks to allowing the consumer to choose a "contracted" pharmacy of their choice and not to be steered to another pharmacy. I think that is the issue of contention.
Thrifty Medplus is not contracted but trying to get contracted and thinking the new legislation allows them to contract at will which I don't believe was the intent.
I think the PBM is correct in their assessment of the law but just not 100% sure.

Thoughts??



**Vickie Trice** | Director
Consumer Insurance Services Division
Tennessee Department of Commerce and Insurance
Davy Crockett Tower
500 James Robertson Parkway, Nashville, TN 37243
P: (615) 532-5329 C: (615)-739-7015
Vickie.Trice@tn.gov
tn.gov/commerce| Facebook | Instagram | Twitter

Learn more about our other valuable resources: Verify a license | Renew a License | Speaker Request | Consumer Tools | File a Complaint

Confidentiality Notice: This email is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.

**From:** Scott McAnally <Scott.McAnally@tn.gov>
**Sent:** Friday, October 1, 2021 9:37 AM
**To:** Vickie Trice <Vickie.Trice@tn.gov>; Bill Huddleston <Bill.Huddleston@tn.gov>
**Cc:** Nikita G. Hampton <Nikita.G.Hampton@tn.gov>
**Subject:** RE: [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)

Good Morning Vickie,

 I am not aware of an "any willing pharmacy law" for ERISA plans. I think there are some people that read the *Rutledge* SCOTUS decision to allow state pharmacy laws and regs to apply to ERISA plans so that may be what Mr.

Bohannon is referring to.

Best,
Scott

**From:** Vickie Trice <Vickie.Trice@tn.gov>
**Sent:** Friday, October 1, 2021 8:36 AM
**To:** Bill Huddleston <Bill.Huddleston@tn.gov>; Scott McAnally <Scott.McAnally@tn.gov>
**Cc:** Nikita G. Hampton <Nikita.G.Hampton@tn.gov>
**Subject:** FW: [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)

Good morning

I thought the ERISA plans had a similar "any willing provider" law in place? Does anyone know?



**Vickie Trice** | Director
Consumer Insurance Services Division
Tennessee Department of Commerce and Insurance
Davy Crockett Tower
500 James Robertson Parkway, Nashville, TN 37243
P: (615) 532-5329 C: (615)-739-7015
Vickie.Trice@tn.gov
tn.gov/commerce | Facebook | Instagram | Twitter

Learn more about our other valuable resources:  Verify a license | Renew a License | Speaker Request | Consumer Tools | File a Complaint

Confidentiality Notice: This email is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.

**From:** Julie Bohannon <​████████████████​>
**Sent:** Tuesday, September 28, 2021 6:32 PM
**To:** Vickie Trice <Vickie.Trice@tn.gov>
**Cc:** ███████████████Lucy Adkins <lucy@tnpharm.org>; Julie Bohannon <​████████████​>
**Subject:** [EXTERNAL] Fw: Pharmacy Reinstatement Request (McKee Foods Corporation network)

**\*\*\* This is an EXTERNAL email. Please exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email - STS-Security. \*\*\***

Ms. Trice,

Please see the response below that our pharmacy received from MedImpact. Additionally, I have included a copy of the bulletin that was sent out back in July addressing this issue. Has anything changed? If not, can you please provide guidance as to how we should proceed?

Thank you,
Greg Bohannon

423-309-1517 cell

----- Forwarded Message -----
**From:** Jeanine Robertson <jeanine.robertson@medimpact.com>
**To:** ███████████████████████
**Sent:** Tuesday, September 28, 2021, 04:00:28 PM EDT
**Subject:** Pharmacy Reinstatement Request (McKee Foods Corporation network)

Dear Mr. Bohannon:

MedImpact Healthcare Systems, Inc. ("MedImpact") is in receipt of the reinstatement request submitted by Thrifty MedPlus Pharmacy ("Thrifty") to MedImpact's Pharmacy Grievance E-mail Box, relating to the McKee Foods Corporation ("McKee") network. The reinstatement request refers to Tennessee House Bill 1398, which provides, in relevant part, "A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 or by other means, including inducement, steering, or offering financial or other incentives."

As you know, self-funded ERISA plans like McKee have never been subject to Tennessee Code § 56-7-2359. The cross-reference to Tennessee Code § 56-7-2359 in House Bill 1398 does not alter the historic scope of that law and instead merely incorporates previously existing requirements into the new law. Therefore, McKee remains exempt from the requirements of Tennessee Code § 56-7-2359, and MedImpact must decline Thrifty's request for reinstatement into the McKee Foods Corporation network.

If you have any questions or require any further information, we welcome an opportunity to further respond.



**Jeanine Robertson, MBA**

Director, Pharmacy Network Administration

Office | 858-790-6108

Cell  858-213-4086

Jeanine.robertson@medimpact.com

10181 Scripps Gateway Ct | San Diego, CA 92131

medimpact.com

---------------------------------------------------------------------
This transmission, together with any attachments, is intended only for the use of those to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law and/or may contain confidential individually identifiable health information protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and other statutes. If you are not the intended recipient, you are hereby notified that any distribution or copying of this transmission is strictly prohibited. If you received this transmission in error, please notify the original sender immediately and delete this message, along with any attachments, from your computer.
---------------------------------------------------------------------

Confidential                                                              MCKEE_ESI-0000336



**STATE OF TENNESSEE**
## DEPARTMENT OF COMMERCE AND INSURANCE
INSURANCE DIVISION
CONSUMER INSURANCE SERVICES
500 JAMES ROBERTSON PARKWAY, 10TH FLOOR
NASHVILLE, TENNESSEE 37243-0574
TELEPHONE: (615) 741-2218
FAX: (615) 532-7389

10/27/2021

Thrifty MedPlus Pharmacy
5032 Ooltewah-Ringgold Rd
Suite 100
Ooltewah, TN 37363

Tracking Number: 71356
Respondent: MedImpact Healthcare Systems Inc.

Thrifty MedPlus Pharmacy:

After reviewing the information provided, it appears your health coverage is provided by an employer sponsored benefit plan. This type of plan is known as a self-funded or self-insured plan. With this type of plan the employer assumes some or all of the risk. Instead of paying premiums to an insurance company, the employer pays claims from its own funds. Employers who self-insure may handle administration in-house or hire a third party administrator (TPA). The TPA performs certain administrative services including claim review and claim processing.

The Tennessee Department of Commerce and Insurance has no jurisdiction pertaining to a self-funded/self-insured benefit plan. The authority for final determination involving the payment or non-payment of claims rests with the employer. The employee is entitled to appeal any denial of benefits to their employer under provisions of ERISA (Employee Retirement Income Security Act of 1974). This appeal process is usually explained in the benefit booklet provided by the employer. You may contact the U.S. Department of Labor at 1-866-444-3272.

I do hope this information proves helpful.

The Tennessee Department of Commerce and Insurance would like to know how we are doing in trying to assist Tennessee consumers with insurance related issues. Please take a moment to click on the attached link and take a brief survey concerning your experience with our office and how we could improve our services.
The link to the survey is listed below:
 https://www.tn.gov/commerce/insurance/consumer-resources/customer-service-survey.html



EXHIBIT
Thce
2
11/24/24    MC

Confidential
MCKEE_ESI-0003568

Respectfully,

Allison Haralson
Investigator
Consumer Insurance Services

• 615-532-2715
Allison.Haralson@tn.gov

Confidential

MCKEE_ESI-0003569

| From: | Marina Caro |
|---|---|
| Sent: | Tuesday, November 2, 2021 9:52 AM |
| To: | 'nicole@thriftymedplus.com' |
| Subject: | 71028 Thrifty MedPlus Pharmacy - Response to Rebuttal and Closing Letter |
| Attachments: | MedImpact-Rebuttal Response#71028.pdf; 71028 Closing Letter.pdf |

November 2, 2021

Tracking Number: 71028
Respondent: MedImpact Healthcare Systems Inc.

Dear Thrifty MedPlus Pharmacy:

Thank you for contacting the Tennessee Department of Commerce & Insurance. We received a response to your rebuttal. It is attached for your review and file.

Since our mediation efforts have now been exhausted, we are closing our investigation file. Should you have any questions or comments concerning our actions, please feel free to contact me. Thank you for the opportunity to have assisted you with these matters.

Sincerely,



**Marina Caro, FLMI** | Insurance Investigator
Consumer Insurance Services Division
Davy Crockett Tower 10th floor
500 James Robertson Pkwy, Nashville, TN 37243
p. 615-532-5332
f. 615-532-7389
marina.caro@tn.gov
tn.gov/commerce

We always aim for **Great Customer Service**. Let us know how we did by taking a few minutes to complete our online survey at: https://www.tn.gov/commerce/insurance/consumer-resources/customer-service-survey.html

1



EXHIBIT
Thce 3

Confidential

MCKEE_ESI-0003628