# EXHIBIT G

# DEPOSITION OF SCOTT MCANALLY

# EXCERPTS

# MCKEE FOODS CORPORATION

vs.

# BFP INC., et al.

# SCOTT MCANALLY

November 22, 2024

# Checuga Reporting, Inc.

(615)499-9320

scheduling@checugareporting.com

```
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF TENNESSEE
 2                    AT CHATTANOOGA
   _____
 3
   MCKEE FOODS CORPORATION,
 4
                 Plaintiff,
 5
   vs.                         Case No. 1:21-CV-00279
 6
   BFP INC. D/b/a THRIFTY MED PLUS
 7 PHARMACY, STATE OF TENNESSEE,
   and CARTER LAWRENCE in his
 8 Official Capacity as COMMISSIONER
   OF THE TENNESSEE DEPARTMENT OF
 9 COMMERCE AND INSURANCE,
10              Defendants.
   _____
11

12

13

14

15       Video Recorded Deposition of:

16       SCOTT MCANALLY,

17       Taken on behalf of the Plaintiff
         November 22, 2024
18       Commencing at 1:46 p.m. CST

19

20

21
   _____
22
                  Checuga Reporting, Inc.
23              Jenny Checuga, LCR, RPR
            Jennychecuga@Checugareporting.Com
24                   (615)499-9320

25
```

```
 1              A P P E A R A N C E S

 2
     For the Plaintiff:
 3
           MR. WILLIAM H. PICKERING
 4         Attorney at Law
           Chambliss, Bahner & Stophel, P.C.
 5         605 Chestnut Street
           Chattanooga, TN 37450
 6         (423)756-3000
           wpickering@chamblisslaw.com
 7
           MR. MARK E. SCHMIDTKE
 8         Attorney at Law
           Ogletree, Deakins, Nash,
 9           Smoak & Stewart, P.C.
           56 South Washington Street, Suite 302
10         Valparaiso, IN 46383
           (219)242-8668
11         mark.schmidtke@ogletree.com

12

13   For the Defendants:

14         MR. MICHAEL N. WENNERLUND
           Assistant Attorney General
15         State of Tennessee Financial Division
           P.O. Box 20207
16         Nashville, TN 37202-0207
           (615)741-8950
17         michael.wennerlund@ag.tn.gov

18         MR. WILL KERBY
           MR. ELLIOTT WEBB
19         Attorneys at Law
           Department of Commerce and Insurance
20         500 James Robertson Parkway
           Nashville, TN 37243
21         (615)741-2241
           will.kerby@tn.gov
22         elliott.webb@tn.gov

23
     Also present:
24
           MS. JENNY CHECUGA - Videographer
25
```

```
 1                    *    *    *
 2                  SCOTT MCANALLY,
 3   was called as a witness, and having first been
 4   duly sworn, testified as follows:
 5
 6                     EXAMINATION
 7   QUESTIONS BY MR. PICKERING:
 8   Q.    Please state your full name.
 9   A.    Scott Joseph McAnally.
10   Q.    Mr. McAnally, have you ever had your
11   deposition taken before?
12   A.    I have.
13   Q.    Tell me in what kind of case.
14   A.    I think it was civil.  I got bit by a
15   pitbull.
16   Q.    Were you the plaintiff in that case, I
17   take it?
18   A.    I was.
19   Q.    The dog didn't sue you, I take it?
20   A.    It did not.
21   Q.    Any other cases in which you've been
22   deposed?
23   A.    No, sir.
24   Q.    How long ago was that deposition?
25   A.    I don't recall.  The bite was in 2008, it
```

1  Q.     Yes.
2         In the meetings that you've described of
3  this PBM group when ERISA preemption has been
4  discussed, has there been any discussion about
5  the fact that either ERISA plans or PBMs were
6  saying that these laws cannot be enforced
7  against them because of ERISA preemption?
8  A.     Not that I recall.
9  Q.     So what was the discussion in terms of
10 ERISA preemption?
11 A.     Again, the concept of the fact that ERISA
12 exists and it can preempt state law.
13 Q.     And what is your understanding of the
14 circumstances under which ERISA can preempt
15 state law?
16 A.     Well, I understand that there's a history
17 of case law that attempts to prescribe when
18 ERISA preempts state law.
19 Q.     And what is your understanding of those
20 principles?
21 A.     I think it depends from case to case.  I
22 don't think there's, to me, abundantly clear
23 guidance.
24 Q.     If a state law regulates plan design, is
25 it your understanding that law would be

1  preempted?
2  A.   I would agree the plan design is a phrase
3  I've seen used, I don't know whether or not a
4  preemption would occur.
5  Q.   You've never said yourself in an e-mail
6  that if plan design is involved, then
7  preemption likely applies?
8  A.   I may have said that.
9  Q.   All right.  And do you believe that to be
10 true?
11 A.   I would stand by what I wrote.
12 Q.   All right.  Fair enough.
13      In the meetings that you've described of
14 this PBM group, has McKee Foods Corporation
15 ever been mentioned?
16 A.   Yes.
17 Q.   Tell me in what context.
18 A.   Context of this suit.
19 Q.   Okay.  What else?
20 A.   Prior to the suit, I believe that
21 Ms. McKee made a request to meet with the
22 Department.
23 Q.   Ms. Debbie McKee?
24 A.   Uh-huh.
25 Q.   Please say yes or no.

```
 1  A.    Yes.
 2  Q.    Yes?
 3  A.    Yes.
 4  Q.    With the Department of Commerce and
 5  Insurance?
 6  A.    Yes.
 7  Q.    And what is your current position?
 8  A.    Director of insurance.
 9  Q.    To whom do you report?
10  A.    Bill Huddleston.
11  Q.    And Bill Huddleston is the Deputy
12  Commissioner?
13  A.    No.
14  Q.    What is he?
15  A.    Assistant Commissioner.
16  Q.    To whom does Mr. Huddleston report?
17  A.    I think Toby Compton.
18  Q.    And what's Mr. Compton's title?
19  A.    Deputy Commissioner.
20  Q.    And Mr. Compton reports to Mr. Lawrence?
21  A.    As I understand it.
22  Q.    One thing that would be helpful to me
23  would be to get a good understanding of sort of
24  the organizational chart here and, you know,
25  the hierarchy and how your role relates or
```

1  mark as exhibit one to Mr. McAnally's
2  deposition the chart that he has prepared.
3  It's pretty good, actually.
4           (WHEREUPON, a document was marked as
5  Exhibit Number 1.)
6  BY MR. PICKERING:
7  Q.    So I believe you've already testified the
8  Commissioner up at the top, that's Carter
9  Lawrence, correct?
10 A.    Yes, sir.
11 Q.    Deputy Commissioner is Toby Compton?
12 A.    Yes, sir.
13 Q.    Assistant Commissioner is Bill
14 Huddleston?
15 A.    Yes, sir.
16 Q.    And then underneath that you have three
17 directors identified.  Director CIS, that's
18 Consumer Insurance Services?
19 A.    Yes, sir.
20 Q.    And that is Vickie Trice?
21 A.    Yes, sir.
22 Q.    Director of insurance is yourself,
23 correct?
24 A.    Uh-huh.
25 Q.    Correct?

```
 1   A.    Yes, sir, sorry.
 2   Q.    And then Director of PBM Compliance is
 3   Mr. Jones, correct?
 4   A.    Yes, sir.
 5   Q.    And so you all are basically at the same
 6   level, that of director?
 7   A.    Yes.
 8   Q.    And each of the three of you reports to
 9   the Assistant Commissioner, Mr. Huddleston?
10   A.    Yes, sir.
11   Q.    Are there any other people at the
12   director level who have -- currently have or
13   have had any involvement with PBM Compliance?
14   A.    Stephanie Fignani is at the director
15   level.
16   Q.    And what is her position?
17   A.    She is director of policy analysis.  She
18   attends the weekly meetings.  Emily Marsh is at
19   the director level, she's a senior policy
20   advisor.  She attends the weekly meetings.
21   Q.    And are both of them involved in PBM
22   Compliance issues?
23   A.    Not beyond attending the weekly meetings,
24   to my knowledge.
25   Q.    Okay.  So that the people who either
```

```
 1  A.    I don't recall.
 2  Q.    Is that a -- is that significant to you
 3  that a law is enacted that specifically says
 4  it's going to apply to ERISA plans?
 5  A.    No.
 6  Q.    It's not significant?
 7  A.    It's purview of the General Assembly.
 8  Q.    And so it's not significant to you that
 9  enacting a law, the General Assembly targets a
10  plan that is governed by general law?
11             MR. WENNERLUND:  Objection, form.
12             THE WITNESS: Can you restate?
13  BY MR. PICKERING:
14  Q.    Sure, I probably should have expressed it
15  better.
16        It's not significant to you that in
17  enacting legislation, the General Assembly
18  targets a particular kind of plan that is
19  subject to federal law?
20  A.    No.
21  Q.    That's okay?
22             MR. WENNERLUND:  Objection, form.
23  BY MR. PICKERING:
24  Q.    That's okay, as far as you're concerned?
25  You may answer.
```

```
 1  A.    It's purview of the General Assembly.
 2  Q.    It's within their purview to enact
 3  illegal statutes?
 4           MR. WENNERLUND:  Objection, form.
 5  BY MR. PICKERING:
 6  Q.    You may answer.
 7  A.    It's within their constitutional right, I
 8  guess.
 9  Q.    To enact a statute that's preempted by
10  federal law?
11  A.    I would defer to the will of the General
12  Assembly.
13  Q.    So that's a yes?
14           MR. WENNERLUND:  Objection, form.
15           THE WITNESS:  It's deference to the
16  will of the General Assembly, sir, I'm sorry.
17  BY MR. PICKERING:
18  Q.    As Public Chapter 1070 was being
19  considered by the General Assembly in 2022, did
20  you have communications with members of the
21  legislature about that bill?
22  A.    Not that I recall.
23  Q.    Did the Department of Commerce and
24  Insurance take a position either in favor of
25  that bill or being opposed of it?
```

1  A.    Would not supercede our responsibilities
2  to enforce the statute.
3  Q.    Do the statutes we've been talking about
4  benefit any group other than pharmacists?
5  A.    I don't know.
6  Q.    Are you aware of any group other than
7  pharmacists that these statutes benefit?
8  A.    I'm -- not specifically.
9  Q.    You've heard the term, I'm sure, in your
10 years of experience, particularly in
11 legislation, you've heard the term special
12 interest legislation; you've heard that term,
13 haven't you?
14 A.    Yes.
15 Q.    Okay.  And that's what this is, isn't it?
16         MR. WENNERLUND:  Objection, form.
17         THE WITNESS:  I don't know.
18 BY MR. PICKERING:
19 Q.    You don't know?
20 A.    Special interest legislation?
21 Q.    Right.
22 A.    I know what special interest group it,
23 and that would be TPA.
24 Q.    Right.
25 A.    I think they supported the legislation.

```
 1  I don't know if that creates a definition of
 2  special interest legislation.
 3  Q.    What's your definition of special
 4  interest legislation?  Is it legislation
 5  designed to benefit particular interests over
 6  others?
 7  A.    I don't think I have a definition for
 8  that.
 9  Q.    You don't have any understanding of what
10  special interest legislation would be, in your
11  years of experience?
12              MR. WENNERLUND:  Objection, form.
13              THE WITNESS:  If it's a piece of
14  legislation that's advocated for by a special
15  interest group, then yes.
16  BY MR. PICKERING:
17  Q.    Okay.  And that's what this is, right,
18  it's being advocated by the Tennessee
19  Pharmacists Association?
20  A.    The Tennessee Pharmacists Associations
21  supported this legislation.
22  Q.    Were you aware that the Tennessee
23  Pharmacists Association crafted Public Chapter
24  1070?
25  A.    No.
```

1  something that you have expertise in, that you
2  express opinions on, that you provide guidance
3  on to the Commissioner?
4  A.    No.
5  Q.    So what would your involvement in
6  preparing the response have been?
7  A.    I don't remember.
8  Q.    So looking at the second paragraph of the
9  response, Exhibit 12 of Mr. Jones's deposition,
10 I'm not going to read -- I can read the entire
11 paragraph if you want me to, but I don't plan
12 to unless you really want me to.  But maybe a
13 few lines down, this seems to be saying that
14 these laws apply to ERISA plans because they
15 say they do; is that fair?
16 A.    Yes.
17 Q.    And then the last three lines of this
18 first page, it says, "Therefore the Department
19 intends to enforce Tennessee state law,
20 including the requirements of the Tennessee
21 laws and regulations that are applicable to
22 Pharmacy Benefits Managers as defined by
23 Tennessee Code Annotated Section 56-7-3102(5)
24 administering the medication and/or device
25 portion of pharmacy benefits covered --

```
 1   benefits coverage provided by a Covered Entity.
 2           So, the commissioner's position is these
 3   laws are going to be enforced against Covered
 4   Entities, including ERISA plans, correct?
 5   A.      Yes.
 6   Q.      So I want to skip forward a little bit.
 7   And we've been talking about, I guess, the
 8   process of leading up to the issuance of the
 9   Department's final PBM Rules.  We talked about
10   the informational meetings back in November of
11   2023.  I'll represent to you that the formal
12   rulemaking hearing took place on February 9,
13   2024.  I was there.  Were you in attendance for
14   that hearing?
15   A.      Yes.
16   Q.      Do you remember me being there that time?
17   A.      Yes.
18   Q.      Okay.  I must have made a better
19   impression.
20           What do you recall about that hearing?
21   Do you remember Mr. Fjelstad being there?
22   A.      Yes.
23   Q.      And remember him expressing essentially
24   the same concerns that were in his letter?
25   A.      I don't remember specifically what he
```

1  your discussion with Chairman Ragan?
2  A.    No.
3  Q.    Who else was present for that discussion?
4  A.    Our legislative director.
5  Q.    Who is that?
6  A.    Candace Dawkins.
7  Q.    So just you and Ms. Dawkins?
8  A.    That I recall.
9  Q.    And then what about the meeting with
10 representative Martin -- he's from Cleveland,
11 isn't he?
12 A.    I don't know where he's from.
13 Q.    So what about the meeting with him?
14 A.    Same two parties.
15 Q.    Okay.  And what was the discussion?
16 A.    Similar lines that I remember the Ragan
17 discussion on, being audits and how we do
18 audits.
19         MR. PICKERING:  So if we can show the
20 witness Exhibit 15 to Mr. Jones's deposition.
21         (WHEREUPON, a document was previously
22 marked as Jones Exhibit Number 15.)
23 BY MR. PICKERING:
24 Q.    Mr. McAnally, Exhibit 15 to Mr. Jones's
25 deposition is a document titled Rulemaking

*Checuga Reporting, Inc. - (615)499-9320*          *135*
Case 1:21-cv-00279-CEA-MJD   Document 119-7   Filed 12/31/24   Page 17 of 20
PageID #: 1866

1  Representative Martin?
2  A.    Those are the ones I recall meeting with,
3  yes, sir.
4  Q.    And do you recall any other concerns --
5  even if you can't recall the specific
6  legislators that expressed the concerns, do you
7  recall any other concerns that were being
8  expressed about the Rules?
9  A.    Not prior to the hearing.
10 Q.    What about after the hearing?
11 A.    After the hearing, no.
12 Q.    So referring to Exhibit 15 that you have
13 in front of you, if you would flip over to
14 Page 18.
15 A.    (Complies.)
16 Q.    And specifically Comment Number 29; do
17 you see it?
18 A.    Yes.
19 Q.    Comment 29 says, "He Department received
20 multiple comments asserting the Department has
21 no authority to promulgate the proposed Rules
22 because the Rules attempt to regulate areas
23 governed by ERISA and are therefore preempted
24 by ERISA and subsequent case law interpreting
25 ERISA;" do you see that?

1   A.    Yes.
2   Q.    And do you see the Department's response
3   was, "The Department disagrees with this
4   comment," and then I'll paraphrase, if you want
5   me to read it verbatim, I will, but I'll
6   paraphrase by saying the Department's position
7   was ERISA plans are covered because the law
8   says they're covered?
9   A.    Yes.
10  Q.    And there's really no answer on the
11  question of preemption, is there?
12  A.    Yes.
13  Q.    You see the word preempt or preemption
14  anywhere in the Department's response?
15  A.    I see the Department disagrees with this
16  comment.
17  Q.    Okay.  So, you see the basis for the
18  disagreement really has nothing to do with
19  preemption, all the Department is saying is
20  these laws are covered -- these laws cover
21  ERISA plans because the laws say they cover
22  ERISA plans?
23  A.    Yes.
24  Q.    And these are the State laws the
25  Tennessee State Legislature enacted, right?

*Checuga Reporting, Inc. - (615)499-9320*    *141*
Case 1:21-cv-00279-CEA-MJD   Document 119-7   Filed 12/31/24   Page 19 of 20
PageID #: 1868

```
 1                    REPORTER'S CERTIFICATE

 2

 3   STATE OF TENNESSEE

 4   COUNTY OF SUMNER

 5          I, JENNY CHECUGA, Licensed Court Reporter,

 6   with offices in Nashville, Tennessee, and Registered

 7   Professional Reporter, hereby certify that I reported

 8   the foregoing video recorded deposition of SCOTT

 9   MCANALLY by machine shorthand to the best of my

10   skills and abilities, and thereafter the same was

11   reduced to typewritten form by me.

12          I further certify that I am not related to

13   any of the parties named herein, nor their counsel,

14   and have no interest, financial or otherwise, in the

15   outcome of the proceedings.

16          I further certify that in order for this
     document to be considered a true and correct copy, it
17   must bear my original signature and that any
     unauthorized reproduction in whole or in part and/or
18   transfer of this document is not authorized, will not
     be considered authentic, and will be in violation of
19   Tennessee Code Annotated 39-14-104, Theft of
     Services.
20

21

22
             JENNY CHECUGA, LCR, RPR
23           Checuga Reporting, Inc.
             Licensed Court Reporter (TN)
24           Notary Public State of Tennessee

25           My Notary Commission Expires:  5/18/2027
             LCR #690 - Expires:  6/30/2026
```