UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MCKEE FOODS CORPORATION, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BFP INC. d/b/a THRIFTY MED PLUS )<br>PHARMACY, and CARTER )<br>LAWRENCE in his Official Capacity as )<br>COMMISSIONER OF THE )<br>TENNESSEE DEPARTMENT )<br>OF COMMERCE AND INSURANCE, )<br>)<br>    Defendants. ) | Case No. 1:21-CV-00279<br>Judge Atchley<br>Magistrate Judge Dumitru |

**COMMISSIONER CARTER LAWRENCE'S RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Carter Lawrence, Commissioner of the Tennessee Department of Commerce and Insurance, hereby responds in opposition to Plaintiff's Motion for Summary Judgment. Plaintiff, McKee Foods Corporation ("McKee"), argues that it is entitled to summary judgment on its claim that Tenn. Code Ann. §§ 56-7-3120, 56-7-3121, and 56-7-235 ("Tennessee's PBM laws") are preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"). But McKee's argument essentially disregards the Supreme Court's decision in *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80 (2020), under which McKee's preemption claim necessarily fails. McKee also misplaces its reliance on the Sixth Circuit's decision in *Kentucky Association of Health Plans, Inc. v. Nichols*, 227 F.3d 352 (6th Cir. 2000), whose holding *Rutledge* abrogated, and on the Tenth Circuit's decision in *Pharmaceutical Care Management Association v. Mulready*, 78 F.4th 1183 (10th Cir. 2023), *petition for cert. filed*, No.

1

23-1213 (U.S. May 15, 2024), which suffers from a faulty analysis. For these and other reasons, as discussed below, McKee's motion should be denied.

## I. McKee Lacks both Standing to Sue and a Cause of Action Against Commissioner Lawrence.

As an initial matter, McKee lacks standing to sue Commissioner Lawrence and lacks a cause of action against Commissioner Lawrence—as the Commissioner has explained in support of his own motion for summary judgment. (Def.'s Mem. in Supp. Mot SJ, 8-14.)

### A. McKee lacks standing.

"On summary judgment, . . . [the plaintiff] must present enough evidence to create a genuine issue of material fact over each standing element. Conclusory allegations about past injury or vague allegations about a future one will not do at [the summary judgment] stage." *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022) (first citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); and then citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)). "Moreover, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561) (internal quotations omitted). "[M]ere allegations are insufficient to establish jurisdiction; at summary judgment, plaintiffs must set forth specific facts." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014) (internal citations and quotations omitted).

McKee cannot meet that burden. In the context of this pre-enforcement challenge, McKee must present evidence of "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" some provision of the Act. *Crawford v. Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (quotations omitted). And it must then present

2

evidence showing "a *certain* threat of prosecution if the plaintiff does indeed engage in that conduct." *Id.* at 455. McKee proves neither.

*First*, McKee cannot produce evidence which shows an intention to engage in a course of conduct proscribed by statute. *Susan B. Anthony v. Driehaus*, 573 U.S. 149, 159 (2014). McKee has not and cannot show that it is violating the law by declining to readmit Thrifty Med into their pharmacy network, nor can it show that Thrifty Med seeks reinstatement. Because Thrifty Med does not seek reinstatement, (*see* Doc. 120-1, ¶ 13 (Declaration of Greg Bohannon); Doc. 120-2, ¶ 13 (Declaration of Julie Bohannon)), there cannot be a showing that McKee is not readmitting Thrifty Med into its pharmacy network despite Thrifty Med being willing to accept the same terms and conditions as other pharmacies in the network. *See* Tenn. Code Ann. § 56-7-3121(a) (which requires a pharmacy to be "willing to accept the same terms and conditions that the pharmacy benefits manager has established for at least one (1) of the networks of pharmacies that the pharmacy benefits manager has established to serve patients, participants, and beneficiaries with this state"). Even assuming evidence indicated that Thrifty Med seeks reinstatement into McKee's network, if there is no showing that Thrifty Med is even eligible for reinstatement under the challenged laws, then additionally McKee cannot show it is violating the challenged laws through denial of Thrifty Med's reinstatement. In reality, McKee has shown that it does not intend to allow Thrifty Med back into its network, but McKee has not and cannot show that decision violates any of Tennessee's PBM laws.

*Second*, McKee cannot show a "certain" threat of enforcement. (Doc. 122-1, Declaration of Jud Jones, ¶ 11.) Courts judge threats of prosecution using a "holistic test" comprising the following four main factors:

> (1) "a history of past enforcement against the plaintiffs or other"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute

3

Case 1:21-cv-00279-CEA-MJD   Document 134   Filed 01/21/25   Page 3 of 17
PageID #: 2005

of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."

*Online Merchs Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quoting *McKay*, 823 F.3d at 869); *see Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024).

McKee cannot pass this test. It cannot produce any admissible evidence showing "some combination" of these four factors weighs in favor of finding an impending threat of enforcement by the Commissioner. *Cf. McKay*, 823 F.3d at 869. McKee has no evidence of a history of past enforcement. *Friends of George's*, 108 F.4th at 439. No evidence of warning letters sent to it regarding its treatment of Thrifty Med. *Id.* No attribute that makes enforcement of the PBM laws "easier or more likely." *Online Merchs. Guild*, 995 F.3d at 550; *McKay*, 823 F.3d at 869. And there is no refusal to disavow enforcement. *Friends of George's*, 108 F.4th at 439. A statement that "in the *abstract* [the Commissioner] *might* . . . enforc[e] the rule[s]" does not "suggest that he would enforce the rule against anything like" specific actions relating to the McKee/Thrifty Med relationship. *Davis*, 51 F.4th at 174 (emphasis added)— i.e., enforcement against a "particular plaintiff." *Online Merchs.*, 995 F.3d at 550. "[W]hile mere allegations might have been enough to survive a standing challenge at the motion to dismiss stage, they are insufficient to carry [McKee] past summary judgment." *McKay*, 823 F.3d at 868 (quotations omitted). Because Thrifty Med in fact isn't seeking reinstatement in McKee's pharmacy network, there can be no indication that the Commissioner would enforce the subject laws against specific actions relating to the McKee/Thrifty Med relationship plainly because such a relationship does not exist.

B.  **McKee lacks a cause of action.**

McKee also has no cause of action under ERISA. McKee has alleged that "ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of action for an ERISA plan fiduciary to obtain injunctive

4

Case 1:21-cv-00279-CEA-MJD   Document 134   Filed 01/21/25   Page 4 of 17
PageID #: 2006

or other appropriate equitable relief to remedy violations of ERISA or the terms of an ERISA-governed plan or to enforce ERISA or the terms of an ERISA-governed plan."  (Am. Compl., ¶ 58.)  But McKee cannot bring an action under § 1132(a)(3) against Defendant Thrifty Med (Def.'s Mem. in Supp. Mot. SJ, 13), and it cannot bring an action under § 1132(a)(3) against Commissioner Lawrence because the Commissioner has done nothing to enforce Tennessee's PBM laws against McKee.

In *NGS American, Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000), the Sixth Circuit held that a plan administrator could not seek declaratory and injunctive relief under § 1132(a)(3) on preemption grounds, in part because the administrator was not seeking "to interdict the ongoing enforcement of a state law against itself."  218 F.3d at 527; *see also id.* at 529.  Such is the case here as well—McKee does not face imminent, let alone "ongoing," enforcement of the PBM laws by the Department of Commerce and Insurance.  McKee simply cannot establish that either it or its PBM faces any enforcement action by the Commissioner.  By contrast, in *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993)—which the court distinguished in *Jefferson*—the defendant state agency had been actively collecting taxes under the allegedly ERISA-preempted state tax laws.  987 F.2d at 377-78; *cf. also Denny's, Inc. v. Cake*, 364 F.3d 521, 522-23, 527 (4th Cir. 2004) (holding that a plan administrator could sue under § 1132(a)(3) to prevent a state agency's enforcement of allegedly ERISA-preempted state labor laws where the agency had sent the administrator an enforcement letter and then sued the administrator in state court).  Absent ongoing enforcement of the PBM laws by the Commissioner against McKee, McKee has no cause of action under § 1132(a)(3)—the Commissioner has not "violated" ERISA, nor is there anything for McKee "to enforce" under the aegis of § 1132(a)(3).  *See Jefferson*, 218 F.3d at 530.

**II.     ERISA Does Not Preempt any of the Challenged Laws**

In support of its preemption claim, McKee asserts that the Supreme Court in *Rutledge* "effectively confirmed that state laws such as the Tennessee pharmacy legislation at issue in this matter would be preempted." (Doc. 119, McKee's SJ Memo, 20 (emphasis omitted).) To the contrary, though, *Rutledge* actually dooms McKee's ERISA-preemption claim against Tennessee's PBM laws.

ERISA preempts "[s]tate laws insofar as they may now or hereafter relate to any employee benefit plan covered by ERISA." 29 U.S.C. § 1144(a). A state law "relates to an ERISA plan" when it "has a connection with or reference to such a plan." *Rutledge*, 592 U.S. 80, 86 (2020) (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001)). Taken literally, that could include a wide swath of healthcare matters regulated by States. But the Supreme Court has declined to interpret ERISA with "uncritical literalism" that would yield preemption all the way down, *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins., Co.*, 514 U.S. 645, 659 (1995), as "health and safety matters" fall within the States' traditional prerogative. *Hillsborough Cnty. v. Automated Med. Lab'ys*, 471 U.S. 707, 719 (1985). To displace traditional spheres of state authority, Congress must "make its intention to do so 'unmistakably clear in the language of [a] statute.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quotations omitted). And the Court has specifically cautioned against reading ERISA to preempt laws in "traditionally state-regulated" areas about which "ERISA has nothing to say." *Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A.*, 519 U.S. 316, 330 (1997). McKee fails to identify any substantive statutory language in ERISA that expressly deals with PBMs—i.e., ERISA "has nothing to say" about Tennessee's PBM laws, *id*., which have neither a "connection with" nor a "reference to" an ERISA plan.

6

### A. The PBM laws have no impermissible "connection with" an ERISA plan.

Under *Rutledge*, "connection-with" preemption plays a narrow role when it comes to state efforts to regulate entities like PBMs that interact with benefit plans. 592 U.S. at 86-87. That narrow scope follows from "ERISA's objectives." *Id.* at 86. At its inception, ERISA's goal was "to make the *benefits* promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Id.* (quotations omitted and emphasis added). And its provisions resulted in "[a] uniform body of benefits law" that "ensur[ed] that plans do not have to tailor *substantive benefits* to the particularities of multiple jurisdictions." *Id.* (emphasis added). Consistent with that objective, ERISA's preemption provision is "primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as requiring payment of *specific benefits*," or that "bind[] plan administrators to specific rules for determining *beneficiary status*," or that "force an ERISA plan to adopt a certain scheme of *substantive coverage*." *Id.* at 86-87 (first citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), then citing *Egelhoff*, 532 U.S. 141 (2001), and then citing *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)) (emphasis added)).

As "shorthand for these considerations," the Supreme Court "asks whether a state law 'governs a central matter of plan administration or interferes with nationally uniform plan administration.'" *Rutledge*, 592 U.S. at 87 (quoting *Gobeille*, 577 U.S. at 320). But "[c]rucially, not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan"—"especially so if a law merely affects costs" or "alter[s] incentives for ERISA plans without forcing plans to adopt any particular scheme of *substantive coverage*." *Id.* at 87-88 (citations omitted) (emphasis added).

McKee invokes this shorthand—it contends that Tennessee's PBM laws "clearly have a

'connection with' ERISA plans, apparently because they "purport to regulate the design and structure of self-insured ERISA plans and interfere with central matters of plan administration and nationally uniform plan administration." (McKee's SJ Memo, 22-23.) But again, the crucial question under *Rutledge* is whether state laws dictate benefits or substantive coverage. 592 U.S. at 86-87. And Tennessee's PBM laws in no way "*require*" or "*forc[e]*" Mckee "to adopt any particular scheme of *substantive* coverage." *Id.* at 87-88 (citations omitted) (emphasis added). Therefore, they do not have an impermissible connection with ERISA plans.

McKee asserts that the PBM laws interfere with its "ability as a plan fiduciary to address situations . . . in which providers engage in actions that harm the plan, participants, and beneficiaries." (McKee's SJ Memo, 22-23.) But these assertions about McKee's fiduciary duties are analogous to the plaintiff's complaints in *Rutledge*, where the plaintiff asserted that the Arkansas law was interfering with "central matters of plan administration by allowing pharmacies to decline to dispense a prescription if the PBM's reimbursement will be less than the pharmacy's cost of acquisition." 592 U.S. at 91. The plaintiff argued that such a refusal by pharmacies "effectively denies plan beneficiaries their benefits." *Id.* But the Supreme Court rejected the argument because it was not supported by the law. *Id.* ("When a pharmacy declines to dispense a prescription, the responsibility lies first with the PBM for offering the pharmacy a below-acquisition reimbursement.")

**B.     The PBM laws do not have an impermissible "reference to" an ERISA plan.**

Tennessee's PBM laws also do not have an impermissible "reference to" an ERISA plan for preemption purposes. A state law "refers to" ERISA if it "acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." *Id.* at 88 (internal quotation marks and citations omitted). A "mere reference to an ERISA plan" is

8

not enough unless it "singl[es] them out for different treatment." *Nichols*, 227 F.3d at 360 (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830 n.4 (1988)).

Under Tennessee's PBM laws, there is simply no "disparate treatment accorded to non-ERISA pension and benefit plan[s]." *Id.* at 359 (citing *Mackey*, 486 U.S. at 830 n.4). Tennessee Code Annotated § 56-7-3120 applies to "pharmacy benefits manager[s]" and "covered entit[ies]," while Tenn. Code Ann. § 56-7-3121 applies to "pharmacy benefit manager[s]." And as defined, those provisions do, as McKee alleges[1], "specifically referenc[e]" that they apply to ERISA plans—but only among a *non-exhaustive* list that includes other entities not governed by ERISA. *See* Tenn. Code Ann. § 56-7-3102(1) (defining "covered entity" to mean, but "not limited to," 13 entities, including ERISA plans); *id.* § 56-7-3102(5) (defining "pharmacy benefits manager" to mean, but "not limited to," 12 entities, including ERISA plans). Plainly, one among a dozen or more is not "exclusive," and neither does it make "the existence of ERISA plans . . . *essential* to the law's operation." *Rutledge*, 592 U.S. at 88 (emphasis added). The same holds for § 56-7-2359, which applies to "health insurance issuer[s]" and "managed health insurance issuer[s]." None are preempted by their "mere reference to an ERISA plan." *Nichols*, 227 F.3d at 360.

No precedent dictates otherwise. For instance, in *Nichols*, the Kentucky Any-Willing-Provider law was preempted because it "singled [ERISA plans] out for different treatment," 227 F.3d at 358-61. Likewise, in *Mackey*, a Georgia statute was preempted because it "*solely* applied to[] ERISA employee benefit plans" and because "ERISA welfare benefit plans [we]re protected from garnishment under Georgia law, but non-ERISA plans [we]re not so protected." 486 U.S. at 829, 830 n.4 (emphasis added). "Reference to" preemption, as these decisions demonstrate, turns upon whether laws "single out" or "solely apply" to ERISA plans. *Mackey*, 486 U.S. at 829; *see*

---

[1] (*See* Am. Compl. ¶ 46.)

*Nichols*, 227 F.3d at 358-61; *see also, e.g.*, *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 970 (8th Cir. 2021) (AWP statute *not* preempted because it applied to "ERISA plans" *and* "non-ERISA plans"); *cf. D.C. v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130, n.2 (1992) (law was reference-to preempted because, by stipulation, it applied *solely* to "welfare benefit plan[s] under ERISA"); *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812 (8th Cir. 1998) (statute preempted because it "single[d] out ERISA employee benefit plans for different treatment"); *CIGNA Healthplan of La., Inc. v. Louisiana ex rel. Ieyoub*, 82 F.3d 642, 647-48 (5th Cir. 1996) (AWP statute preempted because it applied exclusively to a number of "enumerated entities [that] constitute ERISA-qualified plans" and their "brokers"). Tennessee's PBM laws, though, neither "single out" ERISA plans nor "solely apply" to ERISA plans.

In arguing otherwise, McKee stresses that the PBM laws "on their face, make 'reference to' ERISA plans." (McKee's SJ Mem., 23.) But again—a "mere reference" to ERISA plans is not enough unless ERISA plans are singled out, and Tennessee's PBM laws do not single out ERISA plans. The PBM laws therefore have no "reference to" an ERISA plan as that phrase is understood post-*Rutledge*. And because they also have no "connection to" an ERISA plan, Tennessee's PBM law are not preempted by ERISA.

### C. McKee misplaces its reliance on *Nichols* and *Mulready*

Against this straightforward application of Supreme Court precedent, McKee points to the Sixth Circuit's decision in *Nichols* and the Tenth Circuit's decision in *Mulready*. (McKee's SJ Mem., 19-21.) But McKee misplaces its reliance on these decisions.

McKee argues that under *Nichols,* "ERISA would 'preempt state laws that mandated employee benefit structures or their administration.'" (McKee's SJ Mem., 20.) But *Rutledge*

10

abrogated that holding.² *Rutledge* clarified that *no* connection-with preemption exists where a state law "d[oes] not 'bind plan administrators to any particular choice'" by "forcing plans to adopt any particular scheme of substantive coverage." 592 U.S. at 87 (quoting *Travelers*, 514 U.S. at 659). The *Nichols* preemption holding hinged on Kentucky's Any-Willing-Provider laws "effectively requir[ing] benefit plans to *purchase* benefits of a certain structure." 227 F.3d at 362 (emphasis added). No such factual circumstances exist in this case.

Post-*Rutledge*, the analysis differs. Merely "affect[ing] a plan's shopping decisions" is not sufficient to invoke preemption. *Rutledge*, 592 U.S. at 87 (quoting *Travelers*, 514 U.S. at 660). That's because even with Any-Willing-Provider laws in place, "[i]f a plan wished, it could still provide a uniform interstate benefit package"—the ultimate "ERISA[] objective." *Id.* at 86-87 (noting ERISA's focus on uniformity of "substantive benefits"). In fact, "that [a plan] must permit a [term-abiding] pharmacy to" enter its network "does *not* mean that [it] must cover . . . all drugs allowed under the pharmacy's license." *Wehbi*, 18 F.4th at 968 (emphasis added). The Any-Willing-Provider provisions of Tennessee's PBM laws, while merely requiring access to all pharmacies, "do[] not require plans to provide any particular benefit to any particular beneficiary in any particular way." *Rutledge*, 592 U.S. at 90.³

McKee also rests its position on *Mulready* (McKee's SJ Mem., 20-21), but the Tenth

---

² McKee asserts that Nichols "was affirmed by the Supreme Court in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)"—but only because *Miller* "focused solely on the applicability of [ERISA's] saving clause and did not disturb the Sixth Circuit's conclusion that the Kentucky any willing provider laws 'related to' employee benefit plans under ERISA." (McKee's SJ Mem., 20 n. 97.)

³ McKee says that *Nichols* held that the Kentucky statute "satisfied both prongs of the Supreme Court's test for preemption." (McKee's SJ Mem., 19.) But it fails to explain how the *Nichols* decision supports a conclusion that Tennessee's PBM laws have a "reference to" ERISA plans under *Rutledge*. As discussed above, they do not.

11

Circuit's holding in that case resulted from the court's overreliance on pre-*Rutledge* decisions. *See* 78 F.4th at 1197 (citing *Nichols*, 227 F.3d 352, and *CIGNA*, 82 F.3d 642). That misguided analysis departs from *Rutledge* and should not be followed here. For example, *Mulready* found it "sufficient for preemption purposes that [Oklahoma's] statute eliminate[d] the choice of one method of structuring benefits," i.e., the "choice" of excluding certain pharmacies. *Id.* (quoting *CIGNA*, 82 F.3d at 648 n. 38). But that's exactly what the state law upheld in *Rutledge* did. In fact, *Rutledge* explicitly dismissed the PBMs' argument that, "by mandating a particular pricing methodology," the state law eliminated a particular pricing option for the plan design. 592 U.S. at 90.

And regardless, no Supreme Court decision supports the elimination-of-option reasoning employed in *Mulready* or *CIGNA*. *CIGNA* relied on the Supreme Court's *Alessi* decision, *see* 82 F.3d at 648 n.38 (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981)). But *Alessi* provides no support for the Fifth Circuit's approach in *CIGNA*. Instead, *Alessi* merely held a law was preempted because "it eliminate[d] one method for calculating pension benefits—integration"—that ERISA "expressly preserv[ed]"; in other words, *conflict* preemption applied. 451 U.S. at 505, 524 (emphasis added). ERISA nowhere expressly preserved the option of excluding willing providers, so *CIGNA*'s and *Mulready*'s reliance on *Alessi* for their elimination-of-option rule was misplaced. *Mulready* also cites the Supreme Court's decision in *Shaw v. Delta Air Lines, Inc. See Mulready*, 78 F.4th at 1201 (citing *Shaw*, 463 U.S. 85 (preempting a law that prohibited pregnancy discrimination in "structuring [of] employee benefit plans")). But *Shaw*'s bygone approach applied ERISA preemption's "plain language" in its "broad sense," 463 U.S. at 97—the same "uncritical literalism" the Court has since rejected, *see Travelers*, 514 U.S. at 656.

Ultimately, *Mulready*'s mistake was in using that same "uncritical literalism." Once again,

12

the relevant question here is whether Tennessee's PBM laws mandate any "particular benefit" or "bind plan administrators to any particular choice" of substantive benefits. *Rutledge*, 592 U.S. at 87, 90. And the answer is clearly no. Eliminating a particular option for who provides benefits does not *mandate* a particular option of benefits. As such, McKee's reliance on *Mulready* is an endorsement of ERISA analysis no longer employed or favored by the Supreme Court.

This Court should instead look to the Eighth Circuit's decision in *Wehbi* for a correct application of *Rutledge* in holding state PBM laws were not preempted by ERISA. *Wehbi* reiterated that, under *Rutledge*, "the connection-with standard is primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of *specific benefits* or by binding plan administrators to *specific rules for determining beneficiary status*." *Wehbi*, 18 F.4th at 968 (quoting *Rutledge*, 592 U.S. at 86-87) (emphasis added) (internal quotations omitted). *Wehbi* also reiterated that a state law has an impermissible "reference to" ERISA plans "if and only if it acts immediately and exclusively upon ERISA plans or the existence of ERISA plans is essential to the law's operation." 18 F.4th at 969 (quoting *Rutledge*, 592 U.S. at 88) (internal quotation marks omitted). And the court stressed that in *Rutledge* "the Supreme Court clarified that the existence of ERISA plans is essential to a law's operation *only if the law cannot apply to a non-ERISA plan*." *Id.* (citing *Rutledge*, 592 U.S. at 88-89) (emphasis added). Tennessee's PBM laws do not require McKee to structure benefit plans in any particular way, require payment of specific benefits, or force McKee to implement specific rules for determining beneficiary status; and the existence of ERISA plans is certainly not essential to their operation.

### III. McKee Has No Implied-Preemption Claim.

McKee asserts that while its preemption claim is based "primarily" on the express

13

Case 1:21-cv-00279-CEA-MJD   Document 134   Filed 01/21/25   Page 13 of 17
PageID #: 2015

provisions of ERISA, "the doctrine of obstacle preemption also applies." (McKee's SJ Mem., 24.) But McKee's half-hearted implied-preemption argument falls flat.

It is true that, under current precedent, state laws can be preempted in certain "instances in which the challenged law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (*Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)).[4] McKee is also correct in pointing out that the Supreme Court in *Freightliner Corp. v. Myrick* recognized that this sort of implied preemption can "apply in addition to the express statutory preemption of state law." (*Id.* (citing 514 U.S. 280 (1995)).

McKee, though, fails to acknowledge the rest of what the Court said in *Freightliner Corp.*: "[A]n express definition of the pre-emptive reach of a statute," the Court said, "'implies'— *i.e.*, supports a reasonable inference—that Congress did *not* intend to pre-empt other matters." 514 U.S. at 288 (emphasis added); *see also id.* at 289 (recognizing "an inference that an express pre-emption clause forecloses implied pre-emption"). McKee makes no attempt to overcome that inference. Likewise, it does not even try to assist this Court in determining whether the challenged laws meet the "high threshold" required for an implied-preemption determination. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). McKee also leaves this Court to grapple with the Supreme Court's direction to "assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400.

---

[4] *But see Kansas v. Garcia*, 589 U.S. 191, 213 (2020) (Thomas, J., joined by Gorsuch, J.) (calling for Court to "explicitly abandon" purposes-and-objectives preemption and noting that the Court "reject[ed] respondents' purposes and objective argument without atextual speculation about legislative intentions").

14

Furthermore, McKee asserted no implied-preemption argument in its Amended Complaint, Paragraphs 7 and 8 of which alleged in full as follows:

> The Supremacy Clause of the United States Constitution establishes that federal law takes precedence over state laws. U.S. Const. art. VI, cl. 2. State laws may not interfere with federal law, including the United States Constitution and federal statutes. A state law that interferes with federal law is preempted. Preemption can be either express or implied. Express preemption occurs when Congress explicitly states its intent to preempt state laws that regulate a given topic.
>
> ERISA is a comprehensive federal statute that regulates employee benefit plans. Congress enacted ERISA to provide "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 248 (2004). In order to facilitate the efficient administration of benefits nationwide and to ensure that ERISA plans did not face competing or conflicting regimes in each of the 50 states, Congress included a broad express preemption clause in ERISA. ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plans." 29 U.S.C. §1144(a).

(Am. Compl., ¶¶ 7, 8.) Except to point out that "[p]reemption can be either express or implied," nowhere in the complaint did McKee refer to implied preemption, conflict preemption, or obstacle preemption. And McKee may obviously not be awarded summary judgment on a claim it has not advanced.

At bottom, McKee's implied-preemption argument amounts to the assertion Tennessee's PBM laws "would operate to frustrate Congress's intent to adopt a uniform system of federal regulation of employee benefit plans and to impede the vindication of the rights of sponsors, administrators, and fiduciaries of ERISA-governed benefit plans." (McKee's SJ Mem., 24.) Even if McKee *did* have an implied-preemption claim, this Court should reject McKee's "perfunctory and underdeveloped" argument offered in support of such a claim. *Ruffin v. Cuyahoga Cnty.*, 708 F. App'x 276, 278 (6th Cir. 2018). "A party," after all, "may not present a skeletal argument, leaving the court to put flesh on its bones." *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019).

15

## CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

**JONATHAN SKRMETTI**
**ATTORNEY GENERAL AND REPORTER**

*/s/ Michael N. Wennerlund*
**Michael N. Wennerlund (BPR #031332)**
Assistant Attorney General
Financial Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: (615) 741-8950
Fax: (615) 741-8151
Michael.Wennerlund@ag.tn.gov
*Counsel for Carter Lawrence, Commissioner of the*
*Tennessee Department of Commerce and Insurance*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and exact copy of the foregoing document has been filed electronically on January 21, 2025. Notice of this filing will be sent by operation of the Court's electronic case filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                */s/ Michael N. Wennerlund*
                                                **Michael N. Wennerlund (031332)**