# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

MCKEE FOODS CORPORATION,     )
                                    )

       Plaintiff,            )

v.                                )

                                    )   **CASE NO. 1:21-CV-00279**

BFP INC. d/b/a THRIFTY MED PLUS   )

PHARMACY and CARTER           )

LAWRENCE in his Official Capacity as  )   **JUDGE ATCHLEY**

COMMISSIONER OF THE           )   **MAGISTRATE JUDGE DUMITRU**

TENNESSEE DEPARTMENT OF      )

COMMERCE AND INSURANCE,     )

                                    )

       Defendants.         )

                                    )

## <u>PLAINTIFF'S BRIEF IN OPPOSITION TO COMMISSIONER LAWRENCE'S MOTION FOR SUMMARY JUDGMENT</u>

William H. Pickering (BPR #006883)
Catherine S. Dorvil (BPR #034060)
CHAMBLISS, BAHNER & STOPHEL, P.C.
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
      cdorvil@chamblisslaw.com

*Attorneys for Plaintiff*

Mark E. Schmidtke, Admitted Pro Hac Vice
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 2

    **A.**    McKee Has Standing to Bring this Action Against the Commissioner. ................ 2

        1.    Principles of Standing ................................................................. 2

        2.    The Tennessee statutes are causing actual and ongoing harm to McKee by interfering with McKee's right to design, structure and administer its self-funded ERISA Health Plan. ........................................................ 4

        3.    There is overwhelming evidence of the Commissioner's intent to enforce the Tennessee statutes against ERISA plans like McKee's. ....................... 6

    **B.**    McKee Has Stated a Claim Upon Which Relief Can Be Granted. ........................ 9

        1.    McKee's Claim Against Thrifty Med .......................................... 11

        2.    McKee's Claim Against the Commissioner ................................. 14

    **C.**    McKee Is Entitled to Declaratory Relief.  There Is No Reason for this Court to Decline to Exercise Its Jurisdiction ....................................................... 14

    **D.**    ERISA Preempts the Tennessee Statutes. ............................................. 16

        1.    The Tennessee laws have a connection with ERISA plans. ..................... 17

                a.    The Commissioner misstates the law. ........................... 17

                b.    *Rutledge* does not support the Commissioner's defense of the Tennessee statutes. ...................................................... 19

        2.    The Tennessee laws explicitly reference ERISA plans. ........................... 22

III.    CONCLUSION ............................................................................................ 25

# I.    <u>INTRODUCTION</u>

McKee Foods Corporation and the Commissioner of the Tennessee Department of Commerce and Insurance (the "Department") have filed cross motions for summary judgment, both contending that there are no genuine issues of material fact and that this Court should enter a judgment on the legal issues presented.  Again urging the Court not to address ERISA's preemption of the Tennessee laws McKee is challenging, the Commissioner rehashes standing arguments this Court twice rejected and resurrects the State of Tennessee's previous claims that McKee has no right to sue under ERISA and that the Court should decline to exercise the jurisdiction it has under the Declaratory Judgment Act.

After nearly three years of involvement in this case, the State, now speaking through the Commissioner, finally addresses the issue of ERISA preemption that has been central to this case since its inception.  Faced with the unenviable task of arguing that laws specifically naming and targeting ERISA plans really don't relate to ERISA plans, the Commissioner misapplies the Supreme Court's ruling in *Rutledge*[1] on a dissimilar Arkansas law, disregards binding Sixth Circuit precedent, and surprisingly, misstates the findings of courts in other cases.

Dissatisfied with the enforcement of existing law against ERISA plans, leadership in the Tennessee Legislature, in consultation with the Commissioner, made the unwise decision to specifically identify ERISA plans as entities subject to any willing pharmacy, "anti-steering" and other provisions regulating the plans' design, structure, and terms and conditions.  In its misguided attempt to go after ERISA plans like McKee's, the Legislature effectively assured that the laws would be preempted.

---

[1] *Rutledge v. Pharmaceutical Care Management Ass'n*, 592 U.S. 80 (2020).

Commissioner Lawrence testified that he and the Department would enforce the laws against ERISA plans until a court ordered them to stop.[2] McKee respectfully submits that it's time for that order to be given.

## II. ARGUMENT

### A. McKee Has Standing to Bring this Action Against the Commissioner.

This Court has twice rejected the Commissioner's argument[3] that McKee lacks Article III standing to challenge Tennessee statutes that infringe on McKee's right to design and administer its ERISA-governed Health Plan.[4] The Commissioner acknowledges this Court's previous holdings but argues that McKee now has a higher burden in responding to a motion for summary judgment and must provide evidence to support standing.[5] The Commissioner, however, disregards the fact that McKee *already* provided compelling, undisputed factual evidence supporting this Court's previous holdings. And as the Commissioner is well aware, the evidence supporting McKee's standing has been strengthened further by the deposition testimony of the Commissioner himself and that of senior Department officials.

#### 1. Principles of Standing

The requirement of standing is derived from the understanding that the existence of a case or controversy requires that the plaintiff have a sufficient stake in the outcome of the

---

[2] Lawrence Depo. at 172. (Excerpts and exhibits from Mr. Lawrence's deposition are included in Document 119-4, Exhibit D to McKee's Brief in Support of its Motion for Summary Judgment).
[3] Memorandum of Law in Support of Defendant Carter Lawrence's Motion for Summary Judgment (Doc. 123) ("Commissioner's Memorandum") at 8-11.
[4] *See* Order granting McKee's Motion for Leave to Amend Complaint (Doc. 82) at 13 (noting the State's intent to enforce the statutes against ERISA plans such as McKee's); Memorandum Opinion and Order denying Commissioner's Motion to Dismiss McKee's Amended Complaint (Doc. 115) at 5-6, 10 (distinguishing *Mulroy* and noting Commissioner's stated intent "to enforce the specific laws that [McKee] is challenging against the specific kind of benefits plan it operates").
[5] Commissioner's Memorandum at 8-9.

litigation to ensure the "concrete adverseness which sharpens the presentation of issues" before the court.[6]  Standing requires that the plaintiff suffer an "injury in fact" which the courts define as "an invasion of a *legally protected interest* which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical.""[7]  The likelihood of enforcement or "prosecution" is not a separate requirement for standing (as the Commissioner suggests)[8] and is relevant only if the plaintiff has not sustained an actual or ongoing injury.[9]

The requirement of standing in a pre-enforcement challenge to a statute was recently addressed in *Tennessee Educ. Ass'n v. Reynolds*,[10] in which the Court rejected the Tennessee Commissioner of Education's claim that plaintiffs lacked standing to challenge a state law purporting to outlaw the inclusion of certain prohibited concepts in school curricula and materials.[11]  The Reynolds court cited a long line of case law recognizing that standing could be based on either a substantial probability or a credible threat of enforcement.[12]  The Court further noted that under Supreme Court precedent, a plaintiff may "demonstrate an injury-in-fact, for standing purposes, by showing that a challenged law forced him to materially alter his

---

[6] *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).
[7] *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)) (citations omitted)
[8] Commissioner's Memorandum at 9.
[9] As noted in *Crawford*, standing can be based on a threatened, rather than an actual, injury if "the threatened injury is real, immediate, and direct." *Crawford*, 868 F.3d at 454 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).
[10] 732 F. Supp. 3d 783, 802 (M.D. Tenn. 2024).
[11] *See* Tenn. Code Ann. § 49-6-1019.
[12] *Reynolds*, 732 F. Supp 3d at 802, citing as examples *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)).

behavior."[13]  The Reynolds court went on to reject the defendants' suggestion that the "so-called 'McKay factors'" weighed against standing, commenting that the Sixth Circuit had been clear that the McKay factors "are not exhaustive, nor must each be established."[14]

> 2.  The Tennessee statutes are causing actual and ongoing harm to McKee by interfering with McKee's right to design, structure and administer its self-funded ERISA Health Plan.

As detailed in McKee's Brief in Support of its Motion for Summary Judgment (Doc. 119) ("McKee Summary Judgment Brief"), McKee has the right under ERISA to design, structure, and administer its self-funded Health Plan in a manner that is in the best interests of the plan and its participants.[15]  On an ongoing basis, the challenged Tennessee statutes are interfering with those rights – thus causing McKee injury – by imposing substantive requirements on the design, structure, terms, conditions, and administration of the McKee plan.

Specifically, Tennessee Code Annotated §§ 56-7-3120, 56-7-3121, and 56-7-2359 interfere with McKee's right to determine benefits provided under its plan and the providers of those benefits.[16]  Examples include requirements regarding the pharmacies that ERISA plans must include in their provider networks and the co-pays and other contributions for which plan participants are responsible.[17]  These matters must be governed by the McKee Health Plan

---

[13] *Id.* at 803 (citing *Clements v. Fashing*, 457 U.S. 957, 962 (1982)). *See Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 852–53 (6th Cir. 2024) (conduct in which plaintiff would otherwise have engaged prohibited by challenged law).

[14] *Id.* at 803-04 (quoting *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021)).

[15] McKee Summary Judgment Brief at 16-21.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) ("[E]mployers have large leeway to design disability and other welfare plans as they see fit.").

[16] *See Kentucky Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 363 (6th Cir. 2000) *aff'd sub nom. Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003) (any willing provider requirements effectively mandate employee benefit plan structures); *Pharmaceutical Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023) (network restrictions require the structuring of benefit plans in particular ways and infringe on employers' rights to structure their plans as they choose).

[17] *See* Tenn. Code Ann. §§ 56-7-3120 and 56-7-3121.

document, not by state laws designed to benefit pharmacies.[18]  Also, to the extent the state statutes purport to prevent McKee from excluding from its network providers that engage in conduct that harms the plan and plan participants, they inhibit McKee from carrying out its fiduciary responsibilities.[19]  Cognizant of these responsibilities and because of the statutory mandate that McKee include "any willing pharmacy" in the plan network, McKee has modified its Plan (*i.e.*, "has altered its behavior") and no longer has preferred pharmacies in Tennessee.[20]

Although McKee's dispute with Thrifty Med illustrates the manner in which the Tennessee statutes infringe on the rights of a plan sponsor and fiduciary, the viability of McKee's action against the Commissioner does not depend on the existence of the Thrifty Med dispute. Rather, McKee has standing to challenge the Tennessee laws because the statutes, on their face, purport to regulate the design, structure and administration of ERISA plans like McKee's. Indeed, as the evidence shows, Public Chapter 1070 was adopted for that specific purpose, *i.e.*, to regulate ERISA plans.[21]

Simply put, as a directly regulated party, McKee's harm flows from being subject to the laws,[22] particularly since ERISA plans like McKee's are *most likely to be targets of enforcement.*[23]  The laws invade McKee's federally protected interests.  Because McKee is

---

[18] *See* Health Plan Prescription Drug Program (Doc. 118-1, PageID # 1588 through 1610).
[19] *See* First Amended Complaint (Doc. 83) ¶¶ 31, 56, 59; 29 U.S.C. §1104(a)(1)(A) and (D); Brief *Amicus Curiae* of the ERISA Industry Committee (Doc. 133) at 12-13.
[20] Declaration of Justin Jolls (Doc. 118-1), ¶ 11 and Ex. A, Attachment B (various references to Preferred Pharmacy Network available to employees who live and work outside Tennessee).
[21] *See* McKee Summary Judgment Brief at 10-12.
[22] *See Carman v. Yellen*, 112 F.4th 386, 407 (6th Cir. 2024).
[23] *See Welty v. Dunaway*, No. 3:24-CV-00768, 2024 WL 4712759, at *12 (M.D. Tenn. Sept. 20, 2024).

impacted by the Tennessee statutes, injury is presumed, and McKee has standing to challenge the laws.[24]

       3.      <u>There is overwhelming evidence of the Commissioner's intent to enforce the Tennessee statutes against ERISA plans like McKee's.</u>

The Commissioner argues that McKee has not and cannot provide sufficient evidence of the Department's intent to enforce the Tennessee statutes.[25] At the outset, as the Commissioner has recognized, it is *his* burden as the moving party to present evidence to support a motion for summary judgment, showing the absence of any genuine factual dispute.[26] Only then does the burden shift to McKee as the nonmoving party.

The only "evidence" offered by the Commissioner in support of his Motion for Summary Judgment is the declaration of Jud Jones, the Department's Director of PBM Compliance.[27] Mr. Jones' declaration focuses primarily on the three administrative complaints that Thrifty Med filed against McKee and its PBM in 2021, noting that the complaints were closed with no action taken and that Thrifty Med has not filed any additional complaints involving McKee or its PBM.[28] Mr. Jones goes on to state that the Department has taken no formal action against McKee or its PBM and that to the best of his knowledge, the Department has not indicated an imminent intent to bring an enforcement action against McKee.[29] Mr. Jones concludes with a statement that the Department intends to enforce Tennessee's laws concerning PBMs as written but "without any

---

[24] *See S&M Brands, Inc. v. Summers*, 393 F. Supp. 2d 604, 617-18 (M.D. Tenn. 2005) (standing established where plaintiff alleged it was directly affected by enforcement of the statutes at issue); *Carman*, 112 F.4th at 407 ("When there is no doubt that the plaintiff is the direct object of the law, regulation, or government action, 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgement preventing or requiring the action will redress it.'" (citations omitted)).

[25] Commissioner's Memorandum at 10-11.

[26] *Id*. at 7.

[27] Declaration of Jud Jones (Doc. 122-1), ¶ 2.

[28] *Id*. ¶¶ 4-8.

[29] *Id*. ¶¶ 9-10.

particular intention to a particular type of 'covered entity' as that term is defined in [Tenn. Code Ann. § 56-7-3102(1)]."[30]

Tellingly, although Mr. Jones claims to be unaware of any expression by the Department of an imminent intent to bring an enforcement action against McKee, neither he nor any other representative of the Department has *disavowed* an intent to enforce the challenged laws against ERISA plans like McKee's. This fact was central to this Court's previous holding, supported by significant evidence already in the record, that McKee has standing to sue the Commissioner.[31]

This Court already rejected the Commissioner's arguments. And the application of a different standard for the Court's consideration of a motion for summary judgment (as opposed to the Commissioner's previous motion to dismiss) does not change anything, because McKee *already introduced* significant, material evidence supporting the Court's finding that the Commissioner intends to enforce the laws specifically against ERISA plans like McKee's. The evidence is set forth in McKee's Reply Brief in Support of its Motion for Leave to Amend Complaint (Doc. 81),[32] in McKee's Brief in Opposition to the State Defendants' Motion to Dismiss (Doc. 101),[33] and in the exhibits to those filings.[34]

Among other things, in connection with rulemaking proceedings conducted by the Department, McKee's counsel submitted a comment letter dated February 7, 2024 (Doc. 81-1), urging the Department to clarify that its proposed rules would not apply to self-funded ERISA plans like McKee's.[35] Other stakeholders, including the Pharmaceutical Care Management

---

[30] *Id*. ¶ 11.
[31] Memorandum Opinion and Order (Doc. 115) at 10.
[32] Doc. 81 at 4-7, 17-19.
[33] Doc. 101 at 8-10, 18-24.
[34] Docs. 81-1, 81-2, 81-3 and 81-4.
[35] *See* Doc. 81 at 3-6.

7

Association ("PCMA"), likewise objected to the Department's enforcement of the Tennessee PBM laws against ERISA plans and their sponsors.[36] In his response to PCMA, Commissioner Lawrence stated unequivocally that he intended to enforce the Tennessee laws and regulations against ERISA plans.[37] The Department's intent to enforce the statutes in question against ERISA plans such as McKee's was again confirmed, explicitly, in the Department's written comments which accompanied its final rules.[38] The Department certainly has "warned" McKee and other stakeholders that the Tennessee statutes will be enforced against their ERISA plans.[39]

Moreover, Mr. Jones' claim that the Department's intent to enforce Tennessee's PBM laws is "without any particular intention to a particular type of 'covered entity'"[40] is belied by his own deposition testimony, that of other Department representatives, and evidence that McKee introduced in support of its recently filed Motion for Summary Judgment. Mr. Jones acknowledged that the laws at issue specifically targeted ERISA plans and that the Commissioner and the Department intended to enforce the laws against ERISA plans, despite the protests and objections of McKee and other stakeholders.[41] Commissioner Lawrence confirmed that, despite concerns of ERISA preemption raised during the public comment period, it was his "decision to move forward with the rules, which would include enforcement actions against self-

---

[36] *See* PCMA letter to Commissioner Carter Lawrence dated February 1, 2024 (Doc. 81-2).
[37] *See* Letter from Carter Lawrence to Peter Fjelstad of PCMA dated February 21, 2024 (Doc. 81-3).
[38] *See* Rulemaking Hearing Rule(s) Filing Form (Doc. 81-4), p. 18 (PageID # 1028), Comment 29.
[39] *Cf. McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). In fact, just a week after Public Chapter 569 became effective, Commissioner Lawrence issued Department Bulletin 21-01 (July 8, 2021), stating that it was the legislature's intent for ERISA plans to be covered by the law and warning that "[t]he Department will enforce Pub. Ch. 569 accordingly." Department Bulletin 21-01 (Doc. 119-3), second page.
[40] Jones Dec. ¶ 11.
[41] Jones Depo. at 141-42. Pertinent excerpts from Mr. Jones' deposition are included in Document 119-6 (Exhibit F to McKee's Summary Judgment Brief).

funded ERISA plans . . ."[42]  Indeed, a concern about *lack of enforcement* of the PBM laws in the face of claims of ERISA preemption was the primary impetus for the passage of Public Chapter 1070.[43]  The facts introduced by McKee show not only that ERISA plans were targeted by the Legislature and the Department but also that this lawsuit by McKee, alleging ERISA preemption, was a specific concern that "underscore[d] why we must have language to enforce the PBM law."[44]

In summary, this Court was undoubtedly correct that McKee had standing because of the Department's stated intent to enforce the specific laws at issue against the specific kind of plan administered by McKee.  And the additional evidence McKee has introduced (deposition testimony and exhibits) provides further compelling support for McKee's Article III standing.

### B.    McKee Has Stated a Claim Upon Which Relief Can Be Granted.

Section II of the Commissioner's Memorandum, asserting that McKee's Complaint fails to state a claim upon which relief can be granted and that declaratory relief is not justified, is a significantly shortened version of the same arguments the State of Tennessee made in its March 2022 Motion to Dismiss (Docs. 27 and 28).  McKee filed a detailed response to the State's Motion to Dismiss,[45] refuting the State's arguments and demonstrating that both ERISA and the Declaratory Judgment Act authorize the relief McKee is seeking.[46]

---

[42] Lawrence Depo. at 186. *See also* Lawrence Depo. at 174 (confirming intent to enforce the laws against self-insured ERISA plans "unless a court told us otherwise").  Page 174 from Commissioner Lawrence's deposition is attached to this Brief as **Exhibit A**.

[43] McKee Summary Brief at 10-13.  Tellingly, ERISA plans were Public Chapter 1070's *only* addition to the list of 13 covered entities now set forth in Tenn. Code Ann. § 56-7-3102(1)(1)(A) and likewise were the only addition to the definition of "pharmacy benefits manager" set forth in Tenn Code Ann. § 56-7-3102(5).

[44] *Id.* at 11; Lawrence Depo. at 131-32, Ex. 3 at Bates 0280.

[45] *See* Plaintiff's Memorandum in Opposition to Intervenor's Motion to Dismiss (Doc. 31).

[46] This Court did not rule on the State's previous Motion to Dismiss, finding that the State's motion and others were moot after the Court granted a separate Motion to Dismiss by Thrifty Med.  *See* Memorandum Opinion and Order (Doc. 67) at 9.

The Commissioner appears to have abandoned the State's previous argument that the Court lacks subject matter jurisdiction over this action but maintains that McKee's First Amended Complaint (Doc. 83) ("Complaint") fails to state a claim for relief against Thrifty Med or the Commissioner[47] and also asserts that the Court *should decline to exercise its jurisdiction* under the Declaratory Judgment Act.[48]

McKee's action is authorized by ERISA, the Declaratory Judgment Act, and federal court precedent. Section 502 of ERISA (29 U.S.C.§ 1132) identifies the persons empowered to bring a civil action under ERISA. A *fiduciary* is one such person. Under Section 502(a)(3), a fiduciary may bring a civil action for injunctive or other appropriate equitable relief to address violations of ERISA and/or to enforce any of the provisions of ERISA *or* the terms of the plan.

McKee has, of course, brought this action as the sponsor, administrator and fiduciary of the McKee Health Plan,[49] and McKee has likewise invoked the Court's jurisdiction pursuant to the Declaratory Judgment Act (the applicability of which is not dependent on McKee's status as a fiduciary).[50] The United States Supreme Court has held that ERISA plan sponsors and fiduciaries may bring actions for declaratory and injunctive relief to establish that state statutes are preempted by ERISA. *See Shaw v. Delta Air Lines, Inc.[51]* The Court in *Shaw*, noting that the plaintiffs in that case were seeking injunctions against the enforcement of state laws they claimed to be preempted by ERISA, stated:

---

[47] The Commissioner presumably is requesting dismissal of McKee's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), although the Commissioner has not cited Rule 12.
[48] Commissioner's Memorandum at 12-16.
[49] *See, e.g.,* Complaint, ¶¶ 13, 58.
[50] *See* 28 U.S.C. § 2201(a), authorizing the declaration of "the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."
[51] 463 U.S. 85 (1983).

A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve . . . This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture.[52]

1.    <u>McKee's Claim Against Thrifty Med</u>

The Commissioner acknowledges that ERISA authorizes a fiduciary like McKee to bring suit for injunctive or other appropriate equitable relief.[53] The Commissioner alleges, however, that McKee has not stated a claim for relief against *Thrifty Med* because Thrifty Med is not a plan member or beneficiary and "is therefore not subject to ERISA."[54] Respectfully, the Commissioner's argument makes no sense and is contrary to Supreme Court precedent, including *Harris Trust and Savings Bank v. Salomon Smith Barney Inc*.[55] In *Harris Trust*, the Court noted that Section 502(a)(3) "admits of no limit . . . on the universe of possible defendants" and focuses instead on redressing the act or practice that violates any provision of ERISA.[56] Therefore, "defendant status under §502(a)(3) may arise from duties imposed by §502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions."[57]

McKee's Complaint alleges that Thrifty Med engaged in improprieties in processing prescriptions, overcharged the McKee Health Plan and its participants, and violated the terms of

---

[52] *Id.* at 96 n. 14 (citing cases); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 26-27 (1983); *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125 (1992); *Thiolkol Corp. v. Dept. of Treasury,* 987 F.2d 376, 380 (6th Cir. 1993); *Denny's, Inc. v. Cake,* 364 F.3d 521, 524-25 (4th Cir. 2004).
[53] Commissioner's Memorandum at 12, citing 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)).
[54] *Id.* at 13.
[55] 530 U.S. 238 (2000).
[56] *Harris Trust*, 530 U.S. at 246.
[57] *Id.* at 247 (ERISA fiduciary may bring an action under § 502(a)(3) against a nonfiduciary party in interest that allegedly violated ERISA).

the ERISA Plan.[58] Thrifty Med's actions were egregious and included overcharging for prescriptions, forging a Plan participant's name on prescription logs, and altering documents submitted as part of Thrifty Med's appeal of these findings.[59] Despite its wrongful conduct, Thrifty Med and its owners maintained that Tennessee law required McKee to include Thrifty Med in the Health Plan's pharmacy network, threatened legal action against McKee, actively lobbied for the passage of the legislation at issue in this case, and attempted to use the preempted laws to regain admittance to the network (a violation of Section 514(a) of ERISA).[60]

McKee sought injunctive and declaratory relief to redress Thrifty Med's misconduct and to enforce the terms of the Plan and the provisions of ERISA (including ERISA's preemption provision). McKee's action against Thrifty Med is specifically authorized by Section 502(a)(3). McKee's allegations against Thrifty Med state a claim upon which relief can be granted under ERISA and under the Declaratory Judgment Act.

Nevertheless, the Commissioner resurrects the State's previous argument that McKee's claims against Thrifty Med are somehow foreclosed by the Sixth Circuit's decision in *NGS American, Inc. v. Jefferson*.[61] As discussed in McKee's Memorandum in Opposition to the State's Motion to Dismiss (Doc. 31 at 16-21), the facts of *NGS American* were nothing like those of the instant case, and the courts have declined to apply *NGS American* in situations like those presented here.

In *NGS American,* a Michigan-based benefit plan was threatened with a tort action (for medical malpractice) by the widow of a plan member who resided in Florida. The plan

---

[58] Complaint ¶ 31.
[59] *See* Declaration of Angela Sharps (Doc. 35-2) ¶¶ 8-9; Second Declaration of Angela Sharps (Doc. 45-1) ¶¶ 5-6.
[60] Complaint ¶¶ 5, 32, 54.
[61] 218 F.3d 519 (6th Cir. 2000). *See* Commissioner's Brief at 13.

administrator filed suit in Michigan seeking to enjoin the widower from pursing the tort action in his home state.[62]  The *issue* in the case was whether a suit to prevent a plan beneficiary from pursuing a *state court tort action* was an action to enforce ERISA preemption.[63]  The Court answered this question in the negative, held that the Florida plan beneficiary was not subject to personal jurisdiction in Michigan, and dismissed the case.  The Court made clear that a Section 502(a)(3) action to enforce statutory preemption *could* be maintained in other circumstances but concluded that the facts presented in the case just did not support such a claim.[64]

Cases decided after *NGS American* have cabined that decision to its unique facts and procedural status.  *See Denny's, Inc. v. Cake,* 364 F.3d 521, 527 (4th Cir. 2004) (declining to apply *NGS American* in Section 502(a)(3) action to establish that state labor code provisions were preempted by ERISA); *Sherfel v. Gassman,* 748 F. Supp. 2d 776, 786 (S.D. Ohio 2010) (*NGS American* was inapplicable where plaintiffs were seeking "to determine the effect of ERISA preemption on . . . a state statute").

As discussed *supra* at 10-11, McKee's action is authorized by ERISA and the Declaratory Judgment Act.  The Sixth Circuit and other lower courts have followed the Supreme Court's lead in allowing actions by plan administrators and fiduciaries seeking declaratory and injunctive relief under Section 502(a)(3) to establish that state statutes are preempted by ERISA.  *See, e.g., Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376 (6th Cir. 1993) (action by ERISA plan fiduciaries seeking declaratory and injunctive relief that a state tax law was preempted by

---

[62] Not surprisingly, personal jurisdiction was a significant issue in the case.  The widower argued that the Michigan court lacked jurisdiction over him, and both the district court and the Sixth Circuit agreed.  *NGS American*, 218 F.3d at 521, 531.

[63] *See NGS American*, 218 F.3d at 525.

[64] *Id*. at 529, 531.  "Mickey Jefferson has done nothing to violate ERISA by filing suit in Florida state court, so NGS American's action against him cannot be construed to enforce ERISA."  *Id*. at 531.

ERISA; court noted that federal courts have exclusive jurisdiction over actions for relief under Section 502(a)(3)).

2.     McKee's Claim Against the Commissioner

The Commissioner also argues that McKee has no "cause of action" against him, again claiming that there is insufficient evidence of "ongoing" enforcement of the Tennessee laws.[65]  It is unclear whether the Commissioner is really alleging that McKee's Complaint fails to state a claim against the Commissioner (an argument this Court has specifically rejected)[66] or whether the Commissioner is again arguing that the facts do not establish that enforcement of the laws is likely.  In either event, the Commissioner's argument fails, for the reasons set forth in Section II.A.3. of this Brief (*supra* at 6-9).

**C.     McKee Is Entitled to Declaratory Relief.  There Is No Reason for this Court to Decline to Exercise Its Jurisdiction.**

The Commissioner has likewise resurrected the State's previous argument[67] that this Court should decline to exercise its jurisdiction under the Declaratory Judgment Act.[68]  Of course, in making this argument, the Commissioner essentially admits that this Court *has* jurisdiction under the DJA, and the Commissioner asks that the Court decline to exercise the jurisdiction it has.

The Commissioner relies almost entirely on *AmSouth Bank v. Dale*[69] which discussed five factors to consider in determining whether a court should exercise its jurisdiction.[70]  The Commissioner lists the five factors but provides only a cursory analysis of each.

---

[65] Commissioner's Memorandum at 13-14.
[66] Order (Doc. 82) at 13; Memorandum Opinion and Order (Doc. 115) at 5-6, 10.
[67] *See* Intervenor State of Tennessee's Motion to Dismiss (Doc. 27) at 2-3; Memorandum in Support of the State's Motion to Dismiss (Doc. 28) at 13-15.
[68] *See* Commissioner's Memorandum at 14-16.
[69] 386 F.3d. 763, 785 (6th Cir. 2004).
[70] *See id.* at 785.

14

Discussing the first factor (whether a judgment would settle the controversy), the Commissioner argues that a judgment would not "necessarily" settle the controversy *between McKee and Thrifty Med* – ignoring the controversy *between McKee and the Commissioner*. The principal issue in this case is whether the Tennessee statutes are preempted by ERISA. Both Thrifty Med and the Commissioner say they are not. The statutes target ERISA plans like McKee's. Public Chapter 1070 was enacted for that specific purpose, and the Commissioner, the Department and their representatives have explicitly stated that they will enforce the laws against ERISA plans until a court tells them to stop.

The declaration of ERISA preemption that McKee is seeking will end the controversy, ensure that the Commissioner and the Department will not proceed with their stated intent to violate federal law, and will prevent the Commissioner and pharmacies from infringing on the rights of employers like McKee to structure, design and administer their self-funded plans. For these same reasons, an application of the second *Dale* factor (whether a judgment would serve a useful purpose) weighs heavily in favor of this Court's exercise of its jurisdiction.[71]

The Commissioner goes on to provide lip service to the third, fourth and fifth *Dale* factors. The Commissioner claims that the third factor (procedural fencing) "weighs heavily" in favor of declining jurisdiction, suggesting that McKee has brought this action in a Tennessee federal court to head off a state-court action. The Commissioner cites *NGS American*, a case in which a suit was filed in Michigan against a Florida widower to prevent the widower from

---

[71] Here again, the Commissioner focuses solely on the dispute between McKee and Thrifty Med and ignores the central issue in the case: ERISA's preemption of statutes that purport to impose substantive requirements on the design, structure and administration of self-funded ERISA plans. The Commissioner likewise disregards the Sixth Circuit's holding that there is a live controversy between McKee and Thrifty Med. *McKee Foods Corp. v. BFP, Inc.*, No. 23-5170, 2024 WL 1213808, at *1 (6th Cir. Mar. 21, 2024).

proceeding in his home state. There is *zero indication* that McKee's action was motivated by such procedural gamesmanship. To the contrary, McKee is a Tennessee corporation; its plan is administered in Tennessee; both defendants are Tennessee based; the lawsuit involves Tennessee statutes; and the action has been filed in a Tennessee federal court where jurisdiction exists and venue is proper. And the state courts actually would have no jurisdiction over McKee's claims as an ERISA plan fiduciary.[72]

The fourth and fifth *Dale* factors likewise provide no basis for this Court to decline to exercise its jurisdiction over this important action. There is no indication that a declaratory judgment would increase any "friction" between federal and state courts or improperly encroach on state jurisdiction (fourth factor), and there is no better or alternative remedy to resolve the issue of ERISA preemption (fifth factor). As discussed above, federal courts regularly decide ERISA preemption cases. An action in state court would certainly be no more effective than McKee's current action in this court, particularly since federal courts have exclusive jurisdiction over actions under Section 502(a)(3) of ERISA.

### D. ERISA Preempts the Tennessee Statutes.

In Section III of his recently filed Memorandum, the Commissioner, for the first time, addresses the issue of ERISA preemption which has been central to this litigation from the beginning.[73] The Commissioner confirms the essential principles of ERISA preemption, acknowledging that ERISA preempts state laws that relate to any ERISA-governed benefit plan and that a state law "relates to" an employee benefit plan if the law either has a "connection

---

[72] *See Thiokol*, 987 F.2d. at 380 (federal courts have exclusive jurisdiction over ERISA §502(a)(3) actions).
[73] Commissioner's Memorandum at 16-23.

with" or a "reference to" such a plan.[74]  Citing a case addressing a different issue,[75] the Commissioner suggests that Congress must make its intent to preempt state law "unmistakably clear in the language of the statute" which, of course, is exactly what Congress did in Section 514(a) of ERISA.

             1.      <u>The Tennessee laws have a connection with ERISA plans.</u>

Here, the Commissioner's Memorandum goes off the rails in what can only be described as a tortured attempt to argue that state laws *specifically targeting* ERISA plans – and enacted for that very purpose – have no "connection with" the plans they regulate.  The Commissioner cites cases for points the cases do not make and tries – unsuccessfully – to shoehorn the Tennessee statutes into *Rutledge's* limited holding.

             a.      <u>The Commissioner misstates the law.</u>

According to the Commissioner, *Rutledge* said that "connection with" preemption plays a "narrow role" in the regulation of entities like PBMs that interact with benefit plans.  The cited pages of *Rutledge*[76] say no such thing and, to the contrary, confirm the principles of ERISA preemption discussed above, including the fact that laws having a connection with ERISA plans *are* preempted.  The pages from *Rutledge* cited by the Commissioner likewise confirm that it was Congress's intent "'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative and financial burden of complying with conflicting directives' and ensuring that plans do not have to tailor substantive benefits to the particularities of multiple jurisdictions."[77]

---

[74] Commissioner's Memorandum at 16.
[75] *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (addressing the question of whether a state or a state official is a "person" within the meaning of a federal civil rights statute, 42 U.S.C. § 1983).
[76] 592 U.S. at 86-87.
[77] *Id*. at 86 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

Referring to Tenn. Code Ann. § 56-7-3120(b), which prohibits PBMs as well as covered entities like McKee from offering any incentive to persuade a plan participant to utilize a pharmacy owned by or financially beneficial to the PBM or covered entity, the Commissioner claims, "It is well established that 'ERISA is unconcerned' with these types of anti-steering laws," citing *California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*[78] *Dillingham* said no such thing, and the case in no way involved anti-steering laws or, for that matter, *any* regulation of pharmacy benefits. *Dillingham* addressed a California law that required contractors to pay their workers the prevailing wage in a project's locale, with an exception permitting payment of lower wages to workers participating in an approved apprenticeship program. The issue was whether ERISA superseded the California prevailing wage law by prohibiting payment of an apprentice wage to an apprentice trained in an unapproved program. The Court concluded that the California law did not "relate to" employee benefit plans and therefore was not preempted.[79] *Dillingham* relied on the fact that prevailing wages and related issues such as vacation pay are traditionally the subject of state regulation, are not the types of issues that ERISA was intended to regulate, and that Department of Labor regulations specifically exempt such payroll practices from ERISA governance.[80] In contrast to *Dillingham*, this case involves direct, targeted regulation of employee benefits undisputedly governed by ERISA.

---

[78] 519 U.S. 316, 327 (1997).
[79] *Dillingham*, 519 U.S. at 319.
[80] *Id*. at 327-38; 29 C.F.R. §2510.3-1(b) (exempting certain payroll practices such as overtime, sick pay, holiday premiums, and others when paid out of an employer's general assets as part of its payroll system).

b.     *Rutledge* does not support the Commissioner's defense of the Tennessee statutes.

Ironically, the *Rutledge* case upon which the Commissioner relies supports *McKee's* position in this case by making it clear that a state law is preempted if it requires benefit plans to be structured in particular ways, such as by requiring payment of specific benefits, or if the indirect, economic effects of the law require the plan to adopt a certain scheme of substantive coverage.[81]  Addressing these considerations, the question becomes whether a state law "governs a central matter of plan administration *or* interferes with nationally uniform plan administration."[82]  If the answer is yes, the law is preempted.

McKee's Summary Judgment Brief (Doc. 119) addresses the nature of and criteria for ERISA preemption, discusses *Rutledge* and applicable cases specifically addressing ERISA preemption of any willing provider laws, and explains why the Tennessee statutes *are* preempted.[83] McKee will not repeat its points but will respond to the Commissioner's arguments.

The Commissioner relies almost entirely on *Rutledge* in support of his argument that laws specifically naming and targeting ERISA plans for substantive regulation really don't have a "connection with" ERISA plans.  Perhaps realizing this is an uphill battle, the Commissioner attempts to shoehorn the Tennessee laws into the *Rutledge* analysis by placing them in "buckets" the Commissioner believes will fit with the Supreme Court's analysis of the Arkansas law in *Rutledge*.[84]

The problem for the Commissioner is that the Tennessee statutes that are *actually at issue in this case* are unlike the Arkansas law that *Rutledge* held was not preempted.  Most notably, in

---

[81] *Rutledge* 592 U.S. at 86-87.
[82] *Id*. at 87 (emphasis added) (citation omitted).
[83] McKee Summary Judgment Brief at 16-24.
[84] Commissioner's Memorandum at 4-5, 17-19 (Creating and discussing "buckets" for the Tennessee laws).

stark contrast to the Tennessee statutes at issue in this case, the Arkansas law addressed in *Rutledge* "does not directly regulate health benefit plans at all, ERISA or otherwise."[85]

The Arkansas law in *Rutledge*[86] was adopted in response to concerns that "reimbursement rates set by PBMs were often too low to cover pharmacies' costs," and the Act therefore required PBMs "to reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler."[87]  Tennessee has a similar law, *i.e.*, Tenn. Code Ann. § 56-7-3206(c) which prohibits PBMs from reimbursing pharmacies for prescription drugs or devices in "an amount that is less than the actual cost to that pharmacy for the prescription drug or device."[88] This statute, the Tennessee equivalent of the Arkansas law in *Rutledge*, is *not being challenged by McKee* and is *not at issue in this case*.

The Court in *Rutledge* concluded that the Arkansas law addressing reimbursement rates paid by PBMs to pharmacies was merely a form of cost regulation that would have only an indirect effect on ERISA plans with which PBMs contracted.[89]  The Tennessee statues at issue in the instant case go far beyond the Arkansas law and its Tennessee equivalent (Tenn. Code Ann. § 56-7-3206(c)).  The Tennessee statutes the Commissioner puts in its "cost provisions" bucket, particularly Tenn. Code Ann. §56-7-3120(a), restrict the contributions (copays, coinsurance, etc.) that ERISA plans may require of plan participants.  Tenn. Code Ann. § 56-7-3120(b)(2) similarly prohibits ERISA plans from offering financial incentives such as *lower* copays beneficial to a

---

[85] *Rutledge*, 592 U.S. at 88-89.
[86] 2015 Ark. Act 900, codified at Ark. Code Ann. § 17-92-507.
[87] *Rutledge*, 592 U.S. at 84.
[88] Tenn. Code Ann. § 56-7-3206(c)(1).  The Tennessee law and regulations adopted by the Department require PBMs to establish approved appeal processes under which pharmacies may challenge PBM reimbursement decisions.  Tenn. Code Ann. § 56-7-3206(c)(2); Tenn. Rules and Regs. 0780-01-95-.03 *et seq*.
[89] *Rutledge*, 592 U.S. at 88.

participant who chooses to use a company-owned pharmacy like the McKee Family Pharmacy. *Copays and coinsurance* are governed by the terms of the McKee Plan itself, are *benefit design* decisions that are solely within the prerogative of the plan sponsor, and unlike the Arkansas law in *Rutledge,* directly impact the benefits offered to plan participants and beneficiaries. ERISA requires that plans be administered in accordance with their terms[90] and preempts state laws that purport to regulate plan benefit structure.[91]

The Commissioner's defense of the Tennessee laws' any willing provider provisions[92] ignores the incontrovertible fact that the creation of provider networks (*i.e.*, the pharmacies that provide benefits to plan participants) is an essential part of plan design, structure and administration. As the Sixth Circuit has held, any willing provider laws "not only affect the benefits available by increasing the potential providers, they directly affect the administration of the plans."[93] The Commissioner cannot dispute that the Sixth Circuit's ruling to this effect in *Nichols* or that the Tenth Circuit's ruling in *Mulready* is directly applicable. Therefore, the Commissioner makes the far-fetched claim that *Nichols* was abrogated by *Rutledge* even though the two cases addressed different kinds of laws.[94]

The Commissioner improperly cites *Rutledge* for the proposition that "even with Any-Willing-Provider laws in place," a plan can still provide a nationally uniform benefit package.[95] Any willing provider laws were not at issue in *Rutledge* and are nowhere mentioned in the case.

---

[90] 29 U.S.C. § 1104(a)(1)(D).
[91] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983); *Rutledge* 592 U.S. at 86-87.
[92] Commissioner's Memorandum at 18-19, 21-23.
[93] *Nichols*, 227 F.3d. 352, 363 (6th Cir. 2000). *See also Mulready*, 78 F.4th at 1198; *CIGNA Healthplan of Louisiana v. Louisiana ex rel. Ieyoub*, 82 F.3d 642, 647-48 (5th Cir. 1996); *Stuart Circle Hosp. Corp. v. Aetna Health Mgmt.*, 995 F.2d 500, 501-02 (4th Cir. 1993).
[94] Commissioner's Memorandum at 21.
[95] Commissioner's Memorandum at 22.

The Commissioner likewise misquotes *Pharmaceutical Care Management Association v. Wehbi*,[96] suggesting incorrectly that the challenged provisions in that case required that a plan must permit a term-abiding pharmacy to enter its network.[97] The provision of the North Dakota law to which *Wehbi* was referring required that a PBM permit a pharmacy to fulfill mail orders or dispense all drugs allowed under the pharmacy's license. The sentence quoted by the Commissioner did not mention networks, and the words omitted in the Commissioner's ellipsis were "mail orders."[98]

In *Mulready*, the Tenth Circuit, relying on the Sixth Circuit's decision in *Nichols* and providing a well-reasoned analysis of *Rutledge*, concluded that an Oklahoma any willing provider law was preempted because network restrictions required providers to structure plans in particular ways and that network scope and cost-sharing arrangements were key benefit designs for an ERISA plan.[99] The Commissioner can only argue that *Mulready* was wrongly decided and that the Tenth Circuit gave undue weight to the Sixth Circuit's decision in *Nichols* and the Fifth Circuit's decision in *CIGNA Health Plan*.

2.     The Tennessee laws explicitly reference ERISA plans.

The Tennessee statutes McKee says are preempted include Tenn. Code Ann. §§ 56-7-3120 and 56-7-3121. Section 3120(b)(1) includes one of the challenged any willing pharmacy provisions and incorporates Tennessee's original AWP law, which McKee also challenges, by reference.[100] Sections 3120 and 3121 are both part of Tennessee Code Annotated Title 56,

---

[96] 18 F.4th 956, 968 (8th Cir. 2021).
[97] Commissioner's Memorandum at 22.
[98] *Wehbi*, 18 F.4th at 968.
[99] *Mulready*, 78 F. 4th at 1198.
[100] Specifically, Tenn. Code Ann. § 56-7-3120(b)(1) provides that a PBM or covered entity shall not interfere with a patient's right to choose a pharmacy *in a manner that violates* Tenn. Code Ann. § 56-7-2359.

Chapter 7, Part 31 ("Part 31"). In Public Chapter 1070, the Legislature added a new section to Part 31 which reads:

> Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.*).[101]

Public Chapter 1070 further amended existing law to add ERISA plans to the definitions of "covered entity" and "pharmacy benefit manager" that would be subject to Part 31.[102] Although the definition of "covered entity" lists 13 types of entities, ERISA plans were the *only* entity added and targeted by Public Chapter 1070.[103] The undisputed facts, including the testimony of Commissioner Lawrence and related email communications confirm that the intent of the legislation was to specifically include ERISA plans within the coverage of the law and that McKee's assertion of ERISA preemption *in this lawsuit* was part of the equation.[104]

Although it is hard to imagine more explicit "references to" ERISA plans than those deliberately included in Part 31, the Commissioner argues that the Tennessee laws actually do not have a reference to an ERISA plan.[105] Quoting *Nichols*, the Commissioner argues that a mere reference to an ERISA plan is insufficient for preemption *unless* the law "singl[es] them out for different treatment."[106] Contrary to the Commissioner's suggestion, *Nichols* did not say that a law's disparate treatment of ERISA plans was essential for "reference to" preemption. While noting that "a mere reference to an ERISA plan, without more, *may* not be enough to cause

---

[101] Public Chapter 1070 (Copy attached as **Exhibit B**), Section 7 (on p. 5). The new section is codified at Tenn. Code Ann. § 56-7-3122.

[102] Public Chapter 1070, Sections 3 and 4 (on p. 4). These sections are codified at Tenn. Code Ann. § 56-7-3102(1) and (5).

[103] Compare definition of "covered entity" in Public Chapters 1070 with that included in the previous law, 2007 Public Chapter 224 (copy attached as **Exhibit C**).

[104] *See* McKee Summary Judgment Brief (Doc. 119) at 10-13 (Discussing origins of Public Chapter 1070).

[105] Commissioner's Memorandum at 19-21.

[106] *Id*. at 19.

preemption," *Nichols* then stated that "Supreme Court precedent shows that if such a reference is combined with *some effect on those plans*, *such as* singling them out for different treatment, preemption will result."[107]  *Nichols* cited *Mackey v. Lanier Collection Agency & Service, Inc.*[108] *Mackey* confirmed that state laws designed to affect employee benefit plans *are* preempted, stating:

> On several occasions since our decision in *Shaw,* we have reaffirmed this rule, concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). **In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a).**[109]

*Mackey* was cited in *District of Columbia v. Greater Washington Bd. of Trade*[110] in which the Supreme Court held that a section of the District of Columbia's Equity Amendment Act "specifically refers to welfare benefit plans regulated by ERISA *and on that basis alone is pre-empted*."[111]  The Court added that it made no difference that the section was "part of the District's regulation of, and therefore also 'relate to,' ERISA exempt workers' compensation plans."[112]  Disparate treatment of ERISA plans thus was not required for "reference to" preemption.[113]

We often tell jurors, "Don't leave your common sense at the door."  The same applies here.  Laws that not only refer to ERISA plans but were created to subject them to substantive

---

[107] *Nichols,* 227 F.3d at 360 (emphasis added).
[108] 486 U.S. 825 (1988).
[109] *Mackey*, 486 U.S. at 829 (citations omitted) (emphasis added).
[110] 506 U.S. 125 (1992).
[111] *Greater Washington Board of Trade*, 506 U.S. at 130 (emphasis added).
[112] *Id*. at 131.
[113] *See also FMC Corp. v. Holliday,* 498 U.S. 52 (1990) (law had "reference to" ERISA when it included both ERISA and non-ERISA programs in its scope).

state regulation unquestionably reference ERISA plans and, as in *Mackey,* were "specifically designed" to do so.

### III.    CONCLUSION

The Commissioner's Motion for Summary Judgment should be denied, and McKee's Motion for Summary Judgment should be granted.

This the 21st day of January, 2025.

<div style="margin-left:40%">

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:    */s/William H. Pickering*
    William H. Pickering (BPR #006883)
    Catherine S. Dorvil (BPR #034060)
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
    cdorvil@chamblisslaw.com

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke, *Admitted Pro Hac Vice*
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff*

</div>

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 21st day of January, 2025.

<div style="margin-left:40%">

*/s/ William H. Pickering*

</div>