# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| **MCKEE FOODS CORPORATION,** | Case No. 1:21-cv-279-CEA-MJD |
| Plaintiff, | |
| v. | |
| **BFP, INC. d/b/a THRIFTY MED PLUS PHARMACY; STATE OF TENNESSEE;** and **CARTER LAWRENCE in his official capacity as COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE,** | District Judge Charles E. Atchley, Jr. |
| | Magistrate Judge Michael J. Dumitru |
| Defendant. | |

### DEFENDANT BFP, INC.'S REPLY IN ADDITIONAL SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

Defendant BFP, Inc. d/b/a Thrifty MedPlus Pharmacy ("***Thrifty Med***"), by and through counsel, submits its Reply in Additional Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Judgment on the Pleadings ("***Second Motion to Dismiss***"). (Docs. 120 & 121).

## INTRODUCTION

Thrifty Med's Second Motion to Dismiss arises from its consistent positions throughout the course of this litigation. Thrifty Med has always believed and continues to believe that PC 569 and PC 1070 represent positive developments intended to ensure patient choice & expanded treatment options, promote the viability and success of local independent pharmacies across the State of Tennessee, and guard against burdensome overreaches by pharmacy benefits managers ("***PBM***") who unnecessarily increase the administrative costs associated with prescription drug

coverage to the benefit of PBM shareholders and to the detriment of the average patient. Thrifty Med's Motion to Dismiss, like numerous other pleadings filed throughout this litigation, reiterates its stances while also acknowledging the inescapable reality of the relationship between Thrifty Med and McKee: while Thrifty Med does not believe the Employee Retirement Income Security Act of 1974 ("*ERISA*") preempts PC 569 and 1070, it nonetheless has no interest in seeking reinstatement to the Prescription Drug Program ("*PDP*") operated by McKee as part of the company's Health Benefits Plan ("*Plan*").

Unfortunately, McKee refuses to take an unequivocal "No" for an answer and seems intent on having its snack cakes and eating them, too. Thrifty Med made its disinterest in reinstatement clear throughout briefing and oral arguments before this Court and the Sixth Circuit, in pleadings submitted following the Sixth Circuit's remand of the case, and, most importantly, in support of Thrifty Med's pending Second Motion to Dismiss. Despite these clear, unequivocal statements of disinterest, McKee's Response in Opposition to Thrifty Med's Second Motion to Dismiss ("*Response*") stubbornly refuses to acknowledge Thrifty Med's sworn declarations and stipulations, inaccurately states the record, and, most strikingly, attempts to move the goalposts to manufacture some semblance of an active controversy. This Court should reject McKee's transparent tactics and enter an order dismissing Thrifty Med from this action with immediate effect.

## BRIEF ADDITIONAL FACTS AND PROCEDURAL HISTORY

The facts surrounding this action are well documented, but the repeated inaccurate statements regarding the record advanced in McKee's Response compels Thrifty Med to provide additional clarity. There is no dispute that, at one time, Thrifty Med served as an approved in-network pharmacy in the PDP of McKee's Plan. (Doc. 83 at ¶¶ 14, 31; *see also* Doc. 44-1). In

2019, McKee provided notice of a 2018 complaint submitted by a member of the McKee Plan. (Doc. 138-1 at ¶ 4). Thrifty Med initially did not know the complete details of the complaint, but it did receive notice of an audit conducted by McKee's then-PBM, Magellan RX Management, LLC ("*Magellan*"). (*Id.*). Following the audit, McKee and its subsequent PBM, MedImpact Healthcare Systems, Inc. ("*MedImpact*") informed Thrifty Med of their intent to remove Thrifty Med from the list of approved, preferred in-network pharmacies in the PDP, effective July 1, 2019. (*Id.* at ¶ 5). Thrifty Med subsequently discovered the initiating complaint stemmed from the McKee member's mistaken belief Thrifty Med overbilled the PDP. (Docs. 35-2 at ¶¶ 8-9; 45-1 at ¶¶ 5-6).

Around the same time as the removal, Magellan submitted a complaint to the Tennessee Board of Pharmacy, reporting the same alleged improprieties as those raised by McKee in 2019. (Doc. 138-1 at ¶ 6). The Tennessee Board of Pharmacy assigned an investigator to examine Magellan's accusations, and the investigator interviewed various members of Thrifty Med's staff, obtained affidavits, and reviewed Thrifty Med's records. (*Id.* at ¶ 7). On May 5, 2020, the Tennessee Board of Pharmacy reviewed the investigator's findings. (*Id.* at ¶¶ 8-9). As reflected in the minutes of its May 5, 2020 meeting, the Tennessee Board of Pharmacy summarily dismissed Magellan's complaint:

> **Case 36.**
>
> Complainant alleged fraudulent billing by respondent pharmacy by billing for 3 separate thirty days supply of a drug but dispensing a ninety day supply.
>
> BOP Investigator reviewed records and interviewed pharmacy staff. All denied fraudulent billing. Investigator found that the claim was actually a rebill and when the patient was asked to sign for receipt, the patient refused to sign because of the confusion of rebilling the insurance for the correct amount. Investigator did not find anything to support the allegations.

> **No prior discipline.**
>
> Recommend: Dismiss
>
> Dr. Pryse made the motion to **accept counsel's recommendation**. Dr. Rodgers seconded the motion. The motion carried.

(*Id.*; *see also* Doc. 138-1 at PageID # 2130) (emphasis in original).[1] Additionally, from 2019 to 2020, Thrifty Med was the subject of five (5) audits, two (2) of which were conducted by MedImpact. (Doc. 138-1 at ¶ 10). All of those audits resulted in exemplary findings, with minimal discrepancies. (*Id.*). Thrifty Med also received confirmation from MedImpact that the 2019 removal was a "no cause" removal. (*Id.* at ¶ 5). In light of these developments and its longstanding relationships with numerous members of the McKee Plan, Thrifty Med felt vindicated in its denial of any wrongdoing and initially pursued reinstatement to McKee's PDP. (Doc. 83 at ¶ 32(a)). Nonetheless, McKee refused.

Following the passage of Public Chapter 569 ("***PC 569***") & statements by the Tennessee Department of Commerce and Insurance ("***TDCI***") and with the Tennessee Board of Pharmacy's dismissal in mind, Thrifty Med filed the three (3) administrative complaints against MedImpact with TDCI, contending the PBM violated applicable statutes by refusing to reinstate Thrifty Med to the PDP. (Doc. 83 at ¶¶ 32(f) & 37). TDCI dismissed each of the complaints in the weeks that followed. (*Id.* at ¶ 32(f); *see also* Doc. 71 at PageID # 870). Nonetheless, McKee filed the instant action. The original Complaint only listed McKee as the named plaintiff, conspicuously omitting

---

[1] The Minutes of the May 5, 2020 meeting of the Tennessee Board of Pharmacy can be found at https://www.tn.gov/content/dam/tn/health/healthprofboards/pharmacy/Mins05-20.pdf. This Court has held minutes of a government agency's board meetings, which are public records, are subject to judicial notice and thus do not require the conversation of a motion filed under Fed. R. Civ. P. 12 to a motion for summary judgment under Rule 56. *See Roane Cnty., Tennessee v. Jacobs Engr. Group, Inc.*, 2020 WL 2025613, at *4 (E.D. Tenn. Apr. 27, 2020).

MedImpact, PBM lobby the Pharmaceutical Care Management Association ("**PCMA**") and/or any representative body of ERISA providers like the ERISA Industry Committee ("**ERIC**"). (Doc. 1; *see also* Doc. 83).

Throughout the pendency of litigation, Thrifty Med maintained (as it continues to maintain) that ERISA does not preempt PC 569 or Public Chapter 1070 ("**PC 1070**"), a position intended toadvocate for patient choice and support other independent locally owned pharmacies across Tennessee. Nonetheless, McKee's conduct since 2018 left Thrifty Med totally disinterested in pursuing reinstatement. (*See* Docs. 37, 38, 38-3).

This Court granted Thrifty Med's first Motion to Dismiss on February 3, 2023. (Doc. 67). McKee appealed that dismissal. (Doc. 68). The Sixth Circuit reversed this Court's decision based on what it perceived as Thrifty Med's failure to unequivocally state that it would never pursue reinstatement under PC 569 *or* 1070. (Doc. 71).

Upon remand, this Court entered an Order requiring the parties to meet and confer to discuss the current complexion of the case and submit a Joint Report clarifying the parties' respective positions. (Doc. 73). On April 30, 2024, the parties filed that Joint Report, with Thrifty Med summarizing its position as follows in pertinent part:

> b. **Thrifty Med:** As previously noted, **Thrifty Med no longer wants to pursue reinstatement into the McKee Health Plan and has no plans to do so. Thrifty Med understands from the opinion of the Sixth Circuit in this case that a more clear, unequivocal stipulation that Thrifty Med will not seek reinstatement will moot this case as to Thrifty Med. Thrifty Med is in the process of discussing the possibility of a mutual resolution with McKee. If that resolution does not occur, Thrifty Med has the option of making a clear, unequivocal stipulation that would moot the case.** That option, however, may result in further litigation over the mootness issue….Finally, if Thrifty Med remains in the case, it submits that this case should be stayed in light of ongoing proceedings in *Glen Mulready, et al. v. Pharmaceutical Care*

> *Management Association*, Supreme Court of the United States, Docket No. [23-1213]. As previously noted in various pleadings filed throughout the pendency of this action, that case involves substantially similar preemption issues, including the question of ERISA preemption of an "Any Willing Provider" statute.

(Doc. 76) (emphasis added).

McKee subsequently filed its Amended Complaint, which substantially directed its focus on the issue of ERISA preemption as opposed to any alleged wrongdoing by Thrifty Med. (*See* Doc. 83). The Amended Complaint only focused on the enforcement of the "Any Willing Provider" portions of PC 569 and PC 1070. (*Id*.). Despite what McKee contends now, the Amended Complaint does not allege that Thrifty Med violated the terms of McKee's PDP or actually engaged in fraudulent or wrongful conduct.

Thrifty Med provided an Answer to the Amended Complaint, noting, *inter alia*, Thrifty Med's belief the case no longer presented an active case in controversy. (Doc. 98). At the same time, counsel for Thrifty Med and McKee engaged in settlement discussions, but the parties were unable to find a consensus on proposed terms.

Thrifty Med largely remained outside of the fray of subsequent discovery between McKee and Defendant Carter Lawrence, Commissioner of TDCI ("***Commissioner Lawrence***"). On December 31, 2024, Thrifty Med filed its instant Second Motion to Dismiss. (Docs. 120 & 121). Addressing the specific concerns raised by the Sixth Circuit, Thrifty Med's Second Motion to Dismiss demonstrated this action no longer presents an active case in controversy between Thrifty Med and McKee. (*Id*.). This was especially true in light of stipulations submitted by the sole officers and shareholders of Thrifty Med, which stated "unequivocally, without reservation, and with absolute clarity that Thrifty Med will not pursue reinstatement to McKee's PDP under any past, current, or future versions of Tennessee's 'Any Willing Provider' statutory scheme,

- 6 -

including, without limitation, PC 569 or PC 1070." (Docs. 120-1 & 120-2). Alternatively, Thrifty Med's Second Motion to Dismiss demonstrated that, even if an active controversy does exist between Thrifty Med and McKee, McKee's Amended Complaint failed to state an actionable claim against Thrifty Med, especially for injunctive relief. (Docs. 120 & 121).

On January 21, 2025, McKee responded in opposition to Thrifty Med's Second Motion to Dismiss. (Doc. 136). McKee's Response errantly contended that Thrifty Med's arguments, including its renewed and unequivocal stipulations, came as a complete surprise and were "untimely." (*Id.*). More perplexingly, McKee's Response attempted to move the target of this litigation, arguing that Thrifty Med's stipulations failed to unequivocally stipulate that it "would not challenge McKee on other aspects of the Tennessee laws McKee says are preempted, such as the 'anti-steering' provisions contained in Tenn. Code Ann. § 56-7-3120(b)(2)." (*Id.*). This was in spite the fact that 1) McKee's entire lawsuit was predicated on Thrifty Med's prior efforts to obtain reinstatement via PC 569's "Any Willing Provider" provisions and 2) neither McKee's original or Amended Complaints contain any allegation that Thrifty Med ever sought enforcement of the "anti-steering" provisions against McKee and/or its PBMs. (*See* Docs. 1 & 83).

Also on January 21, 2025, Thrifty Med President Greg Bohannon ("**Mr. Bohannon**") submitted a sworn declaration in support of Thrifty Med's Response in Opposition to McKee's Motion for Summary Judgment. (Doc. 138-1). Mr. Bohannon's declaration further stipulated as follows, in pertinent part:

> 12. Nonetheless, Thrifty Med has affirmatively, conclusively, and unequivocally stipulated and continues to stipulate that it has no intent or desire to seek reinstatement to the McKee PDP via the provisions of [PC 569], [PC 1070], any future version of Tennessee's "Any Willing Provider" statutory scheme, or any other Tennessee statute.

(*Id.* at ¶ 12).

## LAW & ARGUMENT

Thrifty Med's Second Motion to Dismiss and the stipulations submitted in support clearly demonstrate the mootness of this action as it pertains to any controversy between Thrifty Med and McKee. McKee's original Complaint and Amended Complaint both focused on the alleged "danger" of Thrifty Med utilizing PC 569 and/or 1070 to strong arm its way back into the McKee PDP against McKee's wishes. Thrifty Med specifically and unequivocally addressed the "limited assurances" that drove the Sixth Circuit to remand the case for further proceedings. Nonetheless, McKee's Response reflects its curious determination to keep Thrifty Med in the case by any means necessary. This is despite the reality that any declaratory relief would only serve to provide an impermissible advisory opinion in light of Thrifty Med's categoric refusal to seek reinstatement to the McKee PDP in the future via past, present, or future Tennessee statutes. Similarly, Thrifty Med's Second Motion demonstrated the futility of McKee's very claims against Thrifty Med. This Court should reject McKee's transparent attempts to contort the record and invent new arguments in favor of Thrifty Med's continued inclusion as a named defendant in this action and grant the Second Motion to Dismiss.

### I. NO ACTIVE CASE IN CONTROVERSY EXISTS BETWEEN THRIFTY MED AND MCKEE

As briefed extensively throughout this litigation, Article III of the United States Constitution limits the exercise of judicial power to "cases" and "controversies", just as the Declaratory Judgment Act of 1934 limits a court's power to grant such relief to "cases of actual controversy." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239 (1937) (internal citations omitted). A "controversy" must be one that is appropriate for judicial determination, and a "justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Id*. "The controversy must

be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id*. at 240-41. In this way, the doctrine of mootness guards against the issuing of mere advisory opinions. *Holman v. Vilsack*, 582 F.Supp.3d 568, 580 (W.D. Tenn. 2022) (internal quotation and citations omitted). Relief under the Declaratory Judgment Act is typically sought before the completed "injury in fact" has occurred, but "must be limited to resolution of an actual controversy." *St. Paul Fire & Marine Ins. Co. v. T.U. Parks Const. Co.*, 2007 WL 2385960, at *3 (E.D. Tenn. Aug. 16, 2007) (internal quotations and citations omitted). "When seeking declaratory and injunctive relief, a plaintiff must show **actual present harm or a significant possibility of future harm in order to demonstrate the need for review.**" *Id*. (emphasis added).

### A. Absent Any Concrete Action by Thrifty Med toward McKee, McKee's Claims Against It Are Moot

A cursory application of these principles to the current dynamic between Thrifty Med and McKee reveals the lack of a justiciable case in controversy between those parties. Thrifty Med has repeatedly, affirmatively, conclusively, and unequivocally stipulated that it will not seek reinstatement via PC 569 or PC 1070, the statutory schemes at issue in McKee's operative Amended Complaint; any future versions of those statutory schemes; or any other Tennessee statute. (Docs. 120-1, 120-2, and 138-1). Absent any effort by Thrifty Med to seek reinstatement via such Tennessee statutes, McKee's inclusion of Thrifty Med in this action is moot.

### B. Any Remaining Disagreement is Purely Academic

McKee's arguments against this conclusion fall wide of the mark and actually underscore the mootness of any prior conflict. First, McKee contends an actual case in controversy exists based on Thrifty Med's continued assertion that ERISA does not preempt PC 569 or PC 1070. Respectfully, a disagreement over legal conclusions does not create a case in controversy. This is

exactly why the United States Supreme Court has expressly mandated that a case must present a judiciable controversy as opposed to one of "a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Aetna Life Ins. Co.*, 300 U.S. at 240-41. Thrifty Med and McKee can and do disagree concerning the issue of ERISA preemption and, more fundamentally, whether laws like PC 569 and 1070 benefit patients seeking pharmaceutical services in the State of Tennessee. Such a difference, without more, is merely academic. McKee's Response contends Thrifty Med seeks to enforce Tennessee laws that specifically target and purport to regulate ERISA-governed plans like McKee's. McKee, however, has not and cannot point to any actual efforts by Thrifty Med to "enforce" Tennessee laws against McKee, which is the only ERISA plan provider named as a litigant in this action.

### C. Thrifty Med Specifically Addressed the Sixth Circuit's Concerns Regarding Voluntary Cessation

McKee next tries to revive its claims by falsely contending Thrifty Med selectively and erroneously applied only three of six factors referenced in the Sixth Circuit's opinion remanding this case for further consideration. A quick examination of that opinion demonstrates the the fallacy of McKee's assertion. The Sixth Circuit specifically employed *Resurrection Sch. V. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc) to analyze the parties' competing arguments concerning voluntary cessation. (Doc. 71 at PageID #873, 876-80). Acknowledging *Resurrection Sch.* analyzed the actions of a government actor, the Sixth Circuit concluded "some of the principles on which the decision stands can also be relevant to private actors," namely "the timing and alternative justification of cessation, the status of the 'relevant circumstances,' and whether future action would present a substantially similar legal controversy." (*Id*. at PageID #877).

### 1. Timing and Alternative Justifications

The first factor identified by the Sixth Circuit related to timing and alternative justifications for voluntary cessation, with the appellate court noting "[t]he timing of cessation may suggest the injury will not recur the further away the cessation occurs from the start of the litigation and when it is for reasons unrelated to litigation." (*Id.* at PageID #878). Thrifty Med's Motion highlighted the ever-growing span of time between Thrifty Med's conduct at issue (i.e., filing administrative complaints **against MedImpact**) and the present date. In nearly four (4) years, Thrifty Med has not taken any action to press for reinstatement to the McKee PDP, including after the passage and enactment of PC 1070, a law McKee contends Thrifty Med considered "more favorable." Absent any temporary or preliminary injunction, nothing stopped Thrifty Med from filing additional administrative complaints against McKee, MedImpact, or McKee's current PBM, Capital Rx, Inc. in pursuit of reinstatement. But Thrifty Med did not take such action. McKee has not pointed and cannot point to any actual strategic advantage obtained by Thrifty Med via its affirmative, conclusive, and unequivocal stipulations. Instead, the stipulations in question arise from the reality that Thrifty Med restructured its business operations and endured what it deems bad faith conduct by McKee, leaving Thrifty Med to conclude it neither needs nor wants to obtain reinstatement to McKee's PDP via Tennessee statutes. In filing its stipulations, Thrifty Med merely followed through on the intentions set out in the parties' Joint Report. (Doc. 76).

### 2. Change in Circumstances

The second factor applied in the Sixth Circuit's opinion addressed "change in the circumstances of the two parties." (Doc. 71 at PageID # 880). Thrifty Med's Second Motion to Dismiss and stipulations demonstrated a significant change in the circumstances of the two parties. At the time of its removal from the McKee PDP in 2019 and the filing of its administrative

complaints against MedImpact in 2021, Thrifty Med suffered a loss of business volume given its proximity to McKee's headquarters and bakery in Collegedale, Hamilton County, Tennessee. Since that time, however, Thrifty Med restructured its business operations to maintain viability. (*See* Docs. 120-1 & 120-2). The significant change in circumstances is also reflected by McKee's oppressive and unnecessary discovery tactics, attacks on Thrifty Med's efforts to advertise in and around the community Thrifty Med serves, McKee's construction of a pharmacy less than 775 ft. across Apison Pike from Thrifty Med's current facility, and McKee's efforts to denigrate Thrifty Med in the public eye. (Docs. 46-1, 120-1 & 120-2). Thus, as noted above, Thrifty Med neither needs nor wants to be reinstated to the McKee PDP and will not pursue reinstatement under PC 569 or 1070, any future versions of those laws, or any other Tennessee statute. (*Id*.; *see also* Doc. 138-1).

### 3. The Potential for the Same Legal Controversy

Contrary to McKee's assertions, Thrifty Med's Second Motion to Dismiss addressed the third and final principle examined in the Sixth Circuit's opinion. Thrifty Med demonstrated a future legal controversy arising from Thrifty Med's pursuit of reinstatement to McKee's PDP is a nonissue. Thrifty Med has no interest in pursuing or obtaining reinstatement to McKee's PDP under Tennessee law and its owners have stipulated as much under penalty of perjury. Thrifty Med addressed the Sixth Circuit's stated concerns, and this Court should reject McKee's demonstrably false arguments.

### D. Thrifty Med's Stipulations Render Any Controversy Between Thrifty Med and McKee Moot

McKee's Response makes a last-ditch effort to defeat Thrifty Med's arguments under Fed. R. Civ. P. 12(b)(1) by asserting the stipulations executed by Mr. & Mrs. Bohannon as officers and

- 12 -

4924-6455-6819
Case 1:21-cv-00279-CEA-MJD   Document 141   Filed 01/28/25   Page 12 of 17
PageID #: 2197

sole shareholders of Thrifty Med do not moot McKee's claims against Thrifty Med. As with its other arguments, McKee's Response falls well short of buttressing these statements.

First, McKee contends the stipulations "do not end the parties' controversy regarding the key issue of ERISA's preemption of the Tennessee statutes" and that such a "controversy and McKee's corresponding request for a declaratory judgment remain." (Doc. 136). McKee's Response, however, fails to articulate any reason why Thrifty Med should remain a party to what McKee readily admits is a fight over ERISA preemption between McKee and Commissioner Lawrence following the submission of Thrifty Med's unequivocal stipulations. McKee and its allies may take issue with Thrifty Med's advocacy for greater patient choice and transparency in the face of encroaching actions by PBMs. Such a difference of opinion is nonetheless academic, and any declaratory judgment about what could happen if Thrifty Med hypothetically sought reinstatement under PC 1070 or some future version of that statutory scheme would merely function as an impermissible advisory opinion. Unfortunately for McKee, a general exercise of First Amendment rights, without more, does not create a "definite and concrete" controversy between Thrifty Med and McKee.

McKee's Response then turns its attention to whether Thrifty Med's stipulations would bar successors in interest, including via a stock or asset purchase. McKee's Response does not, however, point to any concrete information indicating such a sale is expected or likely to happen or that a subsequent buyer would pursue reinstatement to the McKee PDP. This is the exact variety of hypothetical exercise forbidden by Article III and established Supreme Court precedent.

McKee's next argument oddly raises, for the first time, its purported concerns relating to the "anti-steering" provisions codified in Tenn. Code Ann. § 56-7-3120(b)(2). McKee's original and Amended Complaint, however, contain no allegation of any effort by Thrifty Med to pursue

- 13 -

enforcement of those provisions against McKee or its PBMs. In fact, the only discussion of the "anti-steering" provisions stems from McKee's efforts to illustrate the similarities between PC 569 and PC 1070. (*See* Doc. 83). Notably, McKee made no effort to further amend its Complaint to include such an issue, including following the alleged filing of an administrative complaint by a non-party against McKee. Regardless, McKee's Response falls well short of establishing any sort of connection between that party and Thrifty Med.

McKee's last-ditch argument against mootness stems from its contention that Thrifty Med's unequivocal stipulations do not foreclose McKee's pursuit of injunctive relief against Thrifty Med. Again, this assertion falls short. Injunctive relief is a remedy, not a separate cause of action. *See K.B. by and through Qassis v. Methodist Healthcare-Memphis Hosps.*, 2018 WL 1611195, at *1 (W.D. Tenn. Feb. 12, 2018); *see also Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016); *Goryoka v. Quicken Loan, Inc.*, 519 Fed. Appx. 926, 929 (6th Cir. 2013) ("[R]equests [for injunctive relief] are remedies and are not separate causes of action.") To justify the imposition of such an "extraordinary remedy," McKee must not only point to a viable cause of action justifying such a remedy but also the impending risk of irreparable harm. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *see also VanDerStok v. Garland*, 633 F. Supp. 3d 847, 853 (N.D. Tex. 2022) ("Thus, an injunction must 'redress the plaintiff's particular injury,' and no more.") (quoting *Gill v. Whitford*, 585 U.S. 48, 73 (2018). McKee's Complaint and Amended Complaint are predicated on Thrifty Med's pursuit of reinstatement to McKee's PDP. There is no impending risk of such allegedly irreparable harm. McKee cannot point to an actual case in controversy sufficient to justify its pursuit of the remedy of injunctive relief against Thrifty Med. McKee's claims against Thrifty Med are moot and should be dismissed.

4924-6455-6819
Case 1:21-cv-00279-CEA-MJD    Document 141    Filed 01/28/25    Page 14 of 17
PageID #: 2199

## II. MCKEE'S AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST THRIFTY MED

Thrifty Med and Commissioner Lawrence provided extensive briefing concerning the prerequisites for an ERISA plan provider to file suit under 29 U.S.C. § 1132. (*See* Docs. 120, 121, 122, 123, 134, 137, 138). For the sake of brevity, Thrifty Med adopts those arguments here. Section 1132 may empower fiduciaries and sponsors to file suit against certain categories of individuals and entities to address violations of ERISA and/or to enforce any provisions of ERISA or the terms of the plan, but Thrifty Med does not fall within any category of potential defendants. Thrifty Med is not a plan participant, is not in McKee's PDP, and, most importantly, is not an individual or entity attempting to interfere with the McKee Plan. To the extent McKee remains determined to obtain an answer to the question of ERISA preemption, it can pursue that answer against Commissioner Lawrence and/or an entity allegedly attempting to interfere with McKee's Plan.

McKee's Response contends "both Thrifty Med and the Commissioner seek to enforce Tennessee laws that specifically target and purport to regulate ERISA-governed plans like McKee's." Again, as noted above, Thrifty Med has not taken any legal or administrative action to secure reinstatement to the McKee PDP, nor will it pursue such reinstatement via the Tennessee statutes at issue. Thrifty Med is simply not a necessary party to such a battle and should be dismissed.

Further, McKee's Amended Complaint and Response fail to justify injunctive relief. McKee's Amended Complaint and Response predicate McKee's pursuit of injunctive relief against Thrifty Med on Thrifty Med's alleged wrongful acts in 2018. McKee's pleadings, however, fail to provide sufficient evidence that such bad acts *actually* took place as alleged or that they are likely to occur again, six years after the fact. McKee's crusade is undercut by the Tennessee Board of

- 15 -

Pharmacy's documented finding that there was no evidence to substantiate Magellan's complaint against Thrifty Med arising from the same transactions.

Finally, McKee disputes Thrifty Med's arguments against the viability of McKee's pursuit of injunctive relief against Thrifty Med. As noted above, injunctive relief is a remedy, not a separate cause of action. In order to obtain such relief, McKee must show an impending risk of irreparable harm by Thrifty Med. McKee's Amended Complaint, however, cannot point to any action taken by Thrifty Med to pursue reinstatement via the statutes at issue or, indeed, any other action posing such an allegedly grave risk to the participants of the McKee Plan.

## CONCLUSION

McKee's Response does not demonstrate the existence of an actual case in controversy between Thrifty Med and McKee following Thrifty Med's filing of its unequivocal stipulations specifying it will not pursue reinstatement to McKee's PDP via PC 569, PC 1070, any future versions of Tennessee's "Any Willing Pharmacy" statutory scheme, or any other provision of Tennessee law. The only dispute that remains between McKee and Thrifty Med is purely academic in nature, which is simply not sufficient to maintain litigation. Similarly, even if a controversy does remain, McKee's Amended Complaint simply failed to articulate actionable claims for relief against Thrifty Med. This Court should reject McKee's efforts to salvage its claims against Thrifty Med and enter an order granting Thrifty Med's Second Motion to Dismiss.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

By: */s/ Derek W. Mullins*
    Russell W. Gray, TN BPR # 016120
    Derek W. Mullins, TN BPR # 036135
    633 Chestnut Street, Suite 1900
    Chattanooga, Tennessee 37450
    (423) 756-2010 | (423) 756-3447 FAX
    rgray@bakerdonelson.com
    dmullins@bakerdonelson.com

    *Counsel for Defendant BFP Inc.*
    *d/b/a Thrifty Med Plus Pharmacy*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

By: */s/ Derek W. Mullins*
    Russell W. Gray, TN BPR # 016120
    Derek W. Mullins, TN BPR # 036135

- 17 -

4924-6455-6819
Case 1:21-cv-00279-CEA-MJD   Document 141   Filed 01/28/25   Page 17 of 17 PageID #: 2202