# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| MCKEE FOODS CORPORATION., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:21-cv-279 |
| v. | ) | |
| | ) | Judge Atchley |
| BFP INC. d/b/a THRIFTY MED PLUS | ) | |
| PHARMACY, *et al.*, | ) | Magistrate Judge Dumitru |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff McKee Foods Corporation's Motion for Summary Judgment [Doc. 118], Defendant BFP, Inc. d/b/a Thrifty Med Plus Pharmacy's Motion to Dismiss [Doc. 120], and Defendant Carter Lawrence's, in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance, Motion for Summary Judgment [Doc. 122]. For the following reasons, McKee's Motion for Summary Judgment [Doc. 118] is **GRANTED IN PART** and **DENIED IN PART**, Thrifty Med's Motion to Dismiss [Doc. 120] is **GRANTED**, and the Commissioner's Motion for Summary Judgment [Doc. 122] is **DENIED**.

## I.     BACKGROUND

This case concerns whether recent amendments to several provisions of the Tennessee Code Annotated are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

Plaintiff McKee Foods Corporation is a food product manufacturer employing approximately 6,800 people across the continental United States. [Doc. 118-1 at 2–3 ¶ 7]. It offers its employees and their dependents a variety of benefits, including the ability to participate in the McKee Foods Corporation Employees Health and Supplemental Benefits Plan ("Health Plan"), a

self-funded benefits plan governed by ERISA. [Doc. 118-1 at 2 ¶¶ 4–6; *see also* Doc. 118-1 at 7–47]. The Health Plan provides participants with, among other things, prescription drug benefits. [Doc. 118-1 at 2–3 ¶¶ 4, 7; *see also* Doc. 118-1 at 48–70]. McKee—acting at the Health Plan's sponsor, administrator, and fiduciary—designed the structure of these benefits, including the Health Plan's eligibility requirements, participant contribution requirements (i.e., copays, coinsurance, etc.), and the network of pharmacies and preferred pharmacies at which Health Plan participants may use their prescription drug benefits. [Doc. 118-1 at 2–5 ¶¶ 5, 8–12; *see also* Doc. 118-1 at 48–70].

Defendant BFP, Inc., doing business as Thrifty Med Plus Pharmacy, used to be a member of the Health Plan's pharmacy network. [Doc. 35-2 at ¶ 8; Doc. 45-1 at ¶ 5]. But in 2018, a Health Plan participant complained that Thrifty Med had falsely signed her name on prescription logs and had improperly billed 90-day supplies of medication as three 30-day supplies. [Doc. 35-2 at ¶ 8; Doc. 45-1 at ¶ 5]. As a result of these allegations, McKee's pharmacy benefits manager ("PBM")[1] conducted an audit of Thrifty Med's billing practices. [Doc. 35-2 at ¶ 9; Doc. 45-1 at ¶ 6]. This audit concluded that Thrifty Med had engaged in a variety of misconduct, a conclusion Thrifty Med contests. [*See* Doc. 35-2 at ¶ 9; Doc. 45-1 at ¶ 6]. Whether Thrifty Med engaged in misconduct, however, is irrelevant to this case. What matters is that because of the audit, Thrifty Med was removed from the Health Plan's pharmacy network. [Doc. 35-2 at ¶ 10; Doc. 45-1 at ¶ 7; Doc. 120-1 at ¶ 4; Doc. 120-2 at ¶ 4]. Thrifty Med, however, found an opportunity that it hoped could lead to reinstatement. [*See* Doc. 120-1 at ¶ 5; Doc. 120-2 at ¶ 5].

---

[1] "PBMs are third-party entities that oversee health plans' prescription-drug benefits. As intermediaries, they contract with manufacturers to negotiate rebates on drugs, contract with health plans to manage the plans' prescription-drug benefits, and contract with pharmacies to design pharmacy networks. PBMs also offer options for health plans to structure their benefits. Because of the economic efficiencies and administrative savvy that PBMs afford, most health plans choose to work with PBMs to manage their prescription-drug benefits." *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188 (10th Cir. 2023).

On May 26, 2021, Public Chapter 569 was signed into law. 2021 Tenn. Pub. Ch. 569. It stated, in relevant part:

> A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359 [Tennessee's Any Willing Provider Statute] or by other means, including inducement, steering, or offering financial or other incentives.

*Id.* § 2 (codified at Tenn. Code Ann. § 56-7-3120(b) (2021)). The Tennessee Department of Commerce and Insurance—headed by Defendant Commissioner Carter Lawrence—took the position that this provision of Public Chapter 569 applied to "self-insured entities" governed by ERISA and stated in an official bulletin that it would "enforce Pub. Ch. 569 accordingly." [Doc. 119-3]. Relying on this bulletin and Public Chapter 569, Thrifty Med's owners filed three administrative complaints against the Health Plan's PBM hoping they would result in its reinstatement. [Doc. 120-1 at ¶ 5; Doc. 120-2 at ¶ 5]. McKee responded to this development by filing the instant case against Thrifty Med, seeking a declaration that Public Chapter 569 is preempted by ERISA and an injunction precluding Thrifty Med from seeking reinstatement to its pharmacy network. [Doc. 1]. The State of Tennessee subsequently intervened for the limited purpose of defending Public Chapter 569. [Doc. 26].

As this litigation progressed, Tennessee enacted another law, Public Chapter 1070, which made three relevant revisions to the Tennessee Code Annotated. 2022 Tenn. Pub. Ch. 1070. *First*, it clarified Tennessee Code Annotated § 56-7-3120(b)'s prohibitions, revising the statute to state:

> (b) A pharmacy benefits manager or a covered entity shall not:
>
> > (1) Interfere with the right of a patient, participant, or beneficiary to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359; or
> >
> > (2) Offer financial or other incentives to a patient, participant, or beneficiary to persuade the patient, participant, or beneficiary to utilize

3

> a pharmacy owned by or financially beneficial to the pharmacy benefits
> manager or covered entity.

2022 Tenn. Pub. Ch. 1070 § 5 (codified at Tenn. Code Ann. § 56-7-3120(b)). *Second*, it expressly

included plans governed by ERISA in the statutory definitions of both a "covered entity" and a

"pharmacy benefits manager." *Id.* at §§ 3-4 (codified at Tenn. Code Ann. § 56-7-3102(1), (5)).

And *third*, it required PBMs to admit any willing pharmacy to their networks without showing

preference for one pharmacy over another, stating:

(a) A pharmacy benefits manager shall allow patients, participants, and beneficiaries of the pharmacy benefits plans and programs that the pharmacy benefits manager serves to utilize any pharmacy within this state that is licensed to dispense the prescription pharmaceutical product that the patient, participant, or beneficiary seeks to fill, as long as the pharmacy is willing to accept the same terms and conditions that the pharmacy benefits manager has established for at least one (1) of the networks of pharmacies that the pharmacy benefits manager has established to serve patients, participants, and beneficiaries within this state.

(b) A pharmacy benefits manager may establish a preferred network of pharmacies and a non-preferred network of pharmacies. The pharmacy benefits manager shall not prohibit a pharmacy from participating in either type of network within this state as long as the pharmacy is licensed by this state and the federal government and willing to accept the same terms and conditions that the pharmacy benefits manager has established for other pharmacies participating within the network that the pharmacy wishes to join.

(c) A pharmacy benefits manager shall not charge a patient, participant, or beneficiary of a pharmacy benefits plan or program that the pharmacy benefits manager serves a different copayment obligation or additional fee, or provide any inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager to serve patients, participants, and beneficiaries within this state.

*Id.* § 6 (codified at Tenn. Code Ann. § 56-7-3121).

After Public Chapter 1070 was passed, Thrifty Med moved to dismiss this case, arguing

that Public Chapter 1070 and recent factual developments (i.e., the dismissal of its administrative

complaints and its decision that it would no longer seek reinstatement pursuant to Public Chapter

4

569) rendered McKee's claims moot. [Docs. 37–38-2]. The Court agreed and dismissed this case. [Doc. 67]. On appeal, however, the Sixth Circuit found that a live controversy remained and remanded this case for further proceedings. [Doc. 71]. On remand, McKee sought and obtained leave to amend the Complaint to both broaden its claims to encompass Public Chapter 1070 and to add the State of Tennessee and Commissioner Lawrence as defendants. [Docs. 78, 82]. The State and Commissioner moved to dismiss the claims against them. [Doc. 95]. The Court granted this motion as to the State but held that McKee could pursue its claims against the Commissioner in his official capacity. [Doc. 115]. Now, all the parties have filed a new round of dispositive motions, each of which is ripe for review. [*See* Docs. 118, 120, 122].

The Court will begin its analysis by evaluating McKee's and the Commissioner's competing Motions for Summary Judgment regarding McKee's claims against the Commissioner. The Court will then shift its focus to Thrifty Med's Motion to Dismiss and the portion of McKee's Motion for Summary Judgment concerning its claims against Thrifty Med.

## II.     MCKEE'S CLAIMS AGAINST THE COMMISSIONER

McKee asserts that Tennessee Code Annotated §§ 56-7-3120, 56-7-3121, and 56-7-2359—as amended or otherwise affected by Public Chapters 569 and 1070—are preempted by ERISA. [Docs. 118–19]. The Commissioner not only disputes this assertion but contends that the Court cannot and/or should not reach the merits of McKee's claims because (i) McKee lacks standing to sue him; (ii) McKee has failed to state a claim upon which relief can be granted; and (iii) the Court should decline to exercise jurisdiction under the Declaratory Judgment Act. [Docs. 122–23]. McKee, however, prevails on all fronts.

## A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

6

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## B. ANALYSIS

### i. McKee has standing to sue the Commissioner.

The Commissioner asserts that McKee lacks standing to sue him. [Doc. 123 at 8–11]. In making this argument, the Commissioner focuses on the dispute, or lack thereof, surrounding Thrifty Med's reinstatement efforts. [*Id.*]. Since remand, Thrifty Med has reiterated that it no longer desires to be reinstated to the Health Plan's pharmacy network. [*See* Doc. 120-1 at ¶¶ 7–13; Doc. 120-2 at ¶¶ 7–13; Doc. 121 at 6–9]. The Commissioner maintains that because Thrifty Med is not seeking reinstatement, McKee is not at risk of violating the law or being subject to an enforcement action based on its refusal to reinstate Thrifty Med. [Doc. 123 at 9–10]. Accordingly, the Commissioner contends that McKee is not subject to a credible threat of prosecution and therefore lacks standing to bring the instant case against him.[2] [*Id.* at 9–11]. The Commissioner's argument, however, fails to address the full scope of McKee's claims.

---

[2] The Commissioner actually asserts that McKee must allege a "*certain* threat of prosecution[,]" using language from *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017). [Doc. 123 at 9]. Though this language may, at first blush, appear to suggest the McKee must show more than a credible threat of prosecution, it is merely the same standard expressed in different words. *See Tenn. Educ. Ass'n v. Reynolds*, No. 3:23-cv-00751, 2024 U.S.

7

The challenged laws—Public Chapters 569 and 1070—do more than require McKee and its PBM to admit any willing pharmacy to the Health Plan's pharmacy network. *See* Tenn. Code Ann. §§ 56-7-3120(b)(1), 56-7-3121(a)–(b), and 56-7-2359. They also prohibit McKee and its PBM from both incentivizing plan participants to use specific pharmacies through things like lower co-pays and disincentivizing plan participants from using certain pharmacies through things like additional fees. *See* Tenn. Code Ann. §§ 56-7-3120(a), (b)(2), and 56-7-3121(c). To determine whether McKee has standing, the Court must consider any harms flowing from these other provisions of the challenged laws in addition to any harms resulting from the requirement that McKee admit any willing pharmacy to the Health Plan's pharmacy network.

To establish standing, "a plaintiff must satisfy three oft-repeated elements: that it has suffered (or will suffer) a concrete and particularized injury; that a causal connection exists between the injury and the defendant's conduct; and that the requested remedy will redress the injury." *Tenn. Conference of the NAACP v. Lee*, 105 F.4th 888, 902 (6th Cir. 2024) (internal quotation marks omitted). "When there is no doubt that the plaintiff is the direct object of the [challenged] law, regulation, or government action," this inquiry is often an easy one as 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Carman v. Yellen*, 112 F.4th 386, 407 (6th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)). That said, the standing inquiry takes on additional nuance in the context of a pre-enforcement challenge, specifically as relates to the injury-in-fact requirement. A pre-enforcement plaintiff "satisfies the injury-in-fact

Dist. LEXIS 80277, at *36 (M.D. Tenn. May 2, 2024) (noting that *Crawford* did not "repudiate[e]…the long line of caselaw recognizing standing based on, for example, a 'substantial probability' or 'credible threat' of enforcement" and that "*Crawford* expressly stated that it was drawing its rule from those cases and used that language itself elsewhere.").

8

requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U. S. 289, 298 (1979)). To establish a credible threat of prosecution, a plaintiff must show that one or more of the following is present:

> (1) "a history of past enforcement against the plaintiffs or others"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."

*Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quoting *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016)). These are known as the *McKay* factors, and they form the "holistic test" by which courts in this circuit judge threats of prosecution. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 439 (6th Cir. 2024). The Court previously weighed the *McKay* factors when ruling on Tennessee and the Commissioner's Motion to Dismiss, finding that they tipped in McKee's favor. [Doc. 115 at 7–10]. Now, a different standard of review governs, but the result is unchanged. The *McKay* factors establish that McKee is under a credible threat of prosecution.

Starting with the first factor, it weighs in McKee's favor as at least four complaints have been filed against McKee's PBM for its alleged violations of the challenged laws on the Health Plan's behalf. [*See* Doc. 119-9; Doc. 120-1 at ¶ 5; Doc. 120-2 at ¶ 5; Doc. 122-1 at ¶¶ 4–8]; *Susan B. Anthony List*, 573 U.S. at 164 (noting that there was "a history of past enforcement" where the plaintiff was the subject of a previous complaint). Three of these complaints—those filed by Thrifty Med—have since been dismissed while the final complaint, which concerns the Health Plan offering lower copays for prescriptions filled at a pharmacy owned by McKee, remains

9

pending. [*See* Doc. 119-6 at 9–10; Doc. 119-8 at 6–10; Doc. 119-9; Doc. 120-1 at ¶ 5; Doc. 120-2 at ¶ 5; Doc. 122-1 at ¶¶ 4–8]. Because none of these complaints have resulted in findings against McKee so far, their weight is limited but the weight they do carry nevertheless leans in McKee's favor. These complaints also place the third factor squarely in support of McKee as they show that the public can initiate enforcement investigations by filing a complaint with the Commissioner.[3] *See Online Merchants Guild*, 995 F.3d at 550. As for the fourth factor, it too weighs in McKee's favor. While the Commissioner has never expressly refused to state that the challenged laws will not be enforced against McKee, he and the department he oversees have continuously stated that the challenged laws—which apply to a broad range of entities, *see* Tenn. Code Ann. § 56-7-3102(1)—will be enforced specifically against ERISA plans like the Health Plan. [*See, e.g.*, Doc. 119-3 (bulletin stating that Public Chapter 569 will be enforced against ERISA plans); Doc. 81-3 (letter reaffirming that challenged laws will be enforced against ERISA plans); Doc. 81-4 at 19 (response to public comment reiterating that the challenged laws apply to ERISA plans)]. Thus, although this factor does not carry the weight it would if the Commissioner were to affirmatively state that the challenged laws would be enforced against McKee specifically, it still weighs in McKee's favor because the Commissioner has consistently reiterated that the challenged laws will be enforced against the precise kind of benefits plan that McKee operates. *See Online Merchants Guild*, 995 F.3d at 550. This leaves the second factor. Of the four, it is the only one to weigh in the Commissioner's favor as there is nothing in the record suggesting that McKee was ever sent an

---

[3] Tennessee Code Annotated § 56-7-3101(b)(1)(C) requires the Commissioner to promulgate rules implementing a complaint and administrative hearing process that allows it to sanction PBMs and covered entities like the Health Plan for violating Title 56, Chapter 7, Part 31 of the Tennessee Code Annotated which is where the challenged laws principally reside.

enforcement warning letter concerning its conduct. Weighing this factor against the other three, the Court finds that McKee is under a credible threat of prosecution. *See id.*

Of course, this credible threat is meaningless if McKee cannot show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute[.]" *Babbitt*, 442 U. S. at 298. The Commissioner argues that McKee cannot show it intends to engage in such a course of conduct because Thrifty Med is not seeking reinstatement and, in any event, nothing in the record suggests that preventing Thrifty Med from rejoining the Health Plan's pharmacy network would violate the challenged laws. [Doc. 123 at 9–10]. Standing alone, this might be persuasive, but as the Court has already noted, McKee's claims extend beyond its dispute with Thrifty Med. The challenged laws require McKee and its PBM to not only admit any willing pharmacy to the Health Plan's pharmacy network, but to also be neutral to those pharmacies by neither incentivizing nor disincentivizing participants from utilizing any particular pharmacy. *See* Tenn. Code Ann. §§ 56-7-3120(b), 56-7-3121. McKee's current conduct appears to violate this prohibition.

McKee owns and operates the McKee Foods Family Pharmacy. [Doc. 118-1 at 4–5 ¶ 12]. Participants who fill their prescriptions at this company-owned pharmacy pay substantially lower copays than if they fill their prescriptions at other in-network pharmacies. [*See, e.g.*, *id.* at 50]. In other words, McKee and its PBM are currently offering Health Plan participants a financial incentive "to utilize a pharmacy owned by…the pharmacy benefits manager or covered entity" in violation of the challenged laws. Tenn. Code Ann. § 56-7-3120(b)(2); *see also* Tenn. Code Ann. § 56-7-3121(c) ("A pharmacy benefits manager shall not charge a…participant…a different copayment obligation or additional fee, or provide any inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager

11

to serve…participants…within this state."). This practice has already resulted in the filing of at least one administrative complaint against McKee's PBM. [*See* Doc. 119-9]. Given this, it difficult to conceive how the Court could arrive at any other conclusion than that McKee intends to act— and indeed is already acting—in a manner proscribed by the challenged laws. *See Babbitt*, 442 U.S. at 298. Furthermore, this conduct is arguably affected with a constitutional interest because whether the challenged laws can constitutionally proscribe McKee's conduct depends on whether those laws are preempted by ERISA. *See Torres v. Precision Indus.*, 938 F.3d 752, 755 (6th Cir. 2019) (noting that a preempted law is unconstitutional under the Supremacy Clause). Considering the foregoing, the Court finds that McKee has standing to pursue its claims against the Commissioner.[4]

### ii. McKee has stated a claim upon which relief can be granted.

McKee brought this case pursuant to the Declaratory Judgment Act and 29 U.S.C. § 1132(a)(3) which authorizes an ERISA plan fiduciary, among others, to bring a civil action seeking "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]" [*See also* Doc. 83 at ¶¶ 19, 52–58]. The Commissioner, however, asserts that McKee cannot maintain a § 1132(a)(3) claim against him because he has not enforced the challenged laws against McKee. [Doc. 123 at 12–14]. This argument is without merit.

---

[4] The Commissioner concludes his standing argument by referring to the doctrine of sovereign immunity and noting that *Ex parte Young*'s exception to the doctrine only extends to cases where a defendant official enforces or threatens to enforce an allegedly unconstitutional statute. [Doc. 123 at 11]. To the extent the Commissioner may be attempting to raise a sovereign immunity defense separate from his standing argument, such a defense is meritless because, as described herein, McKee is under a credible threat of prosecution by the Commissioner. *See Ex parte Young*, 209 U.S. 123, 156, (1908).

The Commissioner's argument rests on the same proposition underlying his argument against standing, that there is insufficient evidence of enforcement activity for McKee to be able to bring the instant case. In particular, he states that "[a]bsent ongoing enforcement of the [challenged] laws by the Commissioner against McKee, McKee has no cause of action under § 1132(a)(3)—the Commissioner has not 'violated' ERISA, nor is there anything for McKee 'to enforce' under the aegis of § 1132(a)(3)." [Doc. 123 at 14]. The Court disagrees. As has already been discussed, McKee is pursuing a pre-enforcement challenge. *See supra* Section II.B.i. Such challenges serve a critical purpose, allowing plaintiffs to determine their constitutional rights without having to first risk prosecution. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Without them, plaintiffs would face the dilemma of having to either intentionally flout state law or forego what they believe to be constitutionally protected activity. *Id.* at 462. Avoiding this dilemma is why the federal courts allow plaintiffs like McKee bring pre-enforcement challenges. *See Susan B. Anthony List*, 573 U.S. at 159. But this ability to challenge laws before violating them would be eviscerated in the ERISA preemption context if the Court were to adopt the Commissioner's position that a plaintiff must show actual enforcement activity to state a § 1132(a)(3) claim. Adopting such a position would place entities like McKee back in the same dilemma that pre-enforcement challenges are meant to avoid, forcing them to choose between either violating state law or foregoing activities that they believe are constitutionally protected.

ERISA plan fiduciaries like McKee are permitted to bring actions seeking to establish that state statues are preempted by ERISA, *see, e.g.*, *Shaw v. Delta Air Lines*, 463 U.S. 85 (1983), and the Court cannot find that McKee has failed to state a § 1132(a)(3) claim merely because there has yet to be a successful enforcement action against it. Furthermore, the Court notes that although McKee has not yet suffered any adverse enforcement actions, four complaints relying on the

13

challenged laws have been filed against McKee's PBM for actions taken on the Health Plan's behalf, one of which is still pending. [*See* Doc. 119-6 at 9–10; Doc. 119-8 at 6–10; Doc. 119-9; Doc. 120-1 at ¶ 5; Doc. 120-2 at ¶ 5; Doc. 122-1 at ¶¶ 4–8]. Based on the foregoing, the Court finds that McKee has stated a § 1132(a)(3) claim against the Commissioner that can be addressed on the merits.

### iii. The Court will exercise its jurisdiction under the Declaratory Judgment Act.

The Commissioner's final pre-merits argument is that the Court should decline to exercise its jurisdiction under the Declaratory Judgment Act. [Doc. 123 at 14–16]. After reviewing the relevant factors, however, the Court finds that its exercise of jurisdiction is warranted.

The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) That is, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Id.* at 282. In determining when district courts should exercise its jurisdiction over a declaratory judgment, the Sixth Circuit weighs five factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for "procedural fencing"; (4) whether the use of a declaratory action would increase friction between federal and state courts; and (5) whether there is an alternative remedy that is better or more effective. *AmSouth Bank v. Dale*, 386 F.3d 763, 784–85 (6th Cir. 2004); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Here, the first factor weighs in favor of exercising jurisdiction because if McKee is correct that the challenged laws are preempted by ERISA, then this matter will be settled as neither the

14

Commissioner nor Thrifty Med will be able to use the challenged laws against McKee. The second factor also weighs in favor of exercising jurisdiction because a declaratory judgment regarding the validity of the challenged laws would clarify McKee's legal obligations and what provisions of the challenged laws, if any, the Commissioner can enforce against McKee. Turning to the third factor, it too weighs in favor of exercising jurisdiction because the Court finds that there is a lack of evidence suggesting that McKee is engaged in procedural fencing. As for the fourth factor, it also weighs in favor of exercising jurisdiction as the Court finds that a declaratory judgment is unlikely to increase friction between the federal and state courts given that a declaration would merely clarify the relationship between ERISA and the challenged laws. Finally, the fifth factor weighs in favor of a declaratory judgment because the Court cannot identify a better or more effective remedy for determining whether state law is preempted by federal law than a declaratory judgment by a federal court. Consequently, the Court will exercise its jurisdiction under the Declaratory Judgment Act. *See AmSouth Bank*, 386 F.3d at 784–85.

      iv.  **The challenged provisions of Public Chapters 569 and 1070 have an impermissible connection with ERISA plans and are therefore preempted.**

With the foregoing preliminary matters resolved, the Court can now turn to the central question underlying this case: Are Public Chapters 569 and 1070—as embodied in Tenn. Code Ann. §§ 56-7-3120 and 56-7-3121 and affecting the scope of § 56-7-2359—preempted to the extent they purport to govern self-funded ERISA plans? After careful consideration, the Court finds that they are.

"ERISA pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (quoting 29 U.S.C. § 1144). To "relate to" an ERISA plan, a law must either have a

15

"connection with" or "reference to" such a plan. *Id.* "Connection with" preemption arises when either a law "require[s] providers to structure benefit plans in particular ways," or "'acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage.'" *Id.* at 86–87 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). "Reference to" preemption arises in a different set of circumstances, namely "where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation[.]" *Gobeille*, 577 U.S. at 319–20. McKee argues that both types of preemption—as well as conflict/obstacle preemption—apply to the challenged laws. [Doc. 119 at 19–27]. It, however, is not necessary for the Court to address all three types of preemption as it finds that the challenged laws have an impermissible "connection with" ERISA plans.

As the Court has already noted, "connection with" preemption arises in two circumstances: (1) when a law "require[s] providers to structure benefit plans in particular ways," and (2) when "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 86–87 (internal quotation marks omitted). The Supreme Court has adopted a shorthand for these considerations, asking "whether a state law governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* at 87 (internal quotation marks omitted). If a law does neither but instead "merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage[,]" then the law is not preempted. *Id.* at 88.

In *Kentucky Association of Health Plans, Inc. v. Nichols*, the Sixth Circuit held that statutes requiring ERISA plans to admit "any willing provider" to their networks have an impermissible connection with ERISA plans and are therefore preempted. 227 F.3d 352, 363 (6th Cir. 2000), *aff'd sub som. Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003). The Commissioner

attempts to avoid this binding precedent by asserting that *Nichols* was abrogated by the Supreme Court's decision in *Rutledge v. Pharmacy Care Management Association*, 592 U.S. 80 (2020). [Doc. 123 at 21–22; Doc. 134 at 10–11]. The Commissioner, however, reads too much into *Rutledge*. The question there was whether Arkansas's Act 900—which required PBMs to reimburse Arkansas pharmacies at a price equal to or greater than what the pharmacies paid to purchase a drug—was preempted by ERISA. *Rutledge*, 592 U.S. at 83–84. The Supreme Court, relying on its prior decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645 (1995), held that it was not. *Rutledge*, 592 U.S. at 88. The *Rutledge* Court based this decision on the fact that Act 900 was a just form of cost regulation. *Id.* Although it might have "increase[d] costs or alter incentives for ERISA plans[,]" it did not force them "to adopt any particular scheme of substantive coverage." *Id.* In other words, it did not force the plans to make any specific choice regarding the benefits they provided. Because of this, the *Rutledge* Court held that Act 900 did not have an impermissible connection with ERISA plans *Id.*

The Commissioner argues that the same logic applies to any-willing-provider requirements such as those in the challenged laws. [Doc. 123 at 18–19; Doc. 134 at 11–13]. According to him, requiring an ERISA plan to admit any willing provider may affect the plan's shopping decisions, but it does not require the plan to "adopt any particular scheme of substantive coverage." [Doc. 134 at 11 (internal quotation marks omitted)]. This argument, however, ignores the fact that the scope of an ERISA plan's provider network (in this case a pharmacy network) is a key aspect of plan administration: how the plan structures and designs its benefits. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188 (10th Cir. 2023), *pet. for cert. filed*, No. 23-1213 (May 10, 2024). "Depending on a plan's goals, it may choose to offer its beneficiaries more or fewer pharmacy

17

options" based on factors such as the beneficiaries' age and geographic distribution, as well as whether the plan can obtain significant discounts by directing beneficiaries to a smaller number of pharmacies. *See id.* at 1189; *see also* [Doc. 133 at 10–11]. Any-willing-provider requirements eliminate this choice, forcing ERISA plans to accept, as the name suggests, any willing provider. In doing so, these provisions "require providers to structure benefit plans in [a] particular way[]," eliminating the plans' discretion to shape benefits as they see fit. *Rutledge*, 592 U.S. at 86-87; *see also Mulready*, 78 F.4th at 1198 (holding, among other things, that an any willing provider has an impermissible connection with ERISA plan by mandating plan structures). This direct regulation of benefit structure distinguishes any-willing-provider laws from the law at issue in *Rutledge*. Consequently, the Court finds that *Rutledge* did not abrogate *Nichols*, and this Court remains bound by *Nichols*'s holding. 18 Moore's Federal Practice - Civil § 134.02 (2025). Therefore, the any-willing-provider requirements in the challenged laws—Tenn. Code Ann. §§ 56-7-2359, 3120(b)(1), 3121(a)–(b)—are preempted by ERISA to the extent they attempt to govern ERISA plans. *Nichols*, 227 F.3d at 363.

The challenged laws' incentive and disincentive provisions are similarly preempted. These provisions forbid McKee and its PBM from encouraging plan participants to use specific pharmacies through either the carrot of lower copays and other incentives or the stick of higher copays and additional fees. Tenn. Code Ann. §§ 56-7-3120(a),[5] (b)(2),[6] and 3121(c).[7] The

---

[5] "A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy."

[6] "A pharmacy benefits manager or a covered entity shall not…[o]ffer financial or other incentives to a patient, participant, or beneficiary to persuade the patient, participant, or beneficiary to utilize a pharmacy owned by or financially beneficial to the pharmacy benefits manager or covered entity."

[7] "A pharmacy benefits manager shall not charge a patient, participant, or beneficiary of a pharmacy benefits plan or program that the pharmacy benefits manager serves a different copayment obligation or additional fee, or provide any

18

Commissioner argues that these provisions of the challenged laws do not have a connection with ERISA plans because they do not dictate the benefits that a plan must provide or require a plan to adopt any particular scheme of substantive coverage. [Doc. 123 at 17–18; Doc. 134 at 7–8]. But the Commissioner ignores that "[h]owever sliced, [these] restrictions 'require providers to structure benefit plans in particular ways[.]'" *Mulready*, 78 F.4th at 1198 (quoting *Rutledge*, 592 U.S. at 86). The challenged laws' incentive and disincentive provisions functionally mandate that ERISA plans charge plan participants the same copays and/or fees at all pharmacies in a given network. *See* Tenn. Code Ann. §§ 56-7-3120(a), (b)(2), and 3121(c); *see also Mulready,* 78 F.4th at 1198 (noting that forbidding differential cost-sharing structures is the same as requiring identical cost-sharing structures). In doing so, these provisions prevent an ERISA plan from designing and providing benefits in a way that the plan determines best serves participants. McKee, for example, owns and operates the McKee Foods Family Pharmacy. [Doc. 118-1 at 4–5 ¶ 12]. Because the Health Plan covers this pharmacy's operating costs, plan participants benefit from lower copays when they use the McKee Family Pharmacy. [*Id.*; *see also* Doc. 118-1 at 50–59]. The challenged laws, however, prevent McKee from providing this benefit and dictate how the Health Plan's copay obligations must be structured. *See* Tenn. Code Ann. §§ 56-7-3120(a), (b)(2), and 3121(c). Because of this, the challenged laws' incentive and disincentive provisions have an impermissible connection with ERISA plans and are therefore preempted. *Rutledge*, 592 U.S. at 86–87.

Based on the foregoing, McKee's Motion for Summary Judgment [Doc. 118] is **GRANTED** as to McKee's claims against the Commissioner, and the Commissioner's Motion for

---

inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager to serve patients, participants, and beneficiaries within this state."

Summary Judgment [Doc. 122] is **DENIED**. With the challenged laws preempted, the Court must now evaluate whether McKee is entitled to an injunction against the Commissioner.

> **v. The Commissioner must be permanently enjoined from enforcing the challenged laws against McKee**.

A party requesting a permanent injunction must show: (1) that it has suffered irreparable harm; (2) that legal remedies fail to compensate for the injury; (3) that a balance of the equities supports injunctive relief; and (4) that the public interest favors a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, each factor weighs in favor of enjoining the Commissioner from enforcing the challenged laws against McKee.

Regarding the first factor, constitutional violations establish irreparable injury. *ACLU v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). As preemption is a constitutional issue, *see* U.S. Const. art. VI, cl. 2, McKee would be irreparably harmed if it was required to comply with (or penalized for failing to comply with) the challenged laws. *English v. Gassman*, No. 2:09-cv-871, 2009 U.S. Dist. LEXIS 147019, at *5 (S.D. Ohio Oct. 5, 2009) ("[W]hen a fiduciary faces a decision to obey a state law, and risk violating the provisions of the plan and ERISA, 29 U.S.C. §1104(a)(1)(D)), or disobey the state law because of ERISA and risk breaking state law, irreparable harm exists." (citing *Denny's, Inc. v. Cake*, 364 F.3d 521, 527 (4th Cir. 2004)). Looking to the second factor, legal remedies could not compensate McKee for the harms it would suffer by either having an invalid law enforced against it or foregoing its federally protected ability to uniformly administer the Health Plan across the nation. *See Rutledge*, 592 U.S. at 86 (discussing how the congressional goal of ERISA was "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law, thereby minimizing the administrative and financial burden of complying with conflicting directives and ensuring that plans do not have to

20

tailor substantive benefits to the particularities of multiple jurisdictions" (cleaned up)). As for the third factor, the balance of equities leans in favor of enjoining the Commissioner because the Commissioner has no interest in unconstitutionally applying the challenged laws and is therefore not harmed by their enjoinment. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("[I]f the plaintiff shows…that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment."). Similarly, "[i]t is in the public interest not to perpetuate the unconstitutional application of a statute." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). Therefore, the fourth factor also weighs in favor of an injunction. *See id.*

Based on these considerations, the Court finds that a permanent injunction against the Commissioner is warranted. The precise terms of this injunction are stated below. *See infra* Part IV at ¶ 7. But for now, it is sufficient to say that the Commissioner will be enjoined from enforcing the challenged laws against McKee, whether through direct enforcement against the Health Plan or indirect enforcement against McKee's PBM for actions taken on the Health Plan's behalf.[8] With this resolved, the only matter left for the Court to address is McKee's claims against Thrifty Med.

## III.    MCKEE'S CLAIMS AGAINST THRIFTY MED

As a practical matter, the Court's resolution of McKee's claims against the Commissioner effectively resolves its claims against Thrifty Med. This Memorandum Opinion and Order declares the challenged laws preempted and enjoins the Commissioner from enforcing them against the Health Plan. Therefore, Thrifty Med cannot rely on the challenged laws to gain entry to McKee's

---

[8] An injunction must encompass action taken against McKee's PBM "[b]ecause a plan's choice between self-administering its benefits and using a PBM 'is in reality no choice at all[.]'" *Mulready*, 78 F.4th at, 1195–96 (quoting *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 188 (D.C. Cir. 2010)). Consequently, "regulating PBMs functions as a regulation of an ERISA plan itself." *Id.* at 1196 (cleaned up).

21

pharmacy network irrespective of whether it is specifically enjoined or dismissed from this action. Functionally, this is a loss for Thrifty Med should it ever desire to rejoin the Health Plan's pharmacy network. Technically, however, Thrifty Med is entitled to be dismissed from this action as there is no longer an active case or controversy between it and McKee.

### A.  STANDARD OF REVIEW

Federal courts only have the power to resolve "cases" and "controversies," the existence of which must be present throughout the entirety of litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013). In the declaratory judgment context, a case or controversy exists when the parties have "'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment even though the injury-in-fact has not yet been completed.'" *McKee Foods Corp. v. BFP, Inc.*, No. 23-5170, 2024 U.S. App. LEXIS 6927, at *9 (6th Cir. Mar. 21, 2024) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)). That said, developments during the course of litigation can render what started as a viable declaratory judgment claim moot. *Id.* at 10 ("[M]ootness sets in if the result of events during the pendency of the litigation causes the court's decision to lack any practical effect." (internal quotation marks omitted)); *Already, LLC*, 568 U.S. at 91 (A case becomes moot--and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation marks omitted)). One such development is where a defendant voluntarily ceases to engage in the challenged behavior. *See McKee Foods Corp.*, 2024 U.S. App. LEXIS 6927, at *14. If the defendant establishes that "there is no reasonable expectation that the alleged violation will recur[,]" then the claims against it are moot and must be dismissed. *See id.*

## B.  ANALYSIS

Thrifty Med asserts that there is no longer an active case or controversy between it and McKee because "it has no interest in pursuing reinstatement under [Public Chapter] 569, 1070, or any future version of Tennessee's 'Any Willing Provider' statutory scheme.'" [Doc. 121 at 4; *see also* Doc. 120-1 at ¶¶ 7–13; Doc. 120-2 at ¶¶ 7–13].[9] This is not the first time Thrifty Med has raised a voluntary cessation defense. In May of 2022—before the Commissioner was added as a named defendant and before Public Chapter 1070 became effective (but after its passage)—Thrifty Med moved to dismiss the then-operative Complaint, arguing that this case was moot due to the upcoming change in law and its owners' stipulation that Thrifty Med would not seek reinstatement to the Health Plan's pharmacy network pursuant to Public Chapter 569. [Docs. 37–38]. The Court agreed and dismissed this case. [Doc. 67].

On appeal, the Sixth Circuit reversed, holding that "Thrifty Med ha[d] not demonstrated with absolute clarity that McKee [would] not have to defend against a renewed pursuit of reinstatement from Thrifty Med." *McKee Foods Corp.*, 2024 U.S. App. LEXIS 6927, at *24. In reaching this conclusion, the Sixth Circuit considered the timing and alternative justifications for Thrifty Med's cessation, whether there were any relevant changes in circumstance, and whether there was the potential for the same legal controversy to reemerge. *Id.* at *16–21. Regarding the timing and justifications for Thrifty Med's cessation, the Sixth Circuit found them suspect. *Id.* at *16–20. It noted that Thrifty Med only stipulated to not pursuing reinstatement through Public Chapter 569 after Public Chapter 1070 had passed and that Thrifty Med equivocated about whether it would pursue reinstatement pursuant to Public Chapter 1070. *Id* at *19–20. Regarding whether

---

[9] Thrifty Med also asserts, in the alternative, that it is entitled to judgment on the pleadings because McKee has failed to state a claim against it upon which relief can be granted. [Docs. 120–21]. Because the Court finds that Thrifty Med is entitled to dismissal based on the lack of case or controversy between it and McKee, the Court does not address this alternative basis for dismissal.

23

there were any notable changes in circumstance, the Sixth Circuit found that there were none given that Public Chapter 1070 did not fundamentally change Tennessee's any-willing-provider requirements, and that Thrifty Med equivocated about whether it would seek reinstatement pursuant to Public Chapter 1070. *Id.* at \*20. The Sixth Circuit then went on to note that if Thrifty Med did pursue reinstatement pursuant to Public Chapter 1070, it "would present substantially the 'same legal controversy' as the dispute in the present case." *Id.*

After finding these factors weighed against mootness, the Sixth Circuit went on discuss how the involuntary dismissal of Thrifty Med's administrative complaints similarly did not suggest that McKee's claims were moot. *Id.* at \*21–23. In reaching this conclusion, the Sixth Circuit again highlighted that Thrifty Med had left the door open to whether it would later pursue reinstatement pursuant to Public Chapter 1070. *See id.* at 23. Given this open door, the Sixth Circuit found that "Thrifty Med's limited assurances provoke[d] a 'natural suspicion' that its pursuit for reinstatement [was] a 'realistic possibility.'" *Id.* at \*24 (quoting *Adams v. Bowater Inc.*, 313 F.3d 611, 615 (1st Cir. 2002)). Consequently, the Sixth Circuit held that McKee's claims were not moot and remanded the case for further proceedings. *Id.* at \*25.

Now, Thrifty Med again asks the Court to dismiss McKee's claims against it as moot. [Docs. 120–21]. But unlike before, Thrifty Med has not reserved its right to seek reinstatement under one or more of the challenged laws. Instead, it—through its owners—has unambiguously stated that "it has no interest in pursuing reinstatement under [Public Chapter] 569, 1070, or any future version of Tennessee's 'Any Willing Provider' statutory scheme.'" [Doc. 121 at 4; *see also* Doc. 120-1 at ¶¶ 7–13; Doc. 120-2 at ¶¶ 7–13]. Considering this unqualified stipulation and the developments in this case on remand, the Court finds that McKee's claims against Thrifty Med have become moot.

Thrifty Med's unqualified stipulation that it will not seek reinstatement under any current or future version of Tennessee's any-willing-provider statutory scheme directly addresses the Sixth Circuit's concerns. Whereas Thrifty Med previously left a door open for future litigation by stating only that it would not seek reinstatement pursuant to Public Chapter 569, it has now slammed that door shut. [*See* Doc. 120-1 at ¶ 13; Doc. 120-2 at ¶ 13]. Furthermore, Thrifty Med's genuine lack of desire to pursue reinstatement is evidenced by not only its owners' stipulations but also by developments in this case.

For example, the Commissioner is now a named defendant. [*See* Doc. 83 at ¶ 16]. This limits the strategic value of Thrifty Med mooting the claims against it through voluntary cessation. Prior to remand, a finding that the claims against Thrifty Med were moot meant that this case would be dismissed in its entirety. With no judicial determination as to the challenged laws' validity, Thrifty Med could pick up its reinstatement efforts right where it left off. With the Commissioner as a defendant, however, the challenged laws' validity can be decided regardless of whether Thrifty Med is a party to this case. In other words, Thrifty Med can no longer prevent the Court from reaching the merits of McKee's preemption challenge by mooting the claims against it. Instead, all it can do is remove its voice from the arguments. If anything, this means that mooting the claims against Thrifty Med puts Thrifty Med at a strategic disadvantage, especially when considering that an injunction against the Commissioner also functions as an injunction against Thrifty Med. Accordingly, the Court finds that the Commissioner's addition as a named defendant undercuts any strategic advantage Thrifty Med may have obtained by mooting the claims against it and suggests that Thrifty Med's stipulation that it will never seek reinstatement to the Health Plan's pharmacy network is genuine.

The Court also finds that the deterioration in the relationship between McKee and Thrifty Med further supports the conclusion that Thrifty Med will not seek reinstatement to the Health Plan's pharmacy network. Thrifty Med's owners have asserted that "McKee's actions and disposition to Thrifty Med from the time of Thrifty Med's removal, during this lawsuit, and beyond [have] le[ft] Thrifty Med disinterested in doing business with McKee as a [pharmacy network] provider in the future." [Doc. 120-1 at ¶ 10; Doc. 120-2 at ¶ 10]. Thrifty Med's owners claim, for example, that "McKee attacked Thrifty Med's efforts to advertise in and around the Collegedale and Ooltewah communities, thereby attempting to further hinder Thrifty Med's efforts to serve as a trusted healthcare provider to other residents in the area." [Doc. 120-1 at ¶ 11; Doc. 120-2 at ¶ 11]. They also take issue with the fact that the McKee Family Pharmacy is located less than 775 feet from Thrifty Med's pharmacy and competes with Thrifty Med on a limited basis. [Doc. 120-1 at ¶ 12; Doc. 120-2 at ¶ 12]. Finally, Thrifty Med's owners note that they had to restructure Thrifty Med's business operations following its removal from the Health Plan's pharmacy network to ensure that the company remained viable. [Doc. 120-1 at ¶ 13; Doc. 120-2 at ¶ 13]. Given these developments, it is not difficult to understand why Thrifty Med would no longer desire to do business with McKee irrespective of the outcome of this litigation.

McKee attempts to limit the impact of its deteriorating relationship with Thrifty Med by noting that when the Sixth Circuit considered whether there had been a change in circumstances surrounding Thrifty Med's previous cessation, it focused on changes (or rather the lack thereof) in the substance of Tennessee's any-willing-provider laws. [Doc. 136 at 12–13]. While this is true, the Sixth Circuit did not foreclose the possibility that changes in factual circumstances could also support a finding that a claim is moot. In fact, the Sixth Circuit itself has previously relied on changes in factual circumstances when evaluating whether voluntary cessation has mooted a claim.

*See Resurrection School v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022). Accordingly, the Court may consider the change in McKee and Thrifty Med's relationship when evaluating whether Thrifty Med's voluntary cessation has mooted McKee's claims against it. Considering this evidence along with everything else in the record, the Court finds that, unlike before, Thrifty Med has "demonstrated with absolute clarity that McKee will not have to defend against a renewed pursuit of reinstatement from Thrifty Med." *McKee Foods Corp.*, 2024 U.S. App. LEXIS 6927, at *25.

Faced with this reality, McKee makes four arguments why its claims against Thrifty Med nevertheless present a live controversy. None persuades.

First, McKee asserts that Thrifty Med's stated lack of desire to seek reinstatement does not resolve the controversy surrounding McKee's declaratory judgment claim because it and Thrifty Med still disagree about whether the challenged laws are preempted by ERISA. [Doc. 136 at 13]. But a mere disagreement about the law without any practical implications establishes at most an abstract dispute, not a case or controversy that the Court can adjudicate. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."); *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 971 (6th Cir. 2009) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." (internal quotation marks omitted)).

Second, McKee asserts that the stipulations of Thrifty Med's current owners do not foreclose the possibility of future reinstatement efforts by Thrifty Med or a successor entity. [Doc. 136 at 13–14]. This argument appears to be based on McKee's concern that Thrifty Med will be sold to new owners and/or restructured in such a way as to render Thrifty Med's current owners'

stipulations meaningless. [*See id.*]. As Thrifty Med correctly notes, however, nothing in the record suggests that such a sale or restructuring is expected or even likely to occur. [*See* Doc. 141 at 13]. Because of this, McKee cannot sustain its claims against Thrifty Med on the basis that Thrifty Med might one day be sold or restructured. *See Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) ("[A] claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)).

Third, McKee argues that Thrifty Med's owners' stipulations are limited because while they stipulate that Thrifty Med will not seek reinstatement, they do not stipulate that Thrifty Med will not challenge McKee using other aspects of the challenged laws like the incentive provision found at Tenn. Code Ann. § 56-7-3120(b)(2). [Doc. 136 at 14]. But as with McKee's second argument, the record is devoid of any evidence suggesting that this is expected or even likely to occur. McKee's claims against Thrifty Med have always centered around its position that Thrifty Med cannot rely on the challenged laws to seek reinstatement. There are no allegations or evidence in the record suggesting that Thrifty Med has ever filed a complaint against McKee pursuant to the challenged laws' incentive or disincentive provisions or that Thrifty Med intends to file such a complaint. Consequently, McKee cannot maintain its claims against Thrifty Med on the mere possibility that Thrifty Med might one day decide to file a complaint against McKee pursuant to the challenged laws' incentive or disincentive provisions.[10] *See Safety Specialty Ins. Co.*, 53 F.4th at 1020.

---

[10] As a practical matter, Thrifty Med is already precluded from using the challenged laws' incentive and disincentive provisions against McKee because the Commissioner will be enjoined from acting on any complaint Thrifty Med may file by virtue of this Memorandum Opinion and Order.

Fourth and finally, McKee asserts that its request for injunctive relief extends beyond the challenged laws to encompass any future efforts by Thrifty Med to seek reinstatement to McKee's pharmacy network, "whether under the challenged laws or otherwise." [Doc. 136 at 15 (emphasis removed)]. But whether Thrifty Med is entitled to seek reinstatement pursuant to any law other than those challenged in this lawsuit is not an issue currently before the Court. The Court cannot bar Thrifty Med from potentially seeking reinstatement under an unchallenged law that has not been brought to the Court's attention and indeed may not even exist.

Based on the foregoing, the Court finds that McKee's claims against Thrifty Med have been rendered moot.[11] Consequently, Thrifty Med's Motion to Dismiss [Doc. 120] is **GRANTED** and McKee's Motion for Summary Judgment [Doc. 118] is **DENIED** as to its claims against Thrifty Med. Thrifty Med is hereby **DISMISSED** from this action.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. McKee's Motion for Summary Judgment [Doc. 118] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, McKee's Motion is granted as to McKee's claims against the Commissioner and denied as to McKee's claims against Thrifty Med.

2. Thrifty Med's Motion to Dismiss [Doc. 120] is **GRANTED**. Thrifty Med is hereby **DISMISSED** from this action.

3. The Commissioner's Motion for Summary Judgment [Doc. 122] is **DENIED**.

4. The Court **DECLARES** that Tenn. Code Ann. § 56-7-3120—as amended by 2021 Tenn. Pub. Ch. 569 and 2022 Tenn. Pub. Ch. 1070—is preempted by ERISA to the extent it applies to self-funded benefits plans governed by ERISA and is therefore invalid as applied to those plans.

---

[11] A separate question remains as to whether the Court's injunction against the Commissioner also moots McKee's claims against Thrifty Med given that the injunction functionally provides McKee the relief it seeks against Thrifty Med. The Court, however, does not reach this question given that the claims against Thrifty Med are moot on other grounds.

29

5. The Court **DECLARES** that Tenn. Code Ann. § 56-7-3121—as created by 2022 Tenn. Pub. Ch. 1070—is preempted by ERISA. to the extent it applies to self-funded benefits plans governed by ERISA and is therefore invalid as applied to those plans.

6. The Court **DECLARES** that Tenn. Code Ann. § 56-7-2359—as incorporated by Tenn. Code Ann. § 56-7-3120(b)(1)—is preempted by ERISA to the extent it applies to self-funded benefits plans governed by ERISA and is therefore invalid as applied to those plans.

7. Defendant Carter Lawrence, in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance, is **PERMANENTLY ENJOINED** from enforcing Tenn. Code Ann. §§ 56-7-2359, 56-7-3120, and 56-7-3121—as described in the preceding paragraphs 4–6—against McKee's Health Plan (i.e., the McKee Foods Corporation Employees Health and Supplemental Benefits Plan). This injunction includes direct enforcement against the Health Plan and indirect enforcement against the Health Plan's PBM for actions the PBM takes on the Health Plan's behalf.[12]

A separate judgment will enter.

      **SO ORDERED.**

                                    */s/ Charles E. Atchley, Jr.*
                                    **CHARLES E. ATCHLEY, JR.**
                                    **UNITED STATES DISTRICT JUDGE**

---

[12] *See supra* note 8.